# Exhibit C

AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| United States of America | ) |
|---|---|
| v. | ) |
| CHARLIE JAVICE and OLIVIER AMAR | ) Case No. 1:23-Cr-00251 (AKH) |
| *Defendant* | ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE**

To: JPMorgan Chase Bank, N.A.
c/o Kristy J. Greenberg, Esq., Hogan Lovells US LLP, 390 Madison Avenue, New York, NY 10017
kristy.greenberg@hoganlovells.com, 212-918-3219

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

**SEE APPENDIX A**

| Place: | Kobre & Kim LLP<br>Attn: Sean S. Buckley<br>800 Third Avenue<br>New York, NY 10022 | Date and Time: | 12/01/2023 @ 3:00 p.m. ET |
|---|---|---|---|

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/09/2023

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Olivier Amar
, who requests this subpoena, are:

Sean S. Buckley, Kobre & Kim LLP, 800 Third Avenue, New York, NY 10022
Sean.Buckley@kobrekim.com, 212-488-1200

**Notice to those who use this form to request a subpoena**

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

Case No. 1:23-cr-00251 (AKH)

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case (Page 3)

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

    **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

    **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

    **(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

    **(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

    **(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

# APPENDIX A

## DEFINITIONS

1. "**Acquisition**" means the purchase of Frank by JPMC, pursuant to the terms of the Merger Agreement and any related diligence performed by Frank, JPMC, or third parties acting at the direction of Frank or JPMC.

2. "**Action**" shall mean the criminal proceeding pending in the United States District Court for the Southern District of New York under Case No. 1:23-cr-00251 (AKH).

3. "**Acxiom**" shall mean Acxiom LLC, the third-party engaged with respect to a data project in JPMC's diligence of Frank, and its agents, officers, employees, representatives, or any Person acting on its behalf, and any corporate subsidiaries, parents, other affiliated corporations, or predecessors or successors in interest.

4. "**All/Any/Each**" have the meaning ascribed to those terms in S.D.N.Y Local Rule 26.3 and shall each be construed as encompassing any and all.

5. "**Civil Action**" shall mean the civil action in the United States District Court for the District of Delaware under Case No. 1:22-cv-01621 (JDW).

6. "**Civil Complaint**" shall mean the complaint that JPMC filed in the Civil Action and dated December 22, 2022, including any amendments thereto.

7. "**Communication(s)**" has the meaning ascribed to that term in S.D.N.Y Local Rule 26.3 and means "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)."

8. "**Concerning**" has the meaning ascribed to that term in S.D.N.Y Local Rule 26.3 and means "relating to, referring to, describing, evidencing or constituting."

9. "**Criminal Complaint**" shall mean the complaint filed in this Action (ECF 1).

10. "**Data**" shall mean any statistics or facts that Frank, JPMC, or any Third Party collected and maintained for purposes of analysis, measurement, or growth of any aspect of the Frank business, including, but not limited to, any marketing lists, contact lists, demographic statistics of Frank users, or measurements of website activity.

11. "**Date(s)**" shall mean the exact day, month, and year, if ascertainable. If not ascertainable, the term means the closest approximation that can be made by means of relationship to other events, locations or matters.

12. "**Defendants**" means Charlie Javice and Olivier Amar.

13. "**Document(s)**" has the meaning ascribed to that term in S.D.N.Y Local Rule 26.3 and Federal Rule of Civil Procedure 34(a)(1)(A) and means any "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored

1

in any medium from which information can be obtained directly, or, if necessary, after translation by the responding party into a reasonably usable form."

14. "**Entity**" or "**Entities**" shall mean any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include, without limitation, the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

15. "**Frank**" means TAPD, Inc. d/b/a Frank, the financial education platform launched by Ms. Javice in April 2017, and any of its successors in interest (including TAPD LLC), agents, officers, employees, representatives, or any Person acting on its behalf. Frank was also known as "Finland" or "Frontier" at relevant times in this Action.

