**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

CHARLIE JAVICE AND OLIVIER AMAR,

Defendants.

Case No. 1:23-cr-00251-AKH

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY JPMORGAN CHASE**
**BANK, N.A.'S MOTION TO QUASH DEFENDANTS' RULE 17(C) SUBPOENAS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 4

    Defendants Are Indicted on Numerous Charges .................................................. 4

    JPMC's Response to SDNY's Grand Jury Subpoenas ......................................... 4

    Defendants Unsuccessfully Attempt to Commandeer the Enforcement of the
    Government's Grand Jury Subpoenas ................................................................... 5

    Defendants Issue the Rule 17(c) Subpoenas to JPMC ......................................... 5

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ......................................................................................................................... 7

I.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY DO NOT
    SEEK SPECIFIC, ADMISSIBLE AND RELEVANT EVIDENCE THAT IS
    NOT OTHERWISE PROCURABLE BY DUE DILIGENCE. ......................................... 7

II.   THE SUBPOENAS' DEFINITIONS AND INSTRUCTIONS VIOLATE RULE
    17(C). ............................................................................................................. 11

III.  THE REQUESTS IN THE JAVICE SUBPOENA SUFFER FROM NUMEROUS
    DEFECTS AND FAIL TO SATISFY *NIXON* AND RULE 17. ..................................... 14

IV.  THE REQUESTS IN THE AMAR SUBPOENA SUFFER FROM NUMEROUS
    DEFECTS AND FAIL TO SATISFY *NIXON* AND RULE 17. ..................................... 49

CONCLUSION .................................................................................................................... 68

## **TABLE OF AUTHORITIES**

**Cases**

*Cotton v. PrivateBank & Tr. Co.*,

    235 F. Supp. 2d 809, 814 (N.D. Ill. 2002) .......................................................................11

*Gregory v. Bank One, Ind., N.A.*,

    200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002) ..................................................................11

*In re JPMorgan Chase Bank, N.A.*,

    799 F.3d 36, 41-44 (1st Cir. 2015) ...................................................................................10

*Union Bank of Cal. v. Superior Court*,

    130 Cal. App. 4th 378, 398 (Cal. Ct. App.2005) .............................................................11

*United States v. Avenatti*,
(S1) 19 Cr. 373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020)...............................10

*United States v. Barnes*,
560 Fed. Appx. 36 (2d Cir. 2014).......................................................................................7

*United States v. Barnes*,
No. S9 04 CR 186(SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008)...................7, 9, 10

*United States v. Bergstein*,
No. 16-CR-746 (PKC), 2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) ..............................8

*United States v. Brown*,
No. 95 CR. 168 (AGS), 1995 WL 387698 (S.D.N.Y. June 30, 1995).............................10

*United States v. Cherry*,
876 F. Supp. 547 (S.D.N.Y 1995) ......................................................................................7

*United States v. Coburn*,
No. 19-cr-00120 (KM), 2022 WL 357217 (D.N.J. Feb. 1, 2022)....................................27

*United States v. Cole*,
19 Cr. 869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ..................................10, 14

*United States v. Donziger*,
No. 19-CR-561 (LAP), No. 11-CV-691 (LAK),
2021 WL 1865376 (S.D.N.Y. May 10, 2021) ...........................................................10, 13

*United States v. Jasper*,
    No. 00 CR. 825 (PKL), 2003 WL 1107526 (S.D.N.Y. Mar. 13, 2003)....................6, 7, 13

*United States v. Jenkins*,
    No. 02 CR. 1384 (RCC), 2003 WL 1461477 (S.D.N.Y. Mar. 21, 2003) .................6, 7, 13

*United States v. Nixon*,
    418 U.S. 683 (1974)................................................................................................ *passim*

*United States v. Pena*,
    15-cr-551 (AJN), 2016 WL 8735699 (S.D.N.Y. Feb. 12, 2016) ..............................7, 9, 13

*United States v. Shea,*
    2022 WL 13847351, No. 20 Cr. 412-4 (AT), at *3 (S.D.N.Y. Oct. 24, 2022)....................9

*United States v. Skelos*,
    15-CR-317 (KMW), 2018 WL 2254538 (S.D.N.Y. May 17, 2018)................................10

*United States v. Tagliaferro*,
    19-CR-472 (PAC), 2021 WL 980004 (S.D.N.Y Mar. 16, 2021)...................................7, 13

*United States v. Weisberg*,
    No. 08-CR-347 (NGG)(RML), 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011).................11

*United States v. Xiaoqing Zheng*,
    1:19-CR-156, 1:20-MC-57 (MAD), 2020 WL 6287481 (N.D.N.Y. Oct. 27, 2020) .....8, 14

*Weil v. Long Island Savs. Bank*,

    195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001) ...................................................................11

*Wultz v. Bank of China Ltd.*,

    56 F. Supp. 598, 601-602 (S.D.N.Y. 2014) ...................................................................11

## **Rule**

Fed. R. Crim. P. 17 ...............................................................................................6, 7

## PRELIMINARY STATEMENT

This Court should quash the Rule 17(c) subpoenas issued by Defendants Charlie Javice and Olivier Amar (the "Subpoenas") to JPMorgan Chase Bank, N.A. ("JPMC")—the victim in this case—because Defendants cannot meet their burden of showing that the information they seek is specific, relevant, and admissible under Federal Rule of Criminal Procedure 17(c).[1] To the contrary, the Subpoenas are replete with the types of requests that courts consistently have held improper under Rule 17(c).

The Subpoenas do not seek specific evidence, but rather contain a staggering **65 Requests** (the "Requests"), the vast majority of which seek "all" documents and communications concerning the stated topic. Many of the Requests in the Subpoenas do not identify specific custodians appropriate for each request; instead, they neglect to specify any custodians whatsoever or, at times, seek documents from as many as **84 custodians**. And many of the Requests do not seek relevant information, often demanding documents that have no bearing on the key issue in the case against Defendants – that Javice and Amar provided a fake customer list to JPMC. The Subpoenas instead seek irrelevant information related to post-Merger decisions like the shutdown of the Frank[2] website or the size of the post-Merger Frank marketing budget – issues that have no relevance to deciding whether Javice and Amar committed wire, bank or securities fraud when they sold Frank to JPMC. Critically, but not surprisingly, none of the Requests asks JPMC to produce the "real" customer list containing

---

[1]    The subpoena by Charlie Javice (the "Javice Subpoena") and the subpoena issued by Olivier Amar (the "Amar Subpoena") are attached to the Declaration of Allison M. Wuertz (the "Wuertz Declaration") as Exhibits A and B, respectively. Each request in the Subpoenas is referred to as a "Request" and, collectively, as the "Requests. All other exhibits are also attached to the Wuertz Declaration.

[2]    "Frank" refers to TAPD, LLC (d/b/a Frank), the company that JPMC acquired in September 2021 for $175 million (the "Merger"). Javice was Frank's founder and Chief Executive Officer. Amar was Frank's Chief Marketing Officer.

Frank's 4.25 million actual customers – because, as Defendants know, that list does not exist, and Defendants' inappropriate, overbroad Rule 17(c) Subpoenas cannot distract from that reality.

The Subpoenas' civil litigation-style discovery requests far exceed the limits of Rule 17(c).  Rule 17(c) is not a discovery tool.  It is a limited procedure by which defendants can request specific and admissible documents they can identify and that they will use at trial.  To ensure a criminal defendant does not abuse Rule 17(c), a defendant has the burden to make a preponderance showing that the materials requested are: (1) specifically identified, (2) relevant, (3) admissible, and (4) not otherwise procurable by the exercise of due diligence.  Here, the Subpoenas fail to meet those requirements for four main reasons.

*First*, despite invoices reflecting hundreds of hours from dozens of attorneys reviewing productions from the U.S. Attorney's Office for the Southern District of New York ("SDNY" or the "Government"), Defendants appear to have little knowledge of the documents and information JPMC has produced to the SDNY thus far because a significant number of the Requests call for the production of documents that **JPMC already has produced**.  These documents are able to be procured by due diligence – a review of materials already in their possession – and therefore any Request for documents already produced should be quashed.  Enforcing the Subpoenas as written would require JPMC – a non-party and victim in this case – to walk Defendants through the productions already in their possession to spare Defendants the burden of doing their own work.  That is not the purpose of Rule 17.

*Second*, the majority of the Requests lacks the specificity Rule 17 demands.  Instead of requesting particular documents, nearly all of the Requests are defined to seek any and all documents related to various topics, a formulation used in civil litigation but inappropriate under Rule 17, which requires that the documents requested be specifically identified.  The Requests in

the Javice Subpoena also demand that JPMC search the documents of over 80 custodians, with no explanation of what specific documents each custodian has. These sweeping requests demonstrate that Defendants are not seeking the production of specific documents, but merely hoping that some yet-to-be-determined helpful material exists. Rule 17(c) does not permit such an exercise.

_Third_, many of the Requests seek irrelevant information pertaining to subjects that have no bearing on whether Javice and Amar provided JPMC with a fake customer list. For example, a significant number of Requests seek information about the integration of Frank following the Merger, which does not bear on the question of whether Defendants' statements and actions during the diligence process were fraudulent. Other Requests seek information about marketing assumptions and budgets post-Merger, which again do not shed light on the fake customer list. Still other Requests seek information about JPMC's relationships with third parties, but those relationships do not inform whether Defendants lied.

_Finally_, many of the Requests seek inadmissible information. In fact, Request No. 1 in the Javice Subpoena and Request No. 31 in the Amar Subpoena seek **all of the documents on JPMC's privilege logs**. Many of the remaining Requests expressly seek privileged material such as documents related to JPMC's internal investigation of Defendants' fraud.

Ultimately, Defendants' Subpoenas amount to little more than a fishing expedition that would be inappropriate even under a more lenient civil standard, but absolutely fail to meet the rigorous strictures of Rule 17(c). This is especially true in this case, where the recipient of the

3

Subpoenas is the victim of the Defendants' crimes.  This Court should grant JPMC's motion to quash the Subpoenas.[3]

### BACKGROUND

*Defendants Are Indicted on Numerous Charges*

On March 31, 2023, the SDNY filed a sealed complaint against Javice.  *See* ECF No. 1. One week later, Javice was arrested.  *See* ECF No. 2.  On May 18, 2023 and July 12, 2023, Javice and Amar were indicted for conspiracy to commit wire fraud and bank fraud, wire fraud, bank fraud, and securities fraud.  The charges in this matter arise out of allegations that Defendants defrauded JPMC by lying about the number of customers Frank had in August 2021, thereby inducing JPMC to acquire Frank for $175 million.  Defendants provided a list of 4.25 million customers as part of due diligence leading to the Merger, but all of these customers were later discovered to be fake.  At the time, Frank had closer to 300,000 customers.

*JPMC's Response to SDNY's Grand Jury Subpoenas*

In connection with their investigation of Defendants' fraud, the SDNY issued ten grand jury subpoenas to JPMC (the "Grand Jury Subpoenas").  The Grand Jury Subpoenas requested, among other things, ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████.

JPMC expended significant time and expense to respond fully to the Grand Jury Subpoenas.  To date, JPMC has produced 1,150,806 pages of material constituting 290,389

---

[3]    JPMC has identified a handful of Requests that can be read in a limited way that could be proper under Rule 17(c).  JPMC is willing to produce documents in response to those Requests, as indicated below in Points III and IV.

documents.  JPMC has searched the files of 193 custodians and produced responsive, non-privileged documents in response to the Grand Jury Subpoenas.  JPMC also has searched for and produced ███████████████████████████████████████████████████████████ ███████.  Other than the production of certain limited categories of documents as ordered by this Court, the SDNY has not sought documents beyond what JPMC has already produced pursuant to the Grand Jury Subpoenas and has stated to this Court that it believes JPMC has complied fully with the Grand Jury Subpoenas.

*Defendants Unsuccessfully Attempt to Commandeer the Enforcement of the Government's Grand Jury Subpoenas*

On October 13, 2023, Defendants filed a motion pursuant to Rule 16 to compel the SDNY to require JPMC to produce additional documents and an application to this Court for a Rule 17 subpoena to obtain communications between SDNY attorneys and JPMC.  *See* ECF No. 57.  After the motion was fully briefed, this Court heard argument on November 2, 2023 and, at that hearing and in a subsequent written order, denied nearly all of Defendants' motion to compel and denied the Defendants' application for a Rule 17 subpoena for communications between SDNY attorneys and JPMC.  The Court noted, among other things, that the vast majority of Defendants' requests were beyond what the "government is required to produce.  It's not material in preparing your defense because you don't know what's going to come out of it."  Ex. A (Nov. 2, 2023 Tr.) at 34:25-35:4.

*Defendants Issue the Rule 17(c) Subpoenas to JPMC*

Unsuccessful in their Rule 16 motion to compel the SDNY and application for a Rule 17 subpoena to the SDNY, Defendants now seek the same expansive discovery denied by this Court at the November 2 status conference via the Subpoenas to JPMC.  One week after the status

conference, on November 9, 2023, Javice and Amar separately served the Javice Subpoena and Amar Subpoena on JPMC via email.

The Subpoenas together contain 65 Requests, many of which have multiple subparts. Together, the Requests seek documents from over 80 custodians over a time period of up to three years. As discussed in more detail below, the Requests are not proper under Rule 17(c). Among other things, the Requests:

   (a) seek documents JPMC already has produced;

   (b) lack any specificity, nearly always seeking "all" documents or communications from a broad swath of custodians;

   (c) seek irrelevant information, such as marketing budgets and website shutdown details created long after Defendants had convinced JPMC to purchase Frank for $175 million through the use of a fake customer list; and

   (d) seek inadmissible information, expressly calling for the production of **<u>all</u>** of JPMC's **<u>privileged documents</u>**.

## <u>LEGAL STANDARD</u>

Federal Rule of Criminal Procedure 17(c), which governs the procedure for subpoenas of non-party witnesses, documents and objects in criminal cases, is intended "to expedite the trial by providing a time and place before trial for the inspection of [] subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698-99 (1974). It is "not intended to provide a means of discovery for criminal cases." *Id.* at 698; *see also, e.g., United States v. Jenkins*, No. 02 CR. 1384 (RCC), 2003 WL 1461477, at *4 (S.D.N.Y. Mar. 21, 2003) ("Rule 17(c) . . . is not a method of discovery in criminal cases."); *United States v. Jasper*, No. 00 CR. 825 (PKL), 2003 WL 1107526, at *2 (S.D.N.Y. Mar. 13, 2003) ("Rule 17(c) . . . subpoenas are not tools of discovery in criminal cases."). "[C]ourts must be vigilant to ensure that Rule 17(c) is not used for the purpose of a general fishing expedition." *United States v. Pena*, 15-cr-551 (AJN), 2016 WL 8735699, at *2

(S.D.N.Y. Feb. 12, 2016) (citing *Nixon*, 418 U.S. at 700) (quotations removed); *accord United States v. Cherry,* 876 F. Supp. 547, 552 (S.D.N.Y 1995) (Rule 17(c) should not be turned into a "broad discovery device . . . thereby undercutting the strict limitation of discovery in criminal cases") (citation omitted).

