UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHARLIE JAVICE and OLIVIER AMAR,<br><br>Defendants. | 23-cr-00251-AKH |

**DEFENDANT OLIVIER AMAR'S MOTION
FOR THE EXCHANGE OF SEIZED PROPERTY**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..............................................................................................................................3

ARGUMENT ....................................................................................................................................5

    I.    Section 853 of the Criminal Forfeiture Statute Permits the Relief Mr. Amar Seeks. ....6

    II.    The Government's Financial Interest Would Be Protected By a Security Interest in the ███████ Property. ..................................................................................................7

    III.    Mr. Amar and His Family Face Financial Hardship in the Absence of the Requested Relief. ..................................................................................................................9

CONCLUSION ...............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                 **Page(s)**

2006 WL 3545026 (E.D.N.Y. 2006)....................................................................................3, 4

*Rewis v. United States*, 401 U.S. 808 (1971)................................................................................7

*U.S. Currency*, 374 F. Supp. 3d 205 (N.D.N.Y. Mar. 15, 2019) ...................................................3

*United States v. Bass*, 404 U.S. 336 (1971) ..................................................................................7

*United States v. Egan*, No. 10 Cr. 191 (JFK), 2010 WL 3258085 n.1 (S.D.N.Y. Aug. 16, 2010) ...........................................................................................................................................7

*United States v. Wolf*, No. 22-cr-137, 2022 WL 3585154 (D. Minn. Aug. 22, 2022).........7, 8, 9

*United States v Swenson,* No. 13-cr-91, 2014 WL 2506300 (D. Idaho June 3, 2014) ...............8

*Waterboro*, 64 F.3d 752 (1st Cir. 1995) ........................................................................................6

**Statutes**

18 U.S.C. § 853(e)-(f).....................................................................................................................1

18 U.S.C. § 953(f)(1)(D).................................................................................................................7

18 U.S.C. § 983(f)...........................................................................................................................3

18 U.S.C. §§ 981........................................................................................................................3, 4

18 U.S.C. §§ 982(a)(2)(A) ..............................................................................................................4

21 U.S.C. § 853(e)(1)..................................................................................................................6, 7

**Other Authorities**

Stefan D. Casella, The Civil Asset Forfeiture Reform Act of 2000, 27 J. Legis. 97 (2001) .....3

Defendant Olivier Amar, by his counsel, and pursuant to 18 U.S.C. § 853(e)–(f), respectfully moves the Court for an order requiring the Government to exchange US $█████ in cash seized by forfeiture warrant dated April 14, 2023, for a US $█████ security interest in Mr. Amar's family home. By this motion, Mr. Amar proposes essentially a cost-neutral, equal-value exchange of property to enable Mr. Amar to live and support his family during the pendency of this case.

**PRELIMINARY STATEMENT**

For more than a year, J.P. Morgan Chase Bank's ("JPMC") and the Government's unproven allegations against Mr. Amar have significantly impeded Mr. Amar's ability to find gainful employment, earn a living, and support his family.[1] Before the filing of the complaint in this matter, JPMC terminated Mr. Amar and then filed a highly publicized civil lawsuit against him in December 2022, leading Mr. Amar's then-employer to force him to resign. The Government's indictment—which mirrored JPMC's lawsuit—followed in July 2023. Mr. Amar has been unable to secure a job since; he has even had an offer revoked on account of the pending charges against him.[2]

To make matters worse, months before the Government indicted Mr. Amar, it seized the overwhelming majority of his liquid assets, forcing him and his family to exhaust their savings, as well as funds provided through the generosity of their family and friends, simply to make ends meet. Mr. Amar has run out of rope and has no further means to meet his family's needs ███████████████████████████████████████ or satisfy his financial obligations.

---

[1] Mr. Amar's legal fees are indemnified and advanced. ███████████████████████████████████████████████████████████████████

1

To enable Mr. Amar to meet his financial obligations, Mr. Amar asked the Government merely to release cash from his seized bank account and substitute it with an interest in the equity in his home. There is plenty of equity to satisfy the Government's claims. The Government refused. Indeed, the Government provided absolutely no reason for its refusal other than citing to its general policy.

Respectfully, situations like these are why Court intervention is necessary. The law contemplates re-evaluation of what may seem a reasonable seizure in the first instance but then proves draconian in application to a particular defendant under specific circumstances. The Government's precautionary seizure is now depriving a presumed innocent man of his livelihood and concomitant ability to support his family during the pendency of the charges and civil lawsuits while a reasonable alternative is available to the Government. Mr. Amar has exhausted the options within his power and offered more than adequate (and in some instances, intrusive) security measures to assure the Government that there will be no improper dissipation of assets. The unfair prejudice here extends to the harm to Mr. Amar's wife and children, who themselves have not been accused of any involvement in the alleged offenses.

