UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

UNITED STATES OF AMERICA,

    v.

CHARLIE JAVICE and OLIVIER AMAR,

    Defendants.

23 Cr. 251 (AKH)

---------------------------------------------------------x

**DEFENDANT OLIVIER AMAR'S REPLY IN SUPPORT OF
MOTION FOR THE EXCHANGE OF SEIZED PROPERTY**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1
BACKGROUND .............................................................................................................................2
ARGUMENT ...................................................................................................................................3
    I.    The Court Has Discretionary Authority to Grant Mr. Amar's Requested Relief and the Government Has Not Cited a Single Authority that Requires a Different Result .................4
    II.   Mr. Amar's Requested Relief Is Justified in These Circumstances:  It is Cost Neutral, and Without It He and His Family Will Suffer Significant Hardship ...................................6
        A.   Mr. Amar's Hardship Justifies Reevaluating the Seizure ..........................................6
        B.   The Exchange Is Cost Neutral ...................................................................................7
    III.   The Government's Argument that Mr. Amar's Proposal Risks Dissipating Funds that Belong to a Victim Is Premature and Meritless .............................................................9
CONCLUSION ..............................................................................................................................10

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                        **Page(s)**

*CompuCredit Corp. v. Greenwood*,
   565 U.S. 95, 132 S. Ct. 665, 181 L. Ed. 2d 586 (2012) ..........................................................5

*First Pac. Bancorp, Inc. v. Helfer*,
   224 F.3d 1117 (9th Cir. 2000) ...............................................................................................5

*United States v. Browne*,
   505 F.3d 1229 (11th Cir. 2007) .............................................................................................9

*United States v. Navarette*,
   667 F.3d 886 (7th Cir. 2012) .................................................................................................9

*United States v. Wolf*,
   2022 WL 3585154 (D. Minn. Aug. 22, 2022) ..............................................................*Passim*

**Statutes**

21 U.S.C. § 853(e)(1)(B) .................................................................................................................4

21 U.S.C § 853 ................................................................................................................................4

Defendant Olivier Amar files this reply brief in support of his Motion for the Exchange of Seized Property, dated March 1, 2024 (the "Motion"). ECF No. 100.

## PRELIMINARY STATEMENT

Mr. Amar's request is reasonable and just: the Government should be required to exchange US $█████ from Mr. Amar's seized investment account for a security interest of *equal value*, and fully secured, in the equity of his family home (the "Property"), the net value of which equity far exceeds the $█████ he seeks in exchange. The sole purpose of Mr. Amar's request is to enable him to support himself and his family, ██████████████, while he continues to vigorously defend himself against the charges in this case. The Government's attempt to recast Mr. Amar's request as an "unprecedented" attempt to "further dissipate crime proceeds" in order to live a "lavish" lifestyle is a disingenuous mischaracterization of Mr. Amar's intent and is simply not true. The Government's opposition seeks to distract from the simple reality, of which the Government is well aware, that Mr. Amar needs to fund his family's basic needs during the pendency of his case. Its refusal to agree to an equal asset exchange is forcing Mr. Amar into an untenable position where his interest in continuing to pursue his defense in this action is in direct contradiction with the ability of his family to make basic ends meet.

Mr. Amar is presumed innocent and no person presumed innocent should be unnecessarily forced into such a position, especially in the face of a clear and just alternative, as Mr. Amar proposes here. Mr. Amar's request for an equal value asset exchange is supported by case law and equities and would enable him and his family to meet their basic financial obligations during the pendency of Mr. Amar's case while more than protecting the Government's financial interests in a potential judgment of forfeiture *if* Mr. Amar is convicted after trial. Yet the Government refuses.

