UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

CHARLIE JAVICE and OLIVIER AMAR,

Defendants.

Case No.: 1:23-cr-00251-AKH

---

**DEFENDANT CHARLIE JAVICE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SUPERSEDING INDICTMENT (ECF 27) OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS**

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

Alex Spiro
Samuel P. Nitze
Sarah Heaton Concannon
Maaren A. Shah
JP Kernisan
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
alexspiro@quinnemanuel.com
samuelnitze@quinnemanuel.com
sarahconcannon@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

*Attorneys for Defendant Charlie Javice*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT ...................................................................................................................................2

I.   THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF SPECIFICITY
     AND FAILURE TO ALLEGE ESSENTIAL ELEMENTS .................................................2

     A.   The Indictment Fails to Allege Facts Sufficient to Put Ms. Javice on
          Notice of the Nature of the Charged Frauds ...........................................................2

     B.   The Indictment Fails to Allege Bank Fraud.............................................................6

     C.   The Indictment Should be Dismissed for Failure to Allege Materiality.................7

II.  COUNT THREE OF THE INDICTMENT SHOULD BE DISMISSED AS
     IMPERMISSIBLY DUPLICITOUS ...................................................................................9

III. TO THE EXTENT THE COURT DENIES MS. JAVICE'S MOTION TO
     DISMISS AS TO ANY COUNT, IT SHOULD ORDER THE GOVERNMENT
     TO PROVIDE A BILL OF PARTICULARS.....................................................................12

     A.   Identities of Unindicted Co-Conspirators Should be Disclosed (Request 1).........14

     B.   Details Sufficient to Identify the Alleged Misrepresentations Should be
          Disclosed (Request 2) ...........................................................................................16

     C.   Disclosure of Targets of the Alleged Fraud is Appropriate (Requests 3–4)..........19

CONCLUSION..............................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*BankAmerica Corp. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  596 F.2d 1368 (9th Cir. 1979) ................................................................7

*Black v. Walker*,
  2000 WL 461106 (W.D.N.Y. Apr. 14, 2000) .......................................11

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018).......................................15

*Costello v. United States*,
  350 U.S. 359 (1956)..................................................................................3

*Luoghrin v. United States*,
  573 U.S. 351 (2014)..................................................................................7

*Nat'l Courier Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*,
  516 F.2d 1229 (D.C. Cir. 1975) ...............................................................7

*Neder v. United States*,
  527 U.S. 1 (1999)......................................................................................8

*Pitts v. People*,
  2001 WL 410077 (S.D.N.Y. Apr. 23, 2001)............................................4

*Russell v. United States*,
  369 U.S. 749 (1962), *modif'd on other grounds*, 439 F.2d 1198 (2d Cir. 1970)................4, 19

*United States v. Aracri*,
  968 F.2d 1512 (2d Cir. 1992).................................................................11

*United States v. Bin Laden*,
  92 F. Supp. 2d 225 (S.D.N.Y. 2000), *aff'd*, 552 F.3d 93 (2d Cir. 2008) ..........................13, 18

*United States v. Bortnovsky*,
  820 F.2d 572 (2d Cir. 1987)..................................................13, 17, 18

*United States v. Bouchard*,
  828 F.3d 116 (2d Cir. 2016)....................................................................7

*United States v. Calderon*,
  944 F.3d 72 (2d Cir. 2019)..................................................................4, 18

*United States v. Chase*,
2005 WL 3288731 (D. Vt. Nov. 30, 2005) ............................................................9

*United States v. Chime*,
2011 WL 3420717 (N.D. Ohio Aug. 4, 2011) ....................................................8, 9

*United States v. Cordones*,
2022 WL 815229 (S.D.N.Y. Mar. 17, 2022) ........................................................14

*United States v. Davis*,
471 F.3d 783 (7th Cir. 2006) ...............................................................................11

*United States v. Dove*,
884 F.3d 138 (2d Cir. 2018).................................................................................15

*United States v. Elbaz*,
332 F. Supp. 3d 960 (D. Md. 2018), *aff'd*, 39 F.4th 214 (4th Cir. 2022),
*opinion vacated on other grounds and superseded on reh'g*, 52 F.4th 593
(4th Cir. 2022)......................................................................................................19

*United States v. Fea*,
2011 WL 2119708 (S.D.N.Y. May 24, 2011) ......................................................20

*United States v. Ikoli*,
2017 WL 396681 (S.D.N.Y. Jan. 26, 2017) .........................................................17

*United States v. Kahale*,
789 F. Supp. 2d 359 (E.D.N.Y. 2009) ..................................................................18

*United States v. Klein*,
216 F. App'x 84 (2d Cir. 2007) ........................................................................8, 9

*United States v. Klein*,
476 F.3d 111 (2d Cir. 2007).................................................................................8

*United States v. Lino*,
2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) ..............................................................16

*United States v. Margiotta*,
646 F.2d 729 (2d Cir. 1981)...........................................................................10, 11

*United States v. McDermott*,
245 F.3d 133 (2d Cir. 2001).................................................................................11

*United States v. Murray*,
618 F.2d 892 (2d Cir. 1980).................................................................................12

*United States v. Nachamie*,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000)................................................................15

*United States v. Neder*,
    136 F.3d 1459 (11th Cir. 1998), *aff'd in part, rev'd in part*, 527 U.S. 1 (1999) ......................8

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000)................................................................3

