UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

UNITED STATES OF AMERICA,

- v. -

CHARLIE JAVICE and OLIVIER AMAR,

Defendants.

23 Cr. 251 (AKH)

---------------------------------------------------------x

**REPLY IN SUPPORT OF DEFENDANT OLIVIER AMAR'S
MOTION TO SUPPRESS EVIDENCE FROM PHONE SEIZURE**

KOBRE & KIM LLP
Sean S. Buckley
Steven G. Kobre
Alexandria E. Swette
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
Fax: (212) 488-1220

Victoria Fordin (*pro hac vice forthcoming*)
Jake Rush (*pro hac vice forthcoming*)
1919 M Street, NW
Washington DC 20036
Tel: (202) 664-1900
Fax: (202) 664-1920

*Counsel for Defendant Olivier Amar*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      The Affidavit Did Not Establish Probable Cause to Seize Any Device ............................. 3

      A.      The Opposition Recites the Affidavit's Mistakes ........................................... 3

      B.      The Opposition Concedes the Affidavit's Omissions ..................................... 5

      C.      The Opposition Advances Outside Information ............................................. 7

II.     The Warrant Is Overbroad ................................................................................................ 8

III.    The Warrant Is Unparticularized .................................................................................... 10

IV.    The Good Faith Exception Does Not Apply .................................................................. 12

V.     Suppression Is Necessary to Deter Similar, Future Misconduct ..................................... 13

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bumper v. North Carolina*,
 391 U.S. 543 (1968) ............................................................................................................... 14

*Coyne v. Los Alamos Nat's Sec.*,
 2017 WL 3225466 (D.N.M. May 1, 2017) ............................................................................... 8

*Davis v. United States*,
 564 U.S. 229 (2011) ............................................................................................................... 13

*Groh v. Ramirez*,
 540 U.S. 551 (2004) ............................................................................................................... 12

*In re 650 Fifth Ave. & Rel. Props.*,
 934 F.3d 147 (2d Cir. 2017) ............................................................................................. 13, 14

*Lamb v. Liberty Univ.*,
 2022 WL 3692670 (W.D. Va. Aug. 25, 2022) .......................................................................... 8

*Riley v. California*,
 573 U.S. 373 (2014) ................................................................................................................. 7

*Ryan v. United States*,
 2009 WL 1545794 (D. Vt. May 26, 2009) ............................................................................. 13

*United States v. Bertini*,
 2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023) .......................................................................... 8

*United States v. Buck*,
 813 F.2d 588 (2d Cir. 1987) ................................................................................................... 12

*United States v. Cioffi*,
 668 F. Supp. 2d 385 (E.D.N.Y. 2009) ............................................................................... 10, 12

*United States v. Delima*,
 2023 WL 7404054 (D. Vt. Nov. 9, 2023) ................................................................................. 8

*United States v. Falso*,
 544 F.3d 110 (2d Cir. 2008) ................................................................................................. 7, 8

*United States v. Fruchter*,
 104 F. Supp. 2d 289 (S.D.N.Y. 2000) ...................................................................................... 5

*United States v. Galpin*,
 720 F.3d 436 (2d Cir. 2013) ................................................................................................... 10

*United States v. Garcia*,
 2023 WL 4850553 (D. Conn. July 28, 2023) ............................................................... 6, 12, 13

*United States v. Gatto*,
   313 F. Supp. 3d 551 (S.D.N.Y. 2018) .................................................................................. 4, 6

*United States v. Genin*,
   594 F. Supp. 2d 412 (S.D.N.Y. 2009) ...................................................................................... 6

*United States v. George*,
   975 F.2d 72 (2d Cir. 1992) ..................................................................................................... 10

*United States v. Griffith*,
   867 F.3d 1265 (D.C. Cir. 2017) .............................................................................................. 11

*United States v. Harvey*,
   2022 WL 684050 (E.D.N.Y. Mar. 8, 2022) ............................................................................ 12

*United States v. Johnson*,
   2021 WL 2667168 (D. Vt. June 29, 2021) ............................................................................... 4

*United States v. Jones*,
   572 F. Supp. 2d 601 (W.D. Pa. 2008) ...................................................................................... 7

*United States v. Lauria*,
   70 F.4th 106 (2d Cir. 2023) ...................................................................................................... 4

*United States v. Levy*,
   2013 WL 664712 (S.D.N.Y. Feb. 25, 2013) .......................................................................... 14

