O86AJavC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                    23 Cr. 251 (AKH)

5  CHARLIE JAVICE, *et al.*,

6                                    Conference
               Defendants.
7  ------------------------------x

8
                                    New York, N.Y.
9                                   August 6, 2024
                                    12:05 p.m.
10

11 Before:

12              HON. ALVIN K. HELLERSTEIN,

13                                   District Judge

14                   APPEARANCES

15 DAMIAN WILLIAMS
        United States Attorney for the
16      Southern District of New York
   BY:  DINA McLEOD
17      NICHOLAS CHIUCHIOLO
        RUSHMI BHASKARAN
18      GEORGIA KOSTOPOULOS
        Assistant United States Attorneys
19
   DAVIS POLK & WARDWELL
20      Attorneys for Defendant JPMC
   BY:  GREG D. ANDRES
21      SIDNEY BASHAGO
        MICHELLE ADLER
22      CHRISTIAN HINES

23 QUINN EMANUEL URQUHART & SULLIVAN LLP
        Attorneys for Defendant Javice
24 BY:  SAMUEL NITZE
        SARAH CONCANNON
25      JANICE YOON

O86AJavC

1                           APPEARANCES cont'd

2    KOBRE & KIM LLP
          Attorneys for Defendant Amar
3    BY:   SEAN S. BUCKLEY
          ALEXANDRIA E. SWEETE
4         JAKE RUSH

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           (Case called)

2           MR. NITZE:  Good afternoon, your Honor.  Sam Nitze,

3    Sarah Concannon, Janice Yoon, here for Charlie Javice, and

4    Ms. Javice is here with us at counsel table.

5           THE COURT:  How are you doing?

6           MR. NITZE:  Well.  Thank you.

7           MR. BUCKLEY:  Good afternoon, your Honor.  Sean

8    Buckley, Alexandria Swette, and Jake Rush on behalf of Olivier

9    Amar, and Mr. Amar joins us at counsel table.

10          THE COURT:  How are you?

11          MS. McLEOD:  Good afternoon, your Honor.  Dina McLeod,

12   Nicholas Chiuchiolo, Rushmi Bhaskaran, and Georgia Kostopoulos

13   for the government.

14          MR. ANDRES:  Good afternoon, your Honor.  Greg Andres,

15   Sidney Bashago, Michelle Adler, and Christian Hines for J.P.

16   Morgan.  We're all from Davis Polk.

17          THE COURT:  Thank you.  Thank you all.  So I have the

18   book of the sample.  Just a word of background for this

19   proceeding.

20          Sometime ago the defendant served, pursuant to Rule

21   17(a) of the Federal Rules of Criminal Procedure, a subpoena on

22   J.P. Morgan Chase.  I understand that pursuant to that

23   subpoena, a substantial number of documents were produced.  I

24   understand also that a privilege log was produced in various

25   iterations and that a substantial number of documents were

1  claimed as privileged.  Defendants challenge the bona fides of

2  the privilege log as having been produced too late, and asked

3  me to rule that attorney/client privilege has been waived.  I

4  decline to do that.

5          It appears that at this point, the privilege log is

6  satisfactory.  There's been a substantial documentary

7  production in this case, and naturally it would take time and

8  often various steps to complete a privilege log.  That is as

9  narrow as possible.  I think the proceedings show that J.P.

10  Morgan Chase has been functioning in good faith, and since

11  there's no prejudice that's discernible, I rule that the motion

12  to consider the attorney/client privilege waived is denied.

13          I asked the parties to agree on a sampling procedure,

14  which would allow me to rule on the samples produced with a

15  thought that these rulings could be extended by the parties to

16  cover all the documents in dispute.  So today we're going to do

17  that.

18          And I've been given a book, which produces in full the

19  documents withheld on the ground of privilege.  The documents

20  that have been claimed as privileged have not been shown to the

21  defendants, nor to the government.  They've been claimed as

22  privileged.  And what I would like to do is go document by

23  document, ask J.P. Morgan Chase to identify what in the

24  document is considered to be privileged, to describe the

25  document as fully as possible without breaching privilege, and

O86AJavC

1  then to allow me to make a ruling.

2  So who will be speaking for J.P. Morgan Chase?

3  MR. ANDRES:  Your Honor, I'm going to start.  This is

4  Greg Andres.  I suspect I may need some help from my colleague

5  along the way, but I'll start.

6  THE COURT:  Is it convenient for you to take the

7  podium?

8  MR. ANDRES:  If you'd like, your Honor.

9  THE COURT:  Is it convenient?

10  MR. ANDRES:  I would rather sit here, but I'm happy to

11  do with whatever, your Honor.

12  THE COURT:  Do you need to sit there because you need

13  to consult books?

14  MR. ANDRES:  Yeah, I think that would be helpful, your

15  Honor.

16  THE COURT:  And they're voluminous to take up to the

17  podium.

18  MR. ANDRES:  Herein here, your Honor.

19  THE COURT:  Go ahead, Mr. Andres.  I give you

20  permission.

21  MR. ANDRES:  Thank you, your Honor.  As your Honor

22  knows, the documents that we've listed in the binder there are

23  by exhibit and then by a letter.  So I'm going to start with

24  Exhibit A.  For the record, that is a document from June 11,

25  2021.  This is a document that also exists on Appendix A, B, C,

1    and D of the joint privileged log.  So, your Honor, this

2    document is an instance of Mr. Glazer, who is the chief legal

3    officer, in addition to having a business role --

4              THE COURT:  I should have asked you this before, but I

5    take it that these ten that have been given to me, have been

6    chosen by jointly by you and the defendants?

7              MR. ANDRES:  I think it's more accurate to say that

8    they were chosen by the defendants, your Honor.  This list has

9    changed over time.

10             So just so you understand the process, we have been

11   going back and forth on the joint letter with the defendants.

12   They've proposed different samples over time.  In some

13   instances, we've downgraded those because we've had a chance to

14   meet and confer.  In some instances, they've changed what the

15   documents are.  But this is the list that comes from the

16   defendants.

17             THE COURT:  Okay.  Go ahead.

18             MR. ANDRES:  Okay.  So this first document, document

19   A, is an example of Mr. Glazer providing legal advice to other

20   employees, including Ms. Javice.  And again, I'm going to try

21   to do this at a high level, your Honor, but you'll tell me if

22   you need more information.

23             THE COURT:  First, who are the people -- I take it

24   this is a conversation, this document?

25             MR. ANDRES:  Yes.  Yes.

O86AJavC

1          THE COURT:  And who are the parties to the
2  conversation?
3          MR. ANDRES:  So the parties are Ms. Javice, Matt
4  Glazer.  I'm starting at the top where it says "see."  That's
5  Ms. Javice, and then Matt Glazer, and then ███████████, who
6  was then an employee at Frank, and I believe those are all of
7  the participants.
8          THE COURT:  So first one is M-P-D-M, Mary, Patrick,
9  David, Mary.
10          MR. ANDRES:  Your Honor, if you turn to the back,
11  there's really no substance there.  I don't know if that's a
12  cover page.
13          MS. ADLER:  It's a cover page.
14          MR. ANDRES:  Yeah, that's a cover page.  So if you
15  turn to the back.
16          THE COURT:  I have page 418.
17          MR. ANDRES:  Yeah, they all have the same Bates
18  Number, unfortunately.  But it's the second page at the top it
19  says Charlie Javice.
20          THE COURT:  One minute.
21          Okay.  I had had that as the first page.
22          MR. ANDRES:  Your Honor, again, in an effort not to
23  reveal privilege, if you see there --
24          THE COURT:  The people on the conversation are not
25  privileged.

1     MR. ANDRES:  Understood.

2     THE COURT:  So identify who the people are.

3     MR. ANDRES:  So Charlie Javice; Matt Glazer, who is

4  both the chief legal officer and also has a business role; and

5  ███████████.  Those are all the people in the chat.

6     THE COURT:  What in the document do you claim to be

7  privileged?

8     MR. ANDRES:  So if you look at the first, literally

9  the first line under Ms. Javice, she's asking what the ETA is

10 and it lists an acronym, which I'm not going to say, but that

11 acronym is an acronym for a federal statute.  And she's asking

12 for legal advice about that legal statute.  Then Matt Glazer,

13 who's the lawyer, responds.  There's some discussion about the

14 different options.  And if you go to the very bottom of the

15 page, three up from the bottom, Mr. Glazer --

16    THE COURT:  This appears to be legal advice given by

17 the lawyer to managing people of the company.

18    MR. ANDRES:  Correct.

19    THE COURT:  And is therefore privileged.

20    MR. ANDRES:  Correct.

21    THE COURT:  I sustain privilege.

22    MR. ANDRES:  Thank you, your Honor.

23    THE COURT:  We go to B.

24    MR. ANDRES:  Correct.  Your Honor, this is document,

25 and again, for the record, this document is dated June 15,

O86AJavC

1    2021.  Same issue here, your Honor.  This is, if you look at

2    the document, you have the cover page, and then if you turn one

3    page over, this is a shorter one.  You have Matt Glazer, who's

4    the lawyer; and then you have ███████, who's an employee at

5    Frank; and then you see the next line it says "here's the new

6    line."  And you'll see it says "unless permitted by applicable

7    law."  That is the legal advice that the lawyer, Mr. Glazer, is

8    providing to █████.  So same issue here.

9              THE COURT:  I rule that as privileged.

10             MR. ANDRES:  Thank you, your Honor.

11             MS. SWETTE:  Your Honor, this is Alexander Swette on

12    behalf of Olivier Amar.

13             THE COURT:  You may stay in your seat but move the

14    microphone closer to you.

15             MS. SWETTE:  As to the past two documents you went

16    over with counsel for JPMC, one of the positions we advanced in

17    our letters is we should still be entitled to see these

18    communications because our client Olivier Amar, or Mr. Nitze's

19    client, Ms. Javice, were on those communications.  So they were

20    within the privilege fold when those communications happened,

21    and they should be able to access those communications.

22             THE COURT:  For the reasons given by Judge Furman in

23    his decision -- I'll give it to you in a moment -- the answer

24    is you are not entitled to have it.  It's the *Wells Fargo*

25    decision, 132 F.Supp. 3d 558.

1          MS. SWETTE:  So, respectfully, your Honor --

2          THE COURT:  The privilege belongs to the company.  The

3     company was Frank.  Frank was purchased by Chase.  Chase then

4     becomes the client and owns the privilege.  The individuals are

5     not in a joint privilege situation.  They're working for the

6     company.  I so hold.

