UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

CHARLIE JAVICE and OLIVIER AMAR,

Defendants.

23-cr-00251-AKH

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

Greg D. Andres
Sidney Bashago
Katherine Swan
Michelle Adler
Christian Hines
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

September 18, 2024

*Attorneys for JPMorgan Chase Bank, N.A.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..........................................................................................................1

BACKGROUND .................................................................................................................................1

ARGUMENT ......................................................................................................................................3

    A.    Defendants Are Not Entitled to Any Supplemental Review, and Even if the Court Concludes Otherwise, the Bank Should Only Be Required to Re-Review a Limited Subset of Documents Potentially Responsive to the Rule 17 Subpoenas ..........................3

        1.    The Court Should Decline to Order Any Additional Re-Review ...............................3

        2.    Alternatively, the Bank Should Only Be Required to Re-Review a Limited Subset of Documents on Its Privilege Log That Are Potentially Responsive to Defendants' Rule 17 Subpoenas .................................................................................5

    B.    Waiver Remains an Inappropriate Remedy Under the Facts of This Case and Would Represent a Departure From Applicable Law ...................................................................7

CONCLUSION.................................................................................................................................11

## TABLE OF AUTHORITIES

CASES          PAGE(S)

*In re Aenergy, S.A.*,
   451 F. Supp. 3d 319 (S.D.N.Y. 2020) .................................................................................. 10

*Am. Nat'l Bank & Tr. Co. of Chi. v. Equitable Life Assurance Soc'y of U.S.*,
   406 F.3d 867 (7th Cir. 2005) ................................................................................................. 11

*Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.*,
   499 F. Supp. 2d 475 (S.D.N.Y. 2007) ............................................................................. 13, 14

*BlackRock Balanced Capital Portfolio (FI) v. Deutsche Bank National Trust Company*,
   No. 14-CV-9367 2018, WL 3584020 (S.D.N.Y. July 23, 2018) ....................................... 12, 13

*Crawford v. Franklin Credit Mgmt. Corp.*,
   261 F.R.D. 34 (S.D.N.Y. 2009) ....................................................................................... 10, 11

*In re Currency Conversion Antitrust Litigation*,
   No. 05-CV-7116, 2010 WL 4365548 (S.D.N.Y. Nov. 3, 2010) ............................................. 12

*Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*,
   No. 14-CV-1561, 2016 WL 3542453 (S.D.N.Y. June 23, 2016) ........................................... 12

*In re Grand Jury Proceedings,*
   486 F.2d 85 (3d Cir. 1973) ...................................................................................................... 5

*In re Grand Jury Subpoena Dated Feb. 2, 2012*,
   908 F. Supp. 2d 348 (E.D.N.Y. 2012) .................................................................................... 8

*In re Grand Jury Subpoena Dated Feb. 23, 2024*,
   No. 24-MC-104, 2024 WL 1363711 (S.D.N.Y. Mar. 29, 2024) .............................................. 5

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
   No. 19-CV-9193, 2023 WL 315072 (S.D.N.Y. Jan. 19, 2023) .............................................. 10

*Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
   No. 15-CV-293, 2017 WL 2305398, (S.D.N.Y. May 18, 2017) ............................................ 10

*Sadofsky v. Fiesta Prods., LLC*,
   252 F.R.D. 143 (E.D.N.Y. 2008) ........................................................................................... 10

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,
   No. 03-CV-3312, 2013 WL 12362006 (E.D.N.Y. Feb. 12, 2013) ......................................... 12

*United States v. Joseph*,
   No. 23-CR-68, 2023, WL 8006613 (S.D.N.Y. Nov. 17, 2023) ............................................... 6

*United States v. Wells Fargo Bank, N.A.*,
    132 F. Supp. 3d 558 (S.D.N.Y. 2015) ................................................................................ 5

*Universal Standard Inc. v. Target Corp.*,
    331 F.R.D. 80 (S.D.N.Y. 2019) ...................................................................................... 13

*In re Welspun Litig.*,
    No. 16-CV-6792 2018, WL 4693587 (S.D.N.Y. Sept. 21, 2018) ......................................... 10

