UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CHARLIE JAVICE and OLIVIER AMAR, <br><br> Defendants. | 23-cr-00251-AKH |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF NON-PRIVILEGED INFORMATION FROM J.P. MORGAN CHASE BANK, N.A.**

**BAEZ LAW FIRM**

Jose A. Baez
1200 Brickell Avenue, Ste 1410
Miami, FL 33131
(305) 999-5100
admin@baezlawfirm.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Samuel P. Nitze
Alex Spiro
Sarah Heaton Concannon
Erica Perdomo
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
samuelnitze@quinnemanuel.com
alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
ericaperdomo@quinnemanuel.com

*Attorneys for Defendant Charlie Javice*

**KOBRE & KIM LLP**

Sean S. Buckley
Steven G. Kobre
Alexandria E. Swette
Victoria Fordin (*pro hac vice* forthcoming)
Jake Rush (*pro hac vice* forthcoming)
800 Third Avenue
New York, New York 10022
(212) 488-1200
Sean.Buckley@kobrekim.com
Steve.Kobre@kobrekim.com
Alexandria.Swette@kobrekim.com
Victoria.Fordin@kobrekim.com
Jake.Rush@kobrekim.com

*Attorneys for Defendant Olivier Amar*

Defendants'[1] opening brief estimated that—following a Court-ordered re-review of a sample of 2,246 documents previously withheld on grounds of privilege—JPMC produced more than 50 percent of the sample set after withdrawing or adjusting its privilege designations. Dkt. 152. Defendants argued that the extraordinary scope of JPMC's changes to its privilege designations and its belated production of documents requires, at minimum, a full re-review of *all* of the documents on JPMC's privilege log, if not a finding by the Court that JPMC has waived privilege entirely. Defendants now understand, based on a comprehensive review of JPMC's productions and JPMC's updated privilege log, produced shortly after Defendants filed their Motion, that in fact JPMC has withdrawn or adjusted its privilege designations with respect to approximately *90 percent* of the sample set, underscoring the need for the requested relief. None of JPMC's arguments in its Memorandum of Law in Opposition to Defendants' Motion to Compel, Dkt. 158 ("Opposition"), supports denial of the pending motion.

## BACKGROUND

On September 7 at 12:19 a.m. ET, 19 minutes *after* the September 6 deadline for Defendants to file any motion to compel production pursuant to the Court's order of August 8, 2024, Dkt. 145, JPMC produced an updated privilege log to Defendants ("Updated JPMC Privilege Log"). JPMC's production of the Updated JPMC Privilege Log moots Defendants' request that the Court enter an order requiring that JPMC produce a log, and Defendants therefore withdraw that portion of Defendants' request for relief.

The Updated JPMC Privilege Log contains 22,813 entries. Defendants have conducted a comprehensive analysis of the Updated JPMC Privilege Log and have compared the Updated

---

[1] Unless otherwise defined, capitalized terms have the meanings ascribed to them in Defendants' Motion to Compel Production of Non-Privileged Information from J.P. Morgan Chase Bank, N.A. Dkt. 152.

2

Privilege Log to JPMC's prior privilege log, produced to Defendants in May. Defendants also have reviewed the relevant privilege log entries for the 2,077 documents that JPMC produced in August.[2] As far as we can tell, based on JPMC's production of 2,077 documents following its re-review of the sample set of 2,246 documents, it appears that JPMC has withdrawn or adjusted its privilege determinations as to 90% of the sample set.

## ARGUMENT

**A.   JPMC Has Withheld Thousands of Responsive Documents That Likely Contain Non-Privileged Relevant Information**

That JPMC's re-review (after several previous, purportedly final reviews) of a sample set of documents resulted in the retraction of privilege designations relating to 90 percent of the sample documents calls into question the adequacy and reliability of JPMC's privilege review and designations. The Court therefore should order JPMC to re-review *all* documents withheld for privilege and produce documents that are not privileged, in whole or part, pursuant to the rulings set forth by this Court at the August 6 hearing. In the alternative, the Court should find that JPMC has waived privilege over and must produce all documents on the Updated JPMC Privilege Log. Despite JPMC's conclusory assertions to the contrary, Dkt. 158 at 4, these documents are responsive to the Government's and Defendants' requests for production and therefore very likely relevant to the claims and defenses in this action.

