UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

CHARLIE JAVICE and OLIVIER AMAR,

Defendants.

Case No.: 1:23-cr-00251-AKH

## DEFENDANT CHARLIE JAVICE'S MOTIONS IN LIMINE AND MEMORANDA OF LAW IN SUPPORT

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

ARGUMENT ....................................................................................................................3

I.   EVIDENCE AND ARGUMENT OF WELL-KNOWN, CONVICTED
     FRAUDSTERS SHOULD BE EXCLUDED ......................................................3

II.  THE GOVERNMENT'S EXHIBITS WITH NO PATH TO ADMISSIBILITY
     SHOULD BE EXCLUDED PRETRIAL............................................................6

     A.   News Articles With Insurmountable Hearsay Problems Should Be
          Excluded .................................................................................................6

     B.   The JPMC and ██████████ Composite Meeting Notes Should Be
          Excluded .................................................................................................8

III. EVIDENCE RELATED TO ██████████████ DECLINED
     INVESTMENT IN FRANK SHOULD BE EXCLUDED .................................10

IV.  THE COURT SHOULD ENTER SEQUESTRATION AND NONDISCLOSURE
     ORDERS COVERING NON-PARTY WITNESSES AND THEIR
     REPRESENTATIVES PURSUANT TO FEDERAL RULE OF EVIDENCE 615 ..........12

V.   THE COURT SHOULD NOT ALLOW THE GOVERNMENT TO CALL
     ████████████ TO TESTIFY ...............................................................13

CONCLUSION.............................................................................................................17

## TABLE OF AUTHORITIES

**Page**

### Cases

*Bagby v. Kuhlman*,
  932 F.2d 131 (2d Cir. 1991) ................................................................. 15

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
  138 F. Supp. 2d 357 (E.D.N.Y. 2001) ................................................. 3, 11

*Braunstein v. Sahara Plaza, LLC*,
  2021 WL 2650369 (S.D.N.Y. June 28, 2021) ....................................... 8

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  528 F. Supp. 2d 206 (S.D.N.Y. 2007) .................................................. 8

*Chambers v. Mississippi*,
  410 U.S. 284 (1973) ............................................................................ 15

*Gabel v. Richards Spears Kibbe & Orbe, LLP*,
  2009 WL 1856631 (S.D.N.Y. June 26, 2009) ....................................... 9

*In re Columbia Sec. Litig.*,
  155 F.R.D. 466  (S.D.N.Y. 1994) ........................................................ 6

*James v. United States*,
  622 F. App'x 689 (9th Cir. 2015) ........................................................ 4, 5

*Mandal v. City of New York*,
  2006 WL 3405005 (S.D.N.Y. Nov. 26, 2006) ...................................... 6, 7

*Monroe v. Town of Haverstraw*,
  639 F. Supp. 3d 459 (S.D.N.Y. 2022) .................................................. 6

*Perry v. Leeke*,
  488 U.S. 272 (1989) ............................................................................ 12

*Schofield v. S. Kortright Cent. Sch. Dist.*,
  163 F.3d 749 (2d Cir. 1998) ................................................................ 12

*Shannon v. United States*,
  512 U.S. 573 (1994) ............................................................................ 5

*United States v. Abdullaev*,
  761 F. App'x 78 (2d Cir. 2019) ........................................................... 7

*United States v. Ayers*,
   2024 WL 1158686  (E.D.N.Y. Mar. 18, 2024) .................................................... 8

*United States v. Doe (In re Grand Jury Proceedings)*,
   219 F.3d 175 (2d Cir. 2000).................................................................... 14

*United States v. Dominique-McClain*,
   623 F. Supp. 3d 33 (E.D.N.Y. 2022) .......................................................... 10

*United States v. Friedman*,
   854 F.2d 535 (2d Cir. 1988)..................................................................... 12

*United States v. Herrell*,
   2024 WL 2954408 (E.D. Ky. June 12, 2024) ................................................ 15

