# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CHARLIE JAVICE and OLIVIER AMAR, <br><br> Defendants. | 23-cr-00251-AKH |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OLIVIER AMAR'S MOTION TO SUPPRESS GOOGLE DRIVE MATERIALS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .............................................................................................................................. 4

LEGAL STANDARDS ................................................................................................................... 8

ARGUMENT .................................................................................................................................... 8

    I.     The Government's Responsiveness Search Was Unreasonable ..................................... 9

    II.    The Evidence Suggests the Government Continued to Search Materials Deemed Outside the Scope of the Warrant ....................................................................................... 10

    III.   The Google Drive Materials Must Be Suppressed ........................................................ 13

CONCLUSION ............................................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Calandra*,
   414 U.S. 338 (1974) .................................................................................................... 3

*United States v. Cawthorn*,
   682 F. Supp. 3d 449 (D. Md. 2023) ........................................................................... 10

*United States v. Galpin*,
   720 F.3d 436 (2d Cir. 2013) ........................................................................................ 8

*United States v. Nejad*,
   436 F. Supp. 3d 707 (S.D.N.Y. 2020) ........................................................ 8, 10, 11, 12

*United States v. Nejad*,
   487 F. Supp. 3d. 206 (S.D.N.Y. 2020) ................................................................ 3–4, 13

*United States v. Ramirez*,
   523 U.S. 65 (1998) ...................................................................................................... 8

*United States v. Wey*,
   256 F. Supp. 3d 355 (S.D.N.Y. 2017) ........................................................ 8, 10, 11, 13

## PRELIMINARY STATEMENT

The Court should suppress all evidence related to Mr. Amar's Google Drive and any evidence or testimony derived therefrom. The Government submitted a sworn affidavit in which it promised this Court that it would review any records provided by Google "in order to locate any evidence, fruits, and instrumentalities of [the charged] scheme." Ex. A, Google Search Warrant, 23 MAG 6718, Attach. A, III (Oct. 6, 2023). After that review, any materials not seized would be considered outside of the scope of the warrant. Based upon that promise, Magistrate Judge Aaron authorized Google to provide the Government with, among other things, Mr. Amar's entire Google Drive, *id.* Attach A, II.b—materials that, without appropriate protections, far exceed the reasonableness requirement of the Fourth Amendment.

The Government flagrantly disregarded its promise, violating both the scope of the warrant as well as the reasonableness requirements of the Fourth Amendment. The Court should suppress the warrant and all fruits derived therefrom for that reason alone. Rather than seizing the subset of Google Drive materials authorized by the warrant, which it would be entitled to return to and search freely, the Government instead continues to re-search and re-seize materials well outside of the scope of the warrant as it sees fit. *See* Jan. 23, 2025 Pretrial Tr. at 45:3–8. Put another way, the Government ignored the process it proposed to Magistrate Judge Aaron—a process that was designed to protect Mr. Amar's Fourth Amendment rights. Judges in this District repeatedly have reprimanded the Government for doing exactly that. The Fourth Amendment requires suppression here as a prophylactic measure to deter future similar conduct by the Government.

The Government's handling of materials provided to it pursuant to the Google search warrant makes apparent that the Government is treating Mr. Amar's entire Google Drive as a limitless well of evidence, in violation of Mr. Amar's Fourth Amendment rights. The Government

has obfuscated the issue as a "production gap," claiming that its review continued for nearly nine months after its April 2024 responsive production, and well past the initially scheduled October 2024 trial date in this case. But this familiar refrain cannot save the Government, as (1) under the circumstances here, that review would still violate the Fourth Amendment's reasonableness requirement, and, more importantly, (2) this justification is not credible. The Government would have the Court believe that it made a responsive production of approximately 15,000 documents in April 2024 and then did not produce a single document from the Google Drive until eight months later in December 2024—some two months after the original trial date. The Government's blanket refusal to tell Defendants whether it was actively reviewing documents throughout that time period or when the 13,000 additional documents were identified as responsive further indicates that the Government's representation to Defendants and the Court regarding its review is not accurate. The much more likely scenario is that the Government's review ended long before its December 2024 production, and the Government subsequently has been searching materials outside of the scope of the warrant, now with the benefit of a further defined case theory based on, among other things, the numerous witness interviews that have taken place since April 2024, pretrial briefing, and even access to Defendants' witness lists and exhibit lists.

In now its sixth response to repeated inquiries by the defense, the Government's contention for the first time that its review of the Google Drive materials "at no time . . . was closed" misses the point. Gov't Letter to Defs. (Jan. 27, 2025). What they have done here is re-enter premises without legal authority to do so and then seek to distract from that violation with *post hac* justifications that do not address the foundational question. The Court should reject this belated attempt to justify the Government's conduct and suppress the evidence or, at a bare minimum, require an evidentiary hearing to establish what the Government did and did not do and who

2

reviewed what materials, when they reviewed them, and pursuant to what authority. These are questions that have constitutional implications and should not be dismissed by yet another half-hearted attempt to explain the impropriety of this search. To accept the Government's proffered justification would be tantamount to condoning its belief that it has unlimited access to documents simply by uttering the magic words "our review was never closed." Unfortunately for the Government, the Fourth Amendment's warrant requirement dictates otherwise.

Tacitly recognizing the constitutional magnitude of its mistake, the Government now claims that it will rely only upon three documents from Google Drive (despite having marked over one hundred Google Drive documents as potential trial exhibits) and their corresponding metadata in its case-in-chief, none of which it contends were in the January production. That is yet another misrepresentation by the Government, as the three documents in question were produced to Defendants for the first time on December 17, 2024 and not in the Government's April 29, 2024 responsive production, meaning that these documents were derived from an illegal search. And it further illustrates the Government's continued efforts to conceal both the nature and scope of its violation from Defendants and the Court.

Accepting the Government's explanation would effectively permit the Government unfettered access to evidence previously deemed nonresponsive in a never-ending effort to bolster its case based on information not known at the time it sought the warrant and in response to arguments presented by the Defendants. The purpose of suppression is "to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974). Deterrence is undeniably necessary here, where the Government's conduct follows a pattern of similar and repeated violations by prosecutors, which underscores the need for the prophylactic measure sought here. Indeed, in *United States v. Nejad*, 487 F. Supp. 3d. 206

(S.D.N.Y. 2020), Judge Nathan was so disturbed by the violations she observed, including the use of these exact type of materials outside the scope of the warrant, that she ordered her opinion to be distributed to each Assistant United States Attorney in the District. As the Court opined at last week's hearing, observing the similarities between the Government's conduct here and the conduct criticized in *United States v. Menendez*, 23-cr-490, "It's not proper behavior." Jan. 23, 2025 Pretrial Tr. at 40:2. Disturbingly, as this case illustrates, that behavior continues. To provide adequate deterrence for any future similar violations, the entirety of the Google Drive materials must be suppressed.

## BACKGROUND

On October 6, 2023, the Government sought and received a warrant to search, among other things, the Google Drive associated with Mr. Amar's Frank email address. Ex. A, Agent Aff. Frank used Google Drive, which is a cloud-based document storage system, as a central repository for documents related to its business. The warrant authorized the Government to "review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of [the alleged] scheme," consisting of an enumerated list of specific types of materials, including "Google Drive…records relating to Frank's website traffic, account sign ups, or Frank's acquisition by JPMC or other potential acquiring companies and any related due diligence, preparation, or analysis." *Id.*, Attach. A, III.

In October 2023, Google provided Mr. Amar's full Google Drive to the Government, based upon the search warrant and the Government's representation that it would search the Google Drive for material responsive to the Google search warrant, per the requirements of the warrant. On October 31, 2023, the Government produced Mr. Amar's full Google Drive to him, comprising almost 160,000 documents.

On November 2, 2023, the Government represented to the Court that, aside from the two categories of materials the Court ordered produced that day, it had finished production of "everything in our possession." Dkt. No. 62, Nov. 2, 2023 Pretrial Tr. at 44:15–18. That same day, the Government pushed for a trial date in the fall of 2024. *Id.* at 48:22–24.

On April 4, 2024, the Government produced to Mr. Amar a "Spreadsheet Identifying Responsive Materials from Google…Search Warrants – olivier@withfrank.org." April 4, 2024 Production Letter. On April 29, 2024, the Government produced to both defendants almost 11,000 documents described as "Responsive Materials from Amar Google Search Warrant Return – olivier@withfrank.org" and noted that "These responsive materials were initially identified in the spreadsheet marked USAO_00031754, produced on April 4, 2024." April 29, 2024 Production Letter. The Government also produced to both defendants responsive materials from Ms. Javice's Google search warrant returns.

On December 16, 2024, the Government provided its preliminary exhibit list, which, to the surprise of counsel, included dozens of documents not yet produced to defendants. Thereafter, on December 17, 2024, the Government produced 82 documents to both defendants, 61 of which were identified as "Materials from [Google] Search Warrant Return (23 MAG 6718, olivier@withfrank.org)."[1] December 17, 2024 Production Letter. All 61 of those documents had been marked as Government Exhibits the day before. The Government provided Mr. Amar with the metadata necessary to identify these documents on January 15, 2025, which allowed counsel for Mr. Amar to confirm that none of the 61 documents were included in the Government's April

---

[1] While the letter identifies these materials as Dropbox search warrant returns, it is apparent from both the warrant number and the documents that these are Google materials. Per the production letter, 61 of the 82 documents produced on December 17, 2024 are attributed to Mr. Amar's Google Drive. However, whether this number is accurate is unclear, as a number of these 61 documents do not appear in Mr. Amar's full Google Drive, despite their metadata indicating that they did.

5

29, 2024 production of documents responsive to the Google search warrant. To be clear, this production was made over 14 months after the Government received materials pursuant to the Google search warrant. The Government represented to Defendants on January 15, 2025 that it had "produced these documents to both defendants…after identifying them among the approximately 97,000 Google drive files produced by Google." Gov't Email to Defs. (Jan. 15, 2025).

In response to counsel for Mr. Amar's request for clarification, the Government first indicated by telephone on the evening of January 21, 2025 that there was a "production gap" and that over 13,000 documents that had been marked responsive in May 2024, including approximately 9,500 documents from Mr. Amar's Google Drive, had not been produced. This is contrary to the Government's representation in its January 13, 2025 Motion to Compel that "in accordance with Rule 16, the Government has produced to the defendants the subpoena returns and other materials collected in its investigation." Dkt. No. 190 at 1. In an email following the January 21, 2025 conversation, the Government represented that its "review pursuant to the [Google] warrant was ongoing" from April "through the present" and it has now completed its review. According to the Government, all but one of the documents produced on December 17, 2024—including all of the documents from Mr. Amar's Google Drive—had been marked as responsive in May 2024, and one document had been identified by the Government as responsive in December 2024. The Government further noted that "[i]n the process of closing [its] responsiveness review, the Government became aware of 13,271 files that were previously tagged as responsive, but which were mistakenly not included in a joint-defendant production." The Government noted that 9,559 of those documents were provided to Mr. Amar in his full Google Drive production, but the remaining 3,709 documents (of which the Government claims there are

6

2,610 unique files) had not been produced to Mr. Amar. The Government produced these files to Mr. Amar on January 22, 2025.

Despite the Government's initial representation on January 21, 2025 to counsel for Mr. Amar that it had produced all 13,271 of these files to Ms. Javice, on January 22, 2025, the Government informed Ms. Javice that it in fact had not produced approximately 9,500 of these documents to Ms. Javice. The Government did not correct its earlier misstatement to Mr. Amar.

Following the pretrial conference on January 23, 2025, the Government informed Defendants that it only intended to use three documents from Google Drive at trial, along with the metadata for those exhibits, claiming that none of those three documents were in the belated January 22, 2025 production. However, none of those three documents were produced in the Government's April 29, 2024 responsive production and were only produced on December 17, 2024 after they appeared on the Government's exhibit list—which the Government failed to note.[2] Of the three documents, two originate from Ms. Javice's Google Drive while one originates from Mr. Amar's Google Drive; however, the two from Ms. Javice's drive are identical copies of documents from Mr. Amar's drive, which were also not produced in the April 29, 2024 responsive production. Thus, all three of the documents the Government intends to use at trial appear to have been identified in Mr. Amar's Google Drive following the Government's responsive search.

Finally, on January 27, 2025, counsel for Defendants conferred with the Government following Defendants' repeated requests for the Government to clarify in writing what had led to the issues described above. On this call, the Government conveyed to counsel for both Defendants that its responsiveness review of Google Drive occurred from January 2024 through January 21,

---

[2] The Government side steps this issue in its January 27, 2025 letter by noting that the *metadata* for these documents (which are separate documents in the Google Drive materials) was produced in the April 29, 2024 responsive production. That does not alter the fact that the documents themselves were not.

7

2025. The Government refused to identify when the 13,000 documents produced on January 22, 2025 were identified as responsive or to represent whether its review was constant during that year-long period. The Government followed up later the same day with a letter memorializing the information provided on the call but which still failed to address key questions related to the propriety of the Government's search.

## LEGAL STANDARDS

Under the Fourth Amendment's Warrant Clause, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Execution of a warrant is governed by the "general touchstone of reasonableness which governs Fourth Amendment analysis." *United States v. Nejad*, 436 F. Supp. 3d 707, 733 (S.D.N.Y. 2020) (quoting *United States v. Ramirez*, 523 U.S. 65, 71 (1998)). The Court should have a "heightened sensitivity to the particularity requirement in the context of digital searches" because the "potential for privacy violations occasioned by an unbridled exploratory search of a hard drive is enormous." *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013); *see United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017). And where the government exceeds a warrant's authority, the "normal remedy is suppression and return" of the items improperly seized. *Nejad*, 436 F. Supp. 3d at 733.

## ARGUMENT

The Government finds itself in a Fourth Amendment conundrum. As an initial matter, even if the Court credits the Government's contention that its review was "ongoing," this review, which spanned over 15 months yet appeared to be largely complete in April 2024, nine months prior to the purported end of the review, was unreasonably lengthy and has not been justified by the Government—by itself, a violation of the Fourth Amendment. But this contention that the review

8

was ongoing through January 2025 beggars belief—instead the Government appears to have completed its responsiveness review of the Google Drive in April 2024 (or earlier), then revisited the materials which they had initially deemed outside the scope of the warrant, with the benefit of additional months of investigation, analysis, and understanding of Defendants' defenses, to search for additional helpful documents. This violates the Fourth Amendment and is a blatant display of gamesmanship.

### I. The Government's Responsiveness Search Was Unreasonable

The Government was required to search the provided Google Drive for materials responsive to the search warrant, which authorized the seizure of only certain categories of materials and then cease accessing or searching those materials deemed nonresponsive. The Government's representation that it would conduct this search was critical both to Google's legal ability to provide the materials under the Stored Communications Act, which prevents the provision of materials like Google Drive absent a valid court order, and the Court's analysis of the propriety of the warrant application under Federal Rule of Criminal Procedure 41. Failure to follow the search protocol set out in the warrant would violate the warrant requirements and the Fourth Amendment.

If the Government did not in fact conclude its responsive review in April 2024, the 15 months or more it spent searching the Google Drive for responsive materials, spanning up to within weeks of the rescheduled trial date, violates the Fourth Amendment's reasonableness requirement. This is especially apparent from the Government's production of approximately 11,000 documents from its review within the first six months, a gap of *eight months* with no further productions of responsive materials, and a production immediately following the Government's exhibit list deadline. The facts here closely parallel a recent case in the District of Maryland, where the court

9

found the government violated the Fourth Amendment when it "reviewed the data [provided in response to the search warrant] shortly after its receipt…and then apparently only conducted further reviews" on "the day before its responses were due to certain pretrial motions." *United States v. Cawthorn*, 682 F. Supp. 3d 449, 459 (D. Md. 2023). While delays in review can be justified in certain circumstances, the Government has provided no explanation at all for the length of its review.

## II.  The Evidence Suggests the Government Continued to Search Materials Deemed Outside the Scope of the Warrant

The Government's representation notwithstanding, it is far more likely that the Government did in fact conclude its responsiveness review earlier in 2024 and now has continued to retain and search nonresponsive materials, despite repeated holdings by courts, including in this District, that such retention and search is a violation of the Fourth Amendment. This case was originally slated for trial on October 28, 2024, yet the Government claims its review was ongoing for nearly three months after that date, despite not having produced a single Google Drive document between April 2024 and December 2024. The Government refuses to answer whether it was consistently reviewing documents in that time period or when it identified as responsive the documents produced on January 22, 2025.

It is black letter law that the Government may not indefinitely retain and re-search at its discretion materials obtained pursuant to search warrants. *See Wey*, 256 F. Supp. 3d at 379–80, 406 (holding the "lengthy (and continuing) retention and indiscriminate review of the vast trove of electronic materials," "including those materials *already sorted out as impertinent*" was a violation of the Fourth Amendment (emphasis added)); *see also Nejad*, 436 F. Supp. 3d at 736. In a fact pattern similar to here, in *Nejad* the government's discovery of its nonproduction of materials marked responsive revealed that the government had "on at least two separate occasions after the

10

conclusion of the responsiveness review" conducted searches of the entire set of set of materials, including those deemed nonresponsive. *Nejad*, 436. F. Supp. 3d at 717, 736. The court held that any documents identified in those searches "were seized outside the scope of the search warrants" and thus "subject to suppression." *Id.*

Here, not only does it appear that the Government returned to materials outside the scope of the warrant, it did so after months of gleaning additional information from witness interviews, subpoena returns, motion practice, and ultimately the Defendants' witness lists and exhibit lists, which counsel provided in January. Armed with that information, it was able to search for additional documents to bolster its prosecution of Defendants based on theories not formed at the time it requested the search warrant and information not presented to Magistrate Judge Aaron. Again, the Government appears to have conducted these searches after the original October 2024 trial date and eight months following its responsive Google Drive production. In *Wey*, the court characterized such actions as "further evidence of the agents' culpability in making affirmative choices to treat the Warrants as though they were the functional equivalent of general warrants," conduct that "can and should be deterred." *Wey*, 256. F. Supp. 3d at 406.

Further, regardless of whether the search was ongoing or completed, the Government was on notice at least by December 17, 2024, when it realized that it had not produced 81 documents from both Mr. Amar's and Ms. Javice's Google Drive accounts that it claims had been marked responsive in May 2024, that some subset of documents marked responsive had not been produced. Yet the Government did not bring this issue to Defendants' attention. The Government at best then failed to investigate the extent of the failure to produce materials marked responsive—or at worst did in fact investigate and elected to not disclose the extent of the issue—until counsel for Mr. Amar raised it repeatedly. Once the Government did finally disclose the extent of the issue, the

11

explanation for its failure was both constantly evolving and varied with respect to which Defendant it was addressing. For example, on January 21, 2025 the Government stated in writing to counsel for both Mr. Amar and Ms. Javice that it had *just completed* its responsiveness review that day, through which it discovered 13,000 documents that had not been produced jointly; while Mr. Amar did not receive 3,709 of those documents at any point, Ms. Javice had received them all. On January 22, 2025, the Government reversed course in a call with counsel for Ms. Javice only, informing them that in fact the Government had not produced 9,500 of the documents to Ms. Javice and that the responsiveness review had continued to January 22, not the day prior. On a call with counsel on January 27, 2025, the Government reverted to January 21 as the end date for their review but refused to identify when the 13,000 documents had been identified as responsive. The Government's inability to provide a complete, consistent, and accurate explanation for the events that have occurred is both illustrative of the magnitude, and exacerbates the prejudicial impact, of the Government's failure to conduct a reasonable review of the Google Drive materials.

The Government attempts to downplay its violation by arguing that the prejudice to Mr. Amar is limited due to the production of Mr. Amar's full Google Drive. But prejudice from late production is an entirely separate issue—the issue at hand is a constitutional violation due to the Government's re-review of materials outside the scope of the search warrant, which incidentally resulted in a belated and voluminous production. Moreover, the government in *Nejad* similarly produced the defendant's entire email folder; that production notwithstanding, the court held that the government's searches subsequent to the completion of the responsiveness review still violated the Fourth Amendment. *Nejad*, 436 F. Supp. 3d at 716. That the Government previously produced Mr. Amar's entire Google Drive, which the Government was required by the terms of the search

12

warrant to review for responsive materials, is neither an explanation nor an excuse for violating the Fourth Amendment.

### III. The Google Drive Materials Must Be Suppressed

Given both the prejudice to Mr. Amar and the plain need for deterrence, all materials provided to the Government from Mr. Amar's Google Drive provided pursuant to the Google search warrant should be suppressed. *See, e.g.*, *id.* at 733 (where the government exceeds a warrant's authority, the "normal remedy is suppression and return" of the items improperly seized); *see Wey*, 256 F. Supp. 3d at 355, 410 (ordering blanket suppression where law enforcement "proceeded to execute the Warrants as though they were the functional equivalents of general warrants, in both their indiscriminate physical searches and seizures and, later, their expanded mining of the retained electronic take for evidence related to new persons and new crimes").

Exclusion is particularly warranted where it would deter future Fourth Amendment violations where there is evidence of "recurring or systemic negligence." *See Wey*, 256 F. Supp. 3d at 394–95 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). The Government's conduct here has been repeatedly held in this District to be a violation of the Fourth Amendment. It bears repeating that in 2020, following at least a second instance of revisiting of materials outside of the scope of the search warrant by prosecutors, Judge Nathan ordered "the Acting United States Attorney [for SDNY] ensure that all current AUSAs and SAUSAs read" her subsequent opinion in *Nejad* outlining the Government's repeated violations, including the Fourth Amendment violations arising out of the Government's treatment of the search warrant returns discussed above, and to "file a declaration affirming that this has occurred." *Nejad*, 487 F. Supp. 3d. at 226. That circulation and declaration requirement occurred just over four years ago, yet the Government

13

continues to repeat the same violation and, as in *Nejad*, obfuscate the extent of the violation. Nor are the recent violations limited to the improper execution of search warrants—as the Court recognized, prosecutors in this District have recently been criticized for "a tale…that in a different way is the same thing" in connection with the *Menendez* trial. Jan. 23, 2025 Pretrial Tr. at 40:1–2. Violations by prosecutors, and specifically prosecutors in this District, have been repeatedly identified by judges in this District. Yet they persist. To deter future violations of this nature, suppression of the entire Google Drive is warranted.

Should the Court disagree, at a minimum, any materials from Google Drive not produced in the Government's April 29, 2024 responsive production should be suppressed. In the alternative, Mr. Amar requests an evidentiary hearing on the Government's review and conduct with regards to the Google Drive materials provided pursuant to the Google search warrant, to determine the propriety of the Government's treatment of those materials. As part of that evidentiary hearing, the Government should be required to preserve and produce to the Court for *in camera* review all internal correspondence regarding their review of Google Drive and all Relativity search history for the 13,000 documents, particularly in light of the Government's refusal to provide Defendants with key facts regarding that review.

## CONCLUSION

For the foregoing reasons, the Court should suppress the materials obtained from Mr. Amar's Google Drive pursuant to the Google search warrant.

14

| | |
|---|---|
| Dated:  January 27, 2025 | Respectfully submitted, |

**KOBRE & KIM LLP**

*/s/ Sean S. Buckley*
Sean S. Buckley
Jonathan D. Cogan
Alexandria E. Swette
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
Sean.Buckley@kobrekim.com
Jonathan.Cogan@kobrekim.com
Alexandria.Swette@kobrekim.com

Erika L. Berman (pro hac vice forthcoming)
1919 M Street, NW
Washington, DC 20036
Tel: (202) 664-1900
Erika.Berman@kobrekim.com

*Counsel for Defendant Olivier Amar*