# EXHIBIT B

1

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

```
CHARLIE JAVICE,                        :
                                       :
              Plaintiff,               :
                                       :
         v.                            : C.A. No.
                                       : 2022-1179-KSJM
JP MORGAN CHASE BANK, N.A., JPMORGAN   :
CHASE & CO., and TAPD, LLC,            :
                                       :
              Defendants.              :
--------------------------------------x

OLIVIER AMAR,                          :
                                       :
              Plaintiff,               :
                                       :
         v.                            : C.A. No.
                                       : 2023-0040-KSJM
JP MORGAN CHASE BANK, N.A., JPMORGAN   :
CHASE CO., and TAPD, LLC,              :
                                       :
              Defendants.              :
```

- - -

Chambers
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware
Monday, May 8, 2023
11:00 a.m.

- - -
BEFORE:  HON. KATHALEEN ST. J. McCORMICK, Chancellor
- - -

BENCH RULING RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

--------------------------------------------------------
CHANCERY COURT REPORTERS
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware 19801
(302) 255-0521

2

```
 1   APPEARANCES: (via telephone)

 2           MICHAEL A. BARLOW, ESQ.
             SAMUEL D. CORDLE, ESQ.
 3           PETER C. CIRKA, ESQ.
             Abrams & Bayliss LLP
 4               -and-
             MAAREN A. SHAH, ESQ.
 5           JAN-PHILIP KERNISAN, ESQ.
             of the New York Bar
 6           Quinn Emanuel Urquhart & Sullivan LLP
                for Plaintiff Charlie Javice
 7
             JACOB KIRKHAM, ESQ.
 8           STEVEN G. KOBRE, ESQ.
             Kobre & Kim LLP
 9              for Plaintiff Olivier Amar

10           PETER J. WALSH, JR., ESQ.
             MICHAEL A. PITTENGER, ESQ.
11           HAYDEN J. DRISCOLL, ESQ.
             REECE BARKER, ESQ.
12           Potter, Anderson & Corroon LLP
                for Defendants

13

14                           - - -

15

16

17

18

19

20

21

22

23

24
```

16

dispute.  The subsequent language states: "for which such Indemnitee is not entitled to indemnification or advancement of expenses pursuant to the Organizational Documents of the Company or pursuant to this Section 6.2."

Both sides argue that the contractual language is unambiguous.  The Plaintiffs interpret the clause set off by the comma to mean that the carve-out only applies to claims for advancement not already covered by Section 6.2 or Frank's bylaws.  The Defendants interpret the clause to mean that Plaintiffs are divested of all advancement rights, regardless of source, for breach-related conduct.

I'll stop to acknowledge that neither Plaintiffs signed the merger agreement in their personal capacity, although Section 6.2(g) identifies indemnitees — which includes Plaintiffs — as third-party beneficiaries of Section 6.2.

The Defendants argue that Plaintiffs are nevertheless personally bound by the contractual waiver because both Plaintiffs are identified as "Knowledged" persons in Section 1.1 of the merger agreement.  Under the merger agreement's definition of that term, however, this merely means that the

17

1    Plaintiffs' actual knowledge can be imputed to Frank.

2    It would be a stretch, in my view, to say that this

3    term rendered the Plaintiffs parties to the agreement.

4              Also, it is true, as the Defendants

5    said, that Javice signed the merger agreement on

6    behalf of Frank in her capacity as its CEO.  But,

7    again, the fact that Javice was a signatory on behalf

8    of Frank does not render her a party to the agreement

9    in her personal capacity.  In fact, the preamble of

10   the merger agreement states that it is entered into

11   only by JPMorgan Bank, its merger subsidiary, and

12   Frank.  The preamble does not list Javice as a

13   contracting party.  Later, in Section 9.16, the merger

14   agreement defines those parties identified in the

15   preamble as the "Contracting Parties."

16             Since the Defendants are unable to

17   show that Plaintiffs are personally bound by the

18   merger agreement as parties, Defendants are left to

19   argue that Section 6.2(i) bound Plaintiffs as

20   third-party beneficiaries.

21             Both sides quote from this court's

22   2007 decision in *NAMA Holdings, LLC v. Related World*

23   *Market Center, LLC*.  That decision states that a

24   third-party beneficiary cannot "cherry-pick certain

18

1    provisions of a contract which it finds advantageous

2    ... while simultaneously discarding corresponding

3    contractual obligations which it finds distasteful."

4    The Defendants argue that the Plaintiffs cannot claim

5    the benefits of the broad advancement rights granted

6    in Section 6.2(a) without acknowledging the

7    limitations on those rights imposed in Section 6.2(i).

8                    The Defendants in my view are

9    partially correct, but only to the extent that the

10    Plaintiffs seek to enforce advancement rights bestowed

11    on them by the merger agreement.

12                    In the words of the *NAMA* decision,

13    "intended third-party beneficiaries may enforce an

14    agreement's provision," but "[m]ere incidental

15    beneficiaries have no legally enforceable rights under

16    a contract."  And, quoting another portion of *NAMA*, "A

17    third-party beneficiary is an incidental beneficiary

18    unless the parties to the contract intended to confer

19    a benefit upon it."

20                    The parties do not dispute that Amar

21    or Javice are intended third-party beneficiaries to

22    the merger agreement.  So, to the extent they seek to

23    enforce their advancement rights under that agreement,

24    the Plaintiffs cannot cherry-pick which parts apply to

19

them.  If the Plaintiffs rely upon the merger agreement, they opt into that agreement and take the good with the bad.

The Defendants, however, overextend their argument based on the Plaintiffs' status as third-party beneficiaries.  They state that the terms of the merger agreement can eliminate the Plaintiffs' rights in other instruments, even though the Plaintiffs did not negotiate those terms in their personal capacity.

But that is not how third-party beneficiary status works, as I understand it.  It would be a strange world if two contracting parties, by making someone a third-party beneficiary to their contract, could completely divest that third party of contract rights they possess independently of the new contract.  That would not be tenable.  It would also be inconsistent with the fundamental tenets of contract law, requiring a meeting of the minds to create contractual obligations.

Here, the Plaintiffs do not seek to enforce their rights under the merger agreement exclusively.  Instead, they foremost seek to implicate their rights under Frank's bylaws.  So even if Section

20

6.2(i) operates the way Defendants say it does, that
provision cannot eliminate Plaintiffs' advancements
rights, which were created outside the merger
agreement before the merger agreement was executed.

Although framed in terms of
third-party beneficiary rights, part of Defendants'
argument also implicates the doctrine of novation.  In
other words, Defendants effectively state that
Plaintiffs' third-party beneficiary status to the
merger agreement novates parts of Frank's bylaws that
created advancement rights before the merger,
re-conditions those rights on Section 6.2(i), and
binds the Plaintiffs only to the new Section 6.2(i).

To quote *Aveta Inc. v. Bengoa*, "[a]
novation extinguishes a prior contract and replaces it
with a new [one]."  The court in *Schwartz v.*
*Centennial Insurance Company* iterated the four
elements required for novation: "(1) a valid
pre-existing obligation; (2) a valid new contract; (3)
extinction of the old contract; and (4) the consent of
all parties to the novation transaction."  As the
*Schwartz* court also stated, "[w]hile a novation can be
implied from the acts of the parties, it must be clear
that a novation is intended."

21

1          Defendants do not cite any authority

2    for their view that being a third-party beneficiary to

3    a contract is enough to novate prior agreements.  Nor

4    am I aware of any.  *NAMA*, for instance, does not

5    support the Defendants' position.  That case requires

6    third-party beneficiaries to a contract to accept the

7    contract, but the court did not require third-party

8    beneficiaries to relinquish any and all rights they

9    possessed from a separate agreement with one of the

10   contracting parties.  So, even following *NAMA*, parties

11   to an agreement cannot simply waive a third-party

12   beneficiary's separate and independent rights.

13          So as you can tell, I'm concerned with

14   where Defendants' positions would leave third-party

15   beneficiaries, generally.  It has not been disputed

16   that Plaintiffs' liability would be "by reason of the

17   fact" of acts taken in their officer capacities at

18   Frank.  Under the Frank bylaws, proceedings related to

19   these actions are subject to advancement, and

20   Plaintiffs' right to advancement accrued when they

21   took those actions.

22          Defendants' position seems to be that

23   third-party beneficiaries can waive their advancement

24   rights under the Frank bylaws by benefiting from

22

provisions of an agreement to which they were not
parties.  But that approach misuses the concept of
third-party beneficiary status.

I'm also worried about this argument
in light of Section 145(f) of the DGCL.  That statute
provides that a right to advancement arising under a
corporation's bylaw shall not be impaired by an
amendment, repeal, or elimination of such bylaws after
the occurrence of the act or omission that is the
subject of the action for which such advancement is
sought.  This court has previously interpreted that
provision to mean that indemnitees' right to
advancement vests as soon as the indemnitee engages in
the covered action.  I cite to *Marino v. Patriot Rail
Company* as one example.

Defendants argue that Section 145(f)
is inapplicable because Frank's bylaws were not
amended.  But Section 6.2(i), as they argue it, had
the same effect.  I'll note that it's a separate
question as to whether a covered person could agree to
waive rights provided to them under a bylaw through
private ordering.  I don't think the third-party
beneficiary status argument gets the Defendants there,
but I think there might be a more viable argument to

23

1    that effect.  So let me turn to the Defendants' next

2    argument.

3                The Defendants argue that the

4    Plaintiffs' execution of the resignation letters

5    rendered them personally bound to the merger agreement

6    because the letters referenced Section 6.2 of the

7    merger agreement.

8                In my view this argument fails not

9    categorically -- it's not as if the parties could not

10   have done this through a resignation letter -- but,

11   rather, based on the plain language of the resignation

12   letter.

13               As with Section 6.2(i), the placement

14   of a comma in the resignation letter divides the

15   parties' positions.  The resignation letter contains a

16   broad release of claims against Defendants "from any

17   and all claims as a director or officer of the Company

18   Group that I have in such capacity as a director or

19   officer (or any comparable position) as of the

20   Closing."

21               Preceding this clause is a carve-out

22   list of claims excepted from this provision, including

23   "accrued and unpaid compensation, expense

24   reimbursements, accrued and owing benefits and rights

33

1                          <u>CERTIFICATE</u>

2

3                    I, JEANNE CAHILL, RDR, CRR, Official

4   Court Reporter for the Court of Chancery of the State

5   of Delaware, do hereby certify that the foregoing

6   pages numbered 3 through 32 contain a true and correct

7   transcription of the proceedings as stenographically

8   reported by me at the hearing in the above cause

9   before the Chancellor of the State of Delaware, on the

10  date therein indicated.

11                      IN WITNESS WHEREOF I have hereunto set

12  my hand at Wilmington, Delaware, this 9th day of May,

13  2023.

14

15

16                    /s/ Jeanne Cahill
                      ----------------------------
17                      Jeanne Cahill, RDR, CRR
                      Official Chancery Court Reporter
18                      Registered Diplomate Reporter
                       Certified Realtime Reporter
19

20

21

22

23

24