# Davis Polk

Greg D. Andres
+1 212 450 4724
greg.andres@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

February 19, 2025

**BY ECF & FAX**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
United States Court House
500 Pearl Street
New York, NY 10007

SO ORDERED.
2.20.25 /s/ Alvin K. Hellerstein

Re:   United States v. Charlie Javice and Olivier Amar, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

J.P. Morgan Chase Bank, N.A. ("JPMC") respectfully submits this letter motion to redact portions of the February 4, 2025 hearing transcript in this matter. A table of JPMC's proposed redactions appears below, and a copy of the transcript with the proposed redactions is submitted herewith as Exhibit A.

The redactions are necessary to protect the privacy of JPMC's employees. "[C]ase law holds that [an employee's name] may be redacted where an employee is not a party to action in light of the individual's privacy interests." *Okla. Firefighters Pension & Ret. Sys. v. Musk*, No. 22-CV-3026, 2024 WL 2305264, at *2 (S.D.N.Y. May 20, 2024).

**Proposed Redactions:**

| Page and Line Number |
| --- |
| 26:5 |
| 27: 21 |
| 28:12 |
| 35:21-22 |
| 35:22 |
| 36:3 |
| 36:4 |
| 36:6 |

**Davis Polk**  Hon. Alvin K. Hellerstein

Respectfully submitted,

/s/ Greg D. Andres

Greg D. Andres
Sidney Bashago
Katherine Swan
Michelle Adler
Christian Hines
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
greg.andres@davispolk.com
sidney.bashago@davispolk.com
katherine.swan@davispolk.com
michelle.adler@davispolk.com
christian.hines@davispolk.com

*Attorneys for Non-Party JPMorgan Chase Bank, N.A.*

cc: All counsel of record (via ECF)

1  produced, holding back which they claim was privileged.
2         MR. SIEGAL:  It's not about privilege, your Honor.
3  Not talking about privilege.
4         THE COURT:  What are you talking about?
5         MR. SIEGAL:  I'm talking about ▮▮▮▮▮ which is
6  one of the government's key witnesses in this case.  They've
7  interviewed her four or five times in the last couple of
8  months, and they are prepared to put her on the witness stand.
9  Our view is that her communications undoubtedly have
10 significant amounts of *Brady* and *Giglio* material in them.
11        THE COURT:  How do you know?
12        MR. SIEGAL:  Material that would show --
13        THE COURT:  How do you know?
14        MR. SIEGAL:  Because we know what her job was, and we
15 know what sorts of things she did in her position that would
16 show --
17        THE COURT:  So the government had an obligation under
18 Rule 16 to produce *Giglio* and *Brady* materials.
19        MR. SIEGAL:  We believe -- that's correct, your Honor.
20 But they chose not to obtain them from JP Morgan Chase, even
21 though they were covered by the grand jury subpoena and so our
22 view is that the government and JP Morgan have coordinated to
23 curate the production, so that we would not get that *Brady* and
24 *Giglio* material.  And now the government is hiding behind --
25        (Continued on next page)

```
 1             THE COURT:  What is the basis for that contention?
 2             MR. SIEGAL:  Because we don't have them, your Honor.
 3   We have strong suspicion that those communications, for
 4   example, would show that the bank was well aware --
 5             THE COURT:  What is the basis of your strong feelings?
 6             What rational basis do you have to say that?
 7             MR. SIEGAL:  Rational basis for say what, your Honor?
 8             THE COURT:  That there are documents that the
 9   government had or should have gotten and didn't turn over.
10             MR. SIEGAL:  I can explain your Honor.
11             THE COURT:  Go ahead.  That is what you are trying to
12   do.
13             MR. SIEGAL:  Your Honor, the government contends that
14   J.P. Morgan was misled into believing that Ms. Javice claimed
15   that she has 4 million e-mail addresses for 4 million customers
16   of Frank, her website.
17             One of the processes that the bank was going to go
18   through immediately after the merger was to send out e-mails to
19   Frank's customer base to get them to either opt in or opt out
20   of J.P. Morgan communicating with them, and an e-mail blast was
21   sent out under the guidance and tutelage of ████  who was
22   in charge of that project.  In fact, the e-mail blast that went
23   out didn't have even a tenth of that.
24             THE COURT:  A tenth of what?
25             MR. SIEGAL:  A tenth of the e-mails that went out.
```

```
 1            THE COURT:  Excuse me.  Didn't have a tenth of what?
 2            MR. SIEGAL:  The e-mail list to whom they sent
 3   e-mails, your Honor, for this opt-in process went to a total of
 4   400,000 people, which means that the bank knew instantly after
 5   the merger, instantly, that Frank did not or didn't even
 6   actually to have 4 million e-mail communication links to its
 7   customers.
 8            THE COURT:  It doesn't mean anything of the kind.  It
 9   could mean anything of the kind.  It could mean anything.
10            MR. SIEGAL:  What it means to us, your Honor, is that
11   J.P. Morgan didn't complain at that time.
12            THE COURT:  Subpoena ███████ and call her as a
13   witness if you think there is anything in that.  This is
14   nonsense.  I am not talking about subpoenaing her documents.
15   This is not civil discovery.  If you think she's got something
16   relevant to say, call her as a witness.
17            MR. SIEGAL:  Your Honor, the point is --
18            THE COURT:  Rule 16 is not a discovery device.
19            MR. SIEGAL:  We understand that, your Honor.  But the
20   government requested these documents by their grand jury
21   subpoena and then coordinated with the bank to only take
22   selected witnesses' e-mail boxes and not hers.
23            THE COURT:  The government's investigation is not an
24   issue here.  The government will have to prove falsity.
25            MR. SIEGAL:  Our point is --
```

```
 1              THE COURT:  Let me see the notes.
 2              MR. SULLIVAN:  Absolutely.
 3              THE COURT:  What is the product that you think the
 4    government wants to introduce into evidence?
 5              MR. SULLIVAN:  I'm sorry, your Honor.  I missed that.
 6              THE COURT:  What is the product that the government --
 7    I am going back to the original source, not your recapitulation
 8    in a memorandum.  I want to see the document that you think the
 9    government wants to use and you want me to rule on that
10    document.
11              MR. SULLIVAN:  Yes.
12              May I approach?
13              THE COURT:  Put it up electronically.
14              This is not a document that is being used.  This is a
15    memorandum.
16              MR. SULLIVAN:  They purport to be notes of meetings.
17    They are authorless.  So they are notes of meetings.  They're
18    authorless, no attribution in terms of who is speaking.  It
19    includes all sorts of conclusions and impressions, lay witness
20    impressions.
21              THE COURT:  It seems to be a memo from ▇▇▇▇
22    ▇▇▇▇ to ▇▇▇▇▇▇ and others.
23              I don't know who these people are.
24              MR. SULLIVAN:  All right.
25              Can your Honor see?
```

```
 1              THE COURT:  You have to orient me.  Assume I know
 2   nothing about this case and you know everything about it.  I am
 3   just seeing this is a memorandum from          to others.
 4   For whom does          work?
 5              MR. SULLIVAN:  It is a compilation.
 6              THE COURT:  For whom does          work?
 7              MR. SULLIVAN:  For JPMC.
 8              THE COURT:  And he's sending it to other people at
 9   JPMC, J.P. Morgan?
10              MR. SULLIVAN:  Correct, your Honor.
11              THE COURT:  What is he sending?
12              MR. SULLIVAN:  It purports to be a set of notes.  It
13   is a compilation of notes that various people took.  It's
14   unclear who said what at these meetings.
15              THE COURT:  Does the government intend to use this?
16              MS. BHASKARAN:  Your Honor, may I speak from here, or
17   shall I take the podium.
18              THE COURT:  You are right there.  Does the government
19   intend to use this?
20              MS. BHASKARAN:  Yes, we do.
21              THE COURT:  How can you use this?  It's one Chase
22   employee to another.
23              MS. BHASKARAN:  Your Honor, these constitute notes
24   which are business records that contain the defendants'
25   statements.
```