16. "**Government**" means the United States Attorney's Office for the Southern District of New York or the United States Securities and Exchange Commission, and/or any affiliated entity, as well as any agents, attorneys, employee(s), representative(s), or any other Person(s) acting or purporting to act on the United States of America's behalf.

17. "**Government Subpoenas**" shall mean the grand jury subpoenas dated October 13, 2022, January 9, 2023, January 31, 2023, February 3, 2023, February 22, 2023, February 28, 2023, and May 4, 2023, issued by the grand jury to JPMC in connection with this Action.

18. "**Including**" shall not be construed to limit any request to the items enumerated after such term but instead shall be construed to mean "including but not limited to" or "including without limitation."

19. "**Integration**" shall mean the process by which JPMC absorbed Frank, including any and all changes in Frank personnel, organizational hierarchy, performance metrics (including the setting of the same), back office support, engineering, privacy, or data use or restrictions.

20. "**Internal Investigation**" shall mean any investigation, inquiry, or other internal action taken by JPMC in connection with Frank or the Defendants.

21. "**JPMC**" means JPMorgan Chase Bank, N.A. and/or any affiliated entity, as well as any agents, attorneys, employee(s), representative(s), or any other Person(s) acting or purporting to act on JPMC's behalf, along with affiliated corporations, or predecessors or successors in interest.

22. "**Merger**" shall mean the merger of Finland Merger Sub, Inc., with and into Frank, which occurred on September 14, 2021, when Frank became a subsidiary of JPMC.

23. "**Merger Agreement**" shall mean that certain Agreement and Plan of Merger, by and among JPMorgan Chase Bank, N.A., Finland Merger Sub, Inc., TAPD, Inc., and Shareholder Representative Services LLC, dated as of August 8, 2021.

24. "**Mr. Amar**" shall mean Defendant Olivier Amar.

25. "**Ms. Javice**" shall mean Defendant Charlie Javice.

26. "**Person(s)**" has the meaning ascribed to that term in S.D.N.Y Local Rule 26.3 and means "any natural person or any legal entity, including, without limitation, any business or governmental entity or association."

27. "**Relevant Time Period**" means the time period from January 1, 2021, to the present, unless otherwise specified.

28. "**Text Message**" means any communication transmitted by MMS, SMS, texting or any other messaging application.

29. "**Thing(s)**" has the broadest meaning allowable under Federal Rule of Civil Procedure 34. This meaning encompasses, without limitation, any tangible object of any kind and nature other than a document, including without limitation prototypes, models, and physical specimens thereof.

30. "**You**" has the same meaning as "JPMC," defined above.

## INSTRUCTIONS

1. In addition to the requirements set forth in the S.D.N.Y. Local Rules, which are incorporated herein by reference, the following instructions apply to each Request.

2. These definitions and instructions shall apply in interpreting the scope of the definitions and instructions as well as the individuals Responses below, and they be incorporated by reference in future discovery served by Defendants in connection with this Action.

3. You are required to produce every Document requested in your possession, custody, or control, **except that You are not required to produce non-privileged Documents that You have previously produced to the Government as part of Your Bates-stamped formal responses to the Government Subpoenas**.

4. Unless otherwise stated, the time period covered in the Requests is January 1, 2021, to present.

5. Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes or text messages or similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals.

6. Computer files and similar electronic records should be produced in a readable and text-searchable form. Any password-protected Documents shall be produced with applicable passwords. Any Documents that contain color shall be produced in color.

7. Each page of all Documents produced must be marked with a unique identifier or "Bates Number."

8. Unless otherwise specified, the requests below apply for the entirety of the Relevant Time Period.

9. This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below, such as, for example, Documents maintained by your counsel.

10. To the extent there are no responsive Documents to a particular Request, please indicate that in your response. If a Document once existed and has been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the Document and the details concerning its non-existence.

11. To the extent that a Document otherwise responsive to any of the Requests is withheld on the ground(s) that it is subject to the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege, please provide a log that identifies each such document and the specific reason for which it is being withheld in sufficient detail to allow assessment of the validity of the withholding.

12. If you redact any portion of a Document, please stamp the word "REDACTED" on each portion of the Document that contains redactions and provide the reason for the redactions in sufficient detail to allow assessment of the validity of the claim for redaction.

13. These Requests are continuing; you are required to produce responsive information in accordance with the requirements of Federal Rule of Criminal Procedure 17(c).

14. These Requests require the production of original tangible things in the same form and in the same order as they are kept in the usual course of business. The titles or other descriptions on the boxes, file holders, bindings, or other container in which tangible things are kept are to be left intact. Alternatively, all documents are to be produced, organized, and labeled to correspond with the categories in this Request.

15. If any information requested in a Request is claimed to be privileged or otherwise immune from discovery, or if any document is withheld from production based on a claim of privilege, immunity, or other ground, You must furnish a list (*i.e.*, a "privilege log") specifying: (a) the nature of the privilege, immunity, or other ground claimed; (b) the authors of the document; (c) all persons who received copies of the document, including the document's indicated and blind copy recipients; (d) the date of the document; (e) the type of document withheld (*e.g.*, memorandum, letter, report, email, *etc.*); and (f) the general subject matter of the document sufficient to enable Mr. Amar to assess the applicability of the claimed privilege, immunity, or other ground for refusal to produce. For each item of information or document You withhold based on a claim of privilege, immunity, or other ground, identify such information or document with sufficient particularity for purposes of a motion to compel. Notwithstanding any claim of privilege or immunity, any information or documents falling within the scope of the Request which are not privileged or immune from production should be produced.

16. If a portion of an otherwise responsive document contains information subject to a claim of privilege, only that portion of the document subject to the claim of privilege shall be deleted or redacted from the document following the instructions in the preceding paragraph and the rest shall be produced.

17. If any document requested herein was formerly in your possession, custody, or control and has been transferred, lost, or destroyed, you shall submit in lieu of each document a written statement indicating whether the document: (a) was lost or is missing; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) otherwise has been disposed of. In each instance explain the circumstance of such disposition, and state the approximate date thereof.

18. If there are no documents responsive to any particular Request, your response shall state so in writing.

19. Documents not otherwise responsive to these Requests shall be produced if such documents concern, relate to, mention, discuss, refer to, describe, or explain the documents which are called for by these Requests.

20. If You object to any part of any Request, you shall state fully in writing the nature of the objection. Notwithstanding any objections, you shall respond to the Request as narrowed in a way that renders it not overbroad in your opinion, and state the extent to which You have narrowed that Request for purposes of your response. You shall also comply fully with the other parts of the Request to which you are not objecting.

21. A document with handwritten, typewritten, or other recorded notes, editing marks, *etc.*, is not and shall not be deemed identical to one without such modifications, additions, or deletions. The term "original" includes the file copy and copies of any document if there is no actual original or ribbon copy.

## DOCUMENT REQUESTS

1. Documents and Communications related to internal discussions involving [REDACTED] ("Executive-1" in the Criminal Complaint and "Head of Corporate Development" in the Civil Complaint) and other JPMC employees in or about March 2021 regarding her views, and the views of other JPMC employees, as to whether Frank was an appealing acquisition target for JPMC due to the marketing potential of Frank's large customer base, as referenced in ¶ 19(a) of the Criminal Complaint and ¶ 38 of the Civil Complaint.

2. Documents and Communications related to internal discussions involving Executive-1 and other JPMC employees in or about March 2021 regarding alleged representations regarding the marketing potential of Frank's large customer base, as referenced in ¶ 19(a) of the Criminal Complaint.

3. Documents and Communications related to internal discussions of the content and subject matter of the alleged July 2, 2021 email from Ms. Javice to Executive-1, as referenced in ¶ 19(b) of the Criminal Complaint, including related to the alleged representation by Ms. Javice to Executive-1 that Frank had "5.6M active households in the US and . . . will end the year with close to 10M families," and how that representation impacted the decision to proceed with the Acquisition and/or the price that JPMC paid to acquire Frank.

4. Documents and Communications related to internal discussions regarding the 18-page pdf of a PowerPoint presentation regarding Frank (defined in the Criminal Complaint as the "July 2 Pitch Deck"), as referenced in ¶ 19(b) of the Criminal Complaint, its purported representation that Frank had 4.25 million users, and its alleged impact on the decision to proceed with the Acquisition and/or the price that JPMC paid to acquire Frank.

5. Documents and Communications sufficient to identify who from JPMC had access to the "data room" opened by Frank on or around July 6, 2021, as referenced in ¶ 19(c) of the Criminal Complaint and ¶ 42 of the Civil Complaint.

6. Documents and Communications related to internal discussions regarding the 60-page PowerPoint presentation regarding Frank (defined in the Criminal Complaint as the "July 7 Pitch Deck"), as referenced in ¶ 19(d) of the Criminal Complaint, its purported representation that Frank had 4.25 million users, and its alleged impact on the decision to proceed with Acquisition and/or the price that JPMC paid to acquire Frank.

7. Documents and Communications related to internal discussions regarding the spreadsheet allegedly uploaded to the "data room" by Ms. Javice on or about July 8, 2021 (defined in the Criminal Complaint as the "Spreadsheet"), as referenced in ¶ 19(e) of the Criminal Complaint and ¶ 54 of the Civil Complaint, and its alleged impact on the decision to proceed with Acquisition and/or the price that JPMC paid to acquire Frank.

8. Documents and Communications related to internal discussions of the content and subject matter of the alleged July 9, 2021 email from [REDACTED] identified in the Criminal Complaint as "a JPMC employee"), to the investment advisors representing Ms. Javice

7

regarding next steps and due diligence meetings, as referenced in ¶ 19(f) of the Criminal Complaint.

9. Documents and Communications related to internal discussions of the content and subject matter of the alleged August 4, 2021 email from Ms. Javice to ▇▇▇▇▇▇▇ (identified in the Criminal Complaint as "Executive-2) regarding Frank's user breakdown according to "the Spreadsheet," as referenced in ¶ 19(h) of the Criminal Complaint.

10. Documents and Communications related to internal discussions of the content and subject matter of the alleged August 1, 2021 email from Executive-1 describing the information about Frank user data sought by JPMC, as referenced in ¶ 21(d) of the Criminal Complaint and ¶¶ 5 and 64 of the Civil Complaint.

11. Documents and Communications related to internal discussions of the content and subject matter of the alleged August 3–5, 2021 emails from Executive-2 to Ms. Javice regarding the appropriate use of "unique identifiers" for personal identifying information, the data validation report JPMC sought from Frank, the template for the data validation report that JPMC sought from Frank (defined in the Criminal Complaint as the "Template Report"), and confirming completion of JPMC's data validation request, as referenced in ¶¶ 21 and 25 of the Criminal Complaint and ¶ 67 of the Civil Complaint.

12. Documents and Communications related to discussions between Executive-2 and Acxiom (identified in the Criminal Complaint as "Vendor-1") in or around August 2021 regarding JPMC's validation request for Frank data, as referenced in ¶ 26(b) of the Criminal Complaint.

13. Documents and Communications related to internal discussions of the content and subject matter of the alleged January 6–10, 2022 emails from ▇▇▇▇▇▇▇ (identified in the Criminal Complaint as the "Marketing Executive") regarding the transfer of certain data files, as referenced in ¶ 32(a) of the Criminal Complaint and ¶ 164 of the Civil Complaint.

14. Documents and Communications related to internal discussions of the content and subject matter of the alleged other purported user data files sent by Ms. Javice to JPMC, as referenced in ¶ 32(b) of the Criminal Complaint.

15. Documents and Communications related to JPMC's decision to offer $175 million to acquire Frank and how JPMC arrived at that valuation.

16. Documents and Communications regarding all transactions prior to July 2021 in which JPMC purchased student data from ASL Marketing, Acxiom LLC, or other data vendors.

17. Documents and Communications sufficient to identify who from JPMC attended the following meetings or calls:

    a. July 1, 2021 call between Ms. Javice and Executive-1, ▇▇▇▇▇▇▇, and potentially other JPMC representatives;

8

b. July 7, 2021 meeting in which Ms. Javice allegedly delivered a management presentation to JPMC's representatives, accompanied by a 60-page PowerPoint deck, as referenced in ¶ 19(d) of the Criminal Complaint;

c. July 12, 2021 diligence meeting with Ms. Javice, as referenced in ¶ 19(g) of the Criminal Complaint and ¶ 43 of the Civil Complaint;

d. July 13, 2021 diligence meeting with Ms. Javice, as referenced in ¶ 19(g) of the Criminal Complaint and ¶ 44 of the Civil Complaint;

e. July 19, 2021 diligence meeting with Ms. Javice, as referenced in ¶ 48 of the Civil Complaint;

f. July 20, 2021 diligence meeting with Ms. Javice, as referenced in ¶ 48 of the Civil Complaint; and

g. August 2, 2021 Zoom call between Executive-2 Ms. Javice, and potentially other JPMC representatives, as referenced in ¶ 21(e) of the Criminal Complaint.

18. Written or electronic notes of oral Communications from the meetings referenced in Request 17, including drafts of such notes or memoranda.

19. Documents and Communications related to internal discussions of the content and subject matter of the meetings referenced in Request 17, including regarding:

a. Ms. Javice's alleged statements in the July 12, 2021 diligence meeting with respect to Frank's definition of "user," as referenced in ¶ 19(g) of the Criminal Complaint; and

b. Mr. Amar, his presence, and any representations or statements made by him.

20. Documents and Communications regarding JPMC's review of reports from Frank's auditors and accountants that JPMC considered in its decision to acquire Frank, including any reports from Frank's auditors and accountants.

21. Written or electronic notes of oral Communications from meetings between Mr. Amar and ▇▇▇▇▇▇ in or around July–August 2021, including drafts of such notes or memoranda.

22. Documents and Communications related to JPMC's assessment of the scalability of Frank's FAFSA submitter.

23. Documents and Communications related to Chase's decision in July–August 2022 to "Rebuild" (as opposed to "Rebrand") Frank on Chase.com and the motivations, reasons, and business case for that decision, including internal Communications of ▇▇▇▇▇▇, ▇▇▇▇▇▇, and ▇▇▇▇▇▇.

24. Documents and Communications regarding any changes in laws, policies, and procedures that had an impact on Frank's business model, including Frank's FAFSA submitter.

9

25. Documents and Communications related to JPMC's assessment of the July 2022 marketing campaign to Frank customers, as referenced in ¶ 13 of the Criminal Complaint and ¶ 178 of the Civil Complaint.

26. A list of JPMC personnel with access to Frank's Google Analytics platform and the permissions of those with access.

27. Documents and Communications related to internal discussions of the content and subject matter of JPMC's review of Frank's Google Analytics data in or around the time JPMC received access.

28. Documents and Communications related to internal discussions of the content and subject matter of JPMC's Internal Investigation into Frank that precipitated the termination of Ms. Javice and Mr. Amar for cause on or about November 4, 2022 and October 26, 2022, respectively, as referenced in part in ¶ 33 of the Criminal Complaint and ¶¶ 28 and 30 of the Civil Complaint.

29. Documents and Communications exchanged between JPMC and the Government concerning interviews of JPMC employees regarding the Government's investigation into Ms. Javice, Mr. Amar, Frank, and the Acquisition.

30. Documents and Communications exchanged between JPMC and the Government regarding JPMC's response to the Subpoenas and any narrowing of the Subpoenas.

31. Documents and Communications listed on the privilege logs provided by JPMC to the Government in response to the Government Subpoenas, including:

    a. To which Mr. Amar or Ms. Javice was the author, recipient, or copied;

    b. To which [redacted] was the author, recipient, or copied in his capacity as the Chief Operating Officer of Frank or concerning other business-related discussions that did not involve the provision of legal advice;

    c. Involving legal advice provided by Sidley Austin to Ms. Javice or the Frank Board of Directors regarding the potential sale of Frank to Bank-2, JPMC, [redacted] or any other potential buyer;

    d. Memorializing discussions involving the Frank Board of Directors regarding the potential sale of Frank to Bank-2, JPMC, [redacted], or any other potential buyer;

    e. Regarding any diligence questions, reports, timelines, templates, or trackers concerning the potential sale of Frank to Bank-2, JPMC, [redacted], or any other potential buyer;

    f. Concerning "Project Finland Executive Update" on or around July 13, 2021;

10

g.  Attaching or discussing Frank's financials, including balance sheets, revenue by product, and historical profits and losses;

h.  Regarding JPMC's assessment of Frank's ADA compliance during Integration;

i.  Regarding any changes in laws, policies, and procedures that had an impact Frank's business model, including Frank's FAFSA submitter;

j.  Regarding any disruption to or shutdown of Frank's FAFSA submitter;

k.  Regarding any disruption to or shutdown of Frank's microsite; and

l.  Concerning Acxiom's data validation work during JPMC's diligence of Frank.

# EXHIBIT 1

## Production of ESI

**Image Production Standard.** Except as provided herein, the parties shall produce all non-database ESI and hard copy documents in TIFF format. All TIFF formatted documents will be single-page, black & white, TIFF files. All TIFF images shall be produced in a folder named "**IMAGES**," which shall contain sub-folders named "0001," "0002," etc. Images from a single document shall not span multiple sub-folders.

**Production of Native Files.** For documents and ESI whose native format is MS Excel, MS PowerPoint, MS Access, QuickBooks, other database formats, multi-media files (audio or video), and any other file type that cannot be converted to TIFF, the original native files shall be produced in addition to a single-page TIFF placeholder. Native files shall be produced in a folder named "**NATIVES**."

**Extracted Text or OCR Text for TIFF Images and Native Files.** To the extent practicable, each individual document based on an electronic file shall be accompanied by one corresponding text file with text that is extracted from the electronic file. Extracted text or OCR files shall be produced in a folder named "**TEXT**."

**Load Files.** The parties' document productions shall include Relativity compatible Load Files, including a DAT file and an Opticon delimited file, that indicate document breaks of the TIFF images and additional fields as identified below. All Load and Cross-reference files shall be produced in a folder named "**DATA**."

**File Name.** Each document image file shall be named with the unique production number of the first page of the document in question followed by the file extension "TIF."

**Document Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or notes shall be maintained as they existed in the original document.

**Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) should be preserved and appropriately reflected in the metadata.

**Production of Metadata.** The following metadata fields associated with each electronic document, to the extent they are available, will be produced.

| Custodian | From | DateSent | File Path |
|---|---|---|---|
| BegBates | Author | DateRcvd | Native Link - (if natives are exchanged) |
| EndBates | To | DateCreated | Text Link - (if text is exchanged) |
| BegAttach | Cc | Date Last Modified | Confidentiality Designation - (for natively produced documents only, if required) |
| EndAttach | Bcc | Importance | Redacted |
| AttachCount | E-mail Subject | Conversation | Exceptions |
| AttachName | Filename | TimeSent | Hash Value |
| ParentBates | Title | TimeRcvd | File Extension |

12