Rule 17(c) provides that, "[o]n a motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). On a motion to quash a defendant's subpoena as "unduly 'unreasonable or oppressive,'" the defendant bears the burden of making a "preponderance showing" that the materials requested are: (1) relevant, (2) specifically identified, (3) admissible, and (4) not otherwise procurable by the exercise of due diligence. *See United States v. Barnes*, 560 F. App'x. 36, 39-40 (2d Cir. 2014) (summary order) (citing *Nixon,* 418 U.S. at 699-700); *see also United States v. Tagliaferro*, 19-CR-472 (PAC), 2021 WL 980004, at *3 (S.D.N.Y Mar. 16, 2021) (quashing "breathtakingly broad" Rule 17(c) subpoena where it sought "all documents" and defined documents "as '*any* and *all* documents and records, in *whatever* form kept'") (emphasis in original); *Jenkins*, 2003 WL 1461477, at *4 (quashing Rule 17(c) subpoenas where defendant failed to show that the materials sought would be admissible or relevant at trial); *Jasper*, 2003 WL 1107526, at *2 (same). The defendant must also demonstrate that the application is not intended as a "general fishing expedition." *United States v. Barnes*, No. S9 04 CR 186(SCR), 2008 WL 9359654, at *2, *4 (S.D.N.Y. Apr. 2, 2008).

## ARGUMENT

I.    **THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY DO NOT SEEK SPECIFIC, ADMISSIBLE AND RELEVANT EVIDENCE THAT IS NOT OTHERWISE PROCURABLE BY DUE DILIGENCE.**

The Court should quash the Subpoenas because the Defendants have failed to meet the requirements of Rule 17(c). First, the Subpoenas seek documents that JPMC already produced

to the Government.  *See, e.g.*, Ex. B (Javice Subpoena) at Request Nos. 2-5, 7-9, 14-23, 25-29,

31-34; Ex. C (Amar Subpoena) at Request Nos. 3-15, 17, 18, 22-28.  The Defendants may

readily obtain these materials from the Government through the ordinary course of discovery, if

they have not already done so.  *See United States v. Bergstein*, No. 16-CR-746 (PKC), 2017

WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017) ("When many of the subpoenaed materials are

obtainable through the discovery process, a subpoena contravenes *Nixon*'s requirement that

subpoenaed materials must not be otherwise procurable in advance of trial by the exercise of

due diligence.") (citations and quotations omitted); *United States v. Xiaoquing Zheng*, No. 19-

CR-156 (MAD), 2020 WL 6287481, at *13 (N.D.N.Y. Oct. 27, 2020) ("Evidence that "is

already likely in Defendant's possession and could be retrieved . . . with little effort" is not the

proper subject of a Rule 17(c) subpoena.).  Indeed, the Government has already corrected the

Defendants' erroneous claims that they were missing materials that the Government had both

received from JPMC and produced to Defendants.  *See* ECF No. 60 at 7-8.

  Nevertheless, the Defendants continue to seek materials on some of those very topics.

*See, e.g.*, Ex. B (Javice Subpoena) at Request Nos. 2, 9, 15; 16, Ex. C (Amar Subpoena) at

Request Nos. 15, 28.  The gross overreaching of the Subpoenas to cover information that the

Government has already produced from JPMC necessitates quashing the Subpoenas.  *See*

*Xiaoquing Zheng*, 2020 WL 6287481, at *5 ("Where, as here, there is overlap between the

reach of the Subpoena and the government's production during discovery, and the proponent

fails to successfully distinguish the materials that the government already produced from the

materials to which the proponent claims entitlement by subpoena, it must be quashed.")

(citation and quotations omitted).

  Second, the Subpoenas do not seek specific, identifiable information contained or

believed to be contained in the documents sought.  *United States v. Shea*, 2022 WL 13847351,

No. 20 Cr. 412-4 (AT), at *3 (S.D.N.Y. Oct. 24, 2022).  Rather, many of the requests in the Subpoenas set forth broad, "any and all documents related to" discovery requests for nearly three years of information.  *See, e.g.*, Ex. B (Javice Subpoena) at Request Nos. 1, 2, 5, 7, 8, 12-16, 18-21, 23, 24, 27; Ex. C (Amar Subpoena) at Request Nos. 1-20, 22-28, 31.  Courts in this Circuit routinely quash such open-ended Rule 17(c) subpoenas for failure to meet the specificity requirement.  *See, e.g.*, *Barnes*, 2008 WL 9359654, at *4 (rejecting subpoena as not sufficiently specific where defendant "blindly [sought] 'all' documents and recordings that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence" and apparently did not know whether or not some of the requested documents even existed); *Pena*, 2016 WL 8735699, at *3 (granting motion to quash because request for "any and all" records associated with the Government's cooperating witnesses failed to meet specificity requirement).

Here, the Subpoenas are civil discovery requests masquerading as a Rule 17(c) requests.  In fact, the Subpoenas are strikingly similar to, and in some cases more extensive than Defendants' civil discovery requests served in the civil action JPMC filed against Javice and Amar in the United States District Court for the District of Delaware (the "Civil Action").  *See* Ex. D (Javice RFPs); *see also* Part II, *infra*, at 11-14.  In a criminal case, such requests for information that **might** exist do not satisfy the Rule 17(c) subpoena specificity standard.  *See* *Shea*, 2022 WL 13847351 at *3 ("A general assertion that certain material might contain exculpatory information is insufficient to prevail against a motion to quash under Rule 17(c).") (citations and quotations omitted); *United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425, at *4-5 (S.D.N.Y. Mar. 10, 2021) ("To satisfy the specificity prong, a Rule 17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up.") (citations and quotations omitted); *United States v. Avenatti*, No. (S1) 19 Cr. 373 (PGG), 2020 WL 508682, at

*5 (S.D.N.Y. Jan. 31, 2020) (Rule 17(c) subpoena "seeking all communications that reference[d] [defendant] over a nine-month period" was not sufficiently specific because it was speculative and "premised on a mere hope that something useful will turn up") (citations and quotations omitted).

Third, the Subpoenas seek information that is irrelevant to the charges in the Indictment. *See, e.g.*, Ex. B (Javice Subpoena) at Request Nos. 2, 3, 6, 10-14, 16-20, 22, 25-29, 33, 34; Ex. C (Amar Subpoena) at Request Nos. 16, 20, 21. "A party seeking documents through subpoenas issued pursuant to Rule 17(c), has the burden of showing [] that the documents are evidentiary and relevant." *United States v. Brown*, No. 95 CR. 168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995) (citations omitted). A defendant's unsupported assertion that the subpoenaed materials are relevant is insufficient under Rule 17. *See Barnes*, 2008 WL 9359654, at* 3-4 (quashing subpoena because defendant failed to proffer a reason for how the evidence would be relevant at trial). Here, many Requests in the Subpoenas seek information as to post-Merger business dealings that are wholly irrelevant to whether Defendants engaged in fraud when they sold Frank to JPMC.

Finally, Rule 17(c) subpoenas cannot be used to obtain documents that would be inadmissible as evidence at trial. *See United States v. Donziger*, No. 19-CR-561 (LAP), No. 11-CV-691 (LAK), 2021 WL 1865376, at *7, *9 (S.D.N.Y. May 10, 2021) (quoting *United States v. Skelos*, 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018)) (quotation marks omitted); *see also United States v. Weisberg*, No. 08-CR-347 (NGG)(RML), 2011 WL 1327689, at *8 (E.D.N.Y. Apr. 5, 2011) (finding that a non-party's assertion of privilege of the documents sought by a Rule 17(c) subpoena "weighs against ordering their disclosure" because documents containing privileged material generally are inadmissible."). Here, however, the Subpoenas expressly seek documents and communications that would be inadmissible. The very

first request in the Javice Subpoena and the last request in the Amar Subpoena call for the

production of all documents JPMC listed on its privilege log prepared in connection with the

Grand Jury Subpoenas.  Such documents, of course, are inadmissible and otherwise protected

from discovery.[4]

## II.    THE SUBPOENAS' DEFINITIONS AND INSTRUCTIONS VIOLATE RULE 17(C).

Both Subpoenas preface their multitude of requests with a set of definitions and

instructions so broad that they render even a potentially proper request inappropriate under the

strictures of Rule 17.  A comparison between the definitions and instructions in the requests for

production that Javice served in the civil action before discovery was stayed and the Javice

Subpoena demonstrates that Javice has ignored Rule 17(c) entirely and served civil-style

discovery instead.  For example, entities in both documents are defined to include its "agents,

officers, employees, representatives, or any Person acting on its behalf, and any corporate

subsidiaries, parents other affiliated corporations or predecessors or successors in interest."

---

[4]    In addition to the more common attorney-client privilege and work product privilege protections, financial institutions are bound by strict federal law to maintain confidentiality over their reporting of suspicious activity.  *See* 31 C.F.R. § 1020.320(e); 12 C.F.R. § 21.11(k). Accordingly, information that would reveal the existence of—or even the decision not to file—a Suspicious Activity Report is subject to a nonwaivable privilege.  *Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 814 (N.D. Ill. 2002); *see also Gregory v. Bank One, Ind., N.A.*, 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002) (holding that the BSA created an unqualified discovery and evidentiary privilege which could not be waived by the reporting financial institution); *Weil v. Long Island Savs. Bank*, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001) (SAR confidentiality is neither qualified nor subject to waiver by the financial institution); *Union Bank of Cal. v. Superior Court*, 130 Cal. App. 4th 378, 398 (Cal. Ct. App.2005) ("The OCC has the discretion to disclose SARs and their contents.").  The privilege does not extend to the underlying facts, transactions or documents upon which a SAR or potential SAR is based, and JPMC will not withhold documents on that basis that are otherwise properly subject to production in response to the Rule 17(c) Subpoenas.  *See, e.g., Wultz v. Bank of China Ltd.*, 56 F. Supp. 598, 601-602 (S.D.N.Y. 2014); *see also In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 41-44 (1st Cir. 2015).

*Compare* Ex. B (Javice Subpoena) *with* Ex. D (Javice RFPs).  Defining relevant entities in this manner fatally undermines any argument that the Javice Subpoena contains targeted Requests that seek specific documents.  If it did, such broad entity definitions would not be necessary.

Defendants define the words "all," "any," and "each" to "be construed as encompassing any and all."  Ex. B (Javice Subpoena) at 4; Ex. C (Amar Subpoena) at 4.  They also note that "all," "any," and "each" shall "have the meaning ascribed to those terms in S.D.N.Y. Local Rule 26.3."  *Id.*  "S.D.N.Y. Local Rule 26.3" refers to the Local Civil Rules of this Court, which is inapplicable here and erases any doubt that Defendants are pursuing civil discovery in the context of a criminal case.

Moreover, Javice defines the word "Document(s)" to include "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in ***any medium*** from which information can be obtained directly."  Courts regularly quash such requests, finding these types of definitions wholly inconsistent with Rule 17.  *See, e.g.*, *Tagliaferro*, 2021 WL 980004, at *3 (quashing "breathtakingly broad" Rule 17(c) subpoena where it sought "all documents" and defined documents "as 'any and all documents and records, in whatever form kept'") (emphasis and citation omitted); *Pena*, 2016 WL 8735699, at* 3 (granting motion to quash because request for "any and all" records associated with the Government's cooperating witnesses failed to meet specificity requirement).

The instructions in the Subpoenas are equally broad and equally inappropriate under Rule 17(c).  For example, Instruction No. 9 in both Subpoenas provides:

> This subpoena covers ***all Documents*** in or subject to your possession, custody or control, ***including all Documents that are not in your immediate possession but that you have the effective ability to obtain***, that are responsive, in whole or in part, to any of the individual requests set forth below, such as, for example, Documents maintained by your counsel.

*See* Ex. B (Javice Subpoena) at Appendix A (emphasis added); Ex. C (Amar Subpoena) at

Appendix A (emphasis added).  This broad instruction purports to force **JPMC** to somehow

search for documents JPMC **does not possess**.  *See Donziger*, 2021 WL 1865376, at *7

("[Defendant] has made no showing that the documents or communications he seeks even exist,

let alone explained what they might reasonably be expected to contain.").  Nothing in the

applicable case law supports the sort of expansive discovery described by Instruction No. 9.  *See*

*Jenkins*, 2003 WL 1461477, at *4 ("Rule 17(c) . . . however, is not a method of discovery in

criminal cases."); *Jasper*, 2003 WL 1107526, at *2 ("Rule 17(c) subpoenas are not tools of

discovery in criminal cases.").

      Instruction No. 14 likewise demands that JPMC go far beyond the proper scope of Rule

17(c) subpoenas.  It provides "all Documents are to be produced, organized, and labeled to

correspond with the categories in this Request."  This demand amounts to nothing more than an

attempt to compel JPMC to do Defendants' job in reviewing the documents in their possession

and provide a summary to Defendants.  *See* Ex. B (Javice Subpoena) at Appendix A; Ex. C

(Amar Subpoena) at Appendix A.  Rule 17(c) requires nothing of the sort.  *See Xiaoqing Zheng*,

2020 WL 6287481, at *13 ("If Defendant and his counsel are unwilling to search for this

information that is likely already in their possession, it would be patently unfair to force [the

non-party] to do their work for them.").

      Finally, Instruction No. 19 demands that:

> Documents not otherwise responsive to these Requests shall be
> produced if such Documents concern, pertain to, relate to, mention,
> discuss, refer to, describe, or explain the Documents which are
> called for by these Requests.

Instruction No. 19 is absurd – on its face, it purports to require JPMC to produce non-responsive

documents.  *See Cole*, 2021 WL 912425, at *4-5 ("To satisfy the specificity prong, a Rule

17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up.") (citations and quotations omitted).

These definitions and instructions go far beyond the scope of material Defendants are entitled to seek by way of a Rule 17(c), and corrupt the entirety of the Subpoenas.  The Subpoenas should be quashed.

## III.    THE REQUESTS IN THE JAVICE SUBPOENA SUFFER FROM NUMEROUS DEFECTS AND FAIL TO SATISFY *NIXON* AND RULE 17.

The reasons that each Request in the Javice Subpoena fails to meet the *Nixon* factors are set forth below.

> **_Request No. 1_**: *Documents and Communications listed on the privilege logs provided by JPMC to the Government in response to the Government Subpoenas.*

This opening Request for all of JPMC's privileged material does not even purport to comply with *Nixon*, which requires that information sought by a Rule 17(c) subpoena be admissible.  Information protected by the attorney-client privilege and the attorney work product doctrine are inadmissible, and thus Defendants cannot compel their production through Rule 17(c).

Nor does this Request comport with the Court's instruction at the November 2 conference, which stated that "if you could tell from a privilege log some documents that you believe clearly are not privileged, call for those documents."  Ex. A (Nov. 2 Tr.) at 53:14-16.  Javice did not even attempt to specify documents she "believe[d] clearly are not privileged," but instead called for the production of all material on the privilege log.

Moreover, Javice's challenge of all documents on JPMC's privilege logs is entirely inconsistent with Defendants' prior statements. Defendants have admitted that their criticisms of

JPMC's privilege logs are much narrower. In an email dated September 19, 2023, Defendants raised issues with just 7% of the documents then on JPMC's three privilege logs. Those issues related to just five topics: (1) communications in which Frank's General Counsel may have acted in a non-legal capacity; (2) purported over-redaction of lengthy Slack conversations; (3) withholding of certain Board minutes; (4) Defendants' "difficulty" in understanding parent/child relationships of documents on the privilege log; and (5) purported over-redaction of certain other documents.

> ***Request No. 2****: Communications and Documents in Your care, custody, or control, sent, received, drafted, created, or revised by any of the individuals listed in Exhibit 2 that pertain to the Merger, Acquisition, Integration, or Internal Investigation, including Communications and Documents pertaining to the following topics:*
>
> > *a) Data held by Frank prior to the Acquisition;*
> >
> > *b) The use or potential use of such Data by JPMC, including in connection with potential lead generation;*
> >
> > *c) Traffic on or to the Frank website and any of its digital tools, including, but not limited to as such traffic is measured by clicks, engagement, active users, visits, sessions, signups, registered users, impressions, FAFSA users, accounts, students, digital profiles, leads, starters, prospects, and customers;*
> >
> > *d) The terms "user," "user sign-up," "registered user," "authenticated user," "customer," "account," "impression," "household," "student," "starter," or "sign-up," "FAFSA,""CAC," "CPC," "CTR," or "SEO";*
> >
> > *e) The valuation of Frank, including any methodology used by JPMC in assessing such valuation prior to or after the Acquisition;*
> >
> > *f) Ms. Javice; or*
> >
> > *g) Mr. Amar.*

This broad request both exposes Javice's failure to review the hundreds of thousands of documents JPMC has produced to date and fails to meet the necessary showing under Rule 17(c). As part of its prior productions to the Grand Jury Subpoenas, JPMC collected emails and

messages from nine key JPMC custodians closely involved in the Frank acquisition, and applied broad Frank-related search terms.[5]

JPMC then reviewed and produced responsive, non-privileged documents. Through this process, JPMC already has produced documents covering all of the subsections of this Request in at least ten productions made in response to the first Grand Jury Subpoena, which requested all records pertaining to the acquisition of Frank by JPMC.[6] For example, Request No. 2(b) seeks information concerning the use or potential use of Frank's data by JPMC, including in connection with potential lead generation. JPMC produced numerous documents covering lead generation.[7]

With respect to Request Nos. 2(c) and 2(d), JPMC has produced documents reflecting JPMC's efforts to vet the number of students using Frank's service and documents relating to JPMC's internal analysis of Frank's search engine optimization, website traffic, and site data.[8]

And for Request No. 2(e) seeking valuation information, such documents have already been produced in at least nine different JPMC productions.[9]

---

[5]    JPMC was unable to collect the data of three other JPMC custodians (█████████, █████████, and █████████████████ who were similarly involved in the Frank acquisition, but left JPMC prior to a litigation hold being instituted. To replicate the three custodians' data, JPMC's expanded the search universe *all custodial files collected to date*, and conducted a search within each email's address metadata (*i.e.,* the "to," "from," "cc," and "bcc" fields) for the three custodians' first and last names.

[6]    Responsive documents were produced in at least the following productions: DOJ_PROD001, DOJ_PROD011, DOJ_PROD012, DOJ_PROD013, DOJ_PROD014, DOJ_PROD016, DOJ_PROD017, DOJ_PROD018, DOJ_PROD019, and DOJ_PROD021.

[7]    USAO_Rel_001763136 (July 8, 2021 PowerPoint explaining that Frank will be helpful for "lead generation"); USAO_Rel_001729256 (a July 11, 2021 email chain involving █████████ and █████████ ██████████ stating that Frank's business case is the acquisition funnel and estimating that JPMC will get less than 130k incremental accounts); USAO_Rel_001729260 (July 13, 2021 email chain involving █████ ████ discussing JPMC assumptions to estimate potential user growth from acquiring Frank).

[8]    These documents were included in at least DOJ_PROD019 and DOJ_PROD021.

[9]    These documents include USAO_Rel_001811254 (July 2, 2021 email from █████████ to █████████ █████████ █████████ and █████████ USAO_Rel_001858798 (July 13, 2021 slide deck describing Frank as a potential acquisition, including "[s]tandalone valuation . . . is

Finally, Request Nos. 2(f) and 2(g) broadly seek documents "pertaining to" Defendant Javice and Defendant Amar. As Javice is well aware following the briefing on her Rule 16 motion, the SDNY requested, and JPMC produced, (a) all emails and documents sent to or received by Javice; (b) all emails and documents sent to or received by Amar; and (c) all Slack messages sent to or received by Javice or Amar. Moreover, to comply with the first Grand Jury Subpoena, JPMC has run broad Frank-related search terms across the email files of the nine custodians most intimately involved in the Merger, including Executive-1 and Executive-2, the two individuals who spearheaded the request for Frank's customer list as part of JPMC's due diligence process.

In addition to seeking documents JPMC already has produced, this Request fails to satisfy the specificity requirement. It does not seek specific documents on specific topics from specific custodians; it instead seeks **all** documents from **84** custodians over a **three-year period**.[10] This Request is the quintessential fishing expedition and should be quashed.

Further, this Request seeks irrelevant material, which a Rule 17(c) subpoena cannot seek under *Nixon*. Among other things, this Request seeks documents related to "Integration," which the Subpoenas define as "the process by which JPMC absorbed Frank, including any and all changes in Frank operations, personnel, organizational hierarchy, performance metrics (including the setting of the same), reporting, back-office support, engineering, marketing plans, data use or restrictions." Ex. B (Javice Subpoena) at 2. The only possible reason for this Request is that

---

$181mm"); USAO_Rel_001719737 (July 13, 2021 email from ████████ to ████████ and ████ ████ with subject "Finland – standalone valuation"); and USAO_Rel_001727016 (August 12, 2021 spreadsheet named "Project Finland DCF vSent").

[10]    One of the 84 custodians is a mailing list (corpdev_ma@jpmchase.com). In Request No. 30, Javice asks JPMC to identify the members of that mailing list. Javice can make no colorable argument that she is asking for specific, admissible documents when she seeks documents from a mailing list for which she does not know the members.

Javice hopes to find evidence she can use to suggest that JPMC botched the integration of Frank and now suffers buyer's remorse.[11]  How JPMC chose to run Frank following its acquisition of the company, however, cannot negate the fact that Defendants provided a fake customer list to JPMC so that JPMC would buy Frank for $175 million dollars.

Finally, Request No. 2, like Request No. 1, explicitly seeks inadmissible documents and communications protected by attorney-client and work product privilege in its request for documents related to the "Internal Investigation" that JPMC, through outside counsel, conducted into Defendants' fraud.

For these many reasons, Request No. 2 falls far short of the *Nixon* standard and should be quashed.

> ### Request No. 3: *For the period of June 26, 2021 through November 4, 2022, Communications and Documents pertaining to JPMC's use, definition, or interpretation of the term "user."*

Here again Javice seeks predominantly documents JPMC already has produced.  As noted above, JPMC has run broad Frank-related search terms across the email files of the key JPMC employees involved in the Merger.  JPMC also has produced the diligence material Frank provided to JPMC and JPMC's analysis of Frank as an acquisition target, including notes from diligence meetings and presentations on JPMC's investment thesis.  Finally, JPMC searched

---

[11]    In her answer and counterclaims in the Civil Action, Javice made numerous allegations to this effect.  *See, e.g.*, Def./Countercl.-Pl. Charlie Javice's Answer, Defenses, Countercl. to Pl./ Countercl.-Def. JPMorgan Chase Bank, N.A.'s Compl., *JPMorgan Chase Bank, N.A., v. Charlie Javice et al.*, No. 1:22-cv-01621 (D. Del. Feb. 27, 2023), ECF No. 10 ("Javice Answer and Counterclaim") at ¶ 1 (asserting that JPMC's lawsuit was "the culmination of a massive 'CYA' effort by those responsible inside JPMC to shift the blame for a filed and now-regretted acquisition"); ¶ 7 (alleging JPMC's "woeful mismanagement of the Frank integration process"); ¶¶ 13, 15, 86, 104 (referring to JPMC's internal investigations of Javice's misconduct as "pretextual").

fourteen custodians involved in due diligence using broad search terms, including the term "user," and produced numerous documents as a result.[12]

Furthermore, this Request lacks specificity because it requests Communications and Documents pertaining to "JPMC's use, definition, or interpretation of the term 'user,'" without specifying any JPMC business segment.  Defendants provide no reasons for how documents across JPMC's numerous lines of business may be relevant to the allegations in the Complaint.

In addition, even assuming that the Request pertains solely to JPMC's definition of "user" with respect to Frank, the allegations in the Complaint do not turn on "JPMC's use, definition, or interpretation of the term 'user'" was.  It was **Frank**, through **Javice**, that provided (1) statistics in due diligence on the number of users who had either started or completed a FAFSA form, and (2) a list of information in response to JPMC's request for detailed information on Frank's customers.  In both instances, Javice represented that Frank had 4.25 million customers that not only provided Frank with much of the key information JPMC sought in diligence, but also at least **started** a FAFSA.  These representations were false, as Frank had less than 300,000 users at the time.  Compl., ¶¶ 19-26.  Documents and communications regarding JPMC's views on the term "user" are therefore irrelevant.

Because Request No. 3 calls for information that has already been produced and that is otherwise irrelevant, and the request is not specific, it should be quashed.

> **_Request No. 4_**_: For the period of June 26, 2021 through September 14, 2021, internal email, Text Messages, WhatsApp messages, or other messaging or_

---

[12]    *See, e.g.*, USAO_Rel_002170461 (due diligence material describing users as a person who provided "first name, last name, email, phone number"); USAO_Rel_000566248 (January 27, 2022 email chain between Defendant Javice and the JPMC marketing team discussing user information).

***chat-based communications among JPMC personnel pertaining to Data held or potentially held by Frank.***

Request No. 4 again seeks information JPMC produced to the SDNY in response to the Grand Jury Subpoenas.  Here, Request No. 4 seeks email and other types of messages "exchanged among JPMC personnel pertaining to Data held or potentially held by Frank." Setting aside that Request No. 4's reference to "Data held or potentially held by Frank" is vague (as discussed below), to the extent that Request No. 4 calls for JPMC email and messages concerning the fake and inaccurate data Defendants provided to JPMC, JPMC already has produced such documents resulting from its application of broad Frank-related search terms JPMC ran over the files of the JPMC personnel most involved in the Merger.  Thus any documents discussing "Data held . . . by Frank" would have been identified along with __any other document discussing Frank__.  As part of this search, JPMC searched JPMC personnel's instant messages on authorized JPMC channels.[13]

Additionally, JPMC reviewed text messages belonging to ███████ Executive-1, █████████ and Engineer-1.  Responsive items were produced.[14] [15]

This Court should not require any further response to Request No. 4 because it does not meet the *Nixon* standard.  First, this Request fails to satisfy the specificity requirement because it does not even set forth what types of evidence sought (such as emails or memoranda), but instead demands that JPMC search __all available data sources__, specifically "email, Text

---

[13]    *See, e.g.*, USAO_Rel_001719438 (July 13, 2021 chat between █████ and █████████ regarding Frank's data).

[14]    USAO_Rel_000606915  –  USAO_Rel_000606919  (█████████  text  messages); USAO_Rel_000606920- USAO_Rel_000606945 (Executive-1 text messages); USAO_Rel_000725540 – USAO_Rel_000725542 (████████ text messages); USAO_Rel_000749102 – USAO_Rel_000749104 (Engineer-1 text messages).

[15]    145 other JPMC personnel certified that they did not use text messaging or other texting applications, such as WhatsApp, Slack, and iMessage, for business purposes, and therefore had not conducted Frank-related business through text messages or texting applications.

Messages, WhatsApp messages, or other messaging or chat-based communications."
Highlighting this lack of specificity is the inclusion of the term "other messaging or chat-based
communications," which reveals that Javice cannot identify in what format the purported
information exists, making it impossible for her to assert that Javice is aware of specific evidence
contained in those unknown formats.  Similarly, the plain language of Javice's request for "Data
. . . potentially held by Frank" demonstrates that she is asking for information that hypothetically
might exist about something that hypothetically might have happened.  Further, the term "Data"
is non-specific as Javice defines it as "any statistics, analytics, or facts that Frank, JPMC, or any
Third Party collected and maintained for purposes of analysis, measurement, or growth of any
aspect of the Frank business, including, but not limited to, any marketing lists, contact lists,
demographic statistics of Frank users, or measurements of website activity."  This lack of
specificity is fatal under *Nixon*.



**_Request No. 5_**: *Documents and Communications pertaining to or reflected in the allegations in the Complaint sent, received, drafted, or revised by individuals referenced in the Complaint, including* ███████ ███████ ███████ *JPMC marketing executive,* ███████ *Engineer-2,* ███████ *Executive-2,* ███████ *Engineer-1, Executive-1, or* ███████

Request No. 5 has already been addressed by the Court.  This Request is duplicative of
the requests that Defendants made of the SDNY and this Court at the November 2 Status
Conference.  As the Court's questioning during that hearing revealed, there is a difference
between "Documents and Communications **pertaining to** . . . the allegations in the Complaint . .
." and "Documents and Communications **reflected in** the allegations in the Complaint . . . ."
This Court already has found a broad request for all documents from individuals mentioned in
the complaint to be civil-style discovery to which Javice is not entitled.  When Defendants

requested that the SDNY demand that JPMC run search terms over certain alleged "missing" custodians, the Court denied that request. *See* Ex. A (Nov. 2 Tr.) at 16:18-17:6, 30:20-24.

The Court also ruled on Javice's request for the actual documents referenced in the Complaint. The Court ordered the SDNY to request that JPMC produce the complete email chains cited in paragraphs 19(e) and 32 of the March 31, 2023 Criminal Complaint. On November 16, 2023, JPMC produced certain additional versions of the email chain cited in paragraph 32 that had not been previously produced, which added little, if any, substance to the previously produced versions. On that same day, JPMC confirmed that the complete email chain cited in paragraph 19(e) had been produced as USAO_Rel_000022234 - USAO_Rel_000022235.[16] Thus, this Court already has determined the extent to which this Request is appropriate, JPMC has complied with the Court's attendant order, and the remainder of this Request should be quashed.

This Request also should be quashed because it fails to meet the requirement that the evidence sought could not have been otherwise obtained through Javice's due diligence. Defendants previously had an opportunity to raise issues concerning their receipt of materials referenced in the Complaint, but failed to do so. *See* ECF No. 69 (Nov. 17, 2023 Letter) at 6 ("[T]he actual communications discussed in the Complaint—*i.e.*, the evidence upon which U.S. Magistrate Judge Lehrburger's probable cause finding was based—have been produced to the defendants and they do not argue to the contrary."). If Defendants believed there to be a deficiency, they should have procured additional documents from the SDNY through the Rule 16

---

[16]    Pursuant to the Court's November 7, 2023 Order Regulating Proceedings, SDNY requested that JPMC "search for, and produce, under the existing subpoenas, responsive documents in the files and emails" of JPMC marketing executive, ████████ and other JPMC officers and employees referenced in the Complaint. JPMC is currently undertaking a search and review of these individuals' custodial files, to the extent that they remain in JPMC's possession.

process. Their failure to exercise that due diligence renders this Request inappropriate for a Rule 17(c) subpoena under *Nixon*.

Finally, this Request should also be quashed insofar as it seeks internal JPMC materials concerning the allegations in the Criminal Complaint protected by attorney-client or work product privilege. Such material is inadmissible.

> **_Request No. 6_: _For the period of July 10, 2022 through the present, Communications and Documents exchanged between JPMC and the Government in connection with this matter, including with respect to compliance with the Government Subpoenas, witness interviews, meetings, conferrals, and presentations, excluding any Documents produced by JPMC as part of its bates-numbered, formal responses to the Government Subpoenas._**

This unorthodox Request is nothing more than Javice's continued efforts to find evidence to support her baseless theory that JPMC has taken a role in the SDNY's investigation other than "victim of fraud" and "recipient of grand jury subpoena." Nothing suggests this is the case, nor has Javice offered any specific details to prove the impropriety she believes exists. The Court has made clear that it is not interested in ""making any rulings that anybody is an arm of anybody else." Ex. A (Nov. 2 Tr.). at 15:10-14. The documents sought by this Request are irrelevant to the charges against Javice and have no bearing on her fraud, and thus this Request fails to meet the relevance factor of the *Nixon* test.

This Request also fails the admissibility prong of the *Nixon* test. Exchanges between the SDNY and JPMC would be, at best, hearsay materials that are inadmissible. To the extent any responsive material is not inadmissible hearsay and Javice can identify such material with specificity, such materials should be sought from the SDNY, not from a victim.

**<u>Request No. 7</u>**: *Text Messages by and among JPMC personnel involved in the Acquisition, Merger, Integration, or Internal Investigation pertaining to the Acquisition, Merger, Integration, or Internal Investigation.*

Like Request No. 4, this Request calls for information that already has been produced, lacks the requisite specificity, and is irrelevant.  This Request also calls for privileged material that is inadmissible.

To respond to the first Grand Jury subpoena, which requested records relating to the acquisition of Frank, JPMC collected and reviewed text messages from ███████████ Executive-1, ██████████ and Engineer-1.  Responsive text messages were then produced to the SDNY.  *See supra* at 21.

Request No. 7 should be quashed because it contains no specificity, instead offering a broad set of topics to be searched for in the text messages of an unspecified set of "JPMC personnel."  Javice could have been more specific: from the hundreds of thousands of documents JPMC has produced to date, Javice could easily ascertain and specify the particular "JPMC personnel," but she has not done so.  She had not done so either because she has not reviewed the JPMC documents produced by the SDNY, making her Rule 17(c) subpoena inappropriate and premature, or because she does not want to limit the potential universe of documents responsive to this request – in clear violation of the purpose of Rule 17(c) and its mandate for specificity. Either way, this Request should be quashed.

Next, this Request seeks irrelevant material because it seeks documents related to "Integration."  As noted previously, JPMC's decisions regarding how to operate Frank post-Merger does not shed light on – and certainly does not provide Javice with a defense to – the fake customer list Defendants provided to JPMC so that JPMC would buy Frank.

Finally, this Request fails to meet the admissibility prong of *Nixon* because it seeks documents related to the "Internal Investigation," which JPMC, through outside counsel,

conducted into Defendants' fraud.  Such documents and communications protected by attorney-client and work product privilege, and inadmissible for that reason.



***Request No. 8***: ***Text Messages, WhatsApp messages, instant messenger communications, or chats, pertaining to or referencing Frank or Ms. Javice sent or received by*** ███████ ███ ***JPMC marketing executive,*** ████ ███ ██ ████ ██ ***Executive-1,*** ████████ *or* ████ ***Executive-2,***

This Request suffers from the same issues as Request Nos. 4 and 7.  Request No. 8 again seeks already produced information, which was captured by JPMC's search of instant messages belonging JPMC personnel involved in the Merger and post-Merger Frank for broad Frank-related search terms.  Furthermore, JPMC collected and reviewed text messages belonging to ████████████ Executive-1, and █████████ among others.  JPMC also confirmed that others, including ████████ █████████ ████████████ █████████ ██████████ █████████ █████████████ █████████ ███████████ █████████ ██████████ █████████████ Executive-2, █████████ and ████████████ did not have relevant text messages or other messages because they certified that they did not use text messaging or other messaging applications for business purposes.

Request No. 8 also fails to meet the *Nixon* factors.  This Request lacks specificity because it demands that JPMC search **all available data sources**, specifically "email, Text Messages, WhatsApp messages, or other messaging or chat-based communications" with no indication what types of specific evidence exists.  As with Request No. 4, Request No. 8 uses the term "other messaging or chat-based communications," which undermines any argument that Javice has specific evidence in mind.

Like Request No. 7, this Request also seeks irrelevant material because it seeks material "pertaining to or referencing Frank" without limitation.  Any number of issues related to the Frank business – such as JPMC's integration of Frank, personnel decisions unrelated to Defendants, or the maintenance of Frank's books and records – do not relate to the charges against Javice.

Finally, this Request fails to meet the admissibility prong of *Nixon* because it seeks anything related to Frank, without carving out topics relating to legal analysis and advice that are subject to the attorney-client and work product privileges.  Such documents and communications protected by attorney-client and work product privilege are inadmissible.

**Request No. 9**: *Internal drafts of diligence trackers pertaining to the Acquisition or Merger.*

This Request fails to meet the due diligence requirement of *Nixon* because JPMC already produced the relevant draft diligences trackers in at least three productions: DOJ_PROD016, DOJ_PROD019 and DOJ_PROD021.[17]  As JPMC already has produced responsive documents that Javice can locate with reasonable due diligence, this Request should be quashed.

**Request No. 10**: *Documents sufficient to show the date and scope of any hold notices issued by JPMC in connection with the Action, Civil Action, Acquisition, or Internal Investigation.*

The sole purpose of this Request is to obtain JPMC's hold notices, which courts have found to be protected attorney work product.  *See United States v. Coburn*, No. 19-cr-00120 (KM), 2022 WL 357217, at *6 (D.N.J. Feb. 1, 2022) (quashing Rule 17(c) request for related hold notices because "[s]uch records clearly pertain to litigation strategy and the provision of legal advice in advance of litigation, and were created at a time when litigation was reasonably anticipated") .  This Request therefore fails to meet the admissibility prong of *Nixon*.  In

---

[17]    Examples include USAO_Rel_001761336, USAO_Rel_001825290, and USAO_Rel_002163943.

addition, this Request seeks irrelevant information in requesting any hold notice issued in

connection with the Civil Action, and this Request should be quashed for that additional reason.

However, given the limited nature of this Request, JPMC would agree to conduct a

search and produce, if they exist, documents sufficient to show the date, list of recipients, and

scope of documents subject to preservation for any legal hold issued in connection with Action,

Acquisition and Internal Investigation.

> ***Request No. 11:*** *Documents sufficient to show all policies pertaining to the use of personal devices and/or messaging applications in connection with business activities in effect from July 1, 2021 to October 13, 2022 applicable to any individual involved in the Acquisition, Merger, or Integration.*

> ***Request No. 12:*** *Documents and Communications sufficient to show JPMC's document retention policies since January 1, 2021 to the extent such policies were applicable to any individual listed on Exhibits 1 and 2 who departed from JPMC's employ since January 1, 2021, including but not limited to,*



> *JPMC marketing executive, and*

> ***Request No. 13:*** *Documents sufficient to show the date on which JPMC deleted or otherwise ceased to have access to data for the following individuals:*



> *JPMC marketing executive, and*

These Requests seek irrelevant information as JPMC's document retention policies do

not relate to Javice's defense to the wire, bank, and securities fraud charges against her, and fail

the *Nixon* test for that reason. Request No. 12 further seeks irrelevant information because many

of the individuals listed on Exhibits 1 and 2 do not have any relevance to the charges pending

against her.[18]

---

[18]    For example, Defendants have not indicated how ███████, █████████████, ████████, ████████████, and ████████, among other individuals, are relevant to the charges pending against Defendant Javice.

However, JPMC already is compiling related information in response to this Court's specific order to SDNY "to request from JPMC . . . (i) the dates of departures for the individuals referenced in paragraph 19(e) and 19(g) of the Complaint; (ii) the dates on which those individuals' documents were deleted; and (iii) the governing document destruction and/or retention policy mandating that such files be deleted."  ECF No. 70 at 1.  Beyond the Court's order, JPMC is willing to produce document retention policies in force between January 1, 2021 and October 13, 2022, that were applicable to individuals referenced in the Complaint and whose files were reviewed by JPMC.

> ### *Request No. 14: Documents and Communications pertaining to Integration, sent, received, drafted, or revised by* ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮ *or* ▮▮▮▮▮▮



This Request seeks information relating to the post-Merger time period when Frank operated as a business unit of JPMC.  Like countless other requests, this Request seeks information JPMC already has produced in response to the Grand Jury Subpoenas.  In response to the Grand Jury Subpoenas, JPMC, among other efforts, collected emails and instant messages from nine JPMC custodians involved in the Merger.  JPMC then ran broad search terms over their files (as mentioned above in response to Request Nos. 2 and 3).  In addition, JPMC has produced all emails sent or received by Defendants, including emails with ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ and ▮▮▮▮▮  In fact, JPMC's productions in response to the Grand Jury Subpoenas include: 2,313 documents with ▮▮ ▮▮ listed as a custodian; and 11,347 with ▮▮▮▮ listed as a custodian.  JPMC has also produced 6,658 emails where ▮▮ ▮▮▮▮ is the sender or recipient, and with 316 emails where ▮▮ ▮▮ is the sender or recipient.  Responsive documents were produced in at least the following productions:

DOJ_PROD001, DOJ_PROD011, DOJ_PROD012, DOJ_PROD016, DOJ_PROD017, and DOJ_PROD021.[19]

To the extent Request No. 14 seeks information beyond what JPMC already has produced in response to the Grand Jury Subpoenas, it should be quashed. This Request is indistinguishable from a request one would find in civil discovery: it provides no specificity, just a request for all "Documents and Communications" pertaining to "Integration," a topic broadly and amorphously defined as "the process by which JPMC absorbed Frank, including any and all changes in Frank operations, personnel, organizational hierarchy, performance metrics (including the setting of the same), reporting, back-office support, engineering, marketing plans, data use or restrictions." Ex. B (Javice Subpoena) at 2.

This Request also seeks irrelevant material insofar as it seeks documents related to "Integration." This Request, along with other Requests and separate statements Javice has made,[20] indicates that some or all of Javice's defense to the wire, bank, and securities fraud charges against her will be that JPMC orchestrated fraud charges against Javice due to buyer's remorse following Frank's post-Merger failure. The question of whether JPMC effectively integrated Frank is independent of the question of whether Defendants provided a fake customer list to JPMC so that JPMC would buy Frank for $175 million dollars. This Request is a true fishing expedition, with Defendants hoping they might find some document they can twist into support for their narrative. That is not what Rule 17(c) is for and this Request should be quashed for this reason.

> ### Request No. 15: Documents and Communications pertaining to the Frank business unit reviews ("BURs"), quarterly business reviews ("QBRs"), monthly

---

[19]    *See, e.g.,* USAO_Rel_001881631 (October 6, 2022 email from ███████████ USAO_Rel_000225589 (January 5, 2022 email from █████████

[20]    *Supra* at n. 10.

***business reviews ("MBRs"), or the Frank "business case," sent, received, drafted, or revised by***



***or***

Request No. 15 again calls for documents JPMC produced in response to the Grand Jury Subpoenas.  By virtue of both the Frank-specific search terms that JPMC ran across nine custodians and the production of all documents sent to or received by Javice and Amar, JPMC produced hundreds of documents related to the business unit reviews ("BURs").  In at least four of its productions,[21] JPMC has produced each BUR presentation prepared by the Frank team, drafts of those BUR presentations,[22] and related correspondence.[23]

Beyond the six BUR presentations (which, again, JPMC has produced), this Request fails to satisfy the specificity requirement of *Nixon* because it requests all "Documents and Communications" regarding the BURs as well as "quarterly business reviews ('QBRs')" and "monthly business reviews ('MBRs')."  JPMC also produced documents related to QBRs and MBRs, which could be easily gleaned from the hundreds of thousands of documents JPMC already produced in response to the Grand Jury Subpoenas.[24]  Accordingly, this Requests fails to specify the actual evidence sought.  On that basis, the Request should be quashed in its entirety.

In addition, this Request fails to meet the admissibility prong of *Nixon* because it seeks documents from ████████████ a JPMC attorney who acted as an attorney for Frank while it

---

[21]    The productions containing these documents are at least the following:  DOJ_PROD012, DOJ_PROD014, DOJ_PROD017, and DOJ_PROD019.

[22]    *See e.g.*, USAO_Rel_000529148 (draft February 2022 BUR) and USAO_Rel_000533708 (draft April 2022 BUR).

[23]    *See e.g.*, USAO_Rel_000408154 (November 1, 2021 email to ████████ from Javice regarding the Frank business case).

[24]    Examples of QBR and MBR-related documents include USAO_Rel_001769751 and USAO_Rel_001772070.

was a business unit of JPMC.  As a result, the majority of ▮▮ ▮▮ emails will be protected

by the attorney-client and work product privileges, and inadmissible for that reason.



***Request No. 16****: Documents and Communications pertaining to the Internal Investigation sent, received, drafted, or revised by* ▮▮▮▮▮▮▮▮▮ *or* ▮▮▮▮▮▮▮▮▮

After discovering several violations of JPMC policies by Javice in connection with her

expenses and reimbursements, JPMC initiated an investigation into Javice's conduct through its

Global Security team.  Separately, issues related to Frank began to draw greater scrutiny to the

Merger, which led to a separate investigation conducted by JPMC's outside counsel.  JPMC has

produced the non-privileged investigation file for the Global Security investigation.[25]

Request No. 16, however, seeks far more and, in doing so, fails to meet the specificity,

relevance, and admissibility prongs of *Nixon*.  While using a defined term gives "Internal

Investigation" the suggestion of specificity, the definition proves the opposite: Javice defines

"Internal Investigation" to mean "any investigation, inquiry, or other internal action taken by

JPMC in connection with Frank or the Defendants."  Based on that definition, Javice is not

requesting specific documents, or even documents specific to a particular investigation.  Rather,

Javice is also seeking information specific to any "inquiry" or "other internal action."  This

Request should be quashed for failing to specify the evidence Javice seeks rather than merely

hoping for a peek into JPMC's internal – and privileged – assessment of her fraud.

In addition, the overbroad definition of "Internal Investigation" also renders this Request

inappropriate because it seeks irrelevant material.  Not every shred of paper related to Frank is

relevant to the charges against Javice or even Javice's questionable defenses.  By defining

"Internal Investigation" to include "**any** investigation inquiry or other internal action" that was

---

[25]      USAO_Rel_000107867 – USAO_Rel_000110159.

"in connection with Frank," this Request seeks irrelevant material.  In fact, the vague and overbroad phrase "other internal action" coupled with "in connection with Frank" means that Javice is seeking **every document** having anything to do with **any decision** JPMC made with regard to Frank.  The list of irrelevant items this would sweep up – Frank's decision to hire personnel unrelated to Javice, Frank's decision to permit an employee to work remotely, and Frank's decision to change the font of the logo – is nearly limitless.

Finally, this Request also fails *Nixon*'s admissibility prong because it seeks documents and communications protected by attorney-client and/or work product privilege.  As noted above, while the Global Security team's investigation is conducted by non-lawyers and therefore predominantly not privileged, the Global Security team does, at times, seek legal advice from JPMC in-house counsel.  ████████████ is an in-house attorney at JPMC, and Javice's request for her documents directly seeks to invade the attorney-client privilege.  In addition, JPMC's additional investigation into Javice's fraud was conducted by in-house and outside counsel for JPMC.  Such documents are privileged and inadmissible.

> **Request No. 17**: *For the period of August 8, 2021 through January 31, 2023, Documents and Communications pertaining to any actual or potential key performance indicators ("KPIs"), "objectives and key results" ("OKRs"), revenue targets, or "student solutions" for Frank or Ms. Javice.*

In producing all emails sent or received by Javice, JPMC already has produced information related to Frank's performance metrics in response to the Grand Jury Subpoenas, including Grand Jury Subpoena 1, which sought documents from July 1, 2021 to October 13, 2022, and Grand Jury Subpoena 4, which sought documents from January 1, 2021 to January 9, 2023.  To respond to these Grand Jury Subpoenas, JPMC ran broad Frank-related terms across the files of nine custodians involved in the Merger, which would have captured discussion among JPMC employees concerning Frank-related KPIs and OKRs.  In addition, JPMC

produced all of Defendants' emails, which would have included KPI- and OKR-related

discussion in which they were involved. Among other documents, JPMC produced documents

containing performance metrics specific to Javice,[26] as well as performance metrics for Frank

generally.[27]

     Like Javice's request for material related to "Integration," this Request seeks non-

specific, irrelevant information about Frank's performance after Defendants defrauded JPMC

into purchasing Frank. Like the other Requests, this request seeks all Documents and

Communications for a two-and-a-half-year period, including four months when Javice no longer

worked for JPMC. But this request does not indicate any particular evidence – such as a

presentation, yearly strategic plan, or personal improvement plan – that Javice believes will be

relevant to her defense.

     Moreover, information concerning Frank's performance metrics has no bearing on

whether Javice defrauded JPMC in August 2021 when she provided a list of fake customers to

JPMC during the due diligence process. Because the requested information is not relevant to this

case, the only true purpose of this Request is for Javice to gain information relevant to her

employment counterclaims she has asserted against JPMC. Javice's offer letter to join JPMC in

connection with the Merger provided that she met certain requirements, including, but not

limited to, particular key performance indicators. *See* Ex. D (Javice RFPs) at 19-20; Javice

Answer and Counterclaim ¶ 64. Whether those key performance indicators were met (and they

were not) is not relevant to her fraud. A subpoena under Rule 17(c) is not an opportunity to

---

[26]     USAO_Rel_001731659 (January 14, 2022 email chain with the subject line: "Finland / CJ's KPI's).
[27]     USAO_Rel_001819680 (January 2022 slide deck stating that Chase plans to drive 193,000 college checking account openings through Frank).

conduct discovery related to civil claims, especially in a case in which discovery is stayed by Court order, despite Javice's objections.  This Request should be quashed.

> **_Request No. 18_**: **_Documents and Communications pertaining to any "marketing assumptions" for Frank by JPMC, including Documents and Communications pertaining to the "max addressable market" for Frank or JPMC, sent, received, drafted, or revised by_**



**_JPMC marketing executive,_** **_or_**

Request No. 18, like Request No. 17, seeks non-specific, irrelevant material related to JPMC operation of Frank post-Merger.  As a preliminary matter, JPMC produced marketing-related documents in response to the Grand Jury Subpoenas.  These documents include documents involving Defendants, such as Javice's email dated January 18, 2022 in which she whittles down the purported 4.25 million customers of Frank to under 1 million purported Frank customers, which she terms the "net marketable users."[28]  JPMC's productions also include documents related to the valuation of Frank, which was based in significant part on the number of customers Frank had and was expected to gain over the following years.[29]

To the extent Request No. 18 seeks more, it should be quashed because it fails to satisfy the specificity and relevance prongs of *Nixon*.  This Request seeks documents from a three-year time period from 15 custodians about anything related to the vague category of "marketing assumptions."  Javice does not specify particular conversations that she knows occurred or issues she believed arose with respect to marketing that would lend the specificity necessary under *Nixon*.  Indeed, although the Request quoted language that presumably appears in existing documents, Javice does not provide any information about those documents at all.  Moreover,

---

[28]     USAO_Rel_000020786.
[29]     *See, e.g.*, USAO_Rel_002165676 (December 11, 2021 PowerPoint Presentation sent to ▮▮▮ among others, discussing Chase student strategy related to Frank).

Request No. 18 requests documents and communications related to "**<u>any</u>** marketing assumptions" – Javice has failed to even specific the particular assumptions about which she seeks information.  This lack of specificity warrants quashing of this Request.

In addition, like the information concerning Frank's performance requested by Request No. 17, information concerning "any marketing assumptions" is irrelevant to whether Javice committed bank, wire, and securities fraud because JPMC's views on marketing does not excuse Javice's lies about Frank's customer base in order to effectuate the Merger.  In other words, no "marketing assumption" would change the fact that the "customers" on the list provided to JPM were not real people (nor did their information correspond to real people).  This Request is yet another fishing expedition into JPMC's operation of Frank post-Merger and should be quashed.

> ***<u>Request No. 19</u>: Documents and Communications pertaining to a) the Acquisition and Frank, or b) Ms. Javice, sent, received, drafted, or revised by*** ███████████ ████████████████ ***or*** ████████████, ***including talking points, press strategy, communications strategy, and press releases.***

This Request, buried in the middle of the Javice Subpoena's 34 total Requests, is incredibly broad (despite Javice's effort to make it look like a narrow request limited to three custodians).  In particular, this Request calls for all "Documents and Communications" about Frank sent or received by ████████████  ████ ' ███ was Ms. Javice's supervisor and oversaw Frank post-Merger.  Asking for all of her Frank-related emails lacks any ounce of specificity. Asking for all documents concerning Javice is equally non-specific.  JPMC already has produced all emails sent or received by Javice.  This Request seeks more, asking for documents that mention Javice, but do not include Javice as a recipient on the email.  But Javice has not offered any detail in the Request to indicate the specific evidence she seeks to obtain, such as dates on when pertinent emails were sent or particular topics that ███ ███ and others may have discussed.  This is impermissible under Rule 17(c).

Request No. 19 also neglects to provide any specificity regarding the particular "talking points, press strategy, communications strategy and press releases" sought.  Through the barest of due diligence, Javice could have specified particular public statements regarding Frank in Request No. 19 and requested documents related to those specific statements.  She did not, presumably because that might limit the scope of the Request.  But that is exactly the problem:  Javice wants all documents and all communications, without limitation, which is inappropriate on a Rule 17(c) subpoena.

This Request also seeks irrelevant information.  Request No. 19 seeks documents from both before and after the Merger.  What JPMC said publicly, or strategized to say publicly, about the Merger or Javice prior to its discovery of Javice's fraud is not material to Javice's defense of her fraud.  And what JPMC said publicly, or strategized to say publicly, about the Merger or Javice after its discovery of Javice's fraud does not change Javice's fraudulent actions.  In particular, the strategy behind what JPMC has chosen to say or not about the litigation with Javice is irrelevant to the underlying facts and charges.

> **<u>Request No. 20</u>: Documents and Communications pertaining to Frank and the United States Department of Education sent, received, drafted, or revised by ███████ or ████████.**

This Request is yet another one drawn directly from Javice's civil discovery, in which she requested:  "All Documents and Communications concerning Your interactions with the Department of Education in relation to Frank, financial aid, FAFSA, or the Higher Education Act . . . ."  Ex. D (Javice RFPs).  Request No. 20 lacks the specificity that *Nixon* demands, by requesting all "Documents and Communications" and failing to indicate the types of evidence Javice believes to exist, the particular subject matter of that evidence, or even the approximate time the conversations occurred, as Request No. 20 seeks documents from a three-year period.  If

there are specific conversations about or with the Department of Education Javice believes will be material to her defense, Javice should request that document and communication specifically.

This Request also seeks irrelevant material. Discussions between Frank or JPMC and the Department of Education will not reveal any insight into whether the customers on the list Javice provided to JPMC in August 2021 were fake. The Department of Education had no role in the Merger and, based on representations made by Javice and Frank to JPMC, prior issues with the Department of Education had been resolved by the time of the Merger. This entire Request should be quashed for failing to seek relevant information.

Finally, this Request fails to meet the admissibility prong of *Nixon*. ████████████ is a JPMC attorney who acted as an attorney for Frank while it was a business unit of JPMC. The majority of ████████ emails will be protected by the attorney-client and work product privileges, and inadmissible for that reason.

### Request No. 21: Documents and Communications pertaining to the Acquisition and related to diligence, sent, received, drafted, or revised by



*or*

JPMC's productions to the SDNY in response to the Grand Jury Subpoenas are replete with diligence-related material, in particular because the Grand Jury Subpoenas specifically requested "[a]ny records provided by Frank to JPMC prior to and during the acquisition concerning their financial condition such as profit and loss statements, audit reports, and other book keeping and financial records" and "[a]ny records obtained by JPMC during their diligence of Frank prior to the merger." As detailed previously, in addition to the production of discrete items such as the full data room Frank provided in diligence, JPMC collected emails and

37

messages from nine JPMC employees with key roles in the Merger.[30]  Broad Frank-related

search terms were applied to the collected documents, and JPMC produced all responsive, non-

privileged documents.[31]

      Given the volume of documents JPMC already has produced related to diligence, Request

No. 21 is inappropriate.  Even under the much broader and permissive rules of civil discovery,

courts find it appropriate to limit the number of custodians a party much search, especially where

custodians are likely to be duplicative of one another.  Here, Javice is seeking more of the same

by propounding a non-specific Request for all documents from these additional custodians.

JPMC's productions already contain the following volumes of documents with ██████ and

Neunder as custodians:

| | | |
|---|---|---|
| ████ | | 263 |
| ████ | | 11,347 |

      JPMC's production contain the following volume of emails of which ██████

Bergman, ██████ and ██████ are senders or recipients:

| | | |
|---|---|---|
| ████ | | 6,658 |
| ████ | | 6,336 |
| ████ | | 671 |
| ████ | | 100 |

---

[30]    The custodians listed in Request No. 21 were not custodians for the purposes of these particular searches. Messrs. ████ and ████ and ██████ were not key players in the Merger process.  With respect to Messrs. ████ ██████ and ██████ each departed prior to the litigation hold implemented in this matter and, pursuant to JPMC's ordinary course document retention policies, their documents were not retained.  For ██████ although he was not a custodian, the term "██ w/3 ██████ was run across all the address metadata of all custodial files, and then any hits were subject to the same broad search terms as the other nine custodians.

[31]    Such documents include USAO_Rel_001890826 - USAO_Rel_001891946 (the entire contents of the data room), USAO_Rel_001743369 (July 10, 2021 email from ██████ with Frank diligence agenda), USAO_Rel_001740467 (August 2, 2021 email from Executive-1 to ██████ regarding Frank diligence requirements), and USAO_Rel_001834679 (August 20, 2021 email from ██████ about the transition from diligence to integration).

Requiring additional collection, review, and production in response to this non-specific

Request is inappropriate under Rule 17(c).

This Request also seeks material that will not satisfy the admissibility requirement

because it explicitly seeks documents and communications protected by attorney-client and/or

work product privilege.  Request No. 21 makes no effort to carve out the production of

documents reflecting advice of counsel pertaining to the acquisition and, coupled with Request

No. 1, affirmatively calls for privileged material.  Such material is inadmissible and Request No.

21 should be quashed for failing to meet the admissibility prong of *Nixon*.

> ***Request No. 22**: For the period of July 1, 2021 through the present, Documents and Communications pertaining to the marketing budget for Frank post-Merger, sent, received, drafted, or revised by*  ***or***

Request No. 22 calls for documents already produced, is duplicative of other Requests,

and fails to satisfy *Nixon*.  Through its targeted searches to satisfy specific requests in the Grand

Jury Subpoenas,[32] its search of nine Merger-related custodians using broad Frank-related search

terms, and its production of all documents sent or received by Defendants, JPMC already has

produced many documents regarding Frank's post-Merger marketing budget.  For example,

JPMC has previously produced documents that provide the marketing budget for Frank.[33]

---

[32]     In connection with Grand Jury Subpoena 1, SDNY provided certain specific topics for which it requested JPMC produce documents, such as JPMC's interactions with the Department of Education and internal JPMC discussion of Frank's valuation.  To locate documents responsive to these specific topics, JPMC identified fourteen individuals, in addition to the nine custodians previously searched with broad Frank-related terms, and applied those same broad search terms along with additional terms designed to capture document responsive to the specific topics SDNY identified.

[33]     *See, e.g.*, USAO_Rel_000506531 (email chain between ▮▮▮▮▮ Charlie Javice discussing the marketing budget); USAO_Rel_000536828 (email from ▮▮▮▮▮ to Charlie Javice attaching the "Frank Business Case – Paid Search 2022"); USAO_Rel_000595751 (meeting invitation to discuss Frank budget).

This Request is also inappropriate because it is duplicative of other Requests.  It is unsurprisingly that, given the broad definitions, instructions, and scope of the Requests themselves, that the Javice Subpoena includes Requests that call for the same documents.  This overlap is evidence that nearly all of the Requests in the Javice Subpoena lack specificity – if the Requests contained the requisite specificity, there would be no need for two or more Requests seeking the same documents.

This Request also fails the specificity prong of *Nixon* because it seeks documents from a two-and-a-half year time period from six custodians.  Request No. 22 also goes beyond a request for the marketing budgets themselves to seek all "Documents and Communications pertaining to" those budgets.  Javice does not specify particular conversations that she knows occurred or issues she believed arose with respect to the marketing budget that would lend the specificity necessary under *Nixon*.  If there are particular conversations with particular individuals or particular budgets from particular time periods, Javice should make that specific request.

In addition, like the information concerning Frank's performance and "marketing assumptions" requested by Request Nos. 17 and 18, information concerning Frank's marketing budget is irrelevant to whether Javice committed bank, wire, and securities fraud in August 2021.  JPMC's views on an appropriate marketing budget for Frank – whether high or low, whether consistent with Javice views or not – does erase Javice's lies about Frank's customer base.  This Request is again seeking carte blanche to obtain any information Javice would like to see about JPMC's operation of Frank post-Merger, not relevant, specific, admissible evidence relevant to her defense.

**_Request No. 23_**_: Documents and Communications sufficient to show JPMC's internal approval process for the Acquisition._

This Request has been more than satisfied by JPMC's productions in response to the Grand Jury Subpoenas.  JPMC's search of Merger-related custodians for key words like "Frank" and "Finland" yielded documents sufficient to show JPMC's internal approval process for the Merger.[34]  Because JPMC's prior productions satisfy this Request, it fails to meet the "due diligence" prong of _Nixon_ and should be quashed for that reason.

**_Request No. 24_**_: Documents and Communications sufficient to show any Third-Party approval process for the Merger or Acquisition, including any governmental or regulatory approval._

Material responsive to this request would have been captured by the broad Frank-related search terms that JPMC ran against the files of nine JPMC employees involved in the Merger.  JPMC has not located any documents reflecting any regulatory approvals received.  Even if material responsive to this Request existed, the Request should be quashed to the extent it requests documents protected by attorney-client and/or work product privilege.

**_Request No. 25_**_: For the period of March 1, 2021 through July 1, 2021, Communications and Documents pertaining to a potential commercial partnership between JPMC and Frank, the potential purchase or acquisition of Frank by JPMC, or any other contemplated business relationship between JPMC and Frank._

In response to the Grand Jury Subpoenas, JPMC produced documents regarding any potential business relationships between Frank and JPMC.  Among other items, JPMC produced all emails sent or received by Defendants dating from January 1, 2021, which included communications between Javice and JPMC.  In addition, in response to SDNY Subpoena 3, JPMC collected and reviewed the pre-acquisition emails and Slack messages for all Frank

---

[34]     _See, e.g._, USAO_Rel_001738803 (July 15, 2021 proposal setting forth proposed Frank compensation and retention); USAO_Rel_001806610 and USAO_Rel_001875664 (two August 6, 2021 emails from ████████ requesting signoff on the Frank acquisition from Risk and Finance).

employees.  JPMC then applied broad search terms relating to the potential acquisition of Frank.

JPMC produced all responsive, non-privileged documents resulting from this search.[35]

Any further production in response to this Request is inappropriate because the Request

does not have the requisite specificity or relevance.  Request No. 25 asks for all "Documents and

Communications" about "a potential commercial partnership between JPMC and Frank, the

potential purchase or acquisition of Frank by JPMC, or any other contemplated business

relationship between JPMC and Frank."  Javice does not specify a particular commercial

partnership or business relationship about which she seeks information, as Rule 17(c) and *Nixon*

requires her to do.  To the extent Request No. 25 requests all "Documents and Communications"

about the Merger itself, it is duplicative of other requests and defective for those same reasons:  it

is hard to conceive of a less specific request than "all documents related to the Merger."

Moreover, potential business relationships that did not occur are irrelevant to the fraud

charges against Javice.  If there are specific documents Javice provided to JPMC in connection

with a specific prior business conversation – such as a list of 4.25 million real customers –Javice

should request that document and communication specifically.  Otherwise, this Request seeks

items irrelevant to the charges against Javice.  In particular, there is no defense Javice could

mount based on past conversations with JPMC employees about business deals that may or may

not have existed, if they did, failed to come to fruition.

> **Request No. 26**: For the period of March 1, 2021 through November 4, 2022,
> Communications and Documents pertaining to Frank and the "FAFSA
> Simplification Act," FAFSA simplification, or the amendment, streamlining, or
> simplifying of the FAFSA or the FAFSA process, including Documents and

---

[35]    *See, e.g.,* USAO_Rel_000113627 (March 24, 2021 email from Javice to Executive-1, ███
████ and ████████████ USAO_Rel_000138275 (March 29, 2021 email from Javice to
and Executive-1).

*Communications pertaining to two-factor authentication, 2-factor authentication, multi-factor authentication, 2FA, or MFA.*

Documents related to the simplification of the FAFSA and addition of two-factor authentication appear in JPMC's productions in response to the Grand Jury Subpoenas.  Based on the combination of JPMC's targeted searches, application of broad Frank-related search terms to nine JPMC employees involved in the Merger, and the production of all documents sent or received by Defendants, JPMC produced numerous documents on this topic.[36]

To the extent Request No. 26 requires more, it should be quashed for lack of specificity.  This Request once again demands all "Documents and Communications" related to the broad topics of "FAFSA simplification" and related items from an unspecified group of people over an 18-month period.  Request No. 26 in no way provides any specifics about who might have such documents, what type of documents might exist, or what evidence about FAFSA simplification or two-factor authentication the documents might contain.

Moreover, Javice does not indicate in any way why documents concerning FAFSA simplification or two-factor authentication are relevant to the charges pending against her.  The Complaint does not accuse Javice of misrepresenting the impact of FAFSA simplification or the addition of two-factor authentication on Frank's business or even Frank's ability to grow its customer base.  The Complaint accuses Javice of falsifying customers.  As such, any changes to the FAFSA process are independent of, and irrelevant to, Javice's fraud.

*__Request No. 27:__ For the period of January 1, 2018 through the present, Documents and Communications relating to JPMC's course of dealings with Acxiom prior to the August 2021 Frank diligence request, including Documents and Communications pertaining to JPMC's business and financial relationship*

---

[36]    *See, e.g.*, USAO_Rel_002196544 (July 11, 2022 email chain between ███████ ███ and other JPMC personnel regarding 2FA addition to FAFSA.gov); USAO_Rel_000641519 (July 12, 2022 email chain between Charlie Javice and other JPMC personnel regarding 2FA addition to FAFSA.gov); USAO_Rel_000599002 (August 30, 2022 email chain between Olivier Amar and other JPMC personnel regarding the FAFSA Simplification Act).

*with Acxiom, JPMC's prior assignments to Acxiom related to diligence, data validation, or customer overlap analysis, and all Communications between JPMC and Acxiom subsequent to the Merger pertaining to Frank or any Frank diligence.*

JPMC has produced no fewer than 4,031 documents that reference "Acxiom" in its responses to the Grand Jury Subpoenas. These documents relate to the services Acxiom provided in connection with the Merger and were identified through JPMC's collection and production of Defendants' emails as well as its application of broad Frank-related search terms to nine JPMC employees involved in the Merger. Included in the documents reviewed were those belonging to ████████████████████████████.

Beyond those documents produced, no further production should be ordered because Request No. 27 is inappropriate under Rule 17(c) as it seeks scores of irrelevant documents. On its face, this Request demands documents for a five-year period that begins more than three years before the discussions leading to the Merger began. Further, it requests "Documents and Communications" unrelated to the Merger, but instead related to "JPMC's course of dealings with Acxiom prior to the August 2021 Frank diligence request," "JPMC's business and financial relationship with Acxiom, [and] JPMC's prior assignments to Acxiom related to diligence, data validation or customer overlap analysis." JPMC's business relationship with Acxiom is irrelevant to the question of whether Javice provided fake customer data to Acxiom in connection with JPMC's request for specific information for each Frank customer account. Presumably, Javice is fishing for documents that would show that Acxiom conducted different types of analyses in the past or that JPMC paid Acxiom significant amounts of money. Neither of those types of documents, however, will change the false nature of the data Javice provided to Acxiom. And any failure by Acxiom to detect that the list Javice provided contained fake information does not make Javice's lies acceptable or inappropriate for criminal prosecution.

Request No. 27 also lacks specificity.  This Request does not indicate any particular "prior assignments" Acxiom has done for JPMC or specify what "course of dealings" occurred between JPMC and Acxiom.  Instead, it seeks whatever documents **might** exist in connection with unknown, unspecified prior "dealings" and "assignments," a clear violation of the *Nixon* factor requiring specificity.  The Request should be quashed for this reason as well.

> **Request No. 28**: *For the period of December 1, 2021 through July 31, 2022, Documents and Communications pertaining to the process of shutting down the Frank FAFSA submitter tool, sent, received, drafted, or revised by ██████ ████████ JPMC marketing executive, █████████,* ████

> **Request No. 29**: *For the period of September 13, 2022 through January 14, 2023, Documents and Communications pertaining to the decision and process for shutting down the Frank website.*

JPMC has previously produced documents regarding the continued operation of the Frank website and associated technology in response to the Grand Jury Subpoenas.  Based on the application of broad Frank-related search terms to nine JPMC employees involved in the Merger and the production of all documents sent or received by Defendants, JPMC produced documents called for by these Requests.[37]

These Requests should otherwise be quashed because they fail to satisfy the specificity and relevance requirements of *Nixon*.  Together, these Requests cover two years and seek documents from at least five custodians.  While the Requests seek information about the shut-down of Frank's submitter tool and website, they do not provide any specificity of the types of

---

[37] *See, e.g.,* USAO_Rel_001819437 (June 9, 2022 email from ██████████ to ██████████ and ██████████ regarding Frank microsite ADA compliance); USAO_Rel_000545962 (July 21, 2022 email from ██████████ to Olivier Amar, Charlie Javice, ██████████ ██████████ and ██████████ regarding plan to pause FAFSA); USAO_Rel_000607113 (July 20, 2022 Slack messages regarding Frank website shutdown); USAO_Rel_001781089 (July 22, 2022 calendar invite from ██████████ describing steps taken to shut down Frank site); USAO_Rel_001785526 (July 26, 2022 email from ██████████ to ██████████ ██████████ Olivier Amar, ██████████ ██████████ ██████████ Engineer-2, and Engineer-1 regarding FAFSA submitter usage for testing purposes).

evidence Javice seeks through the Requests, instead falling back on the tired refrain of all

"Documents and Communications pertaining to . . . ."

These Requests also fail to seek relevant information.  Along with many other requests,

including Request Nos. 17, 18, and 22, these Requests seek details of JPMC's operation of Frank

post-Merger, not relevant, specific, admissible evidence relevant to her defense of allegations

that she provided JPMC with a fake customer list to induce JPMC to purchase Frank.  Javice's

lack of specificity means that it is unclear which she believes to be the case, but either way, such

documents are irrelevant.

> **_Request No. 30_: Documents sufficient to show the members of the listserv Corpdev_ma@jpmchase.com from the period of June 26, 2021 through September 14, 2021.**

JPMC agrees to produce non-privileged documents, to the extent they exist, sufficient to

show the individuals who received emails sent to "Corpdev_ma@jpmchase.com," if any,

between June 26, 2021 and September 14, 2021.

> **_Request No. 31_: Documents sufficient to show the individuals who accessed JPMC's internal data room for Project Finland.**

Frank, not JPMC maintained the due diligence data room for Project Finland, and JPMC

understands that LionTree, Frank's financial advisor, maintained that data room.  As such,

LionTree is the proper recipient for this request.  Nevertheless, JPMC has searched for non-

privileged documents reflecting the individuals who accessed the due diligence data room

maintained by Frank and LionTree for Project Finland and has not located any documents.

> **_Request No. 32_**: *Documents sufficient to show JPMC attendees of the diligence meetings with Frank representatives, whether via Zoom or in person, including the meetings held on July 7, July 12, July 13, and July 20.*

JPMC's productions in response to the Grand Jury Subpoenas include documents reflecting the attendees at diligence meetings held in connection with the Merger.[38]  In response to the Grand Jury Subpoenas, JPMC searched for, but did not locate, documents reflecting the attendees of the July 12, July 13, or July 20 meetings, however JPMC has previously produced emails circulating the notes of the July 12, July 13, and July 20 meetings to JPMC personnel.[39]

While JPMC believes these documents are sufficient to show the JPMC attendees, JPMC agrees to conduct a further, targeted search for additional non-privileged documents that reflect the attendees at the July 7, July 12, July 13, and July 20 meetings.

> **_Request No. 33_**: *For the period of July 1, 2021 through October 31, 2022, Documents and Communications pertaining to Frank's business relationship with Sallie Mae and ACT, sent, received, drafted, or revised by* ██████████ *or Executive-1.*

JPMC has previously produced documents relating to Sallie Mae and ACT in connection with responding to Grand Jury Subpoenas.[40]

This Request fails to satisfy the specificity requirement seeking all "Documents and Communications" pertaining to the broad, vague subject of "business relationship[s]" from six different custodians.  This Request does not indicate anything about the particular evidence Javice seeks, such as whether the evidence will merely reflect the terms of a particular agreement

---

[38]    *See, e.g.*, USAO_Rel_000814881 (July 7, 2021 meeting agenda listing relevant attendees).
[39]    USAO_Rel_002168346 (email circulating notes from July 12 and 13, 2021 meetings); USAO_Rel_001878050 (email circulating notes from July 19 and 20, 2021 meetings).
[40]    *See, e.g.*, USAO_Rel_001897302 (July 23, 2021 email sent to ████████ regarding the relationship between Sallie Mae and Frank); USAO_Rel_001784697 (February 25, 2022 email from ████ sent to ████████ among others, regarding contract negotiations between SLM and JPMC); USAO_Rel_000642927 (March 30, 2022 email from ████████ to ████████ ████████ and Executive-1 regarding contract negotiations between SLM and JPMC).

with Sallie Mae or Act or whether the evidence will show that Frank misrepresented its customer base to those entities as well.  Request No. 33 seeks all documents, not particular documents, and thus lacks the requisite specificity.

This Request also seeks irrelevant material.  The allegations against Javice do not relate to Frank's business relationships with Sallie Mae or ACT, and the nature of those relationships would not affect whether the purported customer list Javice provided to JPMC was fake.

> ***Request No. 34***: *For the period of June 1, 2021 through July 31, 2021, Documents and Communications sent, received, drafted, or revised by* ▮▮▮ ▮▮▮ *or JPMC personnel, including* ▮▮▮▮▮ *office staff, pertaining to the July 7, 2021 meeting between Frank representatives and* ▮▮▮▮▮

JPMC already has produced documents responsive to this final Request application of broad Frank-related search terms to nine JPMC employees involved in the Merger, and the production of all documents sent or received by Defendants.[41]

Request No. 34 seeks more, but this Request is merely an attempt to gain access to the emails of JPMC's notable CEO in the hopes they gain access to an irrelevant email that might distract from the true issue: Javice's fraud.  As a preliminary matter, this Request is duplicative of Request No. 2, which already seeks to compel JPMC to review ▮▮ ▮▮ emails for any mention of Javice.  Though more specific than Request No. 2's limitless request for effectively all documents concerning Frank, Request No. 34 still is not specific enough.  This Request does not indicate what evidence Javice is seeking as it merely asks for all "Documents and Communications . . . pertaining to" the meeting.  The Request does not indicate if Javice is looking for summaries of the meeting, the reaction of ▮▮ ▮▮ or others, or simple confirmation of when the meeting occurred and who attended.  Finally, the timeframe in the

---

[41]    *See e.g.*, USAO_Rel_000777730 (July 7, 2021 email from ▮▮▮▮ to Charlie Javice, ▮▮▮▮ and ▮▮▮▮ regarding the July 7 meeting between Frank representatives and ▮▮ ▮▮

Request begins over a month before the meeting occurred even though JPMC already has produced documents showing that the meeting was set up on short notice.[42]

Request No. 34 also has no relevance to the charges against Javice.  If Javice handed ███ ███ an accurate list of Frank's purported 4.25 million customers at the July 7 meeting, Javice should request that document specifically.  Otherwise, anything that ██ ██ discussed with the Frank representatives does not affect whether the list Javice provided to JPMC in connection with due diligence contained fake customer information.

## IV.    THE REQUESTS IN THE AMAR SUBPOENA SUFFER FROM NUMEROUS DEFECTS AND FAIL TO SATISFY *NIXON* AND RULE 17.

The reasons that each Request in the Amar Subpoena fails to meet the *Nixon* factors are set forth below.

> **Request No. 1***: Documents and Communications related to internal discussions involving Executive-1 (identified as "Executive-1" in the Criminal Complaint and "Head of Corporate Development" in the Civil Complaint) and other JPMC employees in or about March 2021 regarding her views, and the views of other JPMC employees, as to whether Frank was an appealing acquisition target for JPMC due to the marketing potential of Frank's large customer base, as referenced in ¶ 19(a) of the Criminal Complaint and ¶ 38 of the Civil Complaint.*

> **Request No. 2***: Documents and Communications related to internal discussions involving Executive-1 and other JPMC employees in or about March 2021 regarding alleged representations regarding the marketing potential of Frank's large customer base, as referenced in ¶ 19(a) of the Criminal Complaint.*

This Court's order, dated November 7, 2023, requires JPMC to search for and produce, under the existing Government subpoenas, documents in the files and emails of JPMC officers and employees referenced in the Complaint.  ECF No. 61 at 2.  JPMC previously searched the files of Executive-1 and produced 10,133 responsive, non-privileged documents pursuant to the

---

[42]    *See* USAO_Rel_000072168 (email from Charlie Javice informing ████████ that on July 7 JPMC "just set up a meeting with ████████ for me later this afternoon").

Government's subpoenas. However, Executive-1's documents from in or about March 2021 –
the time period referenced in ¶19(a) of the Criminal Complaint – were outside the time period of
the Government's subpoena. Accordingly, JPMC had not previously produced documents from
March 2021 that were outside the scope of the Government's subpoena. Pursuant to this Court's
Order, JPMC will search the files of Executive-1 and produce responsive documents, if any,
from in or about March 2021 by the Court's deadline of December 8.

Request Nos. 1 and 2 fail to satisfy the specificity requirement of Rule 17(c), seeking all
"Documents and Communications" related to the broad, vague subject of "internal discussions"
involving Executive-1 and "other JPMC employees" about the views of Executive-1 or "other
JPMC employees." Without identifying any particular documents or the identities of the "other
JPMC employees," these Requests do not seek specifically identifiable documents as required by
Rule 17(c).

> **_Request No. 3_**_: Documents and Communications related to internal discussions
> of the content and subject matter of the alleged July 2, 2021 email from Ms.
> Javice to Executive-1, as referenced in ¶ 19(b) of the Criminal Complaint,
> including related to the alleged representation by Ms. Javice to Executive-1 that
> Frank had "5.6M active households in the US and . . . will end the year with
> close to 10M families," and how that representation impacted the decision to
> proceed with the Acquisition and/or the price that JPMC paid to acquire Frank._

JPMC previously produced to the Government all documents containing the July 2, 2021
email from Ms. Javice to Executive-1 referenced in ¶ 19(b) of the Criminal Complaint, as
described in Request No. 3. In addition, JPMC searched the files of Executive-1 and produced
10,133 responsive, non-privileged documents in response to the Government's subpoenas.
Accordingly, Request No. 3 should be quashed because JPMC has already provided the
Government with materials responsive to this request. In addition, Request No. 3 – which seeks
all "documents and communications related to internal discussions" without specifying particular

documents from any identified individuals over nearly a three-year time period – should be quashed because it fails to meet the specificity requirement of Rule 17(c).

> ***Request No. 4: Documents and Communications related to internal discussions regarding the 18-page pdf of a PowerPoint presentation regarding Frank (defined in the Criminal Complaint as the "July 2 Pitch Deck"), as referenced in § 19(b) of the Criminal Complaint, its purported representation that Frank had 4.25 million users, and its alleged impact on the decision to proceed with the Acquisition and/or the price that JPMC paid to acquire Frank.***

JPMC previously produced to the Government the "July 2 Pitch Deck" attached to the July 2, 2021 Email referenced in ¶ 19(b) of the Criminal Complaint, as described in Request No. 4. JPMC also previously produced to the Government approximately 280 documents that included the July 2 Pitch Deck and JPMC internal communications with the July 2 Pitch Deck as an attachment. JPMC will review its files and produce any other responsive, non-privileged JPMC internal communications from July 1, 2021 to September 15, 2021 that included the July 2 Pitch Deck as an attachment by December 8.

However, Request No. 4 seeks information beyond the July 2 Pitch Deck, to include "documents and communications related to internal discussions" of various subject matters without identifying particular individuals over a nearly three-year time period. Other than the request for the July 2 Pitch Deck and communications attaching the July 2 Pitch Deck, Request No. 4 should be quashed because it fails to meet the specificity requirement of Rule 17(c).

> ***Request No. 5: Documents and Communications sufficient to identify who from JPMC had access to the "data room" opened by Frank on or around July 6, 2021, as referenced in § 19(c) of the Criminal Complaint and § 42 of the Civil Complaint.***

Request No. 5 seeks essentially the same information as Javice Request No. 31. The reasons provided above to quash Javice Request No. 31 also apply to Request No. 5 and are incorporated by reference. *See supra* at 47.

JPMC has previously produced documents that appear to identify individuals from JPMC who had access to the "data room" opened by Frank, as referenced in ¶ 19(c) of the Criminal Complaint, as described in Request No. 5.[43]  JPMC has not located any other documents in response to Request No. 5.  In addition, access to the "data room" for Project Finland was not controlled by JPMC, but rather, LionTree, Frank's investment advisor.  Amar may exercise due diligence to obtain documents responsive to Request No. 5 from LionTree.  Accordingly, Request No. 5 should be quashed in its entirety.

> ***Request No. 6**: Documents and Communications related to internal discussions regarding the 60-page PowerPoint presentation regarding Frank (defined in the Criminal Complaint as the "July 7 Pitch Deck"), as referenced in § 19(d) of the Criminal Complaint, its purported representation that Frank had 4.25 million users, and its alleged impact on the decision to proceed with Acquisition and/or the price that JPMC paid to acquire Frank.*

JPMC previously produced to the Government the "July 7 Pitch Deck" referenced in ¶ 19(d) of the Criminal Complaint, as described in Request No. 6.  JPMC also previously produced to the Government approximately 100 documents that included the July 7 Pitch Deck and JPMC internal communications with the July 7 Pitch Deck as an attachment.  JPMC will review its files and produce any other responsive, non-privileged JPMC internal communications that included the July 7 Pitch Deck as an attachment by December 8.

However, Request No. 6 seeks information beyond the July 7 Pitch Deck, to include "documents and communications related to internal discussions" of various subject matters without identifying particular individuals over a nearly three-year time period.  Other than the request for the July 7 Pitch Deck and communications attaching the July 7 Pitch Deck, Request No. 6 should be quashed because it fails to meet the specificity requirement of Rule 17(c).

---

[43]     *See e.g.,* USAO_Rel_001743028 (email to JPMC employees providing access instructions for the Finland data room); USAO_Rel_001861592 (same).

***Request No. 7***: ***Documents and Communications related to internal discussions regarding the spreadsheet allegedly uploaded to the "data room" by Ms. Javice on or about July 8, 2021 (defined in the Criminal Complaint as the "Spreadsheet"), as referenced in § 19(e) of the Criminal Complaint and § 54 of the Civil Complaint, and its alleged impact on the decision to proceed with Acquisition and/or the price that JPMC paid to acquire Frank.***

JPMC previously produced to the Government the July 8, 2021 Email and the attached "Spreadsheet" attached thereto referenced in ¶ 19(e) of the Criminal Complaint, as described in Request No. 7.  The July 8, 2021 Email was not a chain, so there were no additional documents containing the July 8, 2021 Email to produce.  In addition, JPMC previously produced all documents containing the Spreadsheet, including all JPMC internal communications with the Spreadsheet as an attachment, which was a total of 127 documents.  Accordingly, Request No. 7 should be quashed because JPMC has already provided the Government with materials responsive to this request.  In addition, Request No. 7 – which seeks "documents and communications related to internal discussions" without any identification of individuals over a nearly three-year time period – should be quashed because it fails to meet the specificity requirement of Rule 17(c).

***Request No. 8***: ***Documents and Communications related to internal discussions of the content and subject matter of the alleged July 9, 2021 email from ▮▮▮▮ (identified in the Criminal Complaint as "a JPMC employee"), to the investment advisors representing Ms. Javice regarding next steps and due diligence meetings, as referenced in § 19(f) of the Criminal Complaint.***

JPMC previously produced to the Government all documents containing the July 9, 2021 email from ▮▮ ▮▮ to investment advisors representing Ms. Javice referenced in ¶ 19(f) of the Criminal Complaint, as described in Request No. 8.  In addition, JPMC searched the files of ▮▮ ▮▮ and produced 3,801 responsive, non-privileged documents in response to the Government's subpoenas.  Accordingly, Request No. 8 should be quashed because JPMC has already provided the Government with materials responsive to this request.  In addition, Request

No. 8 – which seeks "documents and communications related to internal discussions" without any identification of individuals over a nearly three-year time period – should be quashed because it fails to meet the specificity requirement of Rule 17(c).

> ***Request No. 9***: ***Documents and Communications related to internal discussions of the content and subject matter of the alleged August 4, 2021 email from Ms. Javice to Executive-2 (identified in the Criminal Complaint as "Executive-2") regarding Frank's user breakdown according to "the Spreadsheet," as referenced in § 19(h) of the Criminal Complaint.***

JPMC has previously produced to the Government all documents containing the August 4, 2021 email from Ms. Javice to Executive-2 referenced in ¶ 19(h) of the Criminal Complaint, as described in Request No. 9.  In addition, JPMC searched the files of Executive-2 and produced 1,072 responsive, non-privileged documents in response to the Government's subpoenas.  Accordingly, Request No. 9 should be quashed because JPMC has already provided the Government with materials responsive to this request.  In addition, Request No. 9 – which seeks "documents and communications related to internal discussions" without any identification of individuals over a nearly three-year time period – should be quashed because it fails to meet the specificity requirement of Rule 17(c).

> ***Request No. 10***: ***Documents and Communications related to internal discussions of the content and subject matter of the alleged August 1, 2021 email from Executive-1 describing the information about Frank user data sought by JPMC, as referenced in § 21(d) of the Criminal Complaint and 5 and 64 of the Civil Complaint.***

JPMC previously produced to the Government all documents containing the August 1, 2021 email from Executive-1 referenced in ¶ 21(d) of the Criminal Complaint, as described in Request No. 10.  In addition, JPMC searched the files of Executive-1 and produced 10,133 responsive, non-privileged documents in response to the Government's subpoenas.  Accordingly, Request No. 10 should be quashed because JPMC has already provided the Government with materials responsive to this request.  In addition, Request No. 10 – which seeks "documents and

54

communications related to internal discussions" without any identification of individuals over a

nearly three-year time period – should be quashed because it fails to meet the specificity

requirement of Rule 17(c).

> ***Request No. 11****: Documents and Communications related to internal discussions of the content and subject matter of the alleged August 3-5, 2021 emails from Executive-2 to Ms. Javice regarding the appropriate use of "unique identifiers" for personal identifying information, the data validation report JPMC sought from Frank, the template for the data validation report that JPMC sought from Frank (defined in the Criminal Complaint as the "Template Report"), and confirming completion of JPMC's data validation request, as referenced in §§ 21 and 25 of the Criminal Complaint and § 67 of the Civil Complaint.*

JPMC has previously produced to the Government all documents containing the August

3-5, 2021 emails from Executive-2 to Ms. Javice referenced in ¶¶ 21 and 25 of the Criminal

Complaint, as described in Request No. 11.  In addition, JPMC searched the files of Executive-2

and produced 1,072 responsive, non-privileged documents in response to the Government's

subpoenas.  Accordingly, Request No. 11 should be quashed because JPMC has already provided

the Government with materials responsive to this request.  In addition, Request No. 11 – which

seeks "documents and communications related to internal discussions" without any identification

of individuals over a nearly three-year time period – should be quashed because it fails to meet

the specificity requirement of Rule 17(c).

> ***Request No. 12****: Documents and Communications related to discussions between Executive-2 and Acxiom (identified in the Criminal Complaint as "Vendor-1") in or around August 2021 regarding JPMC's validation request for Frank data, as referenced in § 26(b) of the Criminal Complaint.*

JPMC has previously produced to the Government communications related to discussions

between Executive-2 and Acxiom in or about early August 2021, as referenced in ¶ 26(b) of the

Criminal Complaint, as described in Request No. 12.  JPMC has produced no fewer than 4,031

documents that reference "Acxiom" in its responses to the Grand Jury Subpoenas that relate to

the services Acxiom provided in connection with the Merger.  In addition, JPMC searched the files of Executive-2 and produced 1,072 responsive, non-privileged documents in response to the Government's subpoenas.  JPMC will review its files and produce any other communications related to discussions between Executive-2 and Acxiom in or about early August 2021 by December 8.

However, Request No. 12 appears to seek broader information beyond Executive-2's documents and communications to also include "documents and communications" without identifying particular individuals over a nearly three-year time period.  Other than the request for Executive-2's documents and communications related to his discussions with Acxiom in August 2021, Request No. 12 should be quashed because it is fails to meet the specificity requirement of Rule 17(c).

> **_Request No. 13_**_: Documents and Communications related to internal discussions of the content and subject matter of the alleged January 6-10, 2022 emails from JPMC marketing executive (identified in the Criminal Complaint as the "Marketing Executive") regarding the transfer of certain data files, as referenced in § 32(a) of the Criminal Complaint and § 164 of the Civil Complaint._

Pursuant to this Court's orders on November 2, 2023 and November 7, 2023, JPMC produced all documents containing the emails referenced in ¶ 32(a) of the Criminal Complaint that had not been previously produced to the Government, on November 16, 2023.  In addition, JPMC will search the files of JPMC marketing executive for information pursuant to this Court's Order dated November 7, 2023 and produce responsive, non-privileged documents, if any, to the Government by the Court's deadline of December 8.

However, Request No. 13 appears to seek broader information beyond JPMC marketing executive's documents and communications to also include "documents and communications related to internal discussions" without identifying particular individuals over a nearly three-year

time period. To the extent that Request No. 13 seeks JPMC marketing executive's responsive and non-privileged documents and communications beyond what is required by this Court's Order, Request No. 13 should be quashed because it fails to meet the specificity requirement of Rule 17(c).

> ### _Request No. 14_: Documents and Communications related to internal discussions of the content and subject matter of the alleged other purported user data files sent by Ms. Javice to JPMC, as referenced in § 32(b) of the Criminal Complaint.

JPMC previously produced to the Government the user data files sent by Ms. Javice to JPMC (the "User Data Files"), as referenced in ¶ 32(b) of the Criminal Complaint, as described in Request No. 14. The User Data Files consist of approximately thirty spreadsheets that were uploaded to a secure file transfer site rather than over email. Accordingly, the User Data Files cannot be searched for as email attachments to identify internal JPMC emails that may have discussed the User Data Files. Request No. 14 seeks information to include "documents and communications related to internal discussions" without identifying particular individuals over a nearly three-year time period. Request No. 14 should be quashed in its entirety because it fails to meet the specificity requirement of Rule 17(c).

> ### _Request No. 15_: Documents and Communications related to JPMC's decision to offer $175 million to acquire Frank and how JPMC arrived at that valuation.

JPMC previously produced to the Government documents that are described in Request No. 15. As described in detail above in response to Javice Request No. 2(e), valuation documents have already been produced in at least nine different JPMC productions. _See supra_ at 17. The Defendants previously claimed that they were missing JPMC's internal assessments of the Frank deal. ECF No. 58 at 11. As the Government noted in its response, the Defendants are wrong. In response to the Government's subpoenas, JPMC produced materials that were prepared in advance of JPMC's deal review forum regarding Frank, in which JPMC's key

decisionmakers convened to discuss and approve deals.[44]  ECF No. 60 at 7.  Those materials

include the information that Defendants claimed was absent, such as "analysis of comparable

companies, valuation materials or models to determine offer price, and descriptions of its

investment thesis."  *Id.*  Accordingly, Request No. 15 should be quashed because JPMC has

already provided the Government with responsive, non-privileged materials pertaining to this

request.  Also, Request No. 15 – which seeks "documents and communications" without any

identification of individuals over a nearly three-year time period – should be quashed because it

fails to meet the specificity requirement of Rule 17(c).

> **_Request No. 16_: Documents and Communications regarding all transactions prior to July 2021 in which JPMC purchased student data from ASL Marketing, Acxiom LLC, or other data vendors.**

Request No. 16 should be quashed in its entirety.  Request No. 16, which seeks

"documents and communications" – without any identification of individuals from whom

information is sought regarding all transactions prior to July 2021 – should be quashed because it

fails to meet the specificity requirement of Rule 17(c).  Moreover, Request No. 16 seeks

documents that are wholly irrelevant to the charges in the Indictment.  JPMC's purchases of

student data from ASL Marketing, Acxiom LLC or other data vendors are irrelevant to the

question of whether Javice provided fake customer data in connection with JPMC's request for

specific information for each Frank customer account.

> **_Request No. 17_: Documents and Communications sufficient to identify who from JPMC attended the following meetings or calls:**
>
> a) **July 1, 2021 call between Ms. Javice and Executive-1, ▮▮▮▮▮▮▮ and potentially other JPMC representatives;**
>
> b) **July 7, 2021 meeting in which Ms. Javice allegedly delivered a management presentation to JPMC's representatives, accompanied by a**

---

[44]    *See* USAO_Rel_001889003.

        **60-page PowerPoint deck, as referenced in § 19(d) of the Criminal Complaint;**

    c)  **July 12, 2021 diligence meeting with Ms. Javice, as referenced in § 19(g) of the Criminal Complaint and § 43 of the Civil Complaint;**

    d)  **July 13, 2021 diligence meeting with Ms. Javice, as referenced in § 19(g) of the Criminal Complaint and § 44 of the Civil Complaint;**

    e)  **July 19, 2021 diligence meeting with Ms. Javice, as referenced in § 48 of the Civil Complaint;**

    f)  **July 20, 2021 diligence meeting with Ms. Javice, as referenced in § 48 of the Civil Complaint; and**

    g)  **August 2, 2021 Zoom call between Executive-2, Ms. Javice, and potentially other JPMC representatives, as referenced in § 21(e) of the Criminal Complaint.**

Request No. 17 should be quashed because JPMC has already provided the Government with responsive, non-privileged materials pertaining to this Request.[45]  While JPMC believes these documents are sufficient to show the JPMC attendees to the calls and meetings identified in Request No. 17, JPMC agrees to conduct a further, targeted search for additional non-privileged documents that reflect the attendees at those meetings by December 8.

    <u>**Request No. 18**</u>**: Written or electronic notes of oral Communications from the meetings referenced in Request 17, including drafts of such notes or memoranda.**

Request No. 18 should be quashed because JPMC has previously searched for and produced to the Government any notes that JPMC has been able to locate from the calls and meetings referenced in Request No. 17.[46]  JPMC has not located any notes from a July 1, 2021 call between Ms. Javice and Executive-1, ██ ██ and potentially other JPMC

---

[45]    *See* USAO_Rel_000743291 (July 1 meeting invitation); USAO_Rel_000814881 (July 7 meeting agenda with participants listed); USAO_Rel_002168346 (email circulating notes from July 12 and 13, 2021 meetings); USAO_Rel_001878050 (email circulating notes from July 19 and 20, 2021 meetings); USAO_Rel_000062815 (August 2, 2021 email requesting a call).

[46]    *See* USAO_Rel_002168350 (July 12, 2021 meeting notes), USAO_Rel_002168367 (July 13, 2021 meeting notes), USAO_Rel_001878053 (July 19-20, 2021 meeting notes).

representatives, or an August 2, 2021 call between Executive-2, Ms. Javice, and potentially other

JPMC representatives, but has produced to the Government notes for all other calls and meetings

referenced in Request No. 17.

> ___Request No. 19___: ___Documents and Communications related to internal___
> ___discussions of the content and subject matter of the meetings referenced in___
> ___Request 17, including regarding:___
>
>    a) ___Ms. Javice's alleged statements in the July 12, 2021 diligence meeting___
>       ___with respect to Frank's definition of "user," as referenced in § 19(g) of___
>       ___the Criminal Complaint; and___
>
>    b) ___Mr. Amar, his presence, and any representations or statements made by___
>       ___him.___

JPMC previously produced to the Government notes from the July 12, 2021 diligence

meeting (the "July 12, 2021 Diligence Meeting Notes") described in Request No. 19.  JPMC also

previously produced to the Government 14 documents that included the July 12, 2021 Diligence

Meeting Notes and JPMC internal communications with the July 12, 2021 Diligence Meeting

Notes as an attachment.  JPMC will review its files and produce any other responsive, non-

privileged JPMC internal communications that included the July 12, 2021 Diligence Meeting

Notes as an attachment by December 8.

However, Request No. 19 seeks information beyond the July 12, 2021 Diligence Meeting

Notes, to include "documents and communications related to internal discussions" of various

subject matters without identifying particular individuals over a nearly three-year time period.

Other than the request for the July 12, 2021 Diligence Meeting Notes and communications

attaching the July 12, 2021 Diligence Meeting Notes, Request No. 19 should be quashed because

it fails to meet the specificity requirement of Rule 17(c).

> ___Request No. 20___: ___Documents and Communications regarding JPMC's review of___
> ___reports from Frank's auditors and accountants that JPMC considered in its___

*decision to acquire Frank, including any reports from Frank's auditors and accountants.*

Request No. 20 should be quashed in its entirety because it fails to meet the specificity requirement of Rule 17(c). This Request seeks "documents and communications" without any identification of individuals from whom information is sought over a nearly three-year time period. Nor does Request No. 20 identify any of Frank's auditors and accountants by name, or provide information as to any specific reports that they may have generated in connection with the Merger.

***Request No. 21****: Written or electronic notes of oral Communications from meetings between Mr. Amar and* ███████████ *in or around July-August 2021, including drafts of such notes or memoranda.*

Request No. 21 should be quashed in its entirety. JPMC previously produced to the Government Amar's documents and communications in response to the Government's subpoenas. JPMC has not identified any communications or meetings between Amar and ██ for the time period referenced in Request No. 21 from Amar's documents and communications or in any other documents that JPMC has collected in this matter.

Although JPMC has not identified ████████ as a custodian, Amar has provided no explanation for why she should be a custodian. Presumably Amar knows or can exercise due diligence to obtain and specify the dates of any meetings he had with ████████ Amar also should state whether he is aware of the existence of notes from any meetings with ████████ as searches run in the hopes that such notes may exist amounts to a discovery request that is beyond the scope of Rule 17. In addition, Amar should explain why notes from his meetings with ████████ if any, would be admissible and relevant to the allegations in the Indictment. Absent Amar making a preponderance showing that notes of meetings with ████████ exist

with specificity as to the dates, and that those notes are both admissible and relevant evidence in this case, Request No. 21 should be quashed.

**_Request No. 22_: Documents and Communications related to JPMC's assessment of the scalability of Frank's FAFSA submitter.**

Request No. 22 should be quashed in its entirety because JPMC previously produced information related to JPMC's assessment of the scalability of Frank's FAFSA submitter capacity responsive to Request No. 22.[47]  Because JPMC's prior productions satisfy this Request, it fails to meet the "due diligence" prong of *Nixon* and should be quashed for that reason. Moreover, Request No. 22 –, which seeks "documents and communications" without any identification of individuals from whom information is sought over a nearly three-year time period– also should be quashed because it fails to meet the specificity requirement of Rule 17(c). Request No. 22's broad phrasing does not indicate anything about the evidence that Amar knows or believes to exist, as opposed to documents he simply hopes might exist.

**_Request No. 23_: Documents and Communications related to Chase's decision in July-August 2022 to "Rebuild" (as opposed to "Rebrand") Frank on Chase.com and the motivations, reasons, and business case for that decision, including internal Communications of ██████████ ████████████ and ████████ ████████**

Request No. 23 – which seeks information about the basis for Chase's decision in July-August 2022 to "Rebuild" Frank on Chase.com – should be quashed in its entirety for several reasons.  First, it implicates documents and communications involving JPMC's in-house counsel that are protected by attorney-client and work-product privileges and therefore would be inadmissible at trial.  Second, this request for "documents and communications" – including but not limited to three custodians over a two-month time period – should be quashed for failure to meet the

---

[47]    *See, e.g.*, USAO_Rel_002166754 (June 28, 2022 emails between ████████████ and ████ ████ about Frank FAFSA submitter capacity); USAO_Rel_001774321 (June 2022 Frank Business Unit Review discussing the Frank FAFSA submitter capacity).

specificity requirement of Rule 17(c).  Finally, Request No. 23 also fails to seek relevant information; it seeks details of JPMC's operation of Frank post-Merger, not relevant, specific, admissible evidence relevant to her defense of allegations that she provided JPMC with a fake customer list to induce JPMC to purchase Frank.

> ***Request No. 24****: Documents and Communications regarding any changes in laws, policies, and procedures that had an impact on Frank's business model, including Frank's FAFSA submitter.*

Request No. 24 should be quashed because JPMC previously produced documents concerning the potential impact of laws or policies on Frank's business model.[48]  Request No. 24 also should be quashed insofar as it seeks documents that are protected by attorney-client privilege and attorney work product and are therefore inadmissible.  In addition, Request No. 24, which seeks "documents and communications" without any identification of individuals from whom information is sought over a nearly three-year time period– also should be quashed because it fails to meet the specificity requirement of Rule 17(c).

> ***Request No. 25****: Documents and Communications related to JPMC's assessment of the July 2022 marketing campaign to Frank customers, as referenced in § 13 of the Criminal Complaint and § 178 of the Civil Complaint.*

Request No. 25 should be quashed because JPMC previously produced documents related to JPMC's assessment of the July 2022 marketing campaign to Frank customers.  Specifically, JPMC produced JPMC's internal marketing campaign results.[49]  In addition, Request No. 25 – which seeks "documents and communications" without any identification of individuals from whom information is sought over a nearly three-year time period– also should be quashed

---

[48]      *See, e.g.*, USAO_Rel_001789256 (Asana notification about the need to add new legal disclaimer to student summary page); USAO_Rel_001785423 (email from ▇▇▇▇▇▇ to Olivier Amar about Frank task list, including addressing TCPA compliance); USAO_Rel_000599002 (email chain between Olivier Amar and other JPMC personnel regarding the FAFSA Simplification Act).

[49]      *See* USAO_Rel_000660063.

because it fails to meet the specificity requirement of Rule 17(c).  Beyond the marketing

campaign itself, Request No. 25 does not indicate what documents Amar knows or believes to

exist.

> ***Request No. 26****: A list of JPMC personnel with access to Frank's Google
> Analytics platform and the permissions of those with access.*

Request No. 26 should be quashed in its entirety because JPMC has previously produced

any responsive, non-privileged documents that JPMC was able to locate pertaining to this

Request.[50]

> ***Request No. 27****: Documents and Communications related to internal
> discussions of the content and subject matter of JPMC's review of Frank's
> Google Analytics data in or around the time JPMC received access.*

Request No. 27 should be quashed in its entirety because JPMC has previously produced

to the Government responsive, non-privileged documents pertaining to this request, including

information on Frank and its use of Google Analytics.[51]  In addition, Request No. 27 – which

seeks "documents and communications" without any identification of individuals from whom

information is sought over a nearly three-year time period – also should be quashed because it

fails to meet the specificity requirement of Rule 17(c).

> ***Request No. 28****: Documents and Communications related to internal
> discussions of the content and subject matter of JPMC's Internal Investigation
> into Frank that precipitated the termination of Ms. Javice and Mr. Amar for
> cause on or about November 4, 2022 and October 26, 2022, respectively, as
> referenced in part in § 33 of the Criminal Complaint and 28 and 30 of the Civil
> Complaint.*

Request No. 28 should be quashed in its entirety.  First, JPMC previously produced to the

Government documents that are described in Request No. 28.  The Defendants previously

---

[50]      *See, e.g.*, USAO_Rel_000648964 (email from Olivier Amar to ███████████ informing him
that he has been added to Google Analytics).
[51]      *See, e.g.*, USAO_Rel_002184067 (Email from Engineer-1 describing Frank data input feeds).

claimed that they were missing JPMC's internal investigation materials.  ECF No. 58 at 11.  As the Government noted in its response, the Defendants are wrong.  In response to the Government's subpoenas, JPMC produced JPMC's global security investigation file, consisting of over 200 documents that span over 2,000 pages and includes memoranda of interviews that JPMC investigators conducted of Javice, Amar and others in August and September 2022.[52] ECF No. 60 at 7.  Accordingly, Request No. 28 should be quashed because JPMC has already provided the Government with materials responsive to this request.

Also, Request No. 28 – which seeks "documents and communications related to internal discussions" without any identification of individuals over a nearly three-year time period – should be quashed because it fails to meet the specificity requirement of Rule 17(c).  Amar defines "Internal Investigation" to mean "any investigation, inquiry, or other internal action taken by JPMC in connection with Frank or the Defendants."  Based on that definition, Amar is not requesting specific documents, or even documents specific to a particular investigation.  Rather, Amar is also seeking information specific to any "inquiry" or "other internal action."  This Request should be quashed for failing to specify the evidence Amar seeks rather than merely hoping for a peek into JPMC's internal – and privileged – assessment of his fraud.

In addition, Request No. 28 should be quashed because it explicitly seeks inadmissible materials.  Amar's broad definition of "Internal Investigation" would include a separate investigation into the Defendants' fraud conducted by JPMC's outside counsel.  JPMC's outside counsel's investigation materials are protected by attorney-client and work product privilege.  In addition, certain communications and interviews that are part of JPMC's outside counsel's investigation would constitute hearsay and thus also be inadmissible on that basis.

---

[52]    USAO_Rel_000107867 - USAO_Rel_0001101519.

Lastly, the overbroad definition of "Internal Investigation" seeking documents on any "internal action taken by JPMC in connection with Frank or the Defendants" would yield documents that are wholly irrelevant to the charged against Amar or his defenses.

>  **_Request No. 29_**: ***Documents and Communications exchanged between JPMC and the Government concerning interviews of JPMC employees regarding the Government's investigation into Ms. Javice, Mr. Amar, Frank, and the Acquisition.***

>  **_Request No. 30_**: ***Documents and Communications exchanged between JPMC and the Government regarding JPMC's response to the Subpoenas and any narrowing of the Subpoenas.***

Amar Requests Nos. 29 and 30 should be quashed in their entirety. Requests 29 and 30 seek much of the same information as Javice Request No. 6. The reasons provided above to quash Javice Request No. 6 also apply to Request Nos. 29 and 30 and are incorporated by reference. *See supra* at 23-24. Amar Requests Nos. 29 and 30 seek information that is irrelevant to the charges in the Indictment against Amar and have no bearing on his fraud. In addition, Request Nos. 29 and 30 should be quashed because they explicitly seek hearsay materials that are inadmissible. The Defendants already requested that this Court issue a Rule 17(c) subpoena to the Government "seeking all communications exchanged between JPMC and the Government related to JPMC's investigation of and the Government's investigation and prosecution of Javice and Amar from September 2022 to the present." ECF No. 58 at 29. This Court denied the Defendants' motion. ECF No. 61. Accordingly, this Court should similarly quash Amar's continued efforts to obtain the same communications from non-party JPMC.

>  **_Request No. 31_**: ***Documents and Communications listed on the privilege logs provided by JPMC to the Government in response to the Government Subpoenas, including:***

>  >  a) ***To which Mr. Amar or Ms. Javice was the author, recipient, or copied;***

>  >  b) ***To which Matthew Glazer was the author, recipient, or copied in his capacity as the Chief Operating Officer of Frank or concerning other***

*business-related discussions that did not involve the provision of legal advice;*

c) *Involving legal advice provided by Sidley Austin to Ms. Javice or the Frank Board of Directors regarding the potential sale of Frank to* ████████ *JPMC,* ████████████ *or any other potential buyer;*

d) *Memorializing discussions involving the Frank Board of Directors regarding the potential sale of Frank to* ████████ *JPMC,* ████ ████ *or any other potential buyer;*

e) *Regarding any diligence questions, reports, timelines, templates, or trackers concerning the potential sale of Frank to* ████████ *JPMC,* ████████ *or any other potential buyer;*

f) *Concerning "Project Finland Executive Update" on or around July 13, 2021;*

g) *Attaching or discussing Frank's financials, including balance sheets, revenue by product, and historical profits and losses;*

h) *Regarding JPMC's assessment of Frank's ADA compliance during Integration;*

i) *Regarding any changes in laws, policies, and procedures that had an impact Frank's business model, including Frank's FAFSA submitter;*

j) *Regarding any disruption to or shutdown of Frank's FAFSA submitter;*

k) *Regarding any disruption to or shutdown of Frank's microsite; and*

l) *Concerning Acxiom's data validation work during JPMC's diligence of Frank.*

Amar Request No. 31 should be quashed in its entirety because it explicitly and exclusively seeks inadmissible documents and communications protected by attorney-client and/or work product privilege. Amar Request No. 31 seeks the same information as Javice Request No. 1. The reasons provided above to quash Javice Request No. 1 also apply to Request No. 31 and are incorporated by reference. *See supra* at 15-16.

## **CONCLUSION**

For the reasons set forth above, this Court should quash the Subpoenas.

Dated:     December 1, 2023
           New York, New York

                                       **HOGAN LOVELLS US LLP**

                                       By: _Allison M. Wuertz_

                                            Kristy J. Greenberg
                                            Allison M. Wuertz
                                            HOGAN LOVELLS US LLP
                                            390 Madison Avenue
                                            New York, NY 10017
                                            (212) 918-3000

                                            *Attorneys for Non-Party JPMorgan Chase*
                                            *Bank, N.A.*