There is a simple resolution to Mr. Amar's situation that is cost-neutral to the Government, entirely permissible under the law, and allows Mr. Amar and his family to make ends meet as he prepares to put on a vigorous defense at trial. Specifically, Mr. Amar requested that the Government exchange $[redacted][3] of his seized assets for a security interest of equal value in his family home and offered to submit to measures to monitor how the exchanged funds are used (e.g. for living expenses and financial obligations only). The home has more than enough equity value to support this exchange and protect the Government's financial interest pending trial, and the exchange of cash for that interest in the property ensures that Mr.

---

[3] Mr. Amar's request is based on the trial proceeding as scheduled on October 28, 2024.

2

Amar can continue to pay the mortgage, thereby increasing the equity value of the property providing further assurance that the $[redacted] will not be dissipated.

Despite the lack of any prejudice to the Government in this equal exchange, the Government refused Mr. Amar's request. Instead, the Government recommended that Mr. Amar seek additional credit—a futile request (that was expectedly unsuccessful) given Mr. Amar's lack of income, the press surrounding JPMC's civil lawsuit, and pending charges. The Government's failure to engage with Mr. Amar's situation is placing undue, unnecessary pressure on Mr. Amar as he attempts to mount his defense and is clearly a leverage play. No person presumed innocent should be unnecessarily forced into such a predicament. This resolution is permitted under the law, wholly protects the Government's financial interests, and allows Mr. Amar and his family to meet their financial obligations while he prepares his defense.

In the interests of justice and fairness, Mr. Amar seeks an urgent exchange of assets so that he can access the means (at no cost to the Government) that will enable him to support his family and focus on his defense at trial.

## BACKGROUND

As the Court is aware, Mr. Amar has been indicted on fraud-based charges and intends to proceed to trial in October 2024. ECF No. 27 (July 12, 2023 superseding indictment). Prior to indictment, and without notice, on April 14, 2023, the Government seized [redacted][4] from Mr. Amar's Interactive Brokers ("IBKR") account. *Id*. at 7. The Government alleges in the indictment that these funds are subject to seizure and criminal forfeiture pursuant to 18 U.S.C. §§ 982(a)(2)(A) and 981(a)(1)(C). *Id*. at 7-8. This Motion follows the Government's denial of Mr. Amar's (reasonable) proposal relating to these seized assets—one that would

---

[4] As of March 1, 2024, the present portfolio value is USD [redacted]

3

allow his family access to living and other expenses while also protecting the Government's (and Mr. Amar's) interest in potentially forfeitable assets pending trial.

As further background, Mr. Amar has been unemployed since January 2023, when his then-employer forced him to resign because of J.M. Morgan Chase's ("JPMC") civil lawsuit (filed in December 2022) based on the same allegations that underlie the indictment. The charges against Mr. Amar (and the significant publicity this case has garnered) have made it extremely challenging for him to find gainful employment and earn an income. Most recently, Mr. Amar received a conditional employment offer for a sales position, but the employer rescinded the offer after Mr. Amar's background check revealed the pending charges in this matter. *See* Ex. A (email to Mr. Amar rescinding employment offer).

As a consequence of the civil lawsuit and the Government's pending charges, the financial situation for Mr. Amar and his family has worsened in spite of his publicly stated desire to demonstrate his innocence. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ is insufficient to satisfy the family's financial obligations. By virtue of the charges that have been levied against him, Mr. Amar and his wife are unable to pay their living expenses, monthly mortgage obligations, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ resolve outstanding debts, pay their property taxes, or satisfy tax obligations to the Internal Revenue Service. In short, they have exhausted their financial resources, as well as the generosity of their friends and families.

In December 2023, undersigned counsel proposed to the Government that it release funds from Mr. Amar's IBKR account to an escrow account controlled by undersigned counsel in exchange for a $▉▉▉▉ secured interest in Mr. Amar's ▉▉▉▉▉▉ family home ("▉▉▉▉ Property" or the "Property").[5]

---

[5] Undersigned counsel first made the request to the Government in late November 2023 and followed up via letter to the Government's Chief of the Money Laundering & Transnational Criminal Enterprises Unit on December 7, 2023.

Under the proposal, the Government maintains a protected financial interest because the ▮▮▮▮ Property has sufficient equity value—above and beyond the outstanding mortgage and the security interest posted to secure his bond—to cover the ▮▮▮▮ seized from Mr. Amar's IBKR account. The Property ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This is ***more than enough equity to exchange for the expenses Mr. Amar requires for his family to live until he proceeds to trial***, even when considering Mr. Amar's $1 million bond that the Property secures. ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Government denied Mr. Amar's request and recommended he apply for a home equity line of credit ("HELOC"). Mr. Amar ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Mr. Amar's financial situation continues to worsen, and he seeks relief from the Court in a measured way that wholly protects the Government's interest while at the same time allowing Mr. Amar to satisfy his financial and family obligations as he defends himself against the charges in the indictment.

**ARGUMENT**

This Court has discretion to consider the unjust hardship Mr. Amar (and his family) are suffering because of the Government's seizure of his IBKR account and its unwillingness to exchange that asset for one of equal value. Indeed, while not commonplace, courts recognize

---

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

that there are circumstances when a court can and should consider the "burdens of restraint" of a criminal forfeiture. *See United States v. Real Prop. in Waterboro*, 64 F.3d 752, 756 (1st Cir. 1995) (holding the court may consider "prudential arguments concerning the burdens of restraint").

If ever there were such circumstances, it is these. Mr. Amar is not seeking a wholesale release of seized assets. He is seeking an exchange of one asset for another of equal value and at no cost the Government. The cost-neutrality of the exchange for the Government stands in stark contrast to the consequences Mr. Amar and his family will suffer without it. The law allows this Court to exercise its discretion and grant Mr. Amar's requested relief under these harsh circumstances.

## I. Section 853 of the Criminal Forfeiture Statute Permits the Relief Mr. Amar Seeks.

By its terms, § 853(e)(1) of Title 21 states: "Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, **or take any other action** to preserve the availability of property described in subsection (a) for forfeiture under this section." 21 U.S.C. § 853(e)(1) (emphasis added). A court may do so, prior to the filing of an indictment where the court determines "there is a substantial probability that the United States will prevail on the issue of forfeiture **and** that failure to enter the order will result in the" property being unavailable **and** the need to preserve the property "**outweighs the hardship** on any party against whom the order is to be entered." *Id*. § 853(e)(1)(B)(i)-(ii) (emphasis added). Where there is a risk that an asset will not be available for forfeiture, a court shall issue a warrant authorizing seizure after determining there is probable cause to believe that the property would be subject to forfeiture upon conviction. *Id.* § 853(f). Thus, the pretrial seizure is precautionary.

Although § 853 "does not explicitly authorize reevaluation of a seizure" after the filing of an indictment, it also does not explicitly prohibit a court from doing so. *United States v.*

*Wolf*, No. 22-cr-137, 2022 WL 3585154, *2 (D. Minn. Aug. 22, 2022) (quoting R. & R. at 12, *United States v. Wolf*, No. 22-cr-137, ECF No. 27 (D. Minn. Aug. 12, 2022)). In other words, § 853 does not prohibit the Court from considering Mr. Amar's hardship post-seizure. The Court should not read such a prohibition into the law. Any "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Bass*, 404 U.S. 336, 347 (1971) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). It is of no moment that the criminal forfeiture statute does not contain an explicit hardship release provision corresponding to the civil forfeiture statute.[7] Mr. Amar is not seeking a "release" of seized property—he is seeking a dollar-for-dollar exchange.

## II. The Government's Financial Interest Would Be Protected By a Security Interest in the ▮▮▮▮▮▮ Property.

To start, the purpose of a pre-indictment seizure is to ensure assets potentially subject to criminal forfeiture are not dissipated pending resolution of the matter. *See* Asset Forfeiture Policy Manual, Ch. 2, III. A (providing that criminal forfeiture is *in personam* and therefore the Government need not actually seize an asset subject to criminal forfeiture but often does so to avoid dissipation pending trial). The Government's use of § 853 is not without limits. Though the Government may restrain or seize forfeitable assets prior to conviction, it may only do so "if it appears that the defendant may otherwise transfer or conceal those assets by the time of conviction." *United States v Swenson,* No. 13-cr-91, 2014 WL 2506300, at *3 (D. Idaho June 3, 2014). "Thus, pretrial restraint depends upon both a showing of probable cause and that the restraint of the forfeitable property is necessary to ensure its availability." R. & R.

---

[7] 18 U.S.C. § 983(f)(1)(D) (requiring immediate release of seized property on the basis of hardship where other criteria are satisfied); *see United States v. Egan*, No. 10 Cr. 191 (JFK), 2010 WL 3258085, *2 n.1 (S.D.N.Y. Aug. 16, 2010) (rejecting an argument that 18 U.S.C. § 983(f) provided for the return of third parties' seized property because of their hardship on the ground that § 983(f) governs civil forfeiture proceedings and the property at issue was subject to criminal forfeiture). *Egan* and other cases disclaiming the applicability of § 983(f)(1)(D) are also inapplicable because Mr. Amar is, again, not seeking the unencumbered release or return or seized assets.

7

at 9, *United States v. Wolf*, No. 22-cr-137, ECF No. 27 (D. Minn. Aug. 12, 2022). Here, Mr. Amar is not proposing an unencumbered release of assets that will then be dissipated. He is proposing the *exchange* of part of one asset (some of the funds in his IBKR account) for another asset of equal value (a secured interest in the ▮▮▮▮ Property for the *exact* amount that is released). In *Wolf*, a district court adopted a magistrate judge's recommendation that the Government temporarily release an asset to a defendant where a protective order would preserve the continued availability of the asset (and thus, the Government's interest was protected pending trial). *Wolf*, 2022 WL 3585154, at *5-6. Here, Mr. Amar is offering to provide a security interest in the ▮▮▮▮ Property for the same purpose: to protect the Government's interest pending trial.

Not only would the Government's financial interest be protected via a security instrument, but the ▮▮▮▮ Property cannot be concealed and is not easily sold. *See* R. & R. at 6, *United States v. Wolf*, No. 22-cr-137, ECF No. 27 (D. Minn. Aug. 12, 2022) (allowing temporary use of forfeited assets because the assets are "not a boat or car (or even a small truck) that is inherently mobile or easily sold"). To the contrary, Mr. Amar has every incentive to maintain the Property: it secures his bond pending trial and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ Indeed, Mr. Amar would be using the IBKR funds, in part, to pay the mortgage, taxes, and insurance on the Property, thereby preserving its value and actually increasing the equity value of the Property by continuing to reduce the outstanding mortgage on a monthly basis.[8] This guarantees that the Property will be "available for forfeiture," and actually inures

---

[8] Mr. Amar is amenable to having the IBKR funds placed in an escrow account controlled by his counsel and having distributions made to him for living expenses and financial expenses, to ameliorate any concern that Mr. Amar would dissipate the IBKR funds for alternative purposes. If further comfort is required, counsel also could provide periodic reports to the Government and/or the Court regarding the disbursement and use of funds over a threshold amount.

8

to the Government's financial benefit by maintaining the Property's value should the Government obtain a conviction. *See Wolf,* 2022 WL 3585154, at *3.

### III. Mr. Amar and His Family Face Financial Hardship in the Absence of the Requested Relief.

Mr. Amar and his family cannot meet their financial obligations without this Court's intervention. Such a consequence—before any adjudication of guilt—is not just in the face of a reasonable alternative. Mr. Amar's hardship warrants re-evaluation of the nature of the seized assets, particularly given that the Government will have a fully protected financial interest. Mr. Amar and his wife have exhausted their savings and the generosity of their family and friends.[9] Mrs. Amar's salary is insufficient to cover the family's living expenses and satisfy their financial obligations. The Amars soon will be delinquent on various liabilities, including their mortgage, property tax payments, and tax payments to the Internal Revenue Service, to name just a few. If Mr. Amar's financial situation is not remedied, he will be unable to pay the mortgage, taxes, and upkeep on the ▮▮▮▮▮▮ Property.

Mr. Amar stands convicted of no crime that would warrant such a draconian application of the law. His assets have not been forfeited. Yet Mr. Amar is nine months from trial, and he has no realistic avenue to make ends meet. He intends to vigorously defend his case and throughout has professed his innocence of the crimes with which he is charged. It is unreasonable and unjust to force Mr. Amar and his family deeper into financial hardship in the

---

[9] Mr. Amar has approximately ▮▮▮▮▮▮ invested for retirement in Israel, as well as approximately ▮▮▮▮ invested that he has intended to use to pay for his children's educations. Not only would he have to pay a significant penalty if he were to withdraw the retirement funds early, but also the amount remaining after the penalty would be insufficient to cover his living expenses and financial obligations until trial. Further, it would be a manifest injustice for Mr. Amar to pay a heaping penalty that he would not have to pay absent the seizure order or to spend his children's educational savings before any determination of guilt has been made where there are sufficient assets available to accomplish the Government's interests.

9

face of a simple and reasonable solution that is permitted under the law, particularly where—as here—there is little to no harm to the Government.

## CONCLUSION

Mr. Amar respectfully requests the Court intervene and order the Government to exchange $▓▓▓▓ in funds seized from Mr. Amar's IBKR account for a $▓▓▓▓ security interest in the ▓▓▓▓ Property.

Dated: March 1, 2024

Respectfully submitted,

*/s/ Sean S. Buckley*
Sean S. Buckley
Steven G. Kobre
Evelyn Sheehan
KOBRE & KIM LLP
800 Third Ave
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Sean.Buckley@kobrekim.com
Steven.Kobre@kobrekim.com

Sydney S. Johnson (pro hac vice)
KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
Telephone: (202) 664-1900
Facsimile: (202) 664-1920
Sydney.Johnson@kobrekim.com

*Counsel for Defendant Olivier Amar*

10