The Government's opposition to Mr. Amar's requested relief is premised on three flawed arguments: (1) the Court is without the authority to grant Mr. Amar's request; (2) Mr. Amar's request is not cost neutral; and (3) the Interactive Brokers ("IBKR") account already belongs to a purported "victim," one of the largest, most sophisticated banking institutions in the world, J.P. Morgan Chase Bank ("JPMC"). None of these arguments are true as a matter of law or fact. More importantly, they ignore Mr. Amar's fundamental request that the Court exercise its discretion in the interest of justice and fairness to ensure that Mr. Amar, a man presumed innocent, and his family, all unquestionably innocent, can continue to afford basic day-to-day expenses while Mr. Amar fights to demonstrate his innocence in this case. Not only is there sound legal support for this request, which the Government largely ignores in its opposition, but both the equities and facts demonstrate that this is, indeed, cost neutral, with the Government bearing only incidental risk, if any at all. Relatedly, although the Government contends that the IBKR funds already belong to a "victim," there has been no adjudication of Mr. Amar's guilt or that there is any victim here to begin with.

## BACKGROUND

The Court is well-versed in the facts of this action, which were also briefed in Mr. Amar's Motion, ECF No. 100 at 3–5, so Mr. Amar only recites the facts most central to his current request. And those facts are clear. The Government seized Mr. Amar's IBKR account on April 14, 2023, currently valued at approximately $█████, almost one year ago and months prior to his indictment. *See* Superseding Indictment at 5–6, ECF No. 27 (July 12, 2023). Mr. Amar seeks access to only a fraction █████████ of these funds in his proposed exchange of $██████ in funds from his IBKR account for a $██████ secured interest in the Property. The sole purpose of this asset exchange is to enable Mr. Amar to afford his family's basic expenses, including paying everyday living expenses for himself, his wife, █████ ████████████████████████████████████, the mortgage, taxes, and insurance on the

2

Property, and tax obligations to the Internal Revenue Service. There is nothing "lavish" about these expenses, and the Government's mischaracterization of Mr. Amar's intent is as disingenuous as it is untrue.[1]

Even though simple math makes clear that there is more than sufficient net equity in the Property for this $▮▮▮▮ asset exchange (by even the Government's own math),[2] the Government rejected Mr. Amar's proposal out of hand, necessitating that Mr. Amar seek relief from this Court to allow his family to meet their basic financial obligations during the pendency of his case at essentially no risk to the Government's interests in Mr. Amar's assets.

## ARGUMENT

As noted, the Government's arguments in opposition to Mr. Amar's are: (1) the Court lacks the authority to grant Mr. Amar's requested relief; (2) the exchange is not cost neutral (*i.e.*, not equal); and (3) the funds belong to a "victim": JPMC. These arguments are meritless, and none requires a denial of the just relief Mr. Amar seeks here.

---

[1] The Government's mischaracterizations do not stop there. It also makes bold misstatements of fact when describing Mr. Amar's alleged role in the conduct at issue (as it has his purpose for seeking this relief), including alleging that Mr. Amar provided data to JPMC—which he unquestionably did not. *See* ECF No. 110 at 3. While Mr. Amar vehemently disagrees with numerous "facts" asserted in the Government's opposition, the facts to which the Government cites do not bear upon Mr. Amar's request—indeed, he has not challenged probable cause for the seizure of his IBKR account. Accordingly, Mr. Amar will not spend time here refuting each and every misstatement of fact made by the Government and instead will aggressively dispute them at the appropriate time and procedural posture.

[2] The Property has an appraised value ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* ECF No. 100 at 5. Even after accounting for the $1 million bond that the Property secures and his wife's 50% interest in the Property, there is more than sufficient equity remaining in the Property for this $▮▮▮▮ exchange.

3

**I.      The Court Has Discretionary Authority to Grant Mr. Amar's Requested Relief and the Government Has Not Cited a Single Authority that Requires a Different Result**

Despite the Government's unsupported assertions to the contrary, this Court has the discretionary authority to order the exchange of part of one asset (funds in the IBKR account) for a secured interest in another asset (the Property), particularly in this instance when the equities, ends of justice, and practical considerations all strongly support such relief.

The Government's focus on which subsection of Title 21, United States Code, Section 853 requires the Court to grant the relief Mr. Amar seeks misses the point. The crux of Mr. Amar's argument is not that this Court is *required* to do anything under any subsection of Section 853, but rather that the Court has the discretion to grant this type of asset exchange under appropriate circumstances, which are amply presented by this case. The court in *United States v. Wolf* did just that, expressly holding that although "§ 853 does not explicitly authorize reevaluation of a seizure," it "includes nothing that bars it." *United States v. Wolf*, No. 22-cr-137-(KMM/DTS), 2022 WL 3585154, *2 (D. Minn. Aug. 22, 2022) (internal quotations and citation omitted).

The court in *Wolf* relied on the very same statutory provision that Mr. Amar identifies here to allow such a reevaluation of a pre-indictment seizure of an asset (here, the IBKR account), even after a subsequent indictment. And the *Wolf* court considered the defendant's request under the same posture presented here: Wolf's property was seized prior to his indictment and then subsequently included in the forfeiture allegations in his indictment. *Id.* at *1. The district court adopted the magistrate judge's Report and Recommendation, holding that 21 U.S.C. § 853(e)(1)(B) allows a court to reevaluate a pre-indictment seizure on the basis of hardship. *Id.* at *2.

The district court also rejected many of the same objections the Government raises here, including that the court lacked the authority to issue such relief. *See* United States' Suppl. Br.

4

in Opp'n. to Def.'s Mot. for Pre-Trial Return of Property ("Suppl. Opp'n") at 2–3, *United States v. Wolf*, No. 22-cr-137-(KMM/DTS), ECF No. 26 (Aug. 8, 2022). The court, in rejecting the Government's objections, expressly held that "the government can point to no express prohibition on the consideration of the hardship created by a seizure. . . ." *Wolf*, 2022 WL 3585154 at *2. The same is true here: the Government has not pointed to a single authority prohibiting Mr. Amar's requested relief. Instead, the Government relies on *the absence* of an express provision in the criminal forfeiture statute allowing the court to consider Mr. Amar's hardship. But the fact that Congress is silent as to this Court's authority to grant such relief does not preclude the Court from doing so.[3] In fact, the court in *Wolf* rejected the exact same argument by the Government, and this Court should do the same. *See Wolf*, 2022 WL 3585154 at *2 (rejecting the Government's argument that granting Wolf's requested relief would effectively create a hardship exception in criminal forfeiture statutes where no such exception is permitted, in contrast to the civil forfeiture statue); *see also* United States' Obj. to the R. & R. at 3–4, *United States v. Wolf*, No. 22-cr-137-(KMM/DTS), ECF No. 31 (Aug. 17, 2022) (setting forth this same argument). Indeed, the Government's argument cuts both ways and therefore does not support a different result. While Congress could have required the Court to consider hardship, it did not. But Congress reasonably could have precluded consideration of hardship, and it did not. That silence leaves intact the Court's discretion.

      Finally, the Government claims that the only way Mr. Amar would conceivably be able to access the seized funds is if he were seeking the funds to pay for legal counsel. ECF No. 110 at 7. But Mr. Amar is not requesting carte blanche return of the funds. He is seeking an

---

[3] *See e.g.*, *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1124 (9th Cir. 2000) ("The absence of a statement of [Congressional] intent to create a remedy does not necessarily mean that no remedy is available."); *see also CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 103, 132 S. Ct. 665, 672, 181 L. Ed. 2d 586 (2012) (holding that the Credit Repair Organizations Act ("CROA") did not preclude enforcement of an arbitration agreement in a lawsuit alleging violations of the CROA "[b]ecause the CROA is silent on whether claims under the Act can proceed in an arbitrable forum").

*exchange* of part of one asset for another—a request not implicated, much less foreclosed, by the jurisprudence concerning an individual's right to access seized funds to pay for legal counsel. Indeed, the Court in *Wolf* rejected the exact same argument by the Government. *See* United States' Resp. in Opp'n to Def.'s Mot. for Pre-Trial Return of Property at 10–13, *United States v. Wolf*, No. 22-cr-137-(KMM/DTS), ECF No. 19 (July 28, 2022). There, Wolf sought temporary use of a seized asset, not a wholesale return of the asset, which the Court allowed despite the Government's argument that Wolf's failure to "assert that the funds are needed to hire counsel" was "fatal" to his request. *See id.* at 12–13. Notwithstanding the foregoing, Mr. Amar is amenable to (and has offered on numerous occasions) providing the Government with the same detailed financial information required of defendants in *Monsanto* proceedings. He has further agreed to the intrusive step of having his counsel retain and release funds, as needed, for authorized living expenses.

In short, the Government has no legal basis to support its claim that this Court lacks the authority to grant the requested relief.

> II. **Mr. Amar's Requested Relief Is Justified in These Circumstances: It is Cost Neutral, and Without It He and His Family Will Suffer Significant Hardship**

A. Mr. Amar's Hardship Justifies Reevaluating the Seizure

Mr. Amar cannot support his family or meet his financial obligations without this asset exchange. Yet the Government criticizes Mr. Amar for seeking this exchange "all while continuing to live in a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" ECF No. 110 at 1. This is a hollow and crude position. The funds from this exchange will be used only to pay for basic necessities, like food for him and his family, as well as expenses necessary to preserve the very asset that the Government threatens to seize in the event of a conviction and entry of an order of forfeiture, neither of which is a *fait accompli* in this matter. Further, the Government knows full well that Mr. Amar

has no other practical options at his disposal. *See* ECF No. 100 at 9 & n.9. He has been unsuccessful in obtaining a home equity line of credit, as the Government originally suggested. *Id.* at 5. And he cannot sell the Property because it secures his bond and is subject to other attachments, including his outstanding mortgage and a lien placed by his contractor (which itself is a direct result of the Court's pre-indictment seizure of the IBKR account), and he has no asset to substitute for that security. Nor should he be forced to sell his family home—he is presumed innocent and is mere months away from trial where he intends to establish that innocence.

There is no justice in making Mr. Amar (who is presumed innocent) and his wife ▮ ▮ (who are unquestionably innocent) spiral further into financial ruin absent a conviction and in the face of an alternative that, as explained below, results in no harm to the Government.

B. The Exchange Is Cost Neutral

The Government engages in mental gymnastics to argue that $▮ does not equal $▮. But the reality is Mr. Amar's proposal is to exchange one asset valued at $▮ (IBKR funds) for another asset also valued at $▮ (secured interest in the Property). Even accepting the Government's math and making all of the deductions it noted in its opposition, there is more than sufficient equity in the Property to cover this asset exchange. Starting with the Property's appraisal value of ▮ ▮, and less the $1 million bond the Property secures still leaves ▮—this is more than enough to cover the $▮ security interest, even if the equity is to be split between Mr. Amar and his wife.

The Government's claims of unidentified risks or costs associated with having a secured interest in the Property are confusing and meritless. *First*, there is no risk because the Property's value far exceeds $▮ and, in the event the Property is sold for significantly less (which seems unlikely in today's housing market), Mr. Amar, not the Government, bears

7

that risk.  *Second*, the Government regularly seizes and sells real property as part of asset forfeiture.[4]  It is not unique or complicated.  *Third*, there is no reason the Government needs to take on any expense related to the sale of the Property, should a sale be determined to be necessary down the road.  *Fourth*, and perhaps most importantly, incidental risks or costs associated with selling the Property—should such a sale be required later—are not a basis to deny remedying a fundamentally unfair seizure of Mr. Amar's only available asset so that he can support his family and focus on his defense.  Indeed, in *Wolf*, the court was unpersuaded by the Government's contentions that releasing the defendant's property to him would impose additional costs (transportation costs, maintenance costs, and potential reduction in value) on the Government that it would not be able to recoup.  *See* Suppl. Opp'n at 4–6, *United States v. Wolf*, No. 22-cr-137-(KMM/DTS), ECF No. 26 (Aug. 8, 2022).  The court granted the relief anyway, because those incidental costs did not outweigh the need for justice.  Here, not only is Mr. Amar providing the Government with a substitute asset of equal value, but he is amenable to agreeing to additional measures to mitigate the risk of the Government incurring any incidental costs.[5]

Lastly, the Government contends that "the Government's security in the Property would not . . . have the effect intended by statute of preserving the availability of the Property for eventual forfeiture."  ECF No. 110 at 11.  But the exact opposite is true.  The asset exchange is the only way to preserve the availability of the Property for eventual forfeiture (if forfeiture

---

[4] *See, e.g.,* Department of Justice, *Assets Forfeiture Fund and Seized Asset Deposit Fund Method of Disposition of Forfeited Property*, Department of Justice (Fiscal Year 2023), www.justice.gov/d9/2024-01/report5_fy2023.pdf (illustrating that the Government sold or liquidated 184 real properties, valued at nearly $85.5 million, in fiscal year 2023).

[5] The Government is receiving even more protection from incidental costs here than it received in *Wolf*, where the defendant "offered no bond, no payment, and no other security to mitigate the [identified] risks or cover the government's potential loss," where the Court even still granted the relief.  *See* Suppl. Opp'n at 4, *United States v. Wolf*, No. 22-cr-137-(KMM/DTS), ECF No. 26 (August 8, 2022).

is deemed appropriate). Mr. Amar has been unemployed for over a year, not by choice but because the negative media attention generated by this action and related actions has significantly impeded his ability to find a new job. Moreover, he is unable to take out further loans on this Property for the same reasons. Without this asset exchange, Mr. Amar and his wife will be unable to pay the Property's mortgage (which, if paid, reduces the principal and increases the Property's equity value each month), taxes, insurance, and upkeep, thereby causing the Property to depreciate further.

### III. The Government's Argument that Mr. Amar's Proposal Risks Dissipating Funds that Belong to a Victim Is Premature and Meritless

The Government's opposition relies heavily on its assertion that the IBKR account somehow "belongs to a victim," which in this case is one of the largest and most sophisticated banking institutions in the world: JPMC. ECF No. 110 at 1, 6, 9–12. The Government claims that this asset swap would somehow enable Mr. Amar to dissipate "victim's" (*i.e.*, JPMC) funds.[6] But the Government's position puts the cart before the horse to the extreme prejudice of Mr. Amar (and his family). Mr. Amar has not been found guilty of any of the charges and is presumed innocent. The account belongs to *him*. It has been seized for potential forfeiture *if and only if* he is convicted. There has been no finding that any of his seized assets belong to JPMC, nor has the Court found there to be any victim at all. Further, this argument confuses restitution and forfeiture, two distinct concepts with different goals. *See United States v. Navarette*, 667 F.3d 886, 887–88 (7th Cir. 2012) (holding that forfeiture measures gain to the defendant and restitution measures loss to the victim); *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007) (holding that forfeiture forces the defendant to disgorge the proceeds of the offense as punishment, whereas restitution focuses on the victim).

---

[6] Mr. Amar has not dissipated any funds that may – in the future and only if he is convicted – be forfeited.

9

While the IBKR account has been seized for potential future forfeiture to the Government, there is no guarantee that the Government will use its discretion to "recommend that forfeited funds, like the IKBR Account, can be applied to the defendant's restitution obligations." ECF No. 110 at 12. In fact, any representation by the Government that it will do so is improper. *See* Dept. of Justice, Crim. Division, *Asset Forfeiture Policy Manual* (2023), Chap. 14, Sec. II (B) ("[U]nder no circumstances should the criminal AUSA make representations to a defendant or the court that forfeited funds will be used to satisfy restitution through the restoration process.").

## CONCLUSION

For these reasons, and those set forth in his opening memorandum, Mr. Amar respectfully requests the Court use its discretionary authority to intervene and order the Government to exchange $■■■ in funds seized from Mr. Amar's IBKR account for a $■■■ security interest in the Property.

Dated: March 29, 2024

Respectfully submitted,

*/s/ Sean S. Buckley*
Sean S. Buckley
Steven G. Kobre
Evelyn Sheehan
KOBRE & KIM LLP
800 Third Ave
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Sean.Buckley@kobrekim.com
Steven.Kobre@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Sydney S. Johnson (pro hac vice)
KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036

10

Telephone: (202) 664-1900
Facsimile: (202) 664-1920
Sydney.Johnson@kobrekim.com

*Counsel for Defendant Olivier Amar*