*United States v. Pulliam*,
    2023 WL 8456105 (D. Conn. Dec. 6, 2023)................................................................13

*United States v. Ray*,
    2021 WL 3168250 (S.D.N.Y. July 27, 2021) ................................................................16

*United States v. Rittweger*,
    259 F. Supp. 2d 275 (S.D.N.Y. 2003)................................................................20

*United States v. Rothberg*,
    480 F.2d 534 (2d Cir. 1973)................................................................6

*United States v. Savin*,
    2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ................................................................13

*United States v. Silverman*,
    430 F.2d 106 (2d Cir. 1970)................................................................4

*United States v. Stavroulakis*,
    952 F.2d 686 (2d Cir. 1992)................................................................6, 12

*United States v. Trie*,
    21 F. Supp. 2d 7 (D.D.C. 1998)................................................................19

*United States v. Tutino*,
    883 F.2d 1125 (2d Cir. 1989)................................................................11

*United States v. Ulloa*,
    2011 WL 13128610 (N.D.N.Y. May 13, 2011), *aff'd*, 511 F. App'x 105 (2d Cir. 2013) ................................................................4

*United States v. Urso*,
    369 F. Supp. 2d 254 (E.D.N.Y. 2005) ................................................................13

*United States v. Valle*,
    807 F.3d 508 (2d Cir. 2015)................................................................6

*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999)................................................................3

*United States v. Williams*,
934 F.3d 1122 (10th Cir. 2019) ...............................................................18

*United States v. Zeidman*,
540 F.2d 314 (7th Cir. 1976) ...................................................................11

## **Statutes and Rules**

18 U.S.C. § 1341 ........................................................................................7

18 U.S.C. § 1343 ........................................................................................7

18 U.S.C. § 1344 .....................................................................................7, 10

Bank Holding Company Act........................................................................7

Federal Rule of Criminal Procedure 7 .......................................................3

## **Other Authorities**

Lina M. Khan, *The Separation of Platforms and Commerce*,
119 Colum. L. Rev. 973 (2019) ...............................................................7

S. Rep. No. 225, 98th Cong., 379 (1984) ..................................................6

S. Rep. No. 1084, 91st Cong., 2d Sess. 12 (1970).....................................7

## **Constitutional Provisions**

U.S. Const. amend. V...................................................................................2

U.S. Const. amend. VI .................................................................................2

Defendant Charlie Javice respectfully submits this Reply Memorandum of Law in support of her Motion to Dismiss the Superseding Indictment (ECF 27, the "Indictment") or in the Alternative for a Bill of Particulars. ECF 114 ("Mot.").

## PRELIMINARY STATEMENT

In an effort to cure the glaring deficiencies in its Indictment, the government points to the voluminous—and, somehow, ongoing—discovery productions in this case, leaving it to Ms. Javice to divine particulars from a mass of ***millions of pages*** of documents produced from the files of dozens of entities and individuals. The law and basic fairness require more. Ms. Javice is entitled to an Indictment that provides meaningful, intelligible notice of the essential facts of the charged schemes. That Ms. Javice and Olivier Amar (together, "Defendants") may have "large, well-resourced, and sophisticated legal teams," ECF 122 ("Opp.") at 30, is beside the point, and obviously so. Worse, during conferrals on this motion, the government identified ***nearly 80*** different entities as alleged victims but even then refused to confirm the list as final or complete. In its opposition brief, the government describes the document that references the dozens of potential victim entities as "very well-organized," but Ms. Javice does not seek tidiness, she seeks clarity in the form of basic, constitutionally-required information essential to the preparation of her defense. It seems the government's current position is that Defendants must prepare to defend themselves against charges that they defrauded dozens of entities—a scope of alleged conduct not even hinted at in the Indictment, the discovery, or the government's statements to the Court—and must continue to do so without particulars as to when, how, or through which statements or omissions they are alleged to have committed fraud. This lack of specificity warrants dismissal of the pending charges.

None of the government's other arguments save the Indictment. *First*, the government cannot downplay the stated purpose and congressional intent of the bank fraud statute as an

irrelevant "policy argument." There is no dispute Congress intended that a federally insured bank must be the target of the scheme, or that the statute was enacted to ensure the integrity of the nation's banking system. The sale of Ms. Javice's college resource company to a host of potential acquirors—some banks, some not—has nothing to do with and does not further these statutory goals. *Second*, the government concedes that the Indictment does not describe which of the alleged misstatements were material or why, and instead claims materiality can be "inferred." But the Indictment does not even identify the allegedly fraudulent statements—or any other non-conclusory facts regarding the charged scheme—from which that inference could possibly be drawn. *Third*, the government's claim that Count Three charges a "single scheme" to defraud, and therefore is not duplicitous, is irreconcilable with the dozens of victims it has identified, many of which are not banks and thus could not have been victimized by a purported bank fraud scheme. *Finally*, even if the government could clear those hurdles, it does not credibly explain why a bill of particulars would be improper here beyond citing its voluminous document productions. That is no basis to deny Ms. Javice fundamental information about the charges against her.

The Indictment is invalid, and Ms. Javice's motion should be granted. In the alternative, the Court should order the government to provide a bill of particulars.

## ARGUMENT

I. **THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF SPECIFICITY AND FAILURE TO ALLEGE ESSENTIAL ELEMENTS**

A. **The Indictment Fails to Allege Facts Sufficient to Put Ms. Javice on Notice of the Nature of the Charged Frauds**

The government does not credibly explain how the Indictment satisfies the fundamental notice requirements mandated by the Fifth and Sixth Amendments and Federal Rules of Criminal Procedure.

The gist of the government's argument is that the Indictment is proper because it uses legal jargon like "false and fraudulent statements" (without describing any actual statements) and references "potential acquiring companies" (only one of which is identified in the Indictment by name). *See* Opp. at 8–9. But reciting the Indictment's conclusory language and declaring that it "fairly inform[s]" Ms. Javice of the charges, Opp. at 9, does not make it so. Although the government spends pages distinguishing Ms. Javice's cited cases in which courts around the country have dismissed similarly deficient indictments, the inescapable fact remains that this Indictment contains virtually no facts, let alone the "essential facts constituting the offense charged," as Rule 7(c)(1) requires. *See* Opp. at 8–12; *see, e.g.*, *United States v. Pirro*, 212 F.3d 86, 92, 95 (2d Cir. 2000) (affirming dismissal of indictment that failed to allege essential facts and explaining that sufficient indictment must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury") (internal quotation omitted).

Apparently recognizing as much, the government falls back on the Complaint, ECF 1, and the voluminous discovery it has produced to date. *See* Opp. at 9. Those arguments only prove the point. As an initial matter, a criminal complaint and post-indictment discovery are irrelevant where the indictment itself, as here, is not "even minimally sufficient." *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999). The indictment must be valid on its face and "considered as it was actually drawn, not as it might have been drawn." *Pirro*, 212 F.3d at 92; *see also Costello v. United States*, 350 U.S. 359, 363 (1956) (indictment must be "valid on its face").

A criminal complaint in any event sheds no light on the substance of an indictment because the grand jury may have been presented with an ***entirely different*** set of facts and evidence than that alleged in the complaint. "[G]rand juries are not limited to considering charges previously

presented in a criminal complaint or summons," and thus may charge different crimes, under different theories, using different evidence than that used to swear out a complaint. *Pitts v. People*, 2001 WL 410077, at *1 (S.D.N.Y. Apr. 23, 2001). Indeed, "[a]n indictment need not be preceded by a criminal complaint" at all. *United States v. Ulloa*, 2011 WL 13128610, at *4 (N.D.N.Y. May 13, 2011), *aff'd*, 511 F. App'x 105 (2d Cir. 2013). That none of the "20 pages of detailed factual allegations" contained in the Complaint made their way into the Indictment if anything raises serious concerns about whether any of those facts were presented to the grand jury. Opp. at 9; *see, e.g.*, *United States v. Silverman*, 430 F.2d 106, 110 (2d Cir. 1970) ("The policy underlying the requirement of specificity in the indictment" is "to prevent the usurpation of power by the court and prosecutor in allowing a defendant to be convicted 'on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.'") (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)), *modified on other grounds*, 439 F.2d 1198 (2d Cir. 1970).

The government furthermore cannot plug the holes in the Indictment by burying Ms. Javice in documents. Putting the cart well before the horse, the government asserts that "the defendants have received approximately 1.3 million pages of text-searchable discovery" and so "cannot complain" they lack notice of the charges. Opp. at 9; *see also id*. at 30 (government produced approximately 1.3 million pages from "over 40 entities and individuals"). Ms. Javice cannot be expected to make sense of the mountains of material the government produced ***before*** she has received fair notice of the charges against her. The relevance—or not—of any particular document is necessarily tied to the circumstances of the charges, which in a fraud case include an understanding of the particular statements at issue and to whom they were made. *See, e.g.*, *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) (observing that "both wire fraud and bank fraud

require the Government to prove that the defendant had an intent to deprive the victim of money or property" and "the materiality of a defendant's false statements or misrepresentations").

The government has only exacerbated the problem during conferrals on this motion, referring Ms. Javice to a document that lists *76 entities* as alleged victims of the fraud while hedging that even this list is not exhaustive. *See* Mot. at 24 n.11; *see* Exhibit A: 4/5/24 D. McLeod Email & Cited Document (USAO_Rel_000695575). Frank's acquisition advisers compiled this list of companies for purposes of tracking initial outreach to potential buyers. *See* Opp. at 39 (explaining that Exhibit A "was created by the investment advisory firm assisting Frank with the acquisition process"). The document indicates it was last updated in early May 2021—months before the Frank-JPMC merger agreement was signed in August 2021—and shows the referenced companies at all stages of the outreach and diligence process, some with multiple points of contact noted, some with none, and some that had passed on the opportunity quickly and engaged in no further communication with Frank or its representatives. *See* Ex. A ("Notes/Next Steps"). Moreover, as to the vast majority of these companies, Ms. Javice is not listed as the Frank "Point of Contact," let alone the "Lead," and thus she may not have had any direct communication at all with many of the referenced entities. *Id*.

This contact log thus only further obscures the nature and scope of the government's charges. It leaves Ms. Javice to guess at the scope of the allegations against which she must defend. Does she stand accused of conspiring to defraud or actually defrauding 76-plus companies? More than that? More than 10? Which ones, and when, and through which statements or omissions? The Indictment does not say, nor does the discovery.

Because the Indictment fails to put Ms. Javice on notice of the charges against her, the Court need go no further to grant this motion.

**B.      The Indictment Fails to Allege Bank Fraud**

Knowing it cannot sustain a bank fraud charge involving unnamed "potential acquiring companies" and based on alleged conduct far removed from the traditional functions of a bank, the government opposes Ms. Javice's motion to dismiss the bank fraud charges on the basis that she has merely advanced "a policy argument." Opp. at 21 n.8. Not so.

"Although criminal statutes must be so precise and unambiguous that the ordinary person can know how to avoid unlawful conduct[,] . . . even in determining whether such statutes meet that test, they should be given their fair meaning in accord with the evident intent of Congress." *United States v. Rothberg*, 480 F.2d 534, 535 (2d Cir. 1973). The government does not dispute that "[i]t was Congress' intent that a ***federally insured or chartered bank*** must be the ***actual or intended victim of the scheme***," *United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992) (emphases added), and that the statute was passed to "better assure the integrity of the federal banking system," S. Rep. No. 225, 98th Cong., 379 (1984). That ends the matter where, as here, the Indictment makes no cognizable distinction between JPMC, Bank-1, and the mass of potential acquirors—at least 76 of them, by the government's own count, s*ee* Ex. A—scattered throughout the charges. Courts "are obligated to construe criminal statutes narrowly so that Congress will not unintentionally turn ordinary citizens into criminals." *United States v. Valle*, 807 F.3d 508, 528 (2d Cir. 2015) (quotations omitted). The government's expansive reading of Section 1344 would criminalize as bank fraud conduct that has nothing to do with banks at all.

Section 1344's clear purpose and legislative intent cannot be squared with the government's argument that nothing in the statute limits bank fraud charges "to only those situations that involve the core functions of the federal banking system." Opp. at 21 (cleaned up). A bank's purchase of a college resource website does not involve the core functions of the federal banking system—let alone the "integrity of the federal banking system." S. Rep. No. 225, 98th

Cong., 379 (1984). Congress furthermore has a "longstanding policy of separating banking from commerce." *BankAmerica Corp. v. Bd. of Governors of Fed. Rsrv. Sys.*, 596 F.2d 1368, 1376 (9th Cir. 1979) (discussing Bank Holding Company Act) (quoting S. Rep. No. 1084, 91st Cong., 5522 (1970)); *see also, e.g.*, *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 516 F.2d 1229, 1233 (D.C. Cir. 1975) (stating Congress has "concluded that 'banking and commerce should remain separate'") (quoting S. Rep. No. 1084, 91st Cong., 2d Sess. 12 (1970)); S. Rep. No. 1084, 91st Cong., 5557 (1970) (noting in discussion of Bank Holding Company Act "a disturbing trend" toward "erosion of the traditional separation of powers between the suppliers of money—the banks—and the users of money—commerce and industry"); Lina M. Khan, *The Separation of Platforms and Commerce*, 119 Colum. L. Rev. 973, 1041 (2019) ("A core principle at the heart of banking regulation in the United States is the separation of banking and commerce."). The bank fraud statute—like other banking laws—accordingly targets banks' activities ***as banks***, not as ordinary buyers or sellers in the marketplace.

Section 1344 "should not be read to federaliz[e] frauds that are only tangentially related to the banking system." *United States v. Bouchard*, 828 F.3d 116, 126 (2d Cir. 2016) (quoting *Luoghrin v. United States*, 573 U.S. 351, 362 (2014)). That is precisely what the government asks the Court to do. Accordingly, the bank fraud charges should be dismissed.

### C.     The Indictment Should be Dismissed for Failure to Allege Materiality

The government tacitly concedes the Indictment does not allege that any of the statements at issue (none of which is identified anyway) were material—even though, it admits, "materiality is an element of bank fraud, mail fraud, and wire fraud schemes proscribed in Title 18, United States Code, Sections 1344, 1341, and 1343." Opp. at 18. To side-step that critical gap, the government claims materiality may be "inferred." *Id*. at 18–19. None of the government's cited decisions supports its assertion.

The government cites *Neder v. United States*, 527 U.S. 1 (1999), to argue that materiality "can be inferred as a required element when a scheme to defraud is charged," Opp. at 18, but the Supreme Court held no such thing. Unlike the Indictment here, the indictment in *Neder **did*** describe the materiality of the statements at issue, but the district court failed to instruct the jury on that element. *See* 527 U.S. at 6 (district court instructed jury that to convict on tax offenses "it 'need not consider' the materiality of any false statements 'even though that language is used in the indictment,'" "gave a similar instruction on bank fraud," and "did not include materiality as an element of either" the mail or wire fraud instructions); *see also United States v. Neder*, 136 F.3d 1459, 1461 (11th Cir. 1998) ("Neder was indicted for mail fraud, wire fraud, bank fraud, tax fraud, and making illegal false statements. The indictment contained materiality as an element of many of these offenses."), *aff'd in part, rev'd in part*, 527 U.S. 1 (1999). The Supreme Court concluded "that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes" and remanded to the Eleventh Circuit to determine whether the district court's jury instructions that omitted the requisite element of materiality warranted retrial under a harmless error standard. *Neder*, 527 U.S. at 25. The Supreme Court thus did not address the question of whether the indictment itself properly stated an offense, which is the inquiry here.

The government's remaining cases, *United States v. Klein*, 476 F.3d 111 (2d Cir. 2007), and *United States v. Chime*, 2011 WL 3420717 (N.D. Ohio Aug. 4, 2011), cited for the same argument that an inference of materiality can be properly drawn here, likewise are inapposite. In *Klein*, which involved a check kiting bank fraud scheme, the Second Circuit in a separate opinion addressed the contents of the indictment and held that it adequately stated the charged crimes. The indictment alleged "that the counter-parties did not have adequate funds in their accounts to cover the checks [defendant] deposited" and incorporated that allegation "in the other counts." *United*

*States v. Klein*, 216 F. App'x 84, 88 (2d Cir. 2007). Moreover, "[t]he false representations required by Section 1344(2) were sufficiently alleged by [the indictment's] charge of falsely representing inflated sales figures to obtain credit for his businesses, again incorporated in the counts charging [defendant] with using those sales figures to falsify loan applications." *Id*. Similarly, in *Chime*, the court found that the indictment "***explicitly detail[ed]*** Defendants' alleged conduct, including, among other things, 'falsely inflat[ing] the purchase price' of properties, submitting 'false documents' to potential mortgage lenders, and making other misrepresentations for the purpose of obtaining mortgage loans." 2011 WL 3420717, at *2 (emphasis added, citations omitted).

The challenged allegations here contain no such details. Thus, while it may be appropriate to infer an allegation of materiality in some circumstances, it is not here where the indictment contains no facts from which such an inference reasonably can be drawn. *See, e.g.*, *United States v. Chase*, 2005 WL 3288731, at *6 (D. Vt. Nov. 30, 2005) ("[W]hile an indictment need not spell out a theory in explicit detail, it must nonetheless allege facts that would support an inference of materiality. . . . [T]he Indictment simply fails to allege facts that could warrant an inference of materiality consistent with the theories upon which the government now seeks to rely.").

Because materiality is an essential element of each charge in the Indictment, which the government concedes it did not allege, the Court should dismiss the Indictment in its entirety.

## II.     COUNT THREE OF THE INDICTMENT SHOULD BE DISMISSED AS IMPERMISSIBLY DUPLICITOUS

Nothing short of dismissal can cure the fundamental flaw in Count Three of the Indictment, the government's impermissible attempt to charge Defendants with one scheme to defraud dozens of unrelated and dissimilar alleged victims. The government's claim that the bank fraud charge is not duplicitous because it alleges a single scheme to defraud "multiple financial institutions" and misrepresentations to "those institutions" both rewrites the Indictment and is wrong. Opp. at 24.

The Indictment does not distinguish among JPMC, Bank-1, and the unidentified "potential acquiring companies" thrown together in Count Three, and the government does not either. Although it glosses over the issue in its brief, the government has conceded—by providing Ms. Javice with a partial (but expansive) list of the alleged victims—that many of the "potential acquiring companies" referenced in the Indictment *are not banks*. *See* Ex. A (listing numerous non-bank entities). Count Three thus does not assert a "single scheme to defraud" because, obviously, bank fraud cannot be perpetrated against a non-bank. *See* 18 U.S.C. § 1344(1)–(2) (criminalizing schemes to "defraud a financial institution" and obtain money from "a financial institution"). Nor does the Indictment allege a single scheme to defraud even as to JPMC and Bank-1; representations to one of those entities would have no bearing on the other and would not be in furtherance of a single scheme to defraud.

The government relies on *United States v. Margiotta*, 646 F.2d 729 (2d Cir. 1981), for the proposition that a single scheme to defraud does not create duplicity, Opp. at 24, but that case supports Ms. Javice. *Margiotta* held that duplicity exists where an indictment "contains several allegations that could have been stated as separate offenses" and "the failure to do so risks unfairness to the defendant." 646 F.2d at 733. In that case, the indictment charged a single count of mail fraud and "alleged that numerous items were mailed in execution of the scheme." *Id*. at 730–31. There was no dispute that "each of the mailings [was] a 'discrete basis' of criminal liability" that could support a standalone mail fraud count, or that all of those mailings were made in connection with a "single scheme to defraud." *Id*. at 732–33. Here, in contrast, the Indictment contains ***fundamentally conflicting allegations*** in a ***single count***, some directed at banks and some

not. *Margiotta* is distinguishable on its facts and supports a finding that Count Three's duplicity "risks unfairness to" Ms. Javice. *Id.* at 733.[1]

The government's attempt to wave away the prejudice that follows Count Three is unpersuasive. *See* Opp. at 26. The government cannot credibly claim that the risk of juror confusion and lack of unanimity "is specious." *Id*. Instructing the jury that it must unanimously find that Ms. Javice participated "in the sole charged bank fraud scheme" is no answer where the Indictment does not allege any such singular scheme and implicates dozens of purported victims. *Id*. The jury will be charged with assessing the government's proof (or lack thereof) that Ms. Javice sought to defraud any number of the "potential acquiring companies" referenced in the Indictment, some of them financial institutions, some of them not, a task fraught with the potential for confusion. *See, e.g.*, *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001) ("where the prejudicial spillover [is] so overwhelming," limiting instructions "cannot be presumed to be effective"); *Black v. Walker*, 2000 WL 461106, at *8 (W.D.N.Y. Apr. 14, 2000) (presumption that jurors will follow limiting and curative instructions "does not apply when the prejudice is so severe that the instructions would be ineffective").

---

[1]  The government's remaining cases are likewise distinguishable because they all involve single schemes to defraud. Opp. at 24–25, citing *United States v. Aracri*, 968 F.2d 1512, 1519 (2d Cir. 1992) (single conspiracy using different companies "in a series of transfers all for the single purpose of concealing the non-payment of taxes and transferring the liability for paying taxes to . . . others"); *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) (defendants "were involved in an ongoing and continuous drug conspiracy, and . . . the two sales were part of a single continuing scheme"); *United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006) (no duplicity where the "indictment allege[d] only one crime: health care fraud," "the crime charged . . . was fairly straightforward, involved only one defendant" and "one victim"); *United States v. Zeidman*, 540 F.2d 314, 317 (7th Cir. 1976) (no duplicity where "the two acts originate from one transaction" and the "frauds were performed by the same parties and have a sufficiently close nexus with one another that they are fairly characterized as one scheme").

The government's claim that no danger of prejudice exists because "Count Three covers the entire time span of the defendants' efforts to sell Frank through fraudulent misrepresentations," Opp. at 26, does not address the double jeopardy risks. *See, e.g.*, *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980) ("[T]he prohibition of duplicity is said to implicate a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution."). The government does not cite cases for that proposition and does not explain how the time period of the charges obviates the risk of inconsistent and ambiguous verdicts Defendants identified—indeed, the sprawling scope and ill-defined victims of the alleged scheme only heighten the risk of inconsistency. *See* Mot. at 16–17; ECF 117 (Defendant Amar's Memo. of Law in support of Motion to Dismiss) at 30; *see also, e.g.*, *Stavroulakis*, 952 F.2d at 693 (indictment must give defendant "enough detail that he may plead double jeopardy in a future prosecution based on the same set of events").

Count Three is duplicitous and should be dismissed.

## III. TO THE EXTENT THE COURT DENIES MS. JAVICE'S MOTION TO DISMISS AS TO ANY COUNT, IT SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS

In the event this Court denies the motion to dismiss, Defendants are entitled to a bill of particulars. Contrary to the government's assertions, Defendants are not seeking "a detailed overview of the Government's trial evidence." Opp. at 27. Rather, Ms. Javice seeks ***only*** narrow categories of information comprising the ***essential facts*** regarding the charged schemes: (i) the identities of alleged co-conspirators; (ii) the fraudulent statements at issue; and (iii) the targets of the fraud. Mot. at 18–24. The information the government seeks to withhold from Ms. Javice constitutes the core elements of the charged offenses and is necessary for Ms. Javice "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should [s]he be prosecuted

a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

The government does not seriously dispute that the information Ms. Javice seeks is fundamental to the fraud charges. Instead, the government merely points to the volume of discovery produced and asserts, counterfactually, that the pile of documents is sufficient to obviate the government's burden to detail the bases of its allegations. *See* Opp. at 27–30. But it is well established that the ***quantum*** of evidence does not preclude a bill of particulars. Indeed, "sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000), *aff'd*, 552 F.3d 93 (2d Cir. 2008); *see also, e.g.*, *United States v. Pulliam*, 2023 WL 8456105, at *2 (D. Conn. Dec. 6, 2023) ("[E]xtremely voluminous discovery can also weigh in favor of a bill of particulars as a mechanism for cutting through the materials."); *United States v. Urso*, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005) ("[A] bill of particulars is appropriately granted where the government's pre-trial discovery disclosures are so voluminous that the defendant remains in the dark about the specific acts of which he is accused."); *United States v. Savin*, 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (granting bill of particulars for unindicted coconspirator identities where "pretrial disclosure has been extraordinarily voluminous"). This is true here; the government should not be permitted to hide behind a mountain of discovery instead of providing Ms. Javice with information within the government's sole possession that is required for Ms. Javice to prepare to defend against the government's claims at trial.

A bill of particulars providing the information sought by Ms. Javice is more than warranted here.

## A.      Identities of Unindicted Co-Conspirators Should be Disclosed (Request 1)

Even though the Indictment repeatedly alleges that Defendants conspired with "others known and unknown," Indictment ¶¶ 1–3, the government refuses to provide the identities of those known co-conspirators.  Opp. at 35–38.  None of the government's stated reasons for denying Ms. Javice this necessary and readily available information have merit.

The government makes the gateway claim that demands for the "where, when, and with whom the Government will charge the defendant with conspiring" are "routinely denied by courts in this Circuit."  Opp. at 35 (quoting *United States v. Cordones*, 2022 WL 815229, at *10 (S.D.N.Y. Mar. 17, 2022)).  But each of the government's cited cases involved indictments that described the conspiracy in detail that obviated the necessity for a bill of particulars—details absent from the Indictment here.  The defendants in these cases were not left to guess at the substance of the charges against them, including the particular transactions and individuals involved (Opp. at 35–36):

- *United States v. Cordones*:  "Defendant was charged pursuant to a 28-page speaking indictment, replete with detailed facts and circumstances about the charged conspiracies."  2022 WL 815229, at *8.

- *United States v. Nicolo*:  The indictment was ***179 pages*** long and described the "alleged conspiracy in extensive detail"; simply put, the court wrote:  "This indictment is ***one of the most detailed, thorough indictments that I have seen***."  523 F. Supp. 2d 303, 316 (W.D.N.Y. 2007) (emphasis added), *aff'd*, 421 F. App'x 57 (2d Cir. 2011).

- *United States v. Rittweger*:  The indictment spanned 36 pages and contained extensive background on the schemes, the co-conspirators, the "objects of the conspiracy," and the "means and methods of the conspiracy."  02-CR-122, Dkt. 8 (S.D.N.Y. Jan. 31, 2002), *available at* 2002 WL 34362235.

- *United States v. Amendolara*:  The indictment provided the defendant "with significant detail . . . of the illegal acts he has been charged with committing"; discussed "numerous overt acts, five of which refer[red] specifically to [defendant's] alleged participation in the scheme and his alleged conduct in furtherance thereof"; and "allegedly involved [defendant], his three co-Defendants, and three unindicted co-conspirators."  2002 WL 31368279, at *3, 5–6 (S.D.N.Y. Oct. 21, 2002).

The government next summarily declares that because Ms. Javice has not shown that disclosure of her alleged co-conspirators' identities is necessary, as opposed to just helpful, the inquiry ends and the motion should be denied. Opp. at 35. That is puzzling considering Ms. Javice in her motion discussed each of the *Nachamie* factors that guide the disclosure of co-conspirators' identities. *See* Mot. at 18–20 (applying the factors enumerated in *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000)). The government, on the other hand, fails to meaningfully address multiple factors and thus concedes they weigh in favor of disclosure. *See* Opp. at 36–38; *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument.").

The factors the government does address further support granting the motion. *First*, the fact that the length of the alleged conspiracy here (eighteen months) is shorter than that in *Nachamie* (three years) is not dispositive. *See* Opp. at 36. *Nachamie* did not establish any bright-line rule regarding the appropriate duration of a conspiracy for purposes of assessing a bill of particulars, and the alleged conspiracy here, spanning well over a year, is significant. *Second*, the government's argument that no risk of surprise exists because the conspiracy was "centered around the defendants and their company" is erroneous. *Id*. "It is well settled law that an individual need not know the identities of all coconspirators in order to be found guilty of being a member of a conspiracy," and the government does not indicate whether the number of additional co-conspirators is a handful or a hundred. *United States v. Dove*, 884 F.3d 138, 147 (2d Cir. 2018). That the alleged conspiracy may have involved Ms. Javice and her company does not mean others outside that orbit did not join the conspiracy, and does not support the false premise that she necessarily knows the identity of all the government's undisclosed co-conspirators. That the

government to date has obtained materials "from over 40 entities and individuals," Opp. at 30—some unknown number of which may or may not be alleged co-conspirators—proves the point.

The government cites *United States v. Ray*, 2021 WL 3168250 (S.D.N.Y. July 27, 2021), to argue that Ms. Javice's request seeks the government's view of the potential criminal exposure of various unknown trial witnesses, but that case does not undermine Ms. Javice's need for the identities of the co-conspirators. *See* Opp. at 37. Unlike Ms. Javice, Ray did "not argue that he is unaware of the population of persons who are either victims or co-conspirators, [or] that that population is particularly large." *Ray*, 2021 WL 3168250, at *6. Ray instead claimed that he could not know without particulars "what people the government believes fall into the categories of co-conspirators, associates, leaders, and nominees, and whether some people fall into numerous of these categories." *Id*. A request for the identities of Ms. Javice's alleged co-conspirators seeks nothing of the sort, and does not pry into the government's views as to whom "it will present as victim and whom it views as a co-conspirator." *Id*. Moreover, Ray's argument was "effectively addressed" because the government had "identified who it believes to be a victim and who it believes to be a co-conspirator"—while here the government refuse to provide ***any*** information about the other members of the conspiracy. *Id*.

Because Ms. Javice is "likely to be surprised by the identity of other-co-conspirators," the Court should order the government to provide a bill of particulars. *United States v. Lino*, 2001 WL 8356, at *13 (S.D.N.Y. Jan. 2, 2001) (citation omitted).

## B. Details Sufficient to Identify the Alleged Misrepresentations Should be Disclosed (Request 2)

The government hyperbolically asserts that if it were to specify the misrepresentations or omissions that form the basis of its charges, that would reveal "the inner workings of the

Government's trial evidence." Opp. at 46. Ms. Javice does not seek a window into the government's work product or trial materials; she seeks information about which of her own statements, and those of alleged co-conspirators, the government considers to be the basis for the federal crimes in the Indictment.

Although the government points to a handful of alleged misrepresentations cited in the Complaint, *id*. at 40–41, the government's own arguments make clear that this is not a comprehensive list. Rather, the government avers that these statements are merely part of "actions taken [by] the defendants to defraud JPMC." *Id*. Thus, the government wholly fails to address what representations, if any, Defendants allegedly made to ***any*** one of the other 75-plus entities the government claims were defrauded. The government's "examples of misrepresentations," *id*. at 41, do not and cannot remedy the gaps regarding the fraudulent statements referenced in the Indictment.

The government makes much of Ms. Javice's citation to *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), but fails to meaningfully distinguish that case. Opp. at 41. *Bortnovsky* stands for the fundamental proposition that the government bears the burden of providing a defendant with sufficient notice of the charges and "cannot fulfill this obligation 'by providing mountains of documents to defense counsel' without providing guidance as to which documents are relevant." *United States v. Ikoli*, 2017 WL 396681, at *5 (S.D.N.Y. Jan. 26, 2017) (quoting *Bortnovsky*, 820 F.2d at 575) (finding indictment "arguably insufficient" where it alleged defendants "committed conspiracy to commit bank fraud and actual bank fraud, but only in general terms" and did "not identify any specific checks or transactions"); *see also, e.g.*, *Bin Laden*, 92 F. Supp. 2d at 234 ("It is no solution to rely solely on the quantity of information disclosed by

the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.") (citing *Bortnovsky*, 820 F.2d at 575).

The government's reliance on *United States v. Kahale*, 789 F. Supp. 2d 359 (E.D.N.Y. 2009), for the proposition that "numerous courts" in this Circuit have declined to extend *Bortnovsky*'s reasoning is misplaced. Opp. at 42. In that case, the discovery consisted of "approximately 5,000 pages in less than four boxes of documents," *Kahale*, 789 F. Supp. 2d at 375—hardly the "*1.3 million pages*" from "over 40 entities and individuals" at issue here, Opp. at 30 (emphasis added). That "relatively modest volume of documents accompanied by a detailed index" was "far from the 'mountains of documents' at issue in *Bortnovsky*" and this case. *Kahale*, 789 F. Supp. 2d at 375. Moreover, the indictment and small universe of discovery materials "specif[ied] precisely" the allegedly fraudulent transactions. *Id.* at 376. *Kahale* thus supports the applicability of *Bortnovsky* on these facts.

The government next accuses Defendants of "misleadingly" citing cases under the false statements statute, but those cases are instructive. Opp. at 43–44. The crux of a Section 1001 prosecution is the same as that here, where Ms. Javice's allegedly false statements are the backbone of the government's fraud charges. Just like in Section 1001 cases, the government here will have to identify particular statements at trial, because "to establish the existence of a scheme to defraud, the Government must prove the materiality of a defendant's false statements or misrepresentations," *Calderon*, 944 F.3d at 85. Indeed, "the materiality analyses are 'identical' for bank fraud, mail fraud, wire fraud, and false-statement offenses." *United States v. Williams*, 934 F.3d 1122, 1128 n.7 (10th Cir. 2019). It therefore is immaterial that Defendants cite cases that "are not fraud cases." Opp. at 44. The fundamental point remains the same: "A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing

which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information." *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998).[2]

At bottom, Defendants are not simply "point[ing] to the volume of discovery and claim[ing] that a bill of particulars is warranted." Opp. at 43. Defendants have made a tailored request for information that goes to the elements of the charged offenses. The government has chosen to proceed with an Indictment that has "left the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell*, 369 U.S. at 768. A bill of particulars is necessary to enable Ms. Javice to prepare for trial and prevent the government from filling in elements of its case at trial with facts that it has not properly disclosed.

## C. Disclosure of Targets of the Alleged Fraud is Appropriate (Requests 3–4)

The government's only response to Ms. Javice's request for the identities of those she supposedly intended to defraud is to reference the summary document it produced listing almost 80 different entities. Opp. at 38–39; *see* Ex. A. Again, this document—which the government admits Ms. Javice did not even create—only compounds the problems with the government's threadbare Indictment. Opp. at 39 (document "was created by the investment advisory firm assisting Frank with the acquisition process"). The government's careful language reveals that it has not and will not commit to a representation that this document in fact contains the intended

---

[2]   *See, e.g.*, *United States v. Elbaz*, 332 F. Supp. 3d 960, 982–83 (D. Md. 2018) (directing the government in a wire fraud case "to include in its bill of particulars a list of the allegedly false statements made directly by [the defendant], if any, that it intends to introduce at trial, including the date of the statement and the person to whom it was made" because "the voluminous discovery makes it difficult for the defense to identify which statements by [the defendant] will be at issue at trial"), *aff'd*, 39 F.4th 214 (4th Cir. 2022), *opinion vacated on other grounds and superseded on reh'g*, 52 F.4th 593 (4th Cir. 2022), *and aff'd*, 52 F.4th 593 (4th Cir. 2022).

victims of the charged fraud.  *See id*. at 38–39 (stating the government identified a document it "believed would be helpful to the defendants with respect to this request").

As the trial date rapidly approaches, the Court should not endorse the government's prejudicial "maybe so, but maybe not" approach to criminal discovery.  If the government is representing that this document contains all the targets of the alleged scheme, then it should say so.  But if, more likely, the government is using the document as a smokescreen to obscure the facts in the run up to trial, then the Court should grant the bill of particulars and end this gamesmanship.[3]

## **CONCLUSION**

For the reasons above and those in Ms. Javice's opening brief, Ms. Javice respectfully requests that the Court dismiss the Indictment or, should the Court decline to do so, order the government to provide a bill of particulars.

---

[3]  Unsurprisingly, neither of the cases cited by the government involved anything like these facts. Opp. at 38, citing *United States v. Fea*, 2011 WL 2119708, at *2 (S.D.N.Y. May 24, 2011) (government produced "ledgers and copies of other documents seized from the home of" defendants including "a notebook, seized during the search . . . , which also includes names, dates, and numbers relating to putative loansharking victims"); *United States v. Rittweger*, 259 F. Supp. 2d 275, 292 (S.D.N.Y. 2003) (government "identified three primary victims" and indictment "clearly allege[d]" that "all [company's] customers were victims" of scheme that could be identified among produced customer agreements).

Respectfully submitted,

Dated:   May 20, 2024

**QUINN EMANUEL URQUHART
   & SULLIVAN, LLP**

Alex Spiro
Samuel P. Nitze
Sarah Heaton Concannon
Maaren A. Shah
JP Kernisan
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
alexspiro@quinnemanuel.com
samuelnitze@quinnemanuel.com
sarahconcannon@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

*Attorneys for Defendant Charlie Javice*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2024, I caused a copy of the foregoing document to be served via ECF on counsel of record.

_____
Alex Spiro