*United States v. Lindsey*,
   596 F. Supp. 2d 55 (D.D.C. 2009) .......................................................................................... 13

*United States v. Martinez-Fuerte*,
   428 U.S. 543 (1976) .................................................................................................................. 3

*United States v. Matias*,
   836 F.2d 744 (2d Cir. 1988) ................................................................................................... 10

*United States v. Oglesby*,
   2019 WL 1877228 (S.D. Tex. Apr. 26, 2019) ........................................................................ 12

*United States v. One Parcel of Prop. Located at 18 Perkins Road, Woodbridge, Conn.*,
   774 F. Supp. 699 (D. Conn. 1991) .......................................................................................... 12

*United States v. Reilly*,
   76 F.3d 1271 (2d Cir. 1996) ................................................................................................... 12

*United States v. Saenz*,
   2022 WL 17961205 (E.D.N.Y. Dec. 27, 2022) ...................................................................... 11

*United States v. Shrum*,
   908 F.3d 1219 (10th Cir. 2018) .............................................................................................. 14

*United States v. Wey*,
   256 F. Supp. 3d 355 (S.D.N.Y. 2017) .................................................................................... 12

*United States v. Williams*,
  2019 WL 4454250 (W.D.N.Y. Apr. 25, 2019) .................................................................... 8

*United States v. Young*,
  745 F.2d 733 (2d Cir. 1984) ............................................................................................. 11

*United States v. Yu*,
  2023 WL 4687970 (E.D.N.Y. July 21, 2023) .................................................................. 10

*United States v. Zemlyansky*,
  945 F. Supp. 2d 438 (S.D.N.Y. 2013) ........................................................................Passim

*United States v. Smith*,
  673 F. Supp. 3d 381 (S.D.N.Y. 2023) .............................................................................. 14

*Wheeler v. City of Lansing*,
  660 F.3d 931 (6th Cir. 2011) ............................................................................................ 11

Defendant Olivier Amar respectfully submits this memorandum of law in reply to the Government's Opposition to Defendants' Pretrial Motions, dated May 3, 2024 (ECF No. 122) (the "Opposition"), and in furtherance of his Motion to Suppress Evidence from Phone Seizure, dated April 5, 2024 (the "Motion") (ECF No. 119).

## PRELIMINARY STATEMENT

The Government obtained an overbroad and unparticularized warrant based on insufficient—indeed, nonexistent—probable cause. Law enforcement then leveraged that warrant to strong-arm Mr. Amar into a seizure of his personal cell phone and passcode at 8:30 p.m. on his wedding anniversary, with his wife present. Overbroad warrant in hand, law enforcement also threatened to break Mr. Amar's phone after obtaining evidence from it if he did not capitulate to their demand for his passcode—no less, after Mr. Amar referred them to his lawyer. The Government's Opposition does nothing to contest the coercive exploitation of the warrant and puts forth no evidence to contradict Mr. Amar's account; and its disingenuous characterization of Mr. Amar's declaration does not make the facts any less true. "This conduct is deterrable, and the Constitution requires its deterrence." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 476 (S.D.N.Y. 2013).

Even putting that aside, the flaws in the Government's affidavit—which were numerous, obvious, and not rigorously reviewed by the Magistrate Judge, including what the Government admits is inexplicable authorization to conduct the seizure at night—call for a probing review and a rejection of the deference to which a warrant typically is entitled. Whatever the standard, there was no probable cause for the seizure. At most, the Government proffered evidence linking Mr. Amar's phone number to a normal volume of calls over a 26-month period with Ms. Javice, and on that (insufficient) basis applied for the extraordinary authority to seize any device Mr. Amar "appeared to use" to search for materials ranging from documents and receipts to videos and

unspecified "other content." In so doing, the Government omitted significant and material facts that would have altered any reasonable reading of the paper-thin bases for probable cause offered by Agent Rosenman's Affidavit. These flaws place the warrant far afield of the good faith exception and require its suppression.

The Government's Opposition hardly suggests a different result. After winding its way through pages of generic legal propositions with little bearing on the facts at issue, the Government invites the Court both to embrace the warrant's deficiencies and pretend they do not exist, and downplays startling mistakes that it does not—because it cannot—dispute. This proves the point: the warrant, as drafted, is unconstitutional, and nothing short of suppression can right its wrongs.

## ARGUMENT

In an effort to salvage the Warrant, the Government doubles down on the very flaws that render it unconstitutional. The Government recasts Agent Rosenman's Affidavit as presenting "extensive" probable cause to seize all devices Mr. Amar "appeared to use." Opp. at 60–61. In reality, the call logs are the only evidence set forth in the Affidavit and, as set forth in the Motion, cannot establish probable cause. The Government concedes material omissions in the Affidavit, while attempting to assert retroactively "common" and "well-known" facts about cell phones generally, which show only that the Affidavit is defective in the first place. *Id.* at 62–63. And the Government maintains that the Warrant is particular simply because it includes an "illustrative list" of devices. *Id.* at 66. Setting aside the breadth and ambiguity of that list, the Government ignores that Agent Rosenman had more specific information in the call logs and subscriber records on which his Affidavit otherwise relies. As a last resort, the Government invokes good faith, *id.* at 68–70, but the flaws on the face of the Warrant and basic deterrence principles foreclose that exception.

2

## I. The Affidavit Did Not Establish Probable Cause to Seize Any Device

### A. The Opposition Recites the Affidavit's Mistakes

The Government's Opposition relies upon the same flawed premise as its Affidavit: probable cause consists of "much more" than just call logs. *Id.* at 60–61. The evidence proffered has next to nothing to do with Mr. Amar's phone or any other device subject to seizure. The most the Government can muster is the same general, conclusory statement in the Affidavit—that Mr. Amar used Slack, a workplace messaging platform, an unspecified number of times to send unspecified messages, "in addition to the use of emails"—while providing zero "specific instances" of these communications occurring on a device sought by the Warrant.[1] *Id.* at 60–62; Mot., Ex. B, at 8 n.1 (Slack is a "workplace" communication platform "used by companies").[2] The Court should reject the Government's attempt to turn Agent Rosenman's Affidavit into something it is not—a basis upon which a Court could find probable cause that relies on anything other than

---

[1] Notably, the Government could have sought Slack communications from JPMC pursuant to a grand jury subpoena, given that the platform resided on Frank's, and therefore JPMC's, servers. Alternatively, the Government could have (but did not) issue a warrant to Slack for those very communications. Instead, and without explanation, the Government sought and obtained a warrant based upon its claim that those communications might be contained on any device Mr. Amar "appeared to use" without setting forth any basis for probable cause to justify its baseless claim that Slack communications even were contained on one of those devices.

[2] The Government cites, from the results of its search, "scores of incriminating messages . . . that were saved to WhatsApp," Opp. at 63, as if hindsight based upon unlawfully seized communications can render the Warrant constitutional. *But see United States v. Martinez-Fuerte*, 428 U.S. 543, 565 (1976) (purpose of warrant requirement "is to prevent hindsight from coloring the evaluation of the reasonableness of a search or seizure"). Moreover, the Affidavit never mentions WhatsApp messages, so they were not (and therefore cannot be) a basis for Government's probable cause.

3

call logs.³ *United States v. Lauria*, 70 F.4th 106, 130 (2d Cir. 2023) (lack of probable cause "reinforced by what the affidavits do *not* say").

The Government never connects a Slack message, email, or other communication to Mr. Amar's cellphone or another device subject to the Warrant. But even if it did, that would not justify the seizure. The calls and emails that the Government advances as the core of its probable cause predate the physical device that the Government ultimately seized. For instance, the Government cites Mr. Amar's alleged email correspondence with "a vendor to buy customer data," which occurred during the first week of August 2021—on an unseized device. Opp. at 61. And the Government's call-log analysis "focused on communications during key periods of the fraud," where calls between Mr. Amar and Ms. Javice allegedly "intensified," *id.* at 52, 61, but all of this would have occurred before Mr. Amar activated the seized phone. Without a nexus to a physical device that existed at the time of these communications, they can hardly be relevant to the Government's purported showing of probable cause.

Far from supporting the Warrant, the cases in the Opposition prove Mr. Amar's point: speculative inferences are insufficient to establish probable cause. *Id.* at 62 (citing *United States v. Gatto*, 313 F. Supp. 3d 551 (S.D.N.Y. 2018), and *United States v. Johnson*, 19-cr-140, 2021 WL 2667168 (D. Vt. June 29, 2021)). In *Gatto*, for example, the magistrate judge authorized a warrant inferring that "other communications" existed on a cell phone because the Government presented evidence that the defendant used that phone to "send text messages," not just "make calls." 313 F. Supp. 3d at 558–59. And in *Johnson*, the Government's affidavit expressly "explained the need to seize many types of electronic devices." 2021 WL 2667168, at *5. Tellingly, the Government does

---

³ As explained in Mr. Amar's opening brief, Agent Roseman's training and experience is not enough, by itself, to take his Affidavit over the line. Mot. at 16–17. The Government does not seem to disagree.

4

not cite a single case in which a warrant was granted on as thin a probable cause showing as this one.[4]

### B. The Opposition Concedes the Affidavit's Omissions

The call logs are the sole factual basis that the Government asserts for probable cause. They suffer from fundamental and indisputable omissions, which the Government does not—because it cannot—dispute. The Government admits that Mr. Amar's phone number was assigned to no fewer than three different phones during key periods of the alleged fraud, and that it did not tell this to the Magistrate Judge.[5] The Government concedes the basic math that most "interactions" in the call logs with Ms. Javice (956 of 1,838) did not occur on the phone the Government seized, another fact withheld from the Magistrate Judge. Opp. at 62. And the Government further agrees that the Warrant failed to identify Mr. Amar's phone by IMEI number, make/model, color, or otherwise, despite a Grand Jury subpoena and subscriber records containing this basic information. Mot., Ex. B, ¶ 15(a) (requesting to seize Mr. Amar's "personal cell phone, assigned phone number ▓▓▓

---

[4] The Government's probable cause showing fails under any standard of review. However, the application documents contain glaring errors that the Magistrate Judge should have caught and that warrant no deference at this stage. Chief among these, the Government admits that the Magistrate should not have authorized execution of the Warrant at any time day or night. Opp. at 68. The Government tries to equate this error to a typo—a mere failure to check the right box—based upon *United States v. Fruchter*, 104 F. Supp. 2d 289 (S.D.N.Y. 2000), a case involving transposition of numbers in a statutory provision. *Id.* at 307. The significance of this error, which ordinarily requires an independent factual showing, is but one of those highlighted by Mr. Amar (and which the Government does not dispute) that indicate that the Magistrate Judge did not review the Affidavit in a manner that otherwise would warrant deference from a reviewing court. Simply put, the Warrant and the Affidavit are riddled with errors that require an independent and *de novo* review.

[5] Mr. Amar did not merely "upgrade" devices twice in two years, as the Government claims. Opp. at 62–63, 68. He changed brands in July 2021, switching from a Samsung Android device to an Apple iPhone device, with all the transaction costs that entails, including incompatible applications like messaging platforms and lost data (which Mr. Amar experienced). Mot. at 9 & n.7, 16 & n.13; ▓▓▓▓▓▓. The Government does not address the facts that result from this important distinction.

███"). Each of those is a material omission that undermines the Government's claim that there was probable cause to seize the physical device in Mr. Amar's possession that evening.

The Government does not attempt to explain these omissions—again, because it cannot. Instead, it embraces its "phone number only" theory of probable cause, claiming the omitted information "would have provided additional support" for Agent Rosenman's belief that Mr. Amar possessed multiple devices, and that "the identity of the specific electronic devices used in furtherance of the fraud scheme was not necessary" at all. Opp. at 62. Not so, and the Court should reject the Government's revisionist, retrospective telling of what it could have, should have, or would have done. Based on law the Government fails to address altogether, much less distinguish, "the limited information presented here requires too far an inferential leap" from calls with Ms. Javice to evidence of fraud on every one of Mr. Amar's devices. *United States v. Garcia*, No. 20-cr-58 (KAD), 2023 WL 4850553, at *7–8 (D. Conn. July 28, 2023) (no probable cause where affidavit omitted information about phone and provided "no factual basis whatsoever" to think evidence would be found there merely from defendant's "contact[s]" with three "supposed perpetrators"); *United States v. Genin*, 594 F. Supp. 2d 412, 425 (S.D.N.Y. 2009) (no probable cause where affiant omitted readily available screenshots of illegal videos mentioned in emails, which showed only that defendant "communicated with an individual," and which deprived magistrate of "sufficient information . . . to make an independent determination"). These omissions vitiate probable cause, and the Government's sole in-circuit authority only highlights that fact. Opp. at 62 (citing *Gatto*, 313 F. Supp. 3d at 558, 560 n.55 (upholding warrant because, contrary to Government's suggestion, it specified "target cell phones")).

The Warrant is functionally no different than if the Government were permitted to rummage through photo albums, letters, family calendars, and personal diaries in Mr. Amar's

6

home simply because he made calls to a colleague from a landline there.[6] Arguably, it is worse. *Riley v. California*, 573 U.S. 373, 396–97 (2014) ("[A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.").

### C. The Opposition Advances Outside Information

The Government attempts to rewrite the Warrant with assertions (notably, not included in the Affidavit) of supposedly "common" and "well known" facts about cell phones. Opp. at 63–64. Specifically, the Government contends that "it is common for a person to transfer data from an old phone onto a new phone," "it is well known that records and information . . . are stored on cloud-based apps," and Mr. Amar's alleged emails and Slacks could be "downloaded to multiple devices" and "accessed from any number of [them]." *Id.* This compounds the problem rather than fixes it.

First, the Government's position shows that the Affidavit, as drafted, omitted yet more material information that would have changed the Magistrate Judge's decision. The Court should not allow the Government to bootstrap that information, after the fact, to a brief unsupported by a sworn affidavit or declaration.[7] *See, e.g.*, *United States v. Jones*, 572 F. Supp. 2d 601, 617 (W.D. Pa. 2008) (Government's "after-included fact cannot be considered by this Court at this juncture to save the search warrant"), *aff'd*, 388 F. App'x 175 (3d Cir. 2010); *United States v. Falso*, 544

---

[6] Obviously, the content of the alleged calls between Mr. Amar and Ms. Javice would not have been stored on any of the devices subject to seizure under the Warrant. This reinforces the extent to which the Warrant was a fishing expedition for other communications using calls as a pretext. Also reinforcing that fact: the Government's failure to issue a warrant to Slack for Mr. Amar's alleged Slack messages, which it could have done and as it did with ▮▮▮▮ and ▮▮▮▮.

[7] The Government suggests that at least one of these facts was in Agent Rosenman's Affidavit. Opp. at 63 (citing Mot., Ex. B, ¶ 19). Because, at most, Agent Rosenman made a generic reference to what "users" who are not Mr. Amar "typically" do with data on "computers" rather than cell phones, the Court should decline to draw the same inference.

7

F.3d 110, 122 (2d Cir. 2008) ("All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." (quotation marks omitted)); *United States v. Williams*, No. 17-cr-78 (FPG), 2019 WL 4454250, at *7 (W.D.N.Y. Apr. 25, 2019) ("[M]y review of the search warrant is confined to what was properly before Judge Bargnesi."); *United States v. Delima*, No. 22-cr-111 (CR), 2023 WL 7404054, at *4 (D. Vt. Nov. 9, 2023) (agent "averred" in affidavit that he reviewed call logs and subscriber records, learned defendant ported phone number between phones, and told magistrate that, when defendant did so, information from the old phone transferred to the new phone).

Second, the Government's rewrite does not plug the holes in the Affidavit because it has nothing to do with Mr. Amar specifically. *See, e.g.*, *United States v. Bertini*, No. 23-cr-61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023) (probable cause must be premised on facts specific to a suspect, not "irrelevant generalizations," and "case-specific evidence," not "sheer speculation"); *Falso*, 544 F.3d at 124 (government must "gather 'evidence particularized to the target of the search' before the warrant application is made" (citation omitted)).[8]

## II.   The Warrant Is Overbroad

The Warrant would be unconstitutional even if it were limited to Mr. Amar's phone, but it is not. Without any discernable nexus to evidence of fraud, it authorized seizure of every unspecified device that Mr. Amar "appeared to use" in his house, where he lives with his wife and daughter, who also own and use electronic devices otherwise encompassed by the Warrant's unreasonable scope. That should end the matter: the Warrant is unconstitutionally overbroad.

---

[8] The Government's out-of-circuit civil cases do not move the needle; they do not even implicate probable cause. *See Coyne v. Los Alamos Nat's Sec.*, 15-cv-54, 2017 WL 3225466, at *9 (D.N.M. May 1, 2017) (discovery motion under Family Medical Leave Act), and *Lamb v. Liberty Univ.*, 21-cv-55, 2022 WL 3692670, at *5 (W.D. Va. Aug. 25, 2022) (sanctions motion for spoliation).

8

The crux of the Government's response is: who cares? On its view, overbreadth is irrelevant because law enforcement seized only the phone that Mr. Amar had on his person at the time that he was approached and threatened with the potential execution of a constitutionally overbroad warrant. This maneuver should be a nonstarter. It ignores the lack of probable cause for the phone seizure.[9] "[A]ny restraint in the conduct of the search [imposed by law enforcement] . . . [is] a violation of the particularity requirement's core purpose." *Zemlyansky*, 945 F. Supp. 2d at 466. And, critically, law enforcement exploited the overbroad Warrant to coerce Mr. Amar into providing not just his phone but his passcode—on the threat that, if he did not comply, they would break his phone after hacking it to obtain evidence—an abuse of authority that the Government does not seriously contest with competent evidence, besides to hyperbolically say it is "salacious." Opp. at 53 & n.21, 68–69.

The Government claims that it would be illogical for law enforcement to threaten to break Mr. Amar's phone because that would "thwart" their goal of obtaining evidence from it. Opp. at 53 n.21. The Government's argument makes no sense. As the Government well knows, law enforcement not only has the ability to recover information from broken electronic devices, but their protestation in this regard completely misses the point: law enforcement threatened Mr. Amar that they would search his phone regardless of his consultation with his attorneys and that its search (absent the provision of his password) would result in the return of a broken device once that search was completed. Disposing of that disingenuous argument, it is undisputed that law enforcement used the facially overbroad Warrant to seize a device for which they lacked probable cause, and

---

[9] *Disla Ramos* does not help the Government in this respect. There, the court found a warrant overbroad but declined to suppress the evidence because the Government had probable cause to seize the defendant's phone and did not seize anything else. 2022 WL 17830637, at *13. Here, the Warrant is both overbroad and the Government seized Mr. Amar's phone without probable cause.

9

obtained Mr. Amar's passcode by threatening to retaliate if he did not play along, even after (incredibly) Mr. Amar referred them to his lawyer. "The remedy for an overbroad search and seizure is suppression of the resulting evidence." *United States v. Cioffi*, 668 F. Supp. 2d 385, 396 (E.D.N.Y. 2009); *United States v. Matias*, 836 F.2d 744 (2d Cir. 1988).[10]

## III. The Warrant Is Unparticularized

The Warrant is unparticular because it permitted seizure of devices belonging to Mr. Amar's wife or daughter, or nonresponsive devices belonging to or Mr. Amar, and contained no limiting principle to cabin law enforcement's discretion. *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (warrant is sufficiently particular only if it "enable[s] the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize"); Agent Rosenman recognized as much from the start. Mot. at 24–25 (quoting Affidavit as to practical problems with Warrant's language). The Government has no answer except to deny that it was possible to seize the wrong device without ever demonstrating what would stop law enforcement besides their own discretion—a fact acknowledged by the executing agents when they threatened to enforce the Warrant to its fullest effect if Mr. Amar did not surrender his phone

---

[10] The Government's argument that the Warrant is not overbroad despite its scope is otherwise premised on the same speculative inference as its theory of probable cause—that "abundant" evidence exists connecting evidence of the fraud to multiple of Mr. Amar's devices. Opp. at 64. Other than the Affidavit's blanket generalization about device ownership among U.S. adults, Mot., Ex. B, ¶ 12, the Government never presents any evidence that Mr. Amar even has multiple devices. The Government tries to bury this defect by arguing that its probable cause "goes well beyond a single phone call." Opp. at 65. This is a red herring: even if true (it is not), the point is that the probable cause does not go beyond a single *device*, and certainly not to every unspecified device subject to seizure under the Warrant. *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) ("An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."). And despite what the Government thinks, *United States v. Yu*, No. 22-cr-208 (CBA), 2023 WL 4687970 (E.D.N.Y. July 21, 2023), highlights what the Warrant here lacks. 2023 WL 4687970, at *11 & nn.5, 16 (upholding warrant where, unlike here, affidavit referenced specific texts sent from seized devices as well as specific WhatsApp and WeChat messages).

and password. Opp. at 66. The Court should not just take the Government's word for it. Perhaps knowing that its word is not enough, the Government attempts to evade the ambiguity by pointing to the Warrant's "illustrative list" of "cellphones, tablets, computers, and electronic storage media." Opp. at 65–66. An ambiguous list cannot cure an ambiguous Warrant. If anything, the breadth of the list expands the scope of the seizure, makes the Warrant less particular, and heightens the concern that law enforcement could have seized devices wholly unconnected to Mr. Amar or evidence of the alleged fraud.

In any event, the Fourth Amendment tolerates the level of ambiguity the Government invites the Court to embrace only if "law enforcement agents have done the best that could be reasonably expected under the circumstances . . . have acquired all the descriptive facts which a reasonable investigation could be expected to uncover, and have insured that all those facts were included in the warrant." *United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984); Opp. at 58 (quoting *Young*). That is not the case here. Agent Rosenman had access to the make and model of every device associated with Mr. Amar's ▅▅▅▅ account since 2020 (in the call logs), and IMEI numbers for Mr. Amar's devices (in the Grand Jury subpoena). None of this made it into his Affidavit, which did not "describe the items to be seized with as much particularity as the circumstances allow." *United States v. Saenz*, No. 16-cr-403 (GRB), 2022 WL 17961205, at *3 (E.D.N.Y. Dec. 27, 2022); *Zemlyansky*, 945 F. Supp. 2d at 454 ("[L]ack of particularity may result from, or at least be suggested by, other circumstance-specific considerations."). While sometimes law enforcement may seize a device without specifying what it is, this is not one of those instances. *United States v. Griffith*, 867 F.3d 1265, 1276 (D.C. Cir. 2017); *see also Wheeler v. City of Lansing*, 660 F.3d 931, 942 (6th Cir. 2011) (requiring even illustrative list of items to be "further particularized" where Government possessed more specific information).

11

**IV.     The Good Faith Exception Does Not Apply**

The Government is wrong that the good faith exception excuses the Warrant's shortcomings or law enforcement's improper use of the Warrant. "Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble," *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996), and "the mere presence of a warrant does not end the inquiry into objective reasonableness." *United States v. Wey*, 256 F. Supp. 3d 355, 398 (S.D.N.Y. 2017) (quotation marks and citation omitted).

Courts "commonly refuse to find good faith relance" on warrants that are overbroad or unparticular, as this one indisputably is. *United States v. One Parcel of Prop. Located at 18 Perkins Road, Woodbridge, Conn.*, 774 F. Supp. 699, 707 (D. Conn. 1991); *see, e.g.*, *Groh v. Ramirez*, 540 U.S. 551, 563 & n.8 (2004) (particularity); *United States v. Buck*, 813 F.2d 588, 593 (2d Cir. 1987) (particularity); *Cioffi*, 668 F. Supp. 2d at 396 n.9 (overbreadth); *Wey*, 256 F. Supp. 3d at 398 (overbreadth and particularity); *Zemlyanksy*, 945 F. Supp. 2d at 469–70 (overbreadth and particularity). The same is true when the Government seizes a phone without probable cause, like here. *See, e.g.*, *Garcia*, 2023 WL 4850553, at *12–13 ("[G]iven that this warrant was not supported by probable cause, was not sufficiently particularized, and was extraordinarily overbroad, the Court finds that the warrant was so defective that the detectives had no objectively reasonable basis for relying upon it."); *United States v. Harvey*, No. 21-cr-335 (SJ), 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022); *United States v. Oglesby*, No. 18-cr-0626 (KPE), 2019 WL 1877228, at *7 (S.D. Tex. Apr. 26, 2019).

Further justifying suppression, the Government "violate[d] multiple components of the Fourth Amendment," *Wey*, 256 F. Supp. 3d at 398; *Zemlyansky*, 945 F. Supp. 2d at 475–76, and Agent Rosenman had, by the Government's own admission, "considerable experience investigating fraud schemes," which underscores the need for suppression instead of obviating it.

12

Opp. at 52; *United States v. Lindsey*, 596 F. Supp. 2d 55, 62 (D.D.C. 2009) (experience a "factor to be taken into account when determining whether an officer would know if a search was illegal despite the magistrate's authorization" (citation omitted)). Because law enforcement acted in objectively unreasonable reliance on an overbroad and unparticular Warrant bearing no indicia of probable cause, the Court should suppress evidence from the seizure. *Zemlyansky*, 945 F. Supp. 2d at 469–72 (collecting cases showing suppression is "ordinarily" the remedy).

## V. Suppression Is Necessary to Deter Similar, Future Misconduct

The Court should also suppress evidence from Mr. Amar's phone because the Government must be deterred from "deliberate, reckless, or grossly negligent conduct." *Davis v. United States*, 564 U.S. 229, 238 n.11 (2011). For one thing, the Warrant's "obvious deficiencies" were not "identified in the warrant preparation and review process," which is "an indication of grossly negligent disregard for Fourth Amendment rights." *Garcia*, 2023 WL 4850553, at *13; *In re 650 Fifth Ave. & Rel. Props.*, 934 F.3d 147, 164 (2d Cir. 2017) (invoking exclusionary rule because "glaring deficiencies survived the Government's typical process for drafting, reviewing, and executing warrants"); *Ryan v. United States*, No 07-cr-35 (WKS), 2009 WL 1545794, at *5 (D. Vt. May 26, 2009) ("A warrant lacking particularity will no doubt be brought promptly to the attention of the United States Attorney's Office for correction. . . . suppressing the evidence here will have a significant deterrent effect."). Notably, as to one of these deficiencies—no date range limiting the search—"[s]everal courts in this Circuit have . . . warned the Government to include [it] when possible" in their application documents, making its omission from Agent Rosenman's Affidavit inexplicable.[11] *United States v. Levy*, No. 11-cr-62 (PAC), 2013 WL 664712, at *11 n.7

---

[11] This is true regardless of whether the Warrant specifies the offenses under investigation, which the Government declares cures the defect. Opp. at 67. Indeed, the Government cites no authority for the claim that the presence of one makes up for the absence of the other.

13

(S.D.N.Y. Feb. 25, 2013) ("The Court joins in this admonishment."); *In re 650 Fifth Ave.*, 934 F.3d at 163 (suppressing evidence because "[n]o reasonable officer could have presumed that [a] glaringly deficient warrant [with no date range] was valid").[12]

For another, despite the Warrant's overbreadth, law enforcement weaponized it to strong-arm Mr. Amar into a seizure at night, on his wedding anniversary, and in the presence of his wife, where he gave up his phone and passcode only after law enforcement threatened to seize it, search it to obtain evidence, then return it in pieces. Again, the Government transparently mischaracterizes Mr. Amar's declaration while needlessly adding that it is "salacious," Opp. at 53 n.21, but the Government's say-so, in the absence of an affidavit or declaration from a percipient witness, is insufficient to change the truth of Mr. Amar's account. *Id.* at 69–70. Not only that, the Government confusingly cites *dicta* in a single footnote in *United States v. Smith*, 673 F. Supp. 3d 381, 388 n.3 (S.D.N.Y. 2023), a case involving an unlawful and warrantless border search, for the proposition that, even if law enforcement coerced Mr. Amar's passcode, that still would not require suppression. Opp. at 69–70 n.25. That was neither argued nor held in *Smith*.

Nothing short of suppression can remedy the fact that the Government "exploited prior illegality" to conduct an unlawful and coercive seizure, *United States v. Shrum*, 908 F.3d 1219, 1234 (10th Cir. 2018) (cleaned up), and disregarded Mr. Amar's instruction to speak with his lawyer, which strikes at the heart of the exclusionary rule. *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968) (purporting to have lawful authority to execute a seizure is "instinct with coercion"); *Zemlyansky*, 945 F. Supp. 2d at 471, 475 (overbreadth "contributes to a finding of reckless or deliberate conduct, and bolsters the case for a suppression remedy designed to deter

---

[12] The Government attempts to distinguish *In re 650 Fifth Ave.* by arguing that the warrant there suffered from "scores of other defects." Opp. at 67 n.24. Scores of defects are precisely why this Warrant is deficient.

14

future reliance on similarly deficient warrants," and "arbitrariness in the execution of a deficient warrant substantially undermines the case for a finding of good faith").

## CONCLUSION

For the reasons set forth above and those in his opening brief, Mr. Amar respectfully submits that the Court should suppress all evidence obtained from Mr. Amar's seized phone and any evidence derived therefrom. In the alternative, the Court should order a *Franks* hearing on Agent Rosenman's material omissions and law enforcement's coercive conduct.

Dated: May 20, 2024

Respectfully submitted,

*/s/ Sean S. Buckley*
Sean S. Buckley
Steven G. Kobre
Alexandria E. Swette
KOBRE & KIM LLP
800 Third Ave
New York, NY 10022
Tel: (212) 488-1200
Fax: (212) 488-1220
Sean.Buckley@kobrekim.com
Steven.Kobre@kobrekim.com
Alexandria.Swette@kobrekim.com

Victoria Fordin (*pro hac vice forthcoming*)
Jake Rush (*pro hac vice forthcoming*)
1919 M Street, NW
Washington, DC 20036
Tel: (202) 664-1900
Fax: (202) 664-1920
Victoria.Fordin@kobrekim.com
Jake.Rush@kobrekim.com

*Counsel for Defendant Olivier Amar*