7          MS. SWETTE:  So, your Honor, in that case and in all

8     other cases cited by the bank in their briefing, it didn't

9     actually squarely deal with the issue at hand here, which is

10     the circumstance in which a defendant is seeking their own

11     communications, not communications with in-house counsel and

12     others at the company.  It's their own communications which

13     they were privy to at the time the communications were made.

14          THE COURT:  Were these documents, documents authored

15     by the defendants --

16          MS. SWETTE:  These Slacks were, yes.

17          THE COURT:  These are not documents authored by the

18     defendants.  They're company memoranda and they're entitled to

19     the privilege.

20          MS. SWETTE:  So in *Wells Fargo* --

21          THE COURT:  I would depart from Judge Furman's view if

22     these were statements by the individual.  They're not.

23          MS. SWETTE:  So these are communications that Mr. Amar

24     had with Mr. Glazer.

25          THE COURT:  Yes.  They are conversations that Mr. Amar

O86AJavC

1  had, but Mr. Amar is acting as an employee or officer of the

2  company.  And privilege is owned by the company.

3          MS. SWETTE:  That's correct, your Honor.  I think the

4  distinguishing feature --

5          THE COURT:  I don't need to carry this on, but you've

6  made your point.  I have ruled against it.

7          MS. SWETTE:  Well, Judge Furman's case dealt with a

8  different circumstance, which is who controls and gets to waive

9  the privilege.  We're not there yet right now.  We're just

10  talking about access to documents.

11          THE COURT:  The privilege has been claimed.  It's been

12  claimed by the party owning the privilege.  And I rule that it

13  is covered by privilege.  I've ruled.  Let's go on.

14          MS. SWETTE:  Okay.

15          MR. ANDRES:  Your Honor, document C has been

16  downgraded by J.P. Morgan and has been produced to the

17  defendants.  I'm happy to go through the sequence of why that

18  happened.

19          THE COURT:  Not necessary.

20          MR. ANDRES:  Thank you, your Honor.

21          Document D is a document where on the top line, I'll

22  just describe it for you then I'll go through the details.

23  There is a top line communication that doesn't have lawyers,

24  but those communications are repeating the advice or discussing

25  the advice given by in-house lawyers at J.P. Morgan and lawyers

O86AJavC

1    at outside counsel at Dechert relating to the merger and the

2    merger agreement.  So I'm happy to --

3              THE COURT:  I'd like to know what in here covers that.

4              MR. ANDRES:  Sure.  So just if you look on the first

5    page --

6              THE COURT:  Has any part of this document been

7    produced?

8              MR. ANDRES:  No, not this thread.  A different thread

9    that included non-privileged information.

10             THE COURT:  Let's work with this thread because on the

11   first page I don't see anything that's privileged.

12             MR. ANDRES:  For your Honor's information, there are

13   lawyers on those pages.

14             THE COURT:  Doesn't make a difference.  There's no

15   advice that's being discussed.

16             MR. ANDRES:  Yes.  So, your Honor, if you go, I'm

17   going to count the pages --

18             THE COURT:  So I'm ruling that the first page is not

19   privileged.

20             MR. ANDRES:  Your Honor, I think in order to make that

21   determination you need to see where the privilege is because

22   those relate to the privileged conversations, and there are

23   lawyers that are continuing that conversation.  So if you turn

24   to the back of the second page, halfway down --

25             THE COURT:  The first word is "appreciate?"

O86AJavC

1          MR. ANDRES:  No, I'm on the back of the second page,

2   halfway down there's an e-mail from somebody named Christian

3   Matarese from Dechert.

4          THE COURT:  One minute.

5          MR. ANDRES:  It might be the fourth page for you, your

6   Honor.  I'm sorry.

7          THE COURT:  Yeah, I don't have backs.

8          MR. ANDRES:  Got it.  Fourth page.  Sunday, July 18th,

9   8:26.  This is a lawyer at Dechert outside --

10         THE COURT:  Let me find this.

11         MR. ANDRES:  Sure.

12         THE COURT:  First word on the page is a telephone

13  number?

14         MR. ANDRES:  Yes, correct.  Halfway down it says from

15  Matarese, Christian, date July 18, 2021.  Christian Matarese is

16  from the law firm of Dechert.  I think they're just called

17  Dechert now.  And he's communicating with other lawyers and

18  people at J.P. Morgan and he's giving advice about the merger

19  agreement.  If you read that e-mail and the ones that ensue,

20  you'll see where the legal advice is.

21         THE COURT:  There's a reference to external e-mail.

22  Has that been redacted?

23         MR. ANDRES:  No, this entire document has been

24  withheld for privilege.  If you go further down --

25         THE COURT:  But that reference, external e-mail, does

1    that --

2            MR. ANDRES:  That just means going from J.P. Morgan

3    outside of J.P. Morgan to their lawyers at Dechert.

4            THE COURT:  So up to that point, I see nothing that's

5    privileged.

6            MR. ANDRES:  You're saying at the top, the e-mail --

7    okay.  And then below that where it says Christian --

8            THE COURT:  I'll deal with it below, but up to that

9    point, I see nothing that's privileged.  The comment that you

10   are concerned about at the top of that page, and the bottom of

11   the previous page, in my opinion, is not privileged.  It has to

12   do with status of drafts.  And I don't see any advice that it

13   merits privilege.  So I hold up to the external e-mail, not

14   privileged.

15           MR. ANDRES:  Okay.  So when you say --

16           THE COURT:  Yes.

17           MR. ANDRES:  I just want to understand that we're on

18   the same page.  You say external e-mail.  Above that it says

19   Sunday July 18, 2021, at 8:30 a.m.?

20           THE COURT:  Above that it says July 16, 2021.

21   5:03 p.m.  And the subject is "call debrief."

22           MR. ANDRES:  Yes, your Honor.  It's our position that

23   the discussion at the bottom of the page where it talks

24   specifically --

25           THE COURT:  I haven't gotten to that yet.  I'm up to

1   that and I don't see what's privileged up to that.

2         MR. ANDRES: No, before that there are references to

3   the merger agreement.

4         THE COURT: That doesn't make it privileged.

5         MR. ANDRES: It does to the extent there are

6   negotiations that are being -- and advice that's being given by

7   J.P. Morgan's outside counsel about the merger. That is

8   exactly why they're consulting with their outside lawyers to

9   get advice about the agreement --

10        THE COURT: At the bottom of the page, there's a

11   report on a point that has been settled. That's not

12   privileged. On the top of the next page, there's a reference

13   to a draft, which by itself is not privileged.

14        Who requests it is not privileged. The progress of

15   the document is not privileged. The reference to substantive

16   points that dovetail is not a privileged point. And the "find

17   the time that works" is not privileged. There's nothing

18   privileged there.

19        MR. ANDRES: Your Honor, the document talks about the

20   substantive points in the agreement and the approach that

21   should be taken. It's --

22        THE COURT: I don't see it. I don't see it. And I

23   hold it's not privileged. Produce it.

24        Now, at the bottom.

25        MR. ANDRES: Just tell me where you're reading now,

O86AJavC

1  your Honor.

2          THE COURT:  I'm now at the memo from Christian

3  Matarese to ███████  and others dated July 16, 2021, at

4  5:00 p.m.

5          MR. ANDRES:  Thank you.

6          THE COURT:  All that's privileged.  That's advice

7  given by the lawyer to people involved in the negotiations.

8          In the middle of the next page, we have a memo from

9  ███████.  I should read this the other way around,

10 shouldn't I?

11         MR. ANDRES:  Yes, your Honor.  But in either case, I

12 think when you read it that way you understand --

13         THE COURT:  Let me read it from the back end, which is

14 the beginning of the tail of the conversation, and make my

15 rulings that way.  It will make more sense.

16         MR. ANDRES:  Thank you, your Honor.

17         THE COURT:  The last page is boilerplate.

18         MR. ANDRES:  Yes.

19         THE COURT:  And not privileged.  The page before is

20 the trying to make time to get a call, that's not privileged.

21         I wish these pages had been numbered.  It would be

22 easier to refer to them.

23         MR. ANDRES:  I apologize, your Honor.

24         THE COURT:  The next page begins with the word

25 "options."  This is advice and it's privileged.

O86AJavC

1          The next page, first word is "Adam," referring to ███
2   ███.

3          MR. ANDRES:  Correct.

4          THE COURT:  The bottom half of the page consisting of
5   a memorandum of Christian Matarese constitutes advice to the
6   client and is privileged.  The top half of the page is just
7   pleasantries.  It should be produced.

8          I'm now on the page that begins with the word
9   "releases."  The top part of the page is privileged.  The rest
10  of the page, just pleasantries or reports, and I've referred to
11  the memo from ███████ to ██████████ and others.  And the
12  respond -- well, first, the memo from ██████ to ██████████
13  ██████ and then above that from ███████████ to ██████, those
14  two items are not privileged.

15         MR. ANDRES:  Your Honor, if you look at the bottom,
16  the ███████████ e-mail on July 16, 4:31, she's saying
17  "what's the next step."  That's a request for legal advice.

18         THE COURT:  No, it isn't.  It's not a request for
19  legal advice.  It's a question:  What do we do next.

20         MR. ANDRES:  Your Honor, can I --

21         THE COURT:  It's not privileged.

22         MR. ANDRES:  Just so I understand this process, and
23  I'm sorry to interrupt --

24         THE COURT:  What is privileged is advice.

25         MR. ANDRES:  Understood.

O86AJavC

1    THE COURT:  Advice.  Information given by a client to

2   a lawyer and a response by a lawyer responding to that advice.

3   What I am saying is not privileged does not constitute advice.

4   It constitutes pleasantries or report on stages on negotiations

5   or other matters like that.  That's the basis of my ruling.

6    MR. ANDRES:  I understand, your Honor.  It also, the

7   pleasantries are not remotely responsive or relevant to the

8   defendant's Rule 17 subpoena.  So obviously we've done

9   everything we could to respond and produce an appropriate --

10    THE COURT:  I'm given ten samples.  I'm going to rule

11   on these samples, and then we'll make other rulings on the

12   basis of what the scope of 17 should be.

13    MR. ANDRES:  Thank you, your Honor.

14    THE COURT:  But these samples are now up for rulings

15   on privilege or not.  So we're finished with D.

16    MR. ANDRES:  No, you have to continue to go up, your

17   Honor.

18    THE COURT:  I think I ruled on everything before that.

19    MR. ANDRES:  Well, I'm not sure there's a ruling on

20   the top of the page where it's Saturday, July 17, at 2:55 p.m.

21   where the start of the e-mail is "thanks."

22    THE COURT:  I have not ruled on it.  You're correct.

23   The memo from Matarese to █████ is privileged.

24    MR. ANDRES:  Thank you, your Honor.  So we're onto E.

25    THE COURT:  And the bottom of the page is privileged.

O86AJavC

1    Have I done everything on D?

2                   MR. ANDRES:  Yes.

3                   THE COURT:  Okay.  E.

4                   MR. ANDRES:  Yeah.  Let's go to E.

5                   THE COURT:  I should go from the back to the front.

6                   MR. ANDRES:  Okay.  So you see the last two, last few

7    pages are charts.

8                   THE COURT:  Just a moment, please.  Yes.

9                   MR. ANDRES:  Okay.  If you go to the e-mail above

10   that, there's an e-mail from ████████ and then there are

11   J.P. Morgan lawyers, ████████, ████████, and

12   others, and there's a discussion about the legal advice about

13   relating to this transaction.

14                  THE COURT:  Let me read it.

15                  MR. ANDRES:  Okay.

16                  THE COURT:  Who is ████████?

17                  MR. ANDRES:  ████████ is a J.P. Morgan employee

18   involved in the deal, and then ████████ and the people

19   below them where you'll see it says legal are in the J.P.

20   Morgan legal department.  And you'll see that it says --

21   there's a specific request to ensure there's no legal/data

22   concerns in that second sentence asking for legal advice.

23                  THE COURT:  This document reflects conversations

24   having to do essentially with business strategies, how to

25   conduct a negotiation, what to ask for, what not to ask for.

O86AJavC

 1  It's not legal advice.  I do not see it covered by privilege.

 2  Argument, Mr. Andres?

 3             MR. ANDRES:  Sure, your Honor.  If you look at --

 4             THE COURT:  How should I pronounce your name?

 5             MR. ANDRES:  However you like, your Honor.

 6             THE COURT:  No, no, it's not how I like it.  How do

 7  you pronounce it?

 8             MR. ANDRES:  Andres is fine.

 9             THE COURT:  Andres.  Sorry.

10             MR. ANDRES:  That's okay.  I wasn't trying to be

11  flippy, your Honor.  People pronounce it every way and I don't

12  have a particular preference.

13             THE COURT:  No, listen, you're entitled to your

14  particular pronunciation.

15             MR. ANDRES:  Thank you.  I'm not sure my wife agrees

16  with that, so be it.

17             THE COURT:  I register at the hotel, they ask if I

18  pronounce my name "Hellerstein" or "Heller Stein." I think it

19  depends.  If I try to pass myself off as someone more important

20  than I am, I say "Heller Stein."

21             MR. ANDRES:  Your Honor, if you look at the document,

22  you see the charts --

23             THE COURT:  Don't publish that.

24             MR. ANDRES:  You see there's an e-mail July 31 at

25  2:46 p.m.

O86AJavC

1    THE COURT:  Let me find it, please.  July 31 at 2:46.

2    Yes, I see it.

3    MR. ANDRES:  The request here from ███████████ , who

4    works at J.P. Morgan, to the lawyers at J.P. Morgan, ███████

5    ███████ , ███████████ , and others, is specifically for their

6    legal advice about --

7    THE COURT:  They ask a question.

8    MR. ANDRES:  Yeah, they say --

9    THE COURT:  Started "we like to ensure."

10   MR. ANDRES:  Yeah.

11   THE COURT:  But there's no legal answer to that

12   question.

13   MR. ANDRES:  That's in the ensuing e-mails above that,

14   your Honor.

15   THE COURT:  Show me where.

16   MR. ANDRES:  So if you turn to the page before that,

17   there's an e-mail that says we're waiting to get legal advice.

18   And then above that, where the e-mail starts at 6:07 p.m.

19   "Leslie."

20   THE COURT:  I'm not with you.

21   MR. ANDRES:  6:07 p.m.

22   THE COURT:  Yes.

23   MR. ANDRES:  There's the advice.

24   THE COURT:  I agree.  That memorandum from ███████

25   ███████ to ███████████ dated July 31, 2021, 6:07 p.m. and

O86AJavC

1    everything before it in time is covered by privilege.

2              What about after that?

3              MR. ANDRES:  Okay, your Honor.  So if you turn to the

4    next page and you see at the top it says minus Steve or dash

5    Steve.

6              THE COURT:  Yes.

7              MR. ANDRES:  If you look below that, there's a passage

8    that starts with "great news."

9              THE COURT:  Yes.  That is negotiation strategy.

10             MR. ANDRES:  Well, it says, at the last, it says --

11   it's asking for legal advice, "unless legal feels differently."

12   So they're asking for legal advice and the e-mail below that

13   also relates to that advice.

14             THE COURT:  Where is the advice?

15             MR. ANDRES:  The advice is on the next page, if you go

16   halfway up, ██████████, who's a lawyer from J.P. Morgan, at

17   9:48 a.m.

18             THE COURT:  Yes, I don't believe it's essentially

19   advice.  It's more litigation -- negotiation strategy, and I

20   rule that it's not privileged.

21             MR. ANDRES:  Okay.

22             THE COURT:  That finishes E?

23             MR. ANDRES:  I think the ensuing e-mails, there's an

24   ensuing e-mail on the next page is another discussion about

25   legal advice.

1          THE COURT:  What time?

2          MR. ANDRES:  So it starts at the top that says "Alex—

3    for #3."

4          THE COURT:  Yes.

5          MR. ANDRES:  They're asking there for legal advice

6    about the lawyers in terms of the agreement and then the

7    ensuing e-mail below is relating to, again, asking for legal

8    advice.

9          THE COURT:  This memo deals with the negotiations

10   between J.P. Morgan and Charlie Javice as adversaries.

11         MR. ANDRES:  Your Honor, as I would characterize it,

12   it's J.P. Morgan's business asking for legal advice from J.P.

13   Morgan lawyers.  And on some of these I believe there's outside

14   counsel.  They're asking for legal advice as it relates to the

15   transaction.  And that is privileged information.

16         THE COURT:  Where do I find that?

17         MR. ANDRES:  If you start at the top, where it says

18   "Alex— for #3," you can see there's a discussion about lawyers.

19         THE COURT:  Yeah, there's no legal advice there.

20         MR. ANDRES:  The Chase lawyers.  Right, these are

21   the --

22         THE COURT:  I'm assuming there are lawyers involved in

23   these negotiations.

24         MR. ANDRES:  Yes.

25         THE COURT:  But that doesn't make it privileged.

O86AJavC

1    MR. ANDRES:  If you look at the first paragraph, if

2    you go to the next page.  This is advice from ████████ at

3    2:30 p.m.

4                THE COURT:  When you say the next page really --

5                MR. ANDRES:  On the first page.  Exactly.

6                THE COURT:  It's misleading, but if anyone wants to

7    check this record, we're working on chronology, and by next

8    page we mean the next step in the chronology.

9                MR. ANDRES:  Correct.  And there's more discussion,

10   requests for advice.  And, your Honor, I think the law of

11   privilege allows for the questions and the answers to be

12   considered privilege.

13               THE COURT:  Request for legal advice, imparting

14   information in order to allow the lawyer to understand the

15   question is privileged.  And the legal advice rendered thereon

16   is privileged.

17               But business negotiations, negotiation strategy,

18   whether conducted by lawyers or anyone else, is not privileged.

19               MR. ANDRES:  Your Honor.

20               THE COURT:  Now let me read this again.

21               MR. ANDRES:  Thank you.

22               THE COURT:  I hold that these are negotiation

23   strategies, not legal advice.  Not privileged.

24               MR. ANDRES:  Yeah.  Your Honor, I think you had

25   previously ruled that the e-mail at 6:07 which is now -- you

1    had heard -- when you say that's not privileged, you're talking

2    about the ensuing e-mails.  You previously ruled that some of

3    the other e-mails were privileged.

4              THE COURT:  We're working on the chronology that

5    follows that which I held privileged.

6              MR. ANDRES:  Thank you.

7              So we're up to F, your Honor.  This is another e-mail

8    where J.P. Morgan lawyers are giving advice with respect to the

9    merger agreement.  And, your Honor, just to be clear, these

10   individuals are not asking J.P. Morgan lawyers or their outside

11   counsel for strategery or strategic decisions on negotiations.

12   They're asking for legal advice.

13             THE COURT:  We'll read this together.  First

14   memorandum is from ████████████ to Christian Matarese,

15   July 7, 2021, 6:52 p.m.

16             This has to do with timing of exchange of documents.

17   It's not privileged.

18             MR. ANDRES:  It has to do with comments on the markup

19   of the documents.

20             THE COURT:  The request to comment is not privileged.

21   The comment may be privileged.  The information given to obtain

22   the legal advice may be privileged.  But nothing here fits

23   that.

24             MR. ANDRES:  Your Honor, this is the facts that are

25   given to the lawyers so that he can give the advice in the

O86AJavC

1    ensuing e-mails.  So if you read the e-mail at the top.

2              THE COURT:  Sorry, Mr. Andres, it's not privileged.

3              Now going to the document Mr. Matarese sent July 7 at

4    9:13 p.m.

5              MR. NITZE:  Your Honor, may I just, this is Sam Nitze

6    for Ms. Javice.  I have something to say at the end of this,

7    but with respect to this process now, I just want to be sure

8    the record is clear enough that in the event we receive

9    materials following this review, we can sort out what --

10             THE COURT:  That's what I'm trying to do.

11             MR. NITZE:  Okay.  With respect to page numbers or

12   which pieces, because I am struggling to follow only because I

13   can't see the document.

14             THE COURT:  The struggle is I have not received page

15   numbers.  So what I'm doing here with the Exhibit F is starting

16   with the last page of the document, which reflects the earliest

17   point of time.  And I'm working backwards.

18             MR. NITZE:  I see.  And then identifying by date which

19   pieces are privileged or not.

20             THE COURT:  Yes.

21             MR. NITZE:  Understood.  Thank you.

22             MS. SWETTE:  Your Honor, I think it would be helpful

23   for the record if the bank, reading from these documents, they

24   provide the Bates Number.

25             THE COURT:  These are all the same Bates Number.  This

O86AJavC

 1   is all 773, Exhibit F.

 2              MS. SWETTE:  Okay.

 3              THE COURT:  You have identified the documents by

 4   exhibit letter, right?

 5              MS. SWETTE:  Yeah, we do.  I didn't realize it didn't

 6   have Bates Numbers throughout or that it was repeat Bates

 7   Number, thus adding to the confusion.

 8              THE COURT:  So every page is the same Bates Number,

 9   unfortunately.

10              MS. SWETTE:  Okay.

11              THE COURT:  So I don't have a number within the

12   document, and that's why I'm trying to do it by dates so that

13   you can follow me.

14              So I'm now up to the 9:13 p.m. memorandum from

15   Mr. Matarese to ███████████████.

16              So, I'm sorry, but let me get this.  Who is Christian

17   Matarese?

18              MR. ANDRES:  He's a lawyer at Dechert, the law firm of

19   Dechert, who represents J.P. Morgan.  He's outside counsel.

20              THE COURT:  And who is ██████████████?

21              MR. ANDRES:  She's an internal lawyer at J.P. Morgan.

22              THE COURT:  So this is a document from outside counsel

23   to the inside lawyer identifying key issues from a draft

24   agreement.

25              MR. ANDRES:  Correct.

O86AJavC

1    THE COURT:  And that is legal advice.  That document

2    is privileged.

3        MR. ANDRES:  Your Honor, I would just say that as a

4    result of that ruling, it's J.P. Morgan's position that that

5    makes the whole document and the previous document, the

6    previous e-mail privileged as well because they should be read

7    as a whole.

8        THE COURT:  Denied.

9        MR. ANDRES:  We're on to G, your Honor.

10       THE COURT:  That doesn't make any difference.  I'm

11   looking at each memo as it goes and the identification of who

12   was giving advice, who was not giving advice, is not

13   privileged.  Only the advice and the information seeking the

14   advice is privileged.

15       MR. ANDRES:  Okay.

16       THE COURT:  We're up to the top memo of 9:16 p.m. from

17   ████████████, which is a cover note.  Its meaningless.  It's

18   not privileged.  All right.  We're finished with F.

19       We're now on G.

20       MR. ANDRES:  Yeah, we're on G, your Honor.  Thank you.

21   So let's just turn to G because it's a relatively short

22   document --

23       THE COURT:  Let me start, please, and I'll ask you.

24       MR. ANDRES:  Your Honor, can I just explain?  Do you

25   see the highlighting?

O86AJavC

1          THE COURT:  Yes.

2          MR. ANDRES:  So this is an example, I think a fair

3    example, of the conservative position J.P. Morgan took.  We

4    produced this document, what's highlighted is redacted.  So we

5    redacted only about six lines of this document and produced the

6    rest of it.  If you start at the back, this is not back to

7    front.  As I understand it, these communications --

8          THE COURT:  Front to back.

9          MR. ANDRES:  Exactly.

10         THE COURT:  Okay.

11         MR. ANDRES:  So you'll see at the top we redacted that

12   first line that's highlighted that mentions the legality of the

13   document.

14         THE COURT:  I can see it.

15         MR. ANDRES:  Okay.

16         THE COURT:  First line from my colleague Judge

17   ████████ is privileged.  I'm on page two.

18         MR. ANDRES:  Just, your Honor, to be helpful, the

19   reference to Juan, Juan is a lawyer at Dechert.

20         THE COURT:  The reference to a "note from Juan" is not

21   privileged.

22         MR. ANDRES:  Okay.

23         THE COURT:  The reference to "please ping me when you

24   have a minute" is not privileged.  The reference to "join

25   Finland call today" is not privileged.  The next line "an

O86AJavC

1    address is a point of contention" is not privileged.  The last

2    line of the document is privileged.

3            H.

4            MR. ANDRES:  H has been produced, your Honor.

5            THE COURT:  I.

6            MR. ANDRES:  Okay.  I, your Honor, is part of a larger

7    deck that -- where I believe the chief legal officer, somebody

8    senior in the legal department, has asked for a legal

9    assessment of the transaction.  You'll see that the top of the

10   document is stamped confidential and privileged attorney/client

11   privilege.  I realize that that's not indicative and sometimes

12   people overstamp things.  That hasn't been the case here.  But

13   I think it's reflective of the fact that this is a request for

14   advice as to the deal at issue.  And it came specifically from

15   the general counsel.

16           THE COURT:  This appears to be a timetable.

17           MR. ANDRES:  Your Honor, I wouldn't characterize it as

18   a timetable, but I would characterize it as a list of legal

19   issues that are being resolved.

20           THE COURT:  I don't see it.  It seems to me they're

21   points on a document that have to be resolved, but I don't see

22   any legal advice in here.

23           MR. ANDRES:  This is the list of issues to be dealt

24   with --

25           THE COURT:  That doesn't mean that they're legal

O86AJavC

advice.  They're just a list of issues that have to be dealt

with.  There's nothing privileged here.

        MR. ANDRES:  Okay.  Your Honor, the last document is

a -- or the last document in this group is a similar one,

although it's a fuller document.  This also asks for legal

advice from -- this is coming from the general counsel and

she's asking for assessment of the legal issues and frameworks

relating to the deal.

        THE COURT:  They're deal issues.  Again, I don't see

any advice on the first page or the second page.  There are

two -- the first document is a cover page and pages one and

two, I don't see anything involving a request for legal advice

or legal advice.  Rather, these are points that have to be

satisfied.  They seem to be business points or regulatory

points.  I don't see any legal advice here.

        MR. ANDRES:  Yeah.  Your Honor, what I would say about

this document is it's legal assessment of the -- it's not just

a checklist of the deals, but it's a legal assessment of the

outstanding issues for the deal.

        THE COURT:  I don't see it.  It's not privileged.  And

there's a next page one and two, is that a copy?  No.

        MR. ANDRES:  Yeah, that's how it was collected.

        THE COURT:  Same ruling.  The document is not

privileged.

        MR. ANDRES:  Your Honor.

1          THE COURT:  That concludes the sample.

2          MR. ANDRES:  With two exceptions, your Honor.  We

3    didn't produce, because we're not permitted by law, these two

4    documents that require the OCC and the bank's privilege that's

5    owned by the OCC.  We have copies.  I know your Honor asked us

6    to bring copies.  The law doesn't require us or doesn't allow

7    us to do that.  Obviously if your Honor orders us to do that, I

8    will.  But I would propose just an alternative framing so I

9    don't get -- so I protect myself I suppose.  But as an initial

10   a matter, the defendants have made a couple of just flatout,

11   false comments about these documents --

12         THE COURT:  Disregard them.  I disregard them.  I

13   don't believe lawyers should argue epithets.  And I just skip

14   over them.

15         MR. ANDRES:  Yeah, fine.  The point is --

16         THE COURT:  I would like to make this a point on all

17   your future briefing.  Don't use epithets.  Don't try to

18   advance your position by demeaning someone else's position.  I

19   don't find it persuasive.  I find it unprofessional.

20         MR. ANDRES:  Fair enough, your Honor.  Let me say it

21   positively.  J.P. Morgan contacted its regulators about the

22   documents at issue.  We've been in touch with the OCC about

23   these documents.  I believe the OCC has asked us to assert that

24   they --

25         THE COURT:  What is the character of the documents?

O86AJavC

1          MR. ANDRES:  So the character of the document --

2          THE COURT:  Are these copies of documents submitted to

3    the OCC?

4          MR. ANDRES:  The particular documents in the sample

5    are J.P. Morgan's talking points for their calls with the OCC.

6    And among those talking points are J.P. Morgan advising the OCC

7    about the Frank deal.  So that information, while internal to

8    J.P. Morgan, is information that's being communicated to the

9    OCC.  In essence, if the defendants want these documents, they

10   belong, or the privilege belongs, to the OCC.  And just the way

11   that defendant subpoenas any government agency, there are

12   regulations, *Touhy* comes to mind and the like, that they have

13   to fulfill.  So we've been directed by the OCC to withhold

14   these.  We've provided these to the OCC.  So as a result, we're

15   required to assert those bank privileges.

16         THE COURT:  Why are they relevant, Ms. Yoon?

17   Mr. Nitze?

18         MR. NITZE:  Why are documents in which -- well, I'll

19   state it positively.  Documents in which J.P. Morgan personnel

20   are speaking with one another about aspects of the Frank

21   acquisition and merger, including reflecting their

22   understanding of what's alleged to be misrepresentations -- we

23   obviously reject that characterization -- are highly relevant

24   to what was communicated to the bank, how somebody understands

25   something reflects what was communicated.

1            To be honest, I answer you somewhat blind because all

2     we have is a log.  As far as we can see, these particular

3     documents have communications among relevant bank personnel.  I

4     don't know what's in them.  They're not described in a way that

5     makes it possible to advance an argument.

6            I would ask at least with respect to the sample, the

7     two, that your Honor read them.  I don't understand there to be

8     any bar on a district court looking at these documents.  There

9     are other cases, including cited by the bank in its briefing,

10    in which a district court says let me take a look at these

11    documents, I'll see if this implicates some regulator privilege

12    or not.

13           So you have two documents.  I believe they have copies

14    of them here for your Honor.  I guess I would ask for you to

15    read them.

16           THE COURT:  First question is whether they are

17    material and useful to the case.  It seems to me that whether

18    or not there is a misrepresentation has perhaps two components.

19    One, whether it's a false statement.  That's an objective

20    question.  You measure the statement against the real world and

21    you conclude that it is or is not a false statement and it

22    would be a jury question.  How the recipient of the information

23    understands it has to do with reliance, and reliance is not an

24    issue in a criminal case.

25           MR. NITZE:  May I be heard on that point, your Honor?

O86AJavC

1          THE COURT:  Yes.  The second -- but let me finish.

2    The second component is scienter.  Scienter is measured

3    objectively in terms of what is known and what is intended by

4    the issuer, the statement.  Not the recipient of the statement.

5    So to ask the bank to reveal a document that has, to my mind,

6    no materiality or relevance to the issues that a jury will

7    confront, is it permissible.  And there's no need for me to see

8    the document to make the ruling.

9          Now, if I were to need the document to see the ruling,

10   I'd ask for it.  But I don't need the document to make the

11   ruling.  I would like to hear you.

12         MR. NITZE:  I hear your Honor to be making a relevance

13   determination that, therefore, moots the question of privilege.

14   And I don't know how you could assess the relevance of a

15   communication in the abstract.

16         I'm offering a thought about what might be in the

17   document, but I can't know it.  With respect to the elements,

18   you referenced scienter and the question of a

19   misrepresentation.  You know, it is possible for people to

20   misunderstand one another.  And it is also possible for -- to

21   give a hypothetical -- a young person steeped in a tech

22   business to communicate in one fashion, and for others older at

23   a banking business, to misunderstand what is intended or to

24   understand what is intended.

25         And I think it's plainly relevant to the question of

1    has somebody mis -- made a misrepresentation and do they intend

2    to mislead by how they're communicating.  It is relevant to see

3    how are their words received, how are they understood, did they

4    have a meeting of the minds, is there confusion versus

5    fraudulent intent.  So it's essential for a finder of fact to

6    have both halves, so to speak, of an exchange of communication.

7            I'm not making a reliance argument.  If I were to be

8    saying to you, look, we need to know how they responded, and

9    then whether in conducting business they relied, you know --

10   that's a reliance argument.  But we are making an intent and a

11   misrepresentation argument, and then the element we haven't

12   mentioned is materiality.  And the government will often argue,

13   look, we need to be able to show how people treated this

14   information so that we can establish that in this context it

15   was material.  Well, the flip side of that coin applies as

16   well.  If somebody is not paying attention to something, not

17   following up on it, ignoring certain aspects of the

18   information, it is an indicator of the absence of materiality.

19           We'll have more to say I'm sure on these technical

20   element questions as we get into pretrial briefing, but with

21   respect to these two communications on relevance, probably in

22   six minutes you could look at them and make a determination

23   based on what's actually in them, instead of my hypothesizing.

24           THE COURT:  Mr. Buckley, do you want to add to this?

25           MR. BUCKLEY:  No, your Honor.  With one exception,

1   which I think Mr. --

2               THE COURT:  Can you get a microphone.

3               MR. BUCKLEY:  I'm sorry.

4               We do think the distinction between reliance and

5   materiality is really critical in making these types of

6   determinations.  Because to expand upon Mr. Nitze's point, it

7   goes to the total mix of information that is out there.  The

8   information that was put out there by the defendants, the

9   information that was accessible, it's a separate question --

10              THE COURT:  You're arguing that how the recipient of

11  information regards the information is important or not is

12  relevant to the jury determination of materiality.  Since

13  materiality is a mixed question of law and fact, I can't at

14  that point rule this out.  I'd like to see the documents.

15              MR. BUCKLEY:  Thank you, Judge.

16              MR. ANDRES:  I'm happy to hand them up, but to be

17  clear, when you review them, this has absolutely nothing to do

18  with materiality.  This is somebody --

19              THE COURT:  I'll decide that.

20              MR. ANDRES:  Your Honor, I'm going to hand these up.

21  They have the letters K and L.  Is that right?  Well, I'm just

22  going to hand them up.

23              THE COURT:  I am looking at document Bates marked

24  3004.

25              MR. ANDRES:  These, your Honor, you do have to start

O86AJavC

1    from the back.

2              THE COURT:  Yes, sir.

3              MR. ANDRES:  And just, if I might, your Honor, if you

4    look at the last e-mail, it's an e-mail from someone at J.P.

5    Morgan, █████████, to somebody at the OCC, and you can read

6    what it says.

7              THE COURT:  There's nothing in 3004 that is relevant

8    or material to this case.  I'm returning it to Mr. Andres.

9              And now looking at Bates Stamp 2671, and starting with

10   the second page.  It's a two-page document.  There's nothing in

11   this document that's relevant or material to this case.  I'm

12   returning the document to Mr. Andres.

13             Neither has to be produced.

14             Okay.  Where do we stand, folks?

15             MR. NITZE:  Your Honor, may I be heard briefly?

16             THE COURT:  Yes.

17             MR. NITZE:  I wanted to wait until the process of

18   analyzing the 10 or 12 documents played out.  And I understand

19   the Court's ruling on waiver.  I fear your Honor may not fully

20   appreciate what we're up against here in terms of the volume of

21   documents that have been withheld.

22             We were here in August of last year and you expressed

23   some impatience and we have gone through log after log and as

24   recently as two weeks ago, when we thought we were done, 200

25   more come off, 100 more go on.  And I think if you searched the

1    waiver cases, you would find that this conduct is in keeping

2    with waiver.  I understand the Court's ruling on that, but it

3    brings me to a second point, which is we had understood that

4    this process was designed for your Honor to see a sampling to

5    articulate some rules of the road, so to speak, off of the

6    sampling, and for those rules then to be applied back across

7    this fast universe of withheld documents.

8        But in the context of our having received logs so

9    late, so iteratively, so often when we point to one document or

10   10 documents, the bank says, oh, nevermind, these are not

11   privileged actually.  We are shooting in the dark.  And so here

12   we come today with these 12 documents.  Some of them, the last

13   two, you say these are just not relevant to the case, and

14   that's probably I assume so since you read them.  We have no

15   idea because we are trying to find representative samples.  And

16   I have two questions I guess, or an application for relief.

17       The first is, given that even now, even after all of

18   these various iterations of the log as you examine 10

19   documents, there is a significant portion that are deemed not

20   to be privileged, that we get to sample just a little more.

21   50, 60, something so we can have some sense that we have tapped

22   into the materials that are being withheld.  That's a request.

23       The second point is I understand your Honor to have

24   focused on the giving of legal advice or the concrete request

25   for legal advice.  I think your Honor put an order on ECF to

1    that effect in this context saying the logs should omit items

2    claimed to be privileged, which are not requests to lawyers for

3    legal advice or responses thereto.

4         How do we apply that ruling in effect, both the order

5    and your Honor's ruling today, with respect to some of these

6    materials to the, I don't know, dozens scores, hundreds of

7    other documents, that if your Honor looked at them, you would

8    have the same ruling?  How do we ensure that the bank draws the

9    line where it belongs, where your Honor has drawn it?  I guess

10   that is a question I have.

11        And then the final thing I would say is that we

12   haven't addressed -- there's a category of documents on these

13   logs that are essentially attachments to e-mails.  And I

14   understand dozens of them sometimes.  And there's not really a

15   description of what they are.  I understand I think the bank to

16   be arguing that the very fact of their compilation reveals some

17   aspect of attorney thinking.  It's I think a species of work

18   product argument.  We would like a representation from the bank

19   that we have -- to the extent there are attachments to e-mails

20   sent to attorneys that are relevant -- or excuse me, that are

21   being withheld on the basis that they are attached to those

22   e-mails, that we have them all somewhere else in the

23   production.

24        We're not asking -- we don't want to see what the

25   lawyer is gathering, but I think it's fairly black letter

1  privilege law that the fact of attaching a bunch of documents

2  and sending them to an attorney does not render them privileged

3  communications if the underlying documents are not themselves

4  privileged.  So we would ask for a representation from the bank

5  that we have all of those documents somewhere in our

6  productions.

7  THE COURT:  Mr. Buckley, anything to add?

8  MS. SWETTE:  This is Ms. Swette on behalf of Mr. Amar.

9  THE COURT:  Yes.

10  MS. SWETTE:  We agree with Mr. Nitzes' request that

11  there be kind of a revisit of the privilege log applying the

12  principles.  It's obvious that some of the calls were closer

13  ones and may have been nonlegal questions and nonlegal advice.

14  And so we'd ask that the bank be given some guidance on going

15  back to the near 23,000 entries and producing additional

16  documents in connection with your Honor's ruling today.

17  THE COURT:  I take it, Mr. Andres, that the bank will

18  apply my rulings to the documents that have been withheld?

19  MR. ANDRES:  Yes, your Honor.

20  THE COURT:  Do you have any other comment?

21  MS. SWETTE:  We do.  So, your Honor, I don't want to

22  relitigate the point about waiver, but I would ask that the

23  Court consider an ordering that the parties enter into a 502(d)

24  stipulation to protect the privilege insofar as our request --

25  THE COURT:  I'm not familiar with that stipulation.

O86AJavC

1          MS. SWETTE:  Okay.  So Federal Rule of Evidence

2     502(d), does your Honor want to pull it up?

3          THE COURT:  I know it.

4          MS. SWETTE:  Okay.  So we had drafted one and provided

5     it to the bank in advance of this hearing, but the idea would

6     be to protect the privilege, so there would be no waiver

7     insofar as, you know, there are documents on the privilege log

8     that our client is on communications premerger that our client

9     participated in with in-house counsel for Frank.

10         So in effect, by accessing those documents, if there's

11    a 502(d) stipulation in place, there would be no waiver.

12         THE COURT:  502(b) does not need a stipulation to be

13    applied.  The rule provides that inadvertent disclosure when

14    made in a federal proceeding does not operate as a waiver.  If

15    the disclosures inadvertent; the holder of the privilege took

16    reasonable steps to prevent disclosure; and the holder promptly

17    took reasonable steps to rectify the error.  None of which

18    apply here.

19         MS. SWETTE:  Sorry, your Honor.  I think you're

20    reading 502(b).  This is 502(d).

21         THE COURT:  B you said?

22         MS. SWETTE:  No, D.

23         THE COURT:  D.

24         MS. SWETTE:  As in dog.

25         THE COURT:  A federal court may order that the

1  privilege or protection is not waived by disclosure connected

2  with the litigation pending before the Court — in which event

3  the disclosure is also not a waiver in any other federal or

4  state proceeding.

5  I'm holding that what is privileged does not have to

6  be produced, and that which is not privileged has to be

7  produced.  502(d) is not applicable.  We don't need any

8  stipulation or further order in the matter.

9  MR. NITZE:  Would your Honor consider -- or how does

10  your Honor rule on the application for permission to submit,

11  identify another set of documents?

12  THE COURT:  I wanted to get your comment before I made

13  any ruling.

14  MS. SWETTE:  Your Honor.

15  THE COURT:  Are you finished, Ms. Swette?

16  MS. SWETTE:  No.  Sorry.  It's Swette.

17  THE COURT:  Swette, sorry.

18  MS. SWETTE:  So I'm not finished, your Honor.  I'm

19  sorry.  One last comment, which is just we're only seeking this

20  order with respect to communications our client is on.  So it

21  wouldn't be with respect to communications in which the

22  client's in-house counsel -- sorry.  The bank's in-house

23  counsel, for example, is providing legal advice post merger.

24  This is a subset of documents, I think for our client

25  in particular, it's 180 documents premerger.  And Judge

O86AJavC

1  Furman's case, which your Honor relied on, is a civil case.

2  This is a criminal case.  And Judge Furman left open whether or

3  not there may be circumstances in which the privilege has to

4  yield in a criminal case where the liberty interests are at

5  stake.

6  THE COURT:  If any of the documents I reviewed are

7  material or relevant to any defense in this action, I would

8  consider it very seriously and probably not apply Judge

9  Furman's ruling.  But I do not see how any of these documents

10  satisfy the requirement of Rule 16 that the item is material to

11  preparing a defense, or the government intends to use any of

12  these documents, or that the item was obtained from, belongs to

13  a defendant.  And Rule 17 is bounded by Rule 16.

14  So your observations really are not relevant to what

15  I'm doing today, Ms. Swette.

16  MS. SWETTE:  So I guess without seeing the documents,

17  we can't assess whether they're relevant and material to our

18  defense, but based on the timing and circumstances of these

19  documents, this is a nine-month period from January to

20  September of 2021, and these are communications between the

21  three highest level executives at Frank.  They're kind of

22  working around the clock to sell the company and consummate the

23  deal.

24  So it's highly likely that these communications go

25  straight to kind of their mindset, their understanding of the

O86AJavC

1    representations they're making in connection with due diligence

2    based on the timing of the communications.  So we'd ask for an

3    opportunity to look at the documents.  This, again, it

4    doesn't -- these documents wouldn't go to the government under

5    a 502(d) stipulation or order.  They would just come to us and

6    we could look at them and make that assessment.

7            THE COURT:  As to privilege, is that they are not to

8    be shared with people who do not own the privilege.  So I

9    decline to make the ruling you request me to make.

10            MS. SWETTE:  Okay.  Thank you, your Honor.

11            THE COURT:  Okay.  So there's commitment on the part

12    of Mr. Andres to go over the documents that are identified on

13    the privilege log and produce that which is not covered by

14    privilege consistent with my rulings today.  There's another

15    point made on attachments.  What can you tell Mr. Nitze with

16    regard to attachments?

17            MR. ANDRES:  One moment, your Honor.

18            Your Honor, we're happy to go back and look at that.

19    But if a document is attached to -- if there's an e-mail that

20    is providing or giving legal advice and there's an attachment,

21    I think the law is fairly clear that that attachment is part of

22    the document and constitutes part of the privilege.  So --

23            THE COURT:  Just as I examined paragraph by paragraph

24    the documents, what you say may or may not be true.

25            MR. ANDRES:  Fair enough.  But certainly what

1   Mr. Nitze is suggesting is also not categorically true.

2         THE COURT: Correct.

3         MR. ANDRES: So, your Honor, if I could, what we plan

4   to do is --

5         THE COURT: He has two requests. One is request for

6   representation. That the documents that are attachments, if

7   not covered by privilege, have been the subject of production.

8   And the second one is to ask that the kind of approach that I

9   made today be applied to the attachments.

10         MR. ANDRES: So, I'm not sure I understand that

11   Mr. Nitze somehow is entitled to an affidavit or something from

12   J.P. Morgan --

13         THE COURT: I'm not sure either. But I think the

14   essence of my ruling is to require you to go over the documents

15   listed on the privilege log and the attachments and to produce

16   that which is not covered by privilege.

17         MR. ANDRES: That's what we plan to do. But if I

18   could just --

19         THE COURT: That will include the attachments as well.

20         MR. ANDRES: It will include the attachments, but,

21   your Honor, there are various appendixes, A through I don't

22   know all the numbers, but A, B, C, D, E. And to the extent

23   that your Honor has reviewed two documents from Appendix A and

24   found that those privilege logs were appropriate, I don't see

25   any basis to go back to Appendix A and apply to redo that

O86AJavC

1  because your Honor has in effect endorsed our approach to

2  Appendix A.

3           THE COURT:  What's Appendix A again?

4           MR. ANDRES:  I don't know the category.

5           MR. NITZE:  Appendix A is an appendix that has a

6  selection of log entries where we took the position they were

7  inadequate under the local rule requiring that we be given

8  enough information to address the appendix and I -- I guess the

9  issue here is if your Honor has two documents to look at that

10 we've picked, it's not at random, but trying to figure out ones

11 to give you a sample, it's hardly the case that if they're not

12 privileged that means you've endorsed the rest of the appendix.

13          MR. ANDRES:  Your Honor, that is the very procedure --

14          THE COURT:  Let me look at Appendix A.

15          MR. ANDRES:  I was using Appendix A hypothetically.

16 I'm not sure you need to look at it specifically.

17          THE COURT:  I haven't read the appendixes.

18          MR. ANDRES:  So it was meant to be as an exemplar.

19 This is the process we've put in place.  We're now going to go

20 back and try to apply those.  I don't see the point of adding

21 another 50 documents if we're in the process of reviewing them.

22 This is a massive exercise, your Honor.

23          THE COURT:  I understand that, Mr. Andres.  I don't

24 know what's in the appendixes, I have not read the appendixes.

25 Perhaps you want to hand up Appendix A.

O86AJavC

1    MR. BUCKLEY:  Judge, if I may, it's Sean Buckley on

2    behalf of Mr. Amar.  The appendixes were categorical groupings

3    presented by the defendants.  I don't think your Honor's

4    rulings, which went document by document and made clear what

5    the Court views as privileged versus what it does not, is in

6    any way controlled by or subsumed by those categorical

7    groupings, which were designed to really facilitate

8    conversations between counsel and this conversation.

9    So I think the Court has been pretty clear about what

10   it views to be privileged versus non-privileged.  And those

11   rulings should be applied against all that remains on the

12   privilege log.

13   THE COURT:  Yes.  Mr. Andres is complaining about the

14   burden of doing this.  How many documents are on the privilege

15   log?

16   MR. ANDRES:  23,000.  Your Honor, and if I could just

17   add one other just briefly.  I think what defendants' counsel

18   ignores --

19   THE COURT:  I really don't want to get into this.

20   MR. ANDRES:  No, your Honor, I think it's important.

21   THE COURT:  I don't want to get into this.  I have a

22   question.  I have an issue.  Is it reasonable to require a

23   third-party witness, although one interested in the case, and

24   the victim to go through 23,000 documents?  You said,

25   Mr. Andres, that you would be doing it.  So what is my ruling

1    to be?

2          MR. ANDRES:  Well, what I was suggesting was a way to

3    streamline that.  So if in each of the categories your Honor

4    has identified an issue, we can go to that category of

5    documents and try to apply those issues.

6          THE COURT:  Mr. Buckley has got a good point.  I made

7    rulings according to the document.  I don't know if they're

8    categories that are useful in this sense.  But neither do I

9    want to subject you to the burden of going through 23,000

10   documents when I have a major question as to what they're

11   relevant to.

12         It's said to me that the defendants would like to know

13   if they can make an advice of counsel defense.  But Rule 16 is

14   not intended to be a discovering device.  Either they have the

15   defense or they don't have the defense.  If they have the

16   defense, I'm glad to look at documents to see if they're

17   material or relevant to that defense.

18         MR. NITZE:  That's not the only reason we've asked for

19   them, your Honor.

20         THE COURT:  What are the other reasons?

21         MR. NITZE:  Well, some of these documents have been

22   withheld from the federal government and a grand jury sitting

23   in this district that requested them, and that have been

24   produced to us as a matter of course through Rule 16.

25         THE COURT:  Yes.  That's the government's business, so

1    the government has an obligation under *Brady*.

2            MR. NITZE:  Well, the government's position, they will

3    correct me if I'm wrong, has been --

4            THE COURT:  One minute.  If you want time, I'll give

5    you time.  But I don't really like the interruption.  So do you

6    want some time?  I'll be glad to wait.

7            MR. ANDRES:  We're okay, your Honor.  Thank you.

8            THE COURT:  Continue, Mr. Nitze.

9            MR. NITZE:  Documents that are on the privilege log

10   are there only because they were responsive to the grand jury's

11   subpoena and have been held back on the basis of privilege.

12   They don't show up there.  Somebody's, you know, menu for lunch

13   doesn't show up on there because it's not responsive to the

14   grand jury subpoena.  So there's a screen already for relevance

15   and the rules --

16           THE COURT:  It's up to the government to enforce the

17   subpoena or not.  I'm not ruling on a grand jury subpoena.

18           MR. NITZE:  Understood.

19           THE COURT:  I'm ruling on a Rule 17 subpoena.

20           MR. NITZE:  So if your Honor may recall, we had some

21   litigation about this, and I guess it's relevant to this

22   question of burden on J.P. Morgan, which I'm quite sure, and

23   the good people at Davis Polk can shoulder this burden, but

24   we've been here, a year ago, we were here talking about this

25   very issue.  And one of the reasons we were permitted to issue

O86AJavC

1    the Rule 17 subpoena was to put us in privity, so to speak,

2    with the bank so that we could seek --

3         THE COURT:  I ruled that you can have a Rule 17

4    subpoena because Rule 17(a) does not require Court

5    intervention.

6         MR. NITZE:  Yes.

7         THE COURT:  You issue the subpoena, and the burden is

8    on Chase to move to quash or resist, and then the issue comes

9    to me and I have to rule at that time.

10        MR. NITZE:  And you did.

11        THE COURT:  Now is when I'm ruling.

12        MR. NITZE:  You ruled on the Rule 17 and we had back

13   and forth, and you said here are the categories of responsive

14   materials.  And then J.P. Morgan went back and said, okay, we

15   are producing the materials pursuant to the Court's order about

16   Rule 17.  And also here is a log of materials that, but for

17   privilege, that's the whole point of a log, but for privilege

18   we would produce, but now we're holding back.

19        THE COURT:  If you were in Mr. Andres' shoes, how

20   would you go about applying my rulings to 23,000 documents?

21        MR. NITZE:  If I were in Mr. Andres shoes, I would

22   take your Honor's comments about the scope of privilege, which

23   are really applied to let's say six, seven documents, and would

24   recognize the principles articulated, and I would have the

25   group of attorneys -- remember they said, I don't know, 50 or

O86AJavC

1  90 something over many months working on this, go back to these

2  materials with which they're now surely familiar, and, I don't

3  know, take a week and reapply your Honor's rulings to those

4  documents and produce them to us.

5  　　　　THE COURT:  How do you propose, Mr. Andres, to apply

6  my rulings?

7  　　　　MR. ANDRES:  Your Honor, we were hoping to stick to

8  the categories.  If we follow the issue that Mr. Nitze has

9  suggested to 32,000 documents --

10  　　　　THE COURT:  I'm asking you what you propose to do.

11  　　　　MR. ANDRES:  Yes, I would like to stick to the

12  categories that the defendants identified and review those in

13  light of your Honor's rulings.

14  　　　　THE COURT:  But I don't understand what those

15  categories are.

16  　　　　MR. ANDRES:  I -- in determining what those sample

17  documents were, the defendants identified certain issues and

18  certain documents.  Those are each on a different appendix.

19  And we would apply those rulings throughout each of those

20  appendix --

21  　　　　THE COURT:  May I see the appendixes?

22  　　　　MR. ANDRES:  Yes.

23  　　　　MR. NITZE:  I'm just going to warn you, they're going

24  to make your eyes hurt.

25  　　　　THE COURT:  Hasn't been the first time.

1     MR. NITZE:  May I hand them up, your Honor?

2     THE COURT:  Yeah, please hand them up.

3     MR. BUCKLEY:  While it's being handed up, and I'm

4 speaking on behalf of Mr. Amar, if your Honor's rulings are

5 applied across the categories that have been identified, I

6 think from our perspective that makes sense.  That wasn't my

7 understanding of what Mr. Andres was asking originally.

8     THE COURT:  I'm looking at Appendix A.  Who prepared

9 these appendixes?

10     MR. NITZE:  These are prepared by the defendants.  But

11 just so you understand what they are, the log that was produced

12 by J.P. Morgan is, you know, a towering thing.  And we, in

13 order to facilitate the discussion, as Mr. Buckley says, we

14 just cut -- took excerpts, essentially found the rows that we

15 thought were particularly salient and tried to group them

16 roughly conceptually for purposes of analysis.

17     THE COURT:  What is the conception that underlies

18 Appendix A?

19     MR. NITZE:  So the conception that underlies Appendix

20 A is that the local rule requires that enough information be

21 given about documents withheld to permit an opposing party to

22 understand what the document is, what its general subject is,

23 and so on.  So Appendix A is a sampling of log entries where we

24 take the position that it's just awfully hard to know what the

25 document is --

O86AJavC

1          THE COURT:  So what you're doing is complaining the

2     log is inadequate, right?

3          MR. NITZE:  Yes.  Yes.

4          THE COURT:  Okay.

5          MR. NITZE:  And then as you move through --

6          THE COURT:  So let's look at item three.  Why is this

7     inadequate?

8          MR. NITZE:  Let's see.  Item three on Appendix A is an

9     e-mail.  It says if we're looking at the same row, document

10    type --

11         THE COURT:  It has a date.

12         MR. NITZE:  It has date.  Who's it from?  I don't

13    know.  Who's it to?  I'm not sure.  The e-mail subject line is

14    blank.  The privilege description is communication reflecting

15    legal advice of counsel regarding data privacy issues.

16         I mean, I don't know what this e-mail is.  It doesn't

17    have basic elements.

18         THE COURT:  Let's look.  It has a file name.  It has

19    attorney/client as the privilege.  Its description is

20    communications reflecting legal advice of counsel regarding

21    data privacy issues.  The relevant attorneys identified

22    Mr. Glazer.  The Slack recipient, what does that mean?

23         MR. NITZE:  I'm glad you pointed that out.  I'm just

24    noticing that as well.  This is an issue with respect to Slack

25    communications, and it appears on this Appendix A for failure

1  to provide enough information, but also on another appendix

2  that has to do with Slack communications.

3          THE COURT:  Let's deal with this one.

4          MR. NITZE:  These are like messaging communications.

5          THE COURT:  So I see the message.  I see the date.  I

6  see the time.  I see the reason.  I see the recipients.  I see

7  the attorneys.  What's missing?

8          MR. NITZE:  So Slack communications, we have some in

9  our productions, can cover dozens of exchanges.  We don't know

10 if this is -- Slack is different from e-mail.  This could be 50

11 communications.  It could be 10.  It could be changing

12 subjects.  We'd love for your Honor to take a look at it.  But

13 we have no idea --

14         THE COURT:  I rule that item number three is a

15 sufficient description.

16         Give me another one you want me to look at.

17         MR. NITZE:  Well, so you had asked me, your Honor,

18 what these appendixes --

19         THE COURT:  And you said that the Appendix A is where

20 there is an inadequate information, where there is inadequate

21 information given on a privilege log.

22         MR. NITZE:  Yes.

23         THE COURT:  At random, I picked out item three.  Give

24 me another one to look at.

25         MR. NITZE:  I'm going to -- I will, but if what I'm

O86AJavC

1  doing now is again -- I want to take my best shot.

2         THE COURT:  No.  I'm going to rule, if you don't give

3  me any one, that Appendix A is sufficient, does not show any

4  deficiencies.

5         MR. NITZE:  Okay.

6         THE COURT:  In the privilege log.

7         MR. NITZE:  May I have just a moment?

8         THE COURT:  You may.

9         Why are you holding your head, Mr. Andres?

10         MR. ANDRES:  I'm sorry.

11         THE COURT:  I should be doing that.

12         MR. NITZE:  Yes.  The Slack that you just looked at,

13  we don't know what the subject matter is.  But let me find you

14  another one.

15         THE COURT:  Conversation.

16         MR. NITZE:  It's a -- what is the subject?

17         THE COURT:  It's conversation.

18         MR. NITZE:  About what?

19         THE COURT:  I don't know about what.

20         MR. NITZE:  I mean, a conversation.  How do I

21  challenge privilege?

22         THE COURT:  Because he tells you who's on the

23  conversation.  It's the lawyer and clients.  You gave me some

24  samples to look at.  I did.

25         MR. NITZE:  Okay.

1          THE COURT:  But I can't say, Mr. Andres, that you can

2    exclude Appendix A from your inquiry.

3          MR. NITZE:  I have my next.

4          THE COURT:  Just a minute.

5          MR. NITZE:  Sorry.

6          THE COURT:  I can't say you can exclude this.  What

7    else do you want me to exclude?

8          MR. ANDRES:  Your Honor, I think I have to give some

9    thought to this.  But here's the problem, if we go back and

10   effectively have to rereview 23,000 --

11         THE COURT:  23,000 you said?

12         MR. ANDRES:  Yeah.  That's not weeks.  It's months.

13   It doesn't matter how many lawyers you have doing that.  That

14   is a tremendous amount of work.  And, by the way, we did that

15   already.  That is to cure any of the concerns about the

16   privilege log in the first place.  We voluntarily went back and

17   rereviewed the entire --

18         THE COURT:  So all these 23,000 are numbered, right?

19         MR. ANDRES:  Presumably.

20         THE COURT:  Okay.

21         MR. NITZE:  As Mr. Andres says, we reviewed them,

22   we're supposed to be at the end of the line here, not the

23   beginning.

24         THE COURT:  You've been on this end, too, Mr. Nitze.

25   You know what it is to do a production of this many documents.

1          MR. NITZE:  I do, yes, your Honor.

2          THE COURT:  Okay.  So it's iterative process.

3   Fortunately, I left the profession before we had to deal with

4   this volume of documentation.

5          This is what I think.  Tentative.  5 percent of 23,000

6   is roughly 1,000 documents.  10 percent is 2,300.  Let's take a

7   10 percent sampling.  Defendants will give you the numbers.

8   Those are the documents to look at.  Those are the documents

9   you produce.

10         At the end of that, you can make a motion and ask me

11  that it's sufficient and give me the reasons why any further

12  enforcement of the subpoena would be burdensome to you.

13         MR. ANDRES:  Thank you, your Honor.  Can I just

14  clarify one other issue, your Honor?

15         THE COURT:  I'm afraid to say yes.

16         MR. ANDRES:  Okay.  Thank you.  I promise it's the

17  last.  As we were going through one of the e-mails, as I

18  remember it, there was legal advice and then there were, I

19  think in your words or mine, pleasantries or scheduling.

20         Here's the legal question, thank you, another legal

21  question, talk to you at 5:00.  In order for us to go back and

22  redact those pleasantries or timing is burdensome, and I'm just

23  wondering --

24         THE COURT:  I understand what you're saying.

25         MR. ANDRES:  What the value of that is --

1          THE COURT:  Saying there's no relevance or

2     materiality.

3          MR. ANDRES:  Correct.

4          THE COURT:  But it's hard to say, so I'm taking that

5     into consideration by requiring a 10 percent sampling.

6          MR. ANDRES:  Fair enough.

7          MR. NITZE:  So the defense is to pick a 10 percent

8     sample, send the numbers to the bank.

9          THE COURT:  2,300.

10         MR. NITZE:  2,300 documents, we identify them for the

11    bank --

12         THE COURT:  And the bank will apply my rulings to

13    those.

14         MR. NITZE:  Apply your rulings to those.  And then if

15    we need to appear before your Honor again, you'll have patience

16    with us.

17         THE COURT:  Well, it doesn't make any difference I do

18    or don't have patience.  I'll hear you.

19         MR. NITZE:  You'll hear us, I guess that's what I

20    mean.

21         THE COURT:  You'll be on another motion.  This motion

22    is closed out.

23         MR. NITZE:  Understood.  Thank you, your Honor.

24         THE COURT:  Okay.  I'm returning the appendixes.

25         MR. NITZE:  I'll approach, if I may.

O86AJavC

1          THE COURT:  You may.  Please.

2          MS. McLEOD:  Your Honor, if the government could be

3    heard on one related issue.

4          THE COURT:  Of course.

5          MS. McLEOD:  And that is the question of when the

6    government will receive notice of whether the defendants intend

7    to pursue advice of counsel.  I think as your Honor noted

8    today, that is information that is already within the

9    possession of the defendants.

10          THE COURT:  Or should be.

11          MS. McLEOD:  It should be.  The elements and the

12   advice of counsel defense are whether the defendants sought

13   legal advice, set forth all of the facts relevant to that to

14   their attorneys, and then in good faith followed that advice.

15   That is all information that it would be known to the

16   defendants already today.

17          THE COURT:  What do you propose?

18          MS. McLEOD:  I would propose to set a deadline of --

19          THE COURT:  What deadline would you propose?

20          MS. McLEOD:  Within one week to provide the government

21   notice.

22          THE COURT:  Give me another date.

23          MS. McLEOD:  Two weeks.

24          THE COURT:  How about a month?

25          MS. McLEOD:  That's fine, your Honor.

O86AJavC

1          MR. BUCKLEY:  Judge, if I may, just, I recognize why

2     it is that the government wants --

3          THE COURT:  What date would you propose?

4          MR. BUCKLEY:  I would propose a date after we go

5     through this exercise of the 2,300 documents.  And the reason

6     being --

7          THE COURT:  How long will it take you to give --

8     identify the 2,300?

9          MR. BUCKLEY:  If I could just have a moment?

10          One week, your Honor.

11          THE COURT:  How long will it take you to deal with the

12     2,300 documents?

13          MR. ANDRES:  Your Honor, I honestly don't know.  It's

14     August.

15          THE COURT:  Of course you do.  You're going to have to

16     tell me.

17          MR. ANDRES:  A month.

18          MR. NITZE:  A month?

19          MR. ANDRES:  Yes, a month or 30 days.

20          THE COURT:  In other words, by September 13.

21          MR. ANDRES:  Yes, your Honor.

22          THE COURT:  And the trial is set for when?

23          MS. McLEOD:  October 28, your Honor.

24          MR. NITZE:  For Mr. Javice, that seems awfully close

25     to trial.

O86AJavC

1          THE COURT:  Can you please give me a chance.

2          MR. NITZE:  Yes, yes.

3          THE COURT:  I might say something favorable to you.

4          MR. NITZE:  I apologize, your Honor.

5          THE COURT:  Give me another date, Mr. Andres.

6          MR. ANDRES:  It's difficult, your Honor.

7          THE COURT:  I know it is.  I know it is, but give me

8   another date.

9          MR. ANDRES:  Three and a half weeks.

10          THE COURT:  I don't know how much thought process you

11  need, Mr. Buckley and Mr. Nitze, to identify 2,300 documents.

12  Suppose you do it by Friday the 9th.

13          MR. NITZE:  Yes, fine.

14          MR. BUCKLEY:  That's fine, Judge.

15          THE COURT:  And suppose by August 30, we have Chase's

16  response on those 2,300.  And a motion to file to cut off

17  further discovery.

18          MR. ANDRES:  A motion by Chase, your Honor.

19          THE COURT:  Yes.

20          MR. ANDRES:  Your Honor, we'll work with that

21  schedule.  And if we can't, we obviously will contact the

22  Court.

23          THE COURT:  No, you're going to work with it because

24  that's going to be the schedule.

25          MR. ANDRES:  Thank you.

O86AJavC

|  |  |
|---|---|
| 1 | MS. McLEOD:  Your Honor, sorry -- |
| 2 | THE COURT:  I'm not finished. |
| 3 | MS. McLEOD:  Sorry, your Honor. |
| 4 | THE COURT:  By September 16, defendants will disclose |
| 5 | if they wish to file a defense on the basis of advice of |
| 6 | counsel.  And what's the pertinent rule, Ms. McLeod? |
| 7 | MS. McLEOD:  I'm sorry, your Honor? |
| 8 | THE COURT:  What's the pertinent rule? |
| 9 | MS. McLEOD:  The? |
| 10 | THE COURT:  The requirement to disclose? |
| 11 | MR. BUCKLEY:  There is not one, Judge.  The issue, and |
| 12 | I think the question -- |
| 13 | THE COURT:  The question was to Ms. McLeod. |
| 14 | MR. BUCKLEY:  Oh, I'm sorry. |
| 15 | MS. McLEOD:  I appreciate that, your Honor. |
| 16 | As we discussed, this is prudential issue because |
| 17 | there can be discovery related to an advice of counsel that |
| 18 | needs to happen in advance of trial. |
| 19 | THE COURT:  What requires the disclosure? |
| 20 | MS. McLEOD:  So, your Honor, the one thing I would |
| 21 | note is, while I think it makes sense to set a deadline for the |
| 22 | remainder of this procedure, the notice of advice of counsel |
| 23 | defense actually is completely -- the outcome of what happens |
| 24 | here in terms of the privilege decisions your Honor makes are |
| 25 | not relevant to whether or not they provide notice. |

1          And the reason is, your Honor, because if your Honor

2    decides that something is not privileged, by its nature it

3    cannot support an advice of counsel defense.  So it doesn't

4    matter if something comes off the privilege log.  It may matter

5    for other reasons, perhaps, that's something, perhaps, it's a

6    defense exhibit, etc.  But it is not relevant to advice of

7    counsel defense, which by its nature relies on privileged

8    communications.

9          So if something is deemed non-privileged, it is not

10   going to support an advice of counsel defense.  So the notice

11   of advice of counsel can be provided before the end of this

12   hearing process.  And the government, just in terms of

13   efficiency sake, strongly urges the Court to set a date for

14   that in order to allow sort of smooth motion practice, if there

15   is any, well in advance of trial.

16         THE COURT:  So, Ms. McLeod, if I require the

17   defendants to disclose this defense, let us say for the sake of

18   argument, September 16, would you complain?

19         MS. McLEOD:  So we absolutely of course will abide by

20   any deadline the Court sets.

21         THE COURT:  Of course.  But would you complain?

22         MS. McLEOD:  I think we would -- September 16th is

23   going to be right around when everyone is filing other motions.

24   So our motions in limine are going to be in the mix at that

25   point.  I think it would be good for the Court to have this

1    well in hand before the avalanche of other motions that will be

2    happening.  Especially because if there is, again, additional

3    discovery that the government needs because --

4              THE COURT:  How about September 6?

5              MS. McLEOD:  That's certainly preferable, your Honor.

6              THE COURT:  And what has to be disclosed?

7              MS. McLEOD:  I believe in our -- the initial round of

8    litigation on this, which I think now happened many, many

9    months ago, the government sought the notice.  But I think

10   given how close we are now to trial, we seek the notice as well

11   as --

12             THE COURT:  You're entitled more than a notice.

13             MS. McLEOD:  The basis, yes.

14             THE COURT:  There's no specific rule on advice of

15   counsel, but we can analogize requirements valid by defense,

16   public authority defense and other defenses like that, as to

17   what should be disclosed.

18             MS. McLEOD:  That's right, your Honor.

19             THE COURT:  So maybe the thing to do is to embody this

20   in a ruling, and perhaps you can give me the contents of the

21   obligation to disclose.  You give the defendants your

22   suggestion, see if they have any objections, write me a joint

23   letter stating what you want, and if the defendants object,

24   what the objections are.  And I'll issue an order.

25             MS. McLEOD:  That makes sense, your Honor.

O86AJavC

1          THE COURT:  Okay.  And the order will embody these

2     dates within one week from today or by August 13 -- I'm sorry.

3     By August 9 defendants will identify 2,300 documents to J.P.

4     Morgan Chase, which will be the subject of application of the

5     rulings made today.  By August 30, J.P. Morgan Chase will

6     complete its production of documents that should be produced in

7     response to the implementation of my rulings.  I'm going to

8     require that production to be made on a rolling basis as

9     between August 9 and August 30.

10          So by August 30, the production will be complete.  And

11     if there is further need on the part of the defendants to seek

12     further documentation, they are to advise J.P. Morgan Chase,

13     and if J.P. Morgan Chase resists, by August 30, a motion will

14     be filed.  Which means that the notice must be given a week

15     before.  And that presents a problem because the defendants

16     won't know what it is they want more unless they see what you

17     get.

18          I'm not sure I can answer all these problems.  Perhaps

19     the burden should be on J.P. Morgan Chase to make the motion.

20     If they feel -- I'm sorry.  I suppose the burden should be on

21     defendants to make the motion for further discovery.  And they

22     should do so by September 6.  And at the same time, give the

23     disclosures to the government.

24          MS. McLEOD:  Your Honor, just --

25          THE COURT:  Let me see if I can restate this without

1    confusion.

2         By August 9, 2,300 documents must be identified.  By

3    August 30, production in response to those documents must be

4    completed.  And these documents must be produced on a rolling

5    basis between August 9 and August 30.

6         It probably would be a good idea in order to set a

7    work schedule in terms of how many documents have to be

8    processed of those 2,300 week by week.  So that we can have a

9    rolling basis to do that.

10        MR. ANDRES:  Your Honor, I really don't see the need

11   to impart any further burdens on J.P. Morgan, the victim.

12   We've asked for a month to do that, you asked us to do it by

13   the 30th, we'll do that.

14        THE COURT:  Try to work something out.

15        MR. ANDRES:  But working it out doesn't -- by imposing

16   additional obligations on the victim here is not helpful to

17   J.P. Morgan, which already has rereviewed all the documents.

18   So we'll do it by the 20th, but if we have -- I only say that,

19   your Honor, because every document is not the same.  One

20   document is one page.  One document is ten pages.  So to sort

21   of do it on a document by document basis is a little bit

22   harder, but we're committed to work within the deadlines that

23   your Honor has set.

24        THE COURT:  2,300 documents to be processed.  You will

25   know them by August 9.  By August 16, a third of them can be

1    processed.  By August 23, a second third can be processed.  By

2    August 30, the process can be complete.  That's not such a

3    terrible burden.

4            MR. NITZE:  Your Honor, with respect to the 10 or so

5    that you reviewed where you directed that portions, or I think

6    a couple of them it was the entirety, were to be produced.

7    Could we ask that those be produced to us by the 9th, end of

8    the week?  That seems a small task.  It's only 10 documents.

9            THE COURT:  Yes.

10           MR. ANDRES:  Your Honor, we're happy to do that as

11   quickly as possible, but I do think that one thing that will be

12   important for us to get is a transcript of this hearing so that

13   we can follow along with that.  We'll ask for it on an

14   expedited basis, etc., etc.

15           THE COURT:  You'll have it tomorrow morning, right?

16           THE COURT REPORTER:  Sure, Judge.

17           THE COURT:  Right.

18           MR. ANDRES:  We ask for a week from the time we get

19   the transcript so we can get it right.  Otherwise, we'll

20   continue to litigate these issues on and on.  So if we get it

21   tomorrow morning, tomorrow is Wednesday I believe.

22           THE COURT:  That's the 7th.

23           MR. ANDRES:  Yes.

24           THE COURT:  By the 13th.

25           MR. ANDRES:  Thank you.

O86AJavC

1          THE COURT:  We'll try to get an order and we'll ask

2     the government to settle an order of the contents of the

3     disclosure.

4          MS. McLEOD:  Yes, your Honor.

5          THE COURT:  Is there anything further I can mix up

6     today?

7          MR. ANDRES:  Thank you for your time, Judge.

8          MR. NITZE:  Thank you, Judge.

9          THE COURT:  Yes.  I made everyone unhappy.

10          Okay, folks.  Thank you very much.  I'm going to give

11     back your sample book.

12          (Adjourned)