<u>STATUTES & RULES</u>

Fed. R. Crim. P. 17 ..................................................................................... 4, 5, 6, 7, 8, 9, 10, 14

**PRELIMINARY STATEMENT**

Nonparty JPMorgan Chase Bank, N.A. (the "Bank"), the victim of Defendants' alleged fraud, has made substantial documentary productions, produced a legally sufficient privilege log, and acted in good faith throughout the course of this litigation. The Court has found as much. The Bank applied the Court's August 6, 2024 privilege rulings to Defendants' set of 2,242 documents and made supplemental productions as directed. Defendants now move this Court to compel the Bank to re-review every document remaining on its revised privilege log—more than 21,000 documents in total (the vast majority of which are responsive solely to grand jury subpoenas and not Defendants' Rule 17 subpoenas)—or find that the Bank has waived privilege over these documents. Neither request finds support in fact or law. Defendants are not entitled to any supplemental review. To the extent this Court finds otherwise, it should only order the Bank to re-review, at most, a subset of documents potentially responsive to Defendants' Rule 17 subpoenas, such as inclusive threads or documents where a duplicate has not already been produced. The Court should likewise reject Defendants' renewed application for a finding of waiver—an extreme remedy that is not appropriate in this case.

**BACKGROUND**

On July 24, 2024, Defendants and the Bank filed a joint letter setting forth their respective positions regarding the Bank's document productions, privilege log, and related legal issues. (*See* Letter from Samuel Nitze, Sean S. Buckley, and Greg D. Andres to Court (July 24, 2024) ("Joint Letter") (Dkt. No. 143).) The Bank separately submitted, under seal, 12 documents identified by Defendants for *in camera* review. During a hearing on August 6, 2024, the Court reviewed these documents and issued various rulings on Defendants' application for relief. (*See* Transcript of Proceedings (Aug. 6, 2024) ("Hearing Tr.") (Dkt. No. 146).)

1

As relevant to the instant Motion, the Court observed that the Bank has made "a substantial documentary production in this case" and "has been functioning in good faith[.]" (*Id.* at 4:6–7, 10.)  The Court also found that Defendants have suffered "no prejudice that's discernible" and concluded that the Bank has produced a legally sufficient privilege log. (*Id.* at 4:5–6, 11; *see also id.* at 53:17–56:24 (concluding, based on samples selected for review by Defendants, that the Bank's privilege log provided sufficient information).)  Accordingly, the Court declined to hold that the Bank has waived privilege over every document on its privilege log, as Defendants had requested. (*Id.* at 4:11–12.)  Relying on Judge Furman's opinion in *United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558 (S.D.N.Y. 2015), the Court also held that Defendants are not entitled to view privileged, pre-merger communications involving Frank's in-house counsel, Matthew Glazer, because the Bank controls the privilege over those communications and has chosen not to waive it. (Hearing Tr. 9:22–25, 10:2–6, 11:5–6.)  Finally, the Court made privilege rulings on the documents selected for *in camera* review and directed the Bank to apply those rulings to 2,300 documents to be selected by Defendants. (*Id.* at 41:17–19, 66:3–9; *see also* Fifth Order Regulating Proceedings (Aug. 8, 2024) ("Fifth Order") (Dkt. No. 145).)

Pursuant to the Court's instructions at the August 6 hearing and the Fifth Order Regulating Proceedings, the Bank applied the Court's privilege rulings to 2,242 documents that were identified by Defendants on August 9.  Based on its review of these documents, the Bank revised certain of its privilege determinations and made supplemental productions to Defendants on August 16, August 23, and August 30, 2024.  The Bank produced a revised privilege log to Defendants on September 6, 2024—the same day Defendants filed the instant Motion. (*See*

2

Defs.' Mot. to Compel Production of Non-Privileged Information from J.P. Morgan Chase Bank, N.A. (Sept. 6, 2024) ("Defs.' Mot.") (Dkt. No. 152).)

## ARGUMENT

### A. Defendants Are Not Entitled to Any Supplemental Review, and Even if the Court Concludes Otherwise, the Bank Should Only Be Required to Re-Review a Limited Subset of Documents Potentially Responsive to the Rule 17 Subpoenas

The Court should decline to order any supplemental review given the unlikelihood that such a review would produce any documents relevant or material to the potential defenses in this case and the significant burden it would impose on the Bank. To the extent the Court concludes that some additional review is necessary, it should only order the Bank to re-review, at most, a small subset of the approximately 5,000 documents remaining on the privilege log that are potentially responsive to Defendants' Rule 17 subpoenas, such as inclusive threads or documents where a duplicate has not already been produced, or documents that the Bank has determined are independently responsive to the Rule 17 subpoenas (as opposed to nonresponsive family members).

1. The Court Should Decline to Order Any Additional Re-Review

During the August 6 hearing, the Court expressed concern over "subject[ing]" the Bank—"a third-party witness . . . and the victim"—to "the burden of going through 23,000 documents" when there is "a major question as to what they're relevant to." (Hearing Tr. 48:23–24, 49:9–11; *see also id.* at 38:7–13 (holding that certain documents did not have to be produced because they contained nothing "relevant or material to this case").) *See also, e.g.*, *United States v. Joseph*, No. 23-CR-68, 2023 WL 8006613, at *1 (S.D.N.Y. Nov. 17, 2023) (noting that the defendant bears the burden of showing that the materials sought pursuant to a Rule 17 subpoena "are relevant and admissible" (citation omitted)). Indeed, the Bank has already produced over 320,000 documents, voluntarily re-reviewed over 31,000 documents earlier this year, and has

3

met and conferred with counsel for Defendants more than five times. The results of last month's re-review amplify the Court's concerns regarding burden.[1] As the Court has recognized, the Bank's privilege log adequately discloses the subject matter, participants, and other information pertaining to withheld documents, giving Defendants sufficient information to identify documents of interest. (*See, e.g.*, Hearing Tr. 4:5–6, 53:17–56:24.) The documents identified by Defendants in response to the Court's Order include 384 of their own pre-merger communications and 475 communications involving Frank's in-house counsel, Matthew Glazer—two categories of documents in which Defendants expressed interest during the meet-and-confer process and the August 6 hearing. (*See id.* at 9:15–21, 10:7–13.) The Bank has at this point re-reviewed all of Defendants' pre-acquisition communications and all communications to, from, or copying Mr. Glazer at least once; and following the August re-review, the Bank has now re-reviewed the majority of these documents twice. Considering that Defendants' pre-acquisition statements are key to the Government's allegations of fraud, the Bank has already dedicated multiple rounds of re-review to the documents most central to the case.[2] It is unlikely, therefore, that additional rounds of re-review will furnish new documents that are relevant or material to the claims or defenses in this case. The Court should therefore decline to order any supplemental review.

---

[1] Despite the Court's Order to submit 2,300 documents for re-review, (*see* Fifth Order 1), Defendants identified only 2,242 such documents, indicating that the Bank has already re-reviewed the full set of documents Defendants consider potentially relevant or material to their defense.

[2] In fact, only two documents involving Mr. Glazer and 32 of Defendants' own communications that were not part of the August re-review remain on the Bank's revised privilege log, and Defendants chose not to include those documents in the 2,242 documents they identified for supplemental review on August 9.

2. <u>Alternatively, the Bank Should Only Be Required to Re-Review a Limited Subset of Documents on Its Privilege Log That Are Potentially Responsive to Defendants' Rule 17 Subpoenas</u>

Alternatively, to the extent the Court concludes that some level of re-review is warranted, it would be unnecessary and overly burdensome for the Bank to re-review the more than 21,000 documents remaining on its privilege log. As a threshold matter, 16,532 of the 21,483 documents on the log—or roughly 77 percent—are in families that are responsive solely to the grand jury subpoenas in this case. As the Court has observed, "[i]t's up to the government to enforce the [grand jury] subpoena[s] or not." (Hearing Tr. 50:16–17; *see also id.* at 50:17, 19 ("I'm not ruling on a grand jury subpoena. . . . I'm ruling on a Rule 17 subpoena.").) *See In re Grand Jury Subpoena Dated Feb. 23, 2024*, No. 24-MC-104, 2024 WL 1363711, at *4 (S.D.N.Y. Mar. 29, 2024) (explaining that "the Executive Branch . . . is tasked with enforcing the law and, in that capacity, plays a major role in issuing and enforcing grand jury subpoenas"); *see also In re Grand Jury Proceedings*, 486 F.2d 85, 90 (3d Cir. 1973) (observing that "although grand jury subpoenas are occasionally discussed as if they were the instrumentalities of the grand jury, they are in fact almost universally instrumentalities of the United States Attorney's office or of some other investigative or prosecutorial department of the executive branch[]"); *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 908 F. Supp. 2d 348, 351 (E.D.N.Y. 2012) ("[A]lthough courts must ensure that the grand jury process is not being abused by the government, it is not the role of the courts to micromanage the government's presentation of evidence to the grand jury."). Defendants cite no authority for the proposition that a criminal defendant can move to compel compliance with a grand jury subpoena, and the Bank is aware of none. Defendants have no basis to compel the Bank to re-review these 16,532 documents.

The balance of documents remaining on the Bank's privilege log (4,951) belong to Rule 17 custodians, and therefore contain the subset of documents that are potentially responsive to

Defendants' Rule 17 subpoenas.[3,4] Thus, to the extent the Court determines that any re-review is necessary, these 4,951 documents (the "Full Rule 17 Set") make up the outer bounds of the documents the Bank might reasonably be ordered to re-review in response to Defendants' Motion. As a practical matter, however, ordering the Bank to re-review the Full Rule 17 Set is unnecessary and imposes undue burden on the Bank. Any re-review should be limited to a narrower portion of the Full Rule 17 Set, for several reasons.

The Full Rule 17 Set contains duplicates of documents that have already been produced to Defendants.[5] In addition, the Full Rule 17 Set contains some documents that are not responsive to Defendants' Rule 17 subpoenas as narrowed by this Court's Third Order Regulating Proceedings. (*See* Third Order 1–2.) Certain documents in the Full Rule 17 Set do not even relate to Frank—they remain on the log only because they have responsive family members—and are therefore unresponsive to both Defendants' subpoenas and the grand jury subpoenas. Additionally, a portion of the remaining documents contain only irrelevant scheduling discussions or other logistics, as Defendants' sample documents JPMC_01237959, JPMC_01238057, and JPMC_01238219 demonstrate. (*See* Defs.' Mot. 5.) Re-reviewing nonresponsive and/or irrelevant documents would burden the Bank and serve no purpose for

---

[3] The Court's Third Order Regulating Proceedings narrowed Defendants' Rule 17 subpoenas to documents (1) belonging to 14 custodians (seven of whom are also custodians for the grand jury subpoenas) and (2) relating to one of four topics: (a) the Bank's pre-acquisition due diligence, (b) post-acquisition marketing based on Frank's user list, (c) post-acquisition Frank partnerships, or (4) post-acquisition discussions of Frank's pre-acquisition value. (*See* Third Order Regulating Proceedings 1–2 (Jan. 19, 2024) ("Third Order") (Dkt. No. 87).)

[4] The Bank uses the phrase "potentially responsive" because documents belonging to both grand jury and Rule 17 custodians were often reviewed for responsiveness to the broader grand jury subpoenas (but not for responsiveness to Defendants' narrower Rule 17 subpoenas).

[5] Certain documents produced in response to the Bank's August re-review and highlighted in Defendants' Motion, (*see* Defs.' Mot. 5–6), underscore this point. For example, JPMC_01239391 had already been produced to Defendants under JPMC_01121810. The Full Rule 17 Set also includes duplicates of documents that were part of the August re-review. For example, JPMC_00922414 was part of the August re-review set and has 24 duplicates in the Full Rule 17 Set. Re-reviewing duplicates of documents that are either (i) already in Defendants' possession or (ii) were just re-reviewed imposes an undue burden on the Bank and would serve no benefit to Defendants.

6

Defendants. In short, the Full Rule 17 Set is overbroad, and to the extent the Court finds that any supplemental review is necessary, it should only instruct the Bank to review a more limited subset of these documents.

The Bank should not be subjected to further rounds of supplemental review when Defendants have not established that there is relevant or material information yet to be produced. To the extent the Court finds that additional review is warranted, however, it should instruct the Bank to re-review a limited portion of the Full Rule 17 Set.

### B. Waiver Remains an Inappropriate Remedy Under the Facts of This Case and Would Represent a Departure From Applicable Law

Defendants argue in the alternative that if the Court declines to order a full re-review of the 21,483 documents that remain on the Bank's privilege log, it should "find global waiver" and order the Bank to produce *all* of these documents. As was true when Defendants first applied for this remedy—a request the Court properly denied, (*see* Hearing Tr. 4:5–12)—waiver is an extreme sanction that does not fit the facts of this case. Granting Defendants' request in this context would depart from the significant weight of authority in the Southern District.

Waiver, as the Bank has previously discussed, (*see* Joint Letter 19–22), "is a 'harsh remedy' that generally is reserved for egregious noncompliance" with the relevant local and federal rules, *In re Welspun Litig.*, No. 16-CV-6792, 2018 WL 4693587, at *3 (S.D.N.Y. Sept. 21, 2018) (citation omitted). It is axiomatic that "only flagrant violations of these rules should result in a waiver of privilege." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19-CV-9193, 2023 WL 315072, at *10 (S.D.N.Y. Jan. 19, 2023) (citations and internal quotation marks omitted) (gathering cases); *accord Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 154 (E.D.N.Y. 2008). "Flagrant" violations, under this District's case law, typically involve some showing of bad faith or a repeated refusal to produce an adequate privilege log. *See In re*

7

*Aenergy, S.A.*, 451 F. Supp. 3d 319, 327 (S.D.N.Y. 2020) (calling waiver a "very tempting route" in view of the producing party's "obvious gamesmanship"); *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-CV-293, 2017 WL 2305398, at *3 (S.D.N.Y. May 18, 2017) (declining to find waiver where there was no evidence of "calculated foot-dragging" by the producing party); *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 42–43 (S.D.N.Y. 2009) (finding waiver where a party produced a "woefully deficient" privilege log after previously failing to produce such a log as ordered by the court and making misrepresentations to the court). (*See also* Joint Letter 19–22 (surveying Southern District case law on privilege waiver).)

The Bank—the victim of Defendants' alleged fraud—has already produced over 320,000 documents in this case. From April to May of this year, it voluntarily re-reviewed over 31,000 documents and produced a revised privilege log to address concerns previously raised by Defendants. It has conferred and corresponded repeatedly with Defendants to resolve outstanding issues and demonstrate its cooperation. As the Court explained on August 6 when denying Defendants' initial application for a finding of waiver, the Bank has made "a substantial documentary production in this case" and has produced a privilege log that satisfies applicable rules. (Hearing Tr. 4:5–8; *see also id.* at 53:17–56:24.) "[T]he proceedings" in this case, the Court added, "show that J.P. Morgan Chase has been functioning in good faith . . . ." (*Id.* at 4:9–10.) *See also, e.g., Am. Nat'l Bank & Tr. Co. of Chi. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) (noting that a party "exhibited good faith" by revising "its initial log," volunteering an "amended log," and cooperating to "resolve outstanding disputes").

Despite this record, Defendants now renew their application for a finding of waiver solely on the basis that the Bank has downgraded certain documents in the course of applying the

Court's privilege rulings of August 6. Defendants have it backwards, though. That the Bank has downgraded some number of documents based on the Court's rulings does not suggest gamesmanship or intransigence; to the contrary, it shows that the Bank has endeavored, in good faith, to heed the Court's rulings and apply its approach to a larger universe of documents, as it was instructed to do.

At bottom, Defendants appear to fault the Bank for the fact the Bank needed to revise certain privilege determinations in view of the Court's August 6 rulings. But that is a customary and expected step following a court's sampling of withheld documents—not a basis to impose waiver. *See, e.g.*, *Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*, No. 14-CV-1561, 2016 WL 3542453, at *3 (S.D.N.Y. June 23, 2016) (directing the defendant to "apply the [c]ourt's exemplar rulings" on 10 documents submitted for *in camera* review "to the broader array of withheld documents, producing those ruled to be non-privileged"); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 03-CV-3312, 2013 WL 12362006, at *7, *10 (E.D.N.Y. Feb. 12, 2013) (ordering the plaintiff to apply the court's privilege rulings on a sample of documents submitted for *in camera* review to "the broader universe of documents" designated as privileged). Moreover, Defendants do not assert that the Bank's privilege determinations were made in bad faith. Here, as in *In re Currency Conversion Antitrust Litigation*, No. 05-CV-7116, 2010 WL 4365548 (S.D.N.Y. Nov. 3, 2010), the Bank has "made a good-faith effort to disclose the business-related portions of the documents, while redacting only those portions in which attorneys were viewed as conveying legal advice or analysis." *Id.* at *6. "There is not always a bright line demarcation of the two areas, and reasonable people could disagree as to some of the

redactions." *Id.*[6] That the Bank had to revise certain privilege determinations to conform with the Court's rulings is not a basis to impose waiver.

Defendants cite Magistrate Judge Netburn's opinion in *BlackRock Balanced Capital Portfolio (FI) v. Deutsche Bank National Trust Company*, No. 14-CV-9367, 2018 WL 3584020 (S.D.N.Y. July 23, 2018), for the proposition that "[a] privilege log is not an iterative process[.]" (Defs.' Mot. 5 (quoting *BlackRock*, 2018 WL 3584020, at *5).)  This Court, however, has described its protocol for narrowing and resolving privilege disputes as precisely this—an "iterative process." (Hearing Tr. 58:2; *see also id.* at 4:6–9 ("There's been a substantial documentary production in this case, and naturally it would take time and often various steps to complete a privilege log[] [t]hat is as narrow as possible."); *id.* at 57:24–25 ("You've been on this end, too, Mr. Nitze.  You know what it is to do a production of this many documents.").) Moreover, the offending party in *BlackRock* had repeatedly "failed to provide an adequate privilege log notwithstanding multiple opportunities to do so." 2018 WL 3584020, at *5; *see also id.* at *4 (taking note of the plaintiff's claim that Deutsche Bank's privilege log "lack[ed] meaningful descriptions or intelligible identifiers").  Here, by contrast, the Court has already ruled that the Bank's privilege log is sufficient.  (*See* Hearing Tr. 4:5–6; *see also id.* at 53:17–56:24.)

The remaining authority cited by Defendants in support of their waiver argument is likewise distinguishable.  In *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80 (S.D.N.Y. 2019), the plaintiff asserted privilege over certain emails involving privilege-breaking third

---

[6] As was also true in *In re Currency Conversion*, "the material redacted" by the Bank "is fairly innocuous and . . . not material to the claims and defenses of the parties." 2010 WL 4365548, at *6 n.1.  Moreover, as one of the lawyers for Defendant Amar observed at the August 6 hearing, "[i]t's obvious that some of the [Bank's privilege] calls were closer ones[.]"  (Hearing Tr. 41:12–13.)

parties, but the names of those parties were omitted from the privilege log, "thus making it impossible for [the defendant] to see from the privilege log" that it had a potential waiver argument based on the presence of those third parties. *See id.* at 84–86. Nothing remotely similar has been alleged here, and, as noted, the Court has already found the Bank's privilege log sufficient. Similarly, in *Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.*, 499 F. Supp. 2d 475 (S.D.N.Y. 2007), the plaintiff's privilege log was deemed deficient because it failed to identify which privilege was being asserted and failed to identify the parties to the communication. *Id.* at 479. Again, the Bank's privilege log suffers from no such deficiencies.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion in full and decline to order the Bank to conduct any supplemental review. Alternatively, to the extent the Court finds that some additional review is warranted, it should only order the Bank to re-review a limited portion of the Full Rule 17 Set. Finally, the Bank has not waived privilege over any documents on its privilege log, and the Court should so hold.

Dated: September 18, 2024

/s/ Greg D. Andres
Greg D. Andres
Sidney Bashago
Katherine Swan
Michelle Adler
Christian Hines
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
greg.andres@davispolk.com
sidney.bashago@davispolk.com
katherine.swan@davispolk.com
michelle.adler@davispolk.com
christian.hines@davispolk.com

*Attorneys for Non-Party JPMorgan Chase Bank, N.A.*

11