The sample set of documents Defendants identified for reconsideration by JPMC pursuant to the Court's order of August 8 comprises roughly ten percent of the documents on JPMC's

---

[2] Defendants note that the set of 2,077 documents produced by JPMC following its re-review of the sample set includes numerous redacted documents that, for some reason, do not appear on JPMC's latest privilege log. *See, e.g.*, JPMC_01236726; JPMC_01237902; JPMC_01239119; JPMC_01239420; JPMC_01239497; JPMC_R17_027789; JPMC_R17_027854; JPMC_01239481; JPMC_01239429; JPMC_01239341. It thus appears that even now, at this very late date, the log remains deficient.

3

privilege log.  It is well-established that a court may make assumptions about a larger set of documents based on a sample.  *See Shipyard Assocs., L.P. v. City of Hoboken*, 2015 WL 4623470, at *2 (D.N.J. Aug. 3, 2015) (sampling is "a technique that this and other courts have used when there are large numbers of privileged documents in dispute").  Applying this principle here, the Court has strong grounds to conclude that JPMC's privilege determinations for up to *90 percent* of the 22,813 documents on the Updated JPMC Privilege Log—more than *20,000 documents*—are incorrect.

Further, based on Defendants' review of the Updated JPMC Privilege Log, a significant percentage of the 22,813 documents remaining on that log concern individuals, timeframes, and topics at the heart of the Government's allegations and may include exculpatory information.  For example:

- **JPMCPRIVR17_000011**: Withheld file titled "ProjectFinland_Management Meeting Notes_07.07.2021" prepared by JPMC non-lawyer who collected and aggregated notes from early JPMC meetings regarding the Frank acquisition. Based on documents produced by JPMC, representatives of Frank and JPMC attended the meeting that is the subject of these notes, and the notes are therefore not privileged.

- **JPMC_00924889**: Redacted July 20, 2021 notes from a JPMC internal due diligence meeting regarding the Frank acquisition sent from a JPMC non-lawyer to more than 65 JPMC personnel, then forwarded by the JPMC non-lawyer executive who spearheaded JPMC's acquisition of Frank to two other non-lawyer JPMC executives.

- **JPMCPRIV_032992; JPMCPRIV_032993**: Withheld emails exchanged between JPMC's CEO and another top JPMC executive in September 2022—one year after JPMC acquired Frank and around the time that JPMC terminated Ms. Javice—related to the subject of Frank Due Diligence.

Defendants are entitled to production of any and all non-privileged information contained within these and similar responsive documents on the Updated JPMC Privilege Log that have been improperly withheld and redacted.

4

B.  **JPMC's Arguments in Opposition are Unavailing**

In its Opposition, JPMC all but concedes that a supplemental review of some subset of the documents on the Updated JPMC Privilege Log is appropriate, advocating that the Court order, at most, review of a subset of the 5,000 documents JPMC produced in response to Defendants' Rule 17 subpoenas. Dkt. 158 at 6–7. But JPMC's arguments in support of truncating its re-review and production do not pass muster.

*First*, JPMC argues that it should not be required to re-review "duplicates of documents that have already been produced to Defendants." *Id.* at 6. To the contrary, if a document has *already been produced* it is either *not* privileged or JPMC *waived* privilege over the document and all versions thereof through its production, so the continued withholding of duplicates is legally baseless. Moreover, JPMC's productions include many near duplicates, for example, multiple drafts of a slide deck with minor revisions across drafts or multiple versions of an email chain that may diverge or cut off at different points in time. Material information could very well hide in those subtle differences.

*Second*, JPMC argues that it should not be required to re-review the withheld and redacted family members of responsive documents, but this argument invites the Court to invent a new and less stringent standard for privilege claims over email attachments and other "family" documents that are typically produced in discovery, a position for which there is no precedent or legal support. The Court should decline JPMC's invitation to create new law.

*Third*, JPMC asks the Court to reverse its prior ruling that Defendants are entitled to challenge JPMC's privilege assertions *directly*, whether the underlying documents were produced in response to a subpoena from Defendants (pursuant to Rule 17) or from the Government (pursuant to Rule 16). See Dkt. 87; Transcript of January 18, 2024 Hearing, 23:10–25:23 (prior

5

to the production of any Rule 17 documents by JPMC, ordering JPMC to produce its privilege log directly to Defendants and ordering Defendants to challenge privilege assertions in documents produced by JPMC in response to Government subpoenas). In asking the Court to exclude from re-review all of the documents JPMC produced in response to the Government's Rule 16 subpoenas, JPMC is not only asking the Court to disregard its own orders, but is undermining the entire process that the Court fashioned months ago and the parties have since engaged in. Indeed, JPMC is fully aware of and has acted consistently with the Court's instructions; and JPMC concedes that it met and conferred with Defendants more than five times and re-reviewed its privilege log at Defendants' request, even though that log consists mostly of documents responsive to Government subpoenas. Dkt. 158 at 3–4. There is no reason that this Court should limit JPMC's re-review of withheld and redacted documents on these bases.

*Fourth*, JPMC concedes that "Defendants' pre-acquisition communications" and "all communications . . . to, from, or copying ▮▮▮▮▮" are "key to the Government's allegations of fraud." Opp. at 4. Given their significance, JPMC purportedly "dedicated multiple rounds of re-review" to these documents. *Id.* The Bank's re-review was not in vain. The latest waves of downgraded documents produced by JPMC have included a number of Defendants' communications with ▮▮▮▮▮—documents that were wrongly withheld from Defendants for at least one year.

These previously redacted, now fully produced, documents reveal ▮▮▮▮▮'s input on the marketing of Frank's products and his involvement in strategy and negotiations related to the sale of Frank. Among other things, these documents show that ▮▮▮▮▮ was actively involved in the decision to revise the Frank website to reference "4.25 million" students and the subsequent decision to use that number in pitches, due diligence documents, and other materials provided to

6

Bank-1 and JPMC, among other potential buyers. *See* Dkt. 152 (listing examples). In sum, these newly produced documents provide legitimate, non-fraud-based explanations for the inclusion of such representations in Frank's marketing materials. Defendants' reliance on these communications with Frank's in-house counsel constitutes powerful evidence undermining and refuting the Government's core allegation that Defendants had the requisite specific intent to defraud—let alone any intention to deceive or mislead—Bank-1, JPMC, or any other potential buyer. Separately and independently, these communications also provide substantial support for Defendants' use of advice-of-counsel evidence or arguments at trial and demonstrate why Defendants need to review additional communications involving ▆▆▆▆ to understand the contours and viability of such a defense.

As to this critical subset of documents, JPMC's privilege assertions continue to be inconsistent and questionable. For example, JPMC has recently produced previously withheld portions of documents showing ▆▆▆▆'s input on and edits to key pitch materials containing purported misrepresentations. *See* JPMC_01190919. At the same time, JPMC maintains partial redactions to other input from ▆▆▆▆ on the same or similar pitch materials. *See* JPMC_01191000; JPMC_01191431; JPMC_01186493. JPMC also continues to withhold portions of documents that almost certainly contain discussions regarding data to be provided in due diligence with prospective buyers, *see* JPMC_01190780; JPMC_01190737, despite the Court's rulings that diligence-related materials are outside of JPMC's privilege and must be produced, *see* Aug. 6 Hr'g Tr. at 18:4–5 (ruling "report on stages on negotiations or other matters like that" are not privileged); id. at 19:24–25 (same for "business strategies, how to conduct a negotiation, what to ask for, what not to ask for"); *id*. at 24:17–18 ("[B]usiness negotiation, negotiation strategy, whether conducted by lawyers or anyone else, is not privileged."). Indeed,

7

JPMC has even withheld portions of a communication in which ▮▮▮▮▮▮▮ apparently asks Mr. Amar a non-legal question about Frank's user data after Bank-1 signed its letter of intent and just a few days before Frank opened the data room for Bank-1. *See* JPMC_01190735. A claim of privilege over such a communication turns the attorney-client privilege on its head. None of these communications are privileged, and so all of them must be produced in full. These examples underscore the need for a full re-review of the withheld and redacted documents.[3]

* * * *

In sum, this Court should not expend limited judicial resources on further *in camera* review and adjudication of individual privilege challenges. Instead, the Court should order JPMC to conduct a holistic re-review of the Updated JPMC Privilege Log and produce any and all documents that are not privileged, in whole or part, pursuant to this Court's August 6 rulings.

In the alternative, Defendants request that the Court find waiver by JPMC over all documents that remain on its privilege log. In support of this position, Defendants rely on the legal arguments advanced in their opening brief, Dkt. 152, and Defendants' Position in the Joint Submission Regarding Privilege, Dkt. 143. The developments outlined herein—notably, that

---

[3] In light of these examples, and given the nature of ▮▮▮▮▮▮▮'s demonstrably hands-on and important role in reviewing pitch and due diligence materials in connection with the sale of Frank, Defendants reiterate their request that the Court enter a Rule 502(d) order granting Defendants (and not the Government) access to unredacted versions of all of ▮▮▮▮▮▮▮'s communications with or involving Defendants, as such communications necessarily go to Defendants' states of mind and the related question of their willfulness and specific intent to defraud (or lack thereof). JPMC's contention that "Defendants are not entitled to view privileged, pre-merger communications involving Frank's in-house counsel . . . because the Bank controls the privilege . . . and has chosen not to waive it," Opp. at 2, is wrong. The Court specifically held open the possibility that Judge Furman's ruling [in United States v. Wells Fargo]," a civil case, may not apply here in a criminal case in which Defendants seek their own communications that are material to their defense. *See* Aug. 6, 2024, Hr'g Tr. at 44:6–9 ("If any of the documents I reviewed are material or relevant to any defense in this action, I would consider it very seriously and probably not apply Judge Furman's ruling [in *United States v. Wells Fargo*].").

8

JPMC continues to impermissibly withhold non-privileged responsive information in potentially more than 20,000 documents, has relied on baseless claims of privilege to hide responsive information from Defendants for more than a year, and has failed to correct its privilege claims despite ample opportunity to do so—rises to the level of the most egregious circumstances where courts have found total waiver.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Motion, this Court should grant the relief sought.

Dated: September 19, 2024                                    *Samuel P. Nitze*
                                                             Samuel P. Nitze
                                                             QUINN EMANUEL URQUHART
                                                             & SULLIVAN, LLP

Jose A. Baez
BAEZ LAW FIRM
1200 Brickell Avenue, Ste 1410
Miami, FL 33131
(305) 999-5100
admin@baezlawfirm.com

Samuel P. Nitze
Alex Spiro
Sarah Heaton Concannon
Erica Perdomo
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
samuelnitze@quinnemanuel.com
alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
ericaperdomo@quinnemanuel.com

*Attorneys for Defendant Charlie Javice*

Sean S. Buckley
Steven G. Kobre
Alexandria E. Swette
Victoria Fordin (*pro hac vice* forthcoming)
Jake Rush (*pro hac vice* forthcoming)
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
Sean.Buckley@kobrekim.com
Steve.Kobre@kobrekim.com
Alexandria.Swette@kobrekim.com
Victoria.Fordin@kobrekim.com
Jake.Rush@kobrekim.com

*Attorneys for Defendant Olivier Amar*

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 19, 2024, I caused a copy of the foregoing document to be served via ECF on all counsel of record.

                     *Samuel P. Nitze*
                     Samuel P. Nitze