*United States v. Langford*,
   990 F.2d 65 (2d Cir. 1993)...................................................................... 11

*United States v. Scali*,
   2018 WL 604852 (S.D.N.Y. Jan. 29, 2018) ................................................... 9

*United States v. Schatzle*,
   901 F.2d 252 (2d Cir. 1990)..................................................................... 4

*United States v. Sterling*,
   2017 WL 2304024 (S.D.N.Y. May 24, 2017) ................................................. 4

*United States v. W.R. Grace*,
   439 F. Supp. 2d 1125 (D. Mont. 2006)........................................................ 15

## Statutes

18 U.S.C. § 3500 ..................................................................................... 9

## Rules

Fed. R. Evid. 403 ......................................................................... 2, 3, 9, 10
Fed. R. Evid. 404 ............................................................................... 9
Fed. R. Evid. 615 ............................................................................ i, 1, 13
Fed. R. Evid. 801 ............................................................................... 7
Fed. R. Evid. 802 .............................................................................. 5,7

Pursuant to the Court's Order Regulating Proceedings [ECF No. 163], Defendant Charlie Javice hereby makes the following *in limine* motions[1]:

1.    Evidence and argument comparing Ms. Javice to well-known, convicted fraudsters should be excluded;

2.    The government's exhibits with no path to admissibility should be excluded pretrial;

3.    Evidence related to ███████████ Declined Investment in Frank should be excluded;

4.    The Court should enter sequestration and nondisclosure orders covering non-party witnesses and their representatives pursuant to Federal Rule of Evidence 615;

5.    The Court should not allow the government to call ███████████ to testify.

Ms. Javice respectfully submits the following Memoranda of Law in support of her motions.[2]

Further, Ms. Javice hereby joins Olivier Amar's Omnibus Motions *in Limine*:

- Number One: The Court should preclude the government from arguing, introducing evidence, and/or soliciting testimony regarding potential buyers of Frank that were neither identified in the Indictment nor adequately disclosed to the defense in spite of the Court's directive to identify and "limit" the "targets" of the alleged fraud;

- Number Two: The Court should preclude the government from arguing, introducing evidence, and/or soliciting testimony regarding any alleged fraud perpetuated against the government's so-called "intended victims"

---

[1]    To facilitate the Court's resolution of these matters, Ms. Javice will cause to be delivered to Chambers a copy of each exhibit referenced herein, labeled by exhibit number. Voluminous, native, and media exhibits can be made available upon request of the Court.

[2]    The limited redactions in this filing correspond to materials the government has designated under the protective order in this case. Ms. Javice has no objection to the publication of any of this information and is available to confer with the government regarding confidentiality of this information. In an abundance of caution, this information is currently redacted from this public filing.

that were mere prospects identified for outreach and/or "pitched" about the
opportunity to acquire Frank*;*

- Number Three:  The Court should preclude the government from arguing
  a single fraudulent scheme against the two specified targets in the
  Indictment—"Bank-1" and J.P. Morgan Chase—and any of the potential
  acquirors identified in the governments' exhibits, including ████████,
  a potential buyer for whom the government intends to call as a witness.

Ms. Javice also joins Mr. Amar's Motion *in Limine* to Preclude Evidence and Argument in Support

of Now-Invalid Theories of Fraud Pursuant to *Ciminelli* and its Progeny.

*[Remainder of page intentionally left blank.]*

2

## ARGUMENT

### I.    EVIDENCE AND ARGUMENT OF WELL-KNOWN, CONVICTED FRAUDSTERS SHOULD BE EXCLUDED

The Court should exclude evidence of and prohibit argument about well-known, unrelated third-parties convicted of fraud, specifically Elizabeth Holmes, Bernie Madoff, Sam Bankman-Fried, and Martin Shkreli, which the government has signaled it intends to introduce in its case-in-chief.  GX 206 ██████████████████████████████; GX 210 ████ ██████████████████████████████████████████; GX 801 ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████.  This evidence and any related argument are irrelevant, unfairly prejudicial, and invite the jury to consider information not properly presented in this case.  Fed. R. Evid. 401, 403.

Evidence of well-known, unrelated third-parties convicted of fraud does not make any fact of consequence in this case more or less probable.  Fed. R. Evid. 401; *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365 (E.D.N.Y. 2001) (An "evidentiary proposition is considered 'relevant' only if it is logically related, either directly or through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case. . . ." (collecting sources)).  These unrelated individuals and what they reportedly did in unrelated cases has no relevance whatsoever to the charge offenses in this case, and this evidence can serve no other purpose than to inflame the jury and divert it from deciding the case fairly and impartially based on the evidence that is relevant to the charged offenses.  Moreover, if this evidence has any minimal probative value, it is slight and is "substantially outweighed by a

danger of . . . unfair prejudice, confusing the issues, [and] misleading a jury. . . ." Fed. R. Evid. 403.

Undoubtedly, comparing Ms. Javice to convicted celebrity fraudsters is prejudicial. *See MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 570 (S.D.N.Y. 2017 ("[C]ourts often prohibit the use of certain pejorative terms when such categorizations were inflammatory and unnecessary to prove a claim and such statements do not bear on the issues being tried." (internal quotation marks and citations omitted)); *United States v. Helbrans*, 2021 WL 4778525, at *17 (S.D.N.Y. Oct. 12, 2021) (prohibiting the government "from using incendiary and irrelevant" language such as the word "cult" because "suggestions . . . of . . . brainwash[ing] or coerc[ion] . . . are neither evidence of the charged crimes nor do [they] provide context more necessary than it is prejudicial"). However, the potential prejudicial effect is even more pernicious here, as permitting this evidence and associated argument would have dire constitutional implications.

"[C]omparisons [between Ms. Javice and famous criminals] would unduly bias the veniremembers and undercut the presumption of innocence that 'lies at the foundation of the administration of our criminal law.'" *James v. United States*, 622 F. App'x 689, 691 (9th Cir. 2015) (Gould, J., dissenting on a separate issue) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)); *accord United States v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990) (district court properly precluded evidence and argument that would have "focus[ed] the jury upon the wrong event"); *United States v. Sterling*, 2017 WL 2304024, at *6 (S.D.N.Y. May 24, 2017) (precluding evidence that "could only have caused further irrelevant distraction"). Take for example, one portion of an exhibit the government intends to introduce: ████████████████

████████████████████████████████████████████

4

████████ GX 801 ██████████████████████████████████████████

██████████████████████████████████████ In these short sentences, the government intends to invite the jury to consider two impermissible matters. First, guilt by association, thereby undercutting Ms. Javice's constitutionally enshrined presumption of innocence. *James*, 622 F. App'x at 691 (9th Cir. 2015) (explaining the government cannot compare a criminal defendant to John Dillinger or Al Capone without undermining the presumption of innocence). Second, it introduces and invites the jury to consider punishment during the liability phase of the trial, which is strictly prohibited. *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."). Finally, injecting evidence of and comparisons to these unrelated celebrity cases will confuse the issues and impermissibly invite the jury to consider facts not in this case. *Id.*

*[Remainder of page intentionally left blank.]*

## II.    THE GOVERNMENT'S EXHIBITS WITH NO PATH TO ADMISSIBILITY SHOULD BE EXCLUDED PRETRIAL

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Monroe v. Town of Haverstraw*, 639 F. Supp. 3d 459, 462 (S.D.N.Y. 2022 (citing another source. Rightfully so. This conserves judicial resources and does not waste the Court's and jury's time with needless evidentiary objections, recesses and sidebars to resolve the same. Here, the government intends to introduce certain categories of documents that, regardless of the sponsoring witness or the foundation laid at trial, are inadmissible for the reasons discussed below. Where evidence, like that here, "is clearly inadmissible on all potential grounds," it is properly excluded pretrial. *Id.*

### A.  News Articles With Insurmountable Hearsay Problems Should Be Excluded

The government seeks to admit seven news articles or publications without a plausible path to admissibility. GX 203 ███████████████████████; GX 206 ████████████ ████████████████████████; GX 207 ███████████████████; GX 209 ████████████ ████████████████████████; GX 210 ████████████████████████; GX ████████ ████████████████████; GX 213 ████████████████████████████████.[3]

The articles contain multiple layers of hearsay. *See Mandal v. City of New York*, 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006) ("Newspaper articles are usually inadmissible hearsay." (collecting sources)); Fed. R. Evid. 802. There are seven articles on the government's exhibit list, but it has not listed a single author on its witness list. *See In re Columbia Sec. Litig.*, 155 F.R.D. 466, 475 (S.D.N.Y. 1994) ("News accounts, unsupported by corroborating evidence and offered to prove that certain statements were made, will usually lack the circumstantial guarantees of

---

[3]    Additionally, GX 209 and GX 213 are incomplete as produced, and are thus objectionable for this independent reason.

trustworthiness" required for admissibility (internal quotations omitted, collecting sources)).  For

example, ███████████████████████████████████████████████████████████

███████ ; it is unclear who the government could call as its sponsoring witness to lay a proper

foundation.

Second, assuming the government could overcome the first level of hearsay, several

articles purport to be interviews with Ms. Javice but are not admissible as a party admission

because they do not actually quote her.  *Cf. Mandal,* 2006 WL 3405005, at *2 (admitting articles

"contain[ing] direct quotations or attribut[ing] specific statements" to defendants as admissions by

party opponents).  In fact, the articles expressly disclaim that any statements attributed to Ms.

Javice are hers alone.  ████████████████████████████████████████████████

████████████████████████████████████████████████  None of the

government's witnesses can overcome this legal bar to admissibility.

Finally, the Court should exclude news articles reporting on the ongoing criminal

proceedings against Ms. Javice.  GX 206, GX 207, GX 210.  These articles are fundamentally

inadmissible as they go towards the ultimate issue in this case and threaten to deprive Ms. Javice

of her Sixth Amendment right to a fair and impartial jury.  For example, a juror's exposure to this

type of prejudicial publicity about the case would bar their continued service on the jury.  *See*

*United States v. Abdullaev*, 761 F. App'x 78, 85 (2d Cir. 2019) (discussing the district court's three

step procedure to investigate whether outside news sources have potentially prejudiced a juror or

otherwise interfered with his ability to decide the case fairly).

Accordingly, Defendants move to exclude GX 203, GX 206, GX 207, GX 208, GX 209,

GX 210, GX 211, and GX 213.  Indeed, "it is likely that th[ese] articles contain information

inadmissible for many reasons, including irrelevance, hearsay, and improper legal conclusions.

For th[ese] reason[s], the Government may not enter the news articles just because they report on matters relevant to this case." *United States v. Ayers*, 2024 WL 1158686, *14 (E.D.N.Y. Mar. 18, 2024). The same is true here.

**B. The JPMC and ▮▮▮▮▮▮▮ Composite Meeting Notes Should Be Excluded**

The government seeks to admit a series of notes from multi-day meetings among dozens of JPMC and Frank employees, GX 1049; GX 1396; GX 1396; GX 1401; GX 1404; GX 1413; GX 1482; GX 1487; GX 1495; GX 1502, and authorless notes from ▮▮▮▮▮▮, GX 2016; GX 2006. The JPMC and ▮▮▮▮▮▮ notes suffer from the same evidentiary infirmities. They contain out-of-court statements from an untold number of declarants who attended meetings, with no attribution or indication of who said what. These notes are hearsay not subject to any exception and should be excluded. *See* Fed. R. Evid. 801, 802.

The government cannot overcome the multiple levels of hearsay these notes present, which fall into two categories. First, many of the notes are a compilation of a compilation with an unknown author, which makes overcoming the first hearsay hurdle impossible. GX 2016; GX 2006; GX 1482 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *see, e.g.,* *Braunstein v. Sahara Plaza, LLC*, 2021 WL 2650369, at *9 (S.D.N.Y. June 28, 2021 (finding "purported notes from meetings with Plaintiff and other employees that . . . do not state who authored them" are inadmissible, *aff'd*, 2022 WL 17480962 (2d Cir. 2022. However, even where there is a purported author, the notes themselves indicate that they were compiled by someone who may not have attended the all meetings where the alleged statements were made. GX 1495 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; GX 1413 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮. This injects yet another level of hearsay. *See Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 216 (S.D.N.Y. 2007 ("The notes at issue were made by a person who did not attend the meeting where the alleged statements were spoken. Thus, the notes are rank

hearsay."), *aff'd*, 354 F. App'x 496 (2d Cir. 2009); *Posner v. Sprint/United Mgmt. Co.*, 478 F. Supp. 2d 550, 559 (S.D.N.Y. 2007) ("[Declarant] did not attend this meeting, and therefore this remark is also hearsay and therefore inadmissible.").

The problems do not end there. These documents memorialize identified and unidentified speakers' out-of-court statements which may have been relayed to the notetaker by another third person. Meaning, the notes are a compilation of a compilation of unknown origin with no information about version history or other metadata. GX 1049 ███████████████

███████████████████████████████████

███████████████; GX 1396 ████████████████████

███████████████████████████████████

███████████████████████████████████████; GX 1404 ███████

███████████████████████████████████████████; GX 1487 ████████

████████████████████████████████████; *see, e.g.*,

*United States v. Scali*, 2018 WL 604852, at *3 (S.D.N.Y. Jan. 29, 2018) ("Assuming, arguendo, that the notes are in fact business records under Rule 803(6), the Defendant has not provided an exception, nor has the Court found one, to admitting the hearsay contained within the notes."), *aff'd*, 820 F. App'x 23 (2d Cir. 2020); *Gabel v. Richards Spears Kibbe & Orbe, LLP*, 2009 WL 1856631, at *1 (S.D.N.Y. June 26, 2009) ("The notes of Patrick Sanford, which contain double and triple hearsay, are not going to be admitted."). Indeed, some of the notes describe general topics discussed by an unknown audience with non-verbatim summary responses from unidentified speakers at an unknown time. *See* GX 1404. None of the notes purports to quote any one person directly. The number of participants and thus potential speakers is enormous—***74 individuals*** are included on the JPMC transmittal email with one set of notes, suggesting a

minimum number of participants in the meeting.  GX 1413.  Accordingly, JPMC and ████████

notes are inadmissible hearsay with no path to admissibility, and thus should be excluded.  *See,*

*e.g.*, *United States v. Dominique-McClain*, 623 F. Supp. 3d 33, 38 (E.D.N.Y. 2022) (excluding

notes where offering party "has not presented any information as to their contents, appears to offer

the notes for their truth, and asserts no hearsay exception").

### III.    EVIDENCE RELATED TO ████████████████ DECLINED INVESTMENT IN FRANK SHOULD BE EXCLUDED

Evidence and argument about ██████████████████ declined investment in Frank

is irrelevant, unduly prejudicial, and risks confusing the issues and misleading the jury, causing

undue delay, and wasting time.  Fed. R. Evid. 403.

In 2019, prior to any consideration of a sale of Frank, Frank initiated its Series A funding

round and ████ considered investing. The parties engaged in a diligence process geared toward

that potential investment, and ultimately ████ declined to join the funding round.  These events

occurred two years before the conspiracy period charged in the Superseding Indictment.  ECF No.

27 ¶ 1 ("From at least in or about June 2021 through at least in or about November 2022").  The

government indicated that it "may call" an unspecified ████ employee, provided disclosures

pursuant to 18 U.S.C. § 3500 for ████████████████, and included three ████

documents on its exhibit list.  GX 1464; GX 1464-A; GX 2015.  However, ████ is not mentioned

in the government's Superseding Indictment or bill of particulars, ECF No. 140, nor has it provided

Rule 404(b) notice related to this evidence.  This evidence, along with any other evidence related

to ████ declined investment, should be excluded.

The Court's discretion to admit evidence of acts committed prior to an alleged conspiracy

period is not boundless.  Admissibility depends on the government's ability to connect the alleged

pre-charge conduct to the charged conspiracy.  *See United States v. Langford*, 990 F.2d 65, 70 (2d

Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history.").  Even if the government is able to show a nexus between the pre-conspiracy conduct and the allegations in the case, the inquiry does not end there.  The Court may nevertheless exclude relevant evidence if, as here, its minimal probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.  Fed. R. Evid. 403.

Here, the evidence fails both prongs of admissibility.  First, it is not relevant.  Indeed, evidence of a declined investment from an unrelated third party that occurred two years prior to the alleged conspiracy for a different interest in Frank (an early-stage investment versus JPMC's $175M acquisition) is not logically related to any formal elements of the charges or defenses.  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365 (E.D.N.Y. 2001).  Second, evidence regarding Frank's Series A fundraising and ██████ due diligence process would require a time-consuming mini-trial that will only serve to confuse the issues before the jury, prejudice the Defendants, waste judicial resources and time on an unrelated potential investment that never materialized, and cause undue delay in a trial that is already slotted to last up to six weeks.  Irrelevant evidence of ██████ declined investment two years before the conspiracy period should be excluded.  Fed. R. Evid. 403.

*[Remainder of page intentionally left blank.]*

## IV.   THE COURT SHOULD ENTER SEQUESTRATION AND NONDISCLOSURE ORDERS COVERING NON-PARTY WITNESSES AND THEIR REPRESENTATIVES PURSUANT TO FEDERAL RULE OF EVIDENCE 615

"At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615.  "A party's request to exclude a witness during trial must be granted as a matter of right," unless the witness sought to be excluded fits into one of the Rule's exempted categories, namely parties, their essential representatives, or others whose presence is authorized by statute. *Schofield v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749, 762 (2d Cir. 1998), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).  In addition, a court may also "(1) prohibit disclosure of trial testimony to witnesses who are excluded from the courtroom; and (2) prohibit excluded witnesses from accessing trial testimony." Fed. R. Evid. 615(b).  "It is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed." *Perry v. Leeke*, 488 U.S. 272, 281–82 (1989).

Sequestration and nondisclosure orders prohibiting nonparty witnesses from directly or indirectly relaying the substance of their testimony to other witnesses are proper here.  Particularly so, where the government has indicated that it intends to call over 20 witnesses over the course of six weeks.  The Court's order also should expressly prohibit nonparty witnesses from reviewing transcripts of trial testimony from anyone other than that witness, as the "reading of testimony may be more harmful than watching it because reading enables witness[es] to thoroughly review and study previous testimony in formulating [their] own." *United States v. Friedman*, 854 F.2d 535, 568 (2d Cir. 1988).  Such an order is necessary "to lessen the danger that [witness] testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections." *Id.*

## V.    THE COURT SHOULD NOT ALLOW THE GOVERNMENT TO CALL ████████████████ TO TESTIFY

As this Court is well aware from extensive prior briefing and argument, Ms. Javice has vigorously sought access to her communications with ████████████████████████████ ████. JPMC has asserted, and the government has not contested, that the privilege once enjoyed by Frank and Ms. Javice with respect to ████████ now belongs solely to JPMC, which continues to deny Ms. Javice access to several hundred privileged communications between her and ████ ████, while selectively producing other communications where ████████ offers legal counsel to Ms. Javice. With the government's recent disclosure of ██████████ as a witness it intends to call at trial, that issue has come to a head, and this Court should instruct the government that it may not use the attorney-client privilege as both sword and shield to elicit favorable testimony from ██████████ against his former client while benefitting from the continued concealment from Ms. Javice of her communications with her counsel, to the great detriment of her defense.[4] Moreover, the mechanics of courtroom testimony by ██████████ about his work as in-house counsel for Frank will result in a chaotic presentation to the jury, or at best an endless sidebar, with counsel from JPMC and ██████████ individual counsel lodging objections on the basis of privilege and weighing in on the scope of permissible testimony. For these reasons, the Court should preclude ██████████ testimony altogether.

---

[4]    The most recent privilege log produced by JPMC in response to subpoenas by the government, Ms. Javice, and Mr. Amar includes more than 300 documents and communications involving or authored by ██████████ that JPMC has withheld in whole or in part on the basis of attorney-client privilege. At the same time, JPMC has selectively waived privilege over other communications reflecting ██████████ privileged communications with Ms. Javice, including documents that the government has identified on its exhibit list. *See, e.g.*, GXG 513; GXG 543 ███████████████████████████████████████████████; GX 802-24 ████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████.

Ms. Javice is now weeks away from trial based on allegations related to conduct for which she sought the advice of ███████—her lawyer from the outset of the alleged conspiracy through JPMC's acquisition of Frank—and remain cut off from her own communications with her lawyer that may be critical to her defense.[5]  Nevertheless, ██████er appears on the government's list of anticipated trial witnesses, and it is clear that the government intends to use his testimony in its prosecution of Ms. Javice.  *See* Dec. 16, 2024 Letter from P. Carbone to Javice counsel (identifying ████████ as a witness).  The government intends to introduce ████████ testimony on those areas that it has deemed useful to its case (and perhaps coincidentally deemed related to ██████ ███████████████████) while benefitting from JPMC's refusal to allow Ms. Javice access to her own privileged communications with that lawyer/government witness (including, presumably, communications that could be material to her case).  Putting ██████████ —██ ███████████████████—on the stand to testify against her under these circumstances is at best fundamentally unfair and at worst a sure path toward violating her Constitutional rights and denying her a fair trial.

Courts more commonly assess impermissible sword-shield uses of attorney-client privilege in the context of defendants attempting to both selectively waive and invoke privilege to their own benefit.  *See, e.g.*, *United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 182 (2d Cir. 2000) ("[F]airness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.'  In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.").  But the same underlying

---

[5]    While Ms. Javice maintains that she is entitled to her *own* privileged communications with her own lawyer, the purpose of this Motion is not to relitigate already-decided issues related to JPMC's production and its asserted privilege log.

fairness concerns animate the issue where, as here, it is the prosecuting party benefitting from a privilege invocation that, while potentially legally justifiable, also denies a criminal defendant her right to a fair trial.  Indeed, the fairness concerns animating the sword-shield principle are most heightened in a circumstance such as this, where the party prejudiced is a criminal defendant whose very liberty is at stake.  In such cases, courts around the country have held that a privilege claim must yield to defendants' Constitutional rights in order to ensure fairness.  *See, e.g., United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1143 (D. Mont. 2006) (evidence at issue was "of such probative and exculpatory value as to compel admission of the evidence over [the company's] objection as the attorney-client privilege holder"); *United States v. Weisberg*, 2011 WL 1327689, at *5 (E.D.N.Y. Apr. 5, 2011) (whether the attorney-client privilege "may be overcome, 'in exceptional circumstances,' by a criminal defendant's constitutional right to present a defense" is an open issue) (collecting cases); *United States v. Herrell*, 2024 WL 2954408, at *4 (E.D. Ky. June 12, 2024) ("[T]he attorney client privilege may be pierced if a criminal defendant's interest in his Sixth Amendment rights outweighs the privilege-holder's interest in maintaining the privilege.").

Because the Court has already determined that JPMC's assertion of privilege over hundreds of relevant communications between ███████ and Ms. Javice will not yield to her right to present a defense, then Due Process and fundamental fairness require that the Court preclude ███ ███ from testifying against her.  *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.") (collecting cases); *accord Bagby v. Kuhlman*, 932 F.2d 131 (2d Cir. 1991) (recognizing a Sixth Amendment violation where a witness's assertion of privilege "undermines the defendant's opportunity to test the truth of the witness' direct testimony," with striking witness's direct testimony as one available remedy).  The risk of unfair prejudice should ███████ take the stand

15

is particularly acute given JPMC's inconsistent and self-serving privilege assertions, *i.e.*, its selective disclosure of certain communications that constitute legal advice from ██████ to Ms. Javice while withholding other communications on the basis of attorney-client privilege. Ms. Javice imagines that, were ██████ to testify at trial, counsel for JPMC would assert privilege over his testimony in a similarly inconsistent and self-serving manner, further fortifying the government's sword and shield.

These same inconsistencies in JPMC's privilege assertions would result in chaos in the courtroom should ██████ take the stand. Because ████████████████████ during the time relevant to the government's allegations, virtually any statements ██████ could make on the stand after providing his name and background is potentially subject to attorney-client privilege. But JPMC's selective and inconsistent privilege assertions in its documents suggests that it will allow ██████ to reveal some privileged communications while objecting to testimony regarding others. From a practical perspective, this will mean that lawyers for JPMC, which holds the privileged over ██████ legal advice to Frank, as well as ██████ own lawyers, will seek to lodge objections, participate at sidebar, and generally disrupt the flow of proceedings. Given the inconsistency of JPMC's privilege objections, and unknowability of what they will and will not object to at trial, it is likely that ██████ testimony would involve more argument at sidebar than actual testimony.

It is fundamentally unfair, and an extreme distortion of the attorney-client privilege, for the government to force a lawyer to testify against his clients based on selectively-disclosed communications, while forbidding him to disclose other aspects of his advice that may support Defendants' positions. If JPMC intends to maintain privilege over any aspect of ██████

16

testimony, fairness demands that he is kept off the witness stand and not used as a tool in the prosecution of his own clients.

## <u>CONCLUSION</u>

For all these reasons, Ms. Javice respectfully requests the Court grant each of her motions *in limine*.

Respectfully submitted,

Dated: January 13, 2025

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

By: /s/ *Sara C. Clark*

Sara Clark (*pro hac vice*)
700 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone: (713) 221-7100
saraclark@quinnemanuel.com

Erica Perdomo (*pro hac vice*)
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
Telephone: (305) 402-4880
ericaperdomo@quinnemanuel.com

**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY & POPEO, P.C.**

David Siegal
Ellen Shapiro
919 Third Avenue
Telephone: (212) 935-3000
dmsiegal@mintz.com
eshapiro@mintz.com

Eóin P. Beirne (*pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
epbeirne@mintz.com

**BAEZ LAW FIRM**

Jose Baez (*pro hac vice*)
Rosemarie E.W. Peoples (*pro hac vice*)
1200 Brickell Avenue
Miami, FL 33131
Telephone: (305)-999-5100
jose@baezlawfirm.com
rosemarie@baezlawfirm.com

**RONALD SULLIVAN PLLC**

Ronald Sullivan (*pro hac vice*)
1300 I Street NW, Suite 400E
Washington, DC 20005
Telephone: (202) 313-8313
rsullivan@ronaldsullivanlaw.com

*Counsel for Defendant Charlie Javice*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2025, I caused a copy of the foregoing document to be served via ECF on counsel of record.

By: *<u>/s/ Sara C. Clark</u>*