**EXPERT WITNESS REPORT**

**Prepared by:**    Professor Jeffrey J. Haas

███████████

███████████████████████

███████████████

███████████████

**Date of Report:**    February 7, 2025

**Case Number:**    *United States v. Charlie Javice et al.*, 23-cr-251 (AKH)

I submit this expert witness report to memorialize my anticipated opinions in this case if called as a witness.

My qualifications, including a list of all publications authored in the previous 10 years, is included in my attached curriculum vitae. A list of cases for which I have served as an expert witness are attached. I have not testified as an expert at trial or by deposition during the previous 4 years. I am being compensated at a rate of $750 per hour for my services in this case and $175 per hour for travel time and will be reimbursed for all case-related expenses.

Based on my qualifications, experience, and education as stated in my curriculum vitae, I would offer the following opinions if called as a witness in this case about the negotiation process related to a proposed merger and the terms found in a typical merger agreement.

- Representations and warranties are standard clauses in a merger agreement and are negotiated between the purchaser and the seller. Some representations and warranties are commonplace while others are specifically tailored to the given transaction.
- A "representation" in a merger agreement is an informational assertion regarding the current state of the business. It is industry standard for "representations" to be made by the seller to the purchaser in the merger agreement covering business points that are important to the acquisition and the valuation of the seller's business. These seller "representations" cover, among other things: authority to enter into the agreement; material contracts and their enforceability; real and personal property; liabilities; financial statements; intellectual property; environmental matters; and labor matters.

1

- "Representations" made by the purchaser to the seller are often fewer in number and relate more to the purchaser's authority to enter into the agreement and financial ability to close on the purchase.
- A "warranty" in a merger agreement is a guarantee that a given "representation" is accurate. It is industry standard for "representations" contained in a merger agreement to also be warranted. As a result, it is industry standard for a merger agreement to include a section entitled "Representations and Warranties of Seller" and another entitled "Representations and Warranties of Purchaser."
- "Representations" and "warranties" are in addition to due diligence efforts by a purchaser to evaluate a seller's business. It is industry standard for a purchaser to both conduct due diligence on a seller's business and require "representations and warranties" from the seller in the merger agreement that cover business points that are important to the acquisition and the valuation of the seller's business.
- An extraneous representation and warranty disclaimer is a clause in a merger agreement that prevents parties from relying on representations or warranties that are not explicitly included in the agreement. It is industry standard that the parties may negotiate to include or exclude an extraneous representation and warranty disclaimer in a merger agreement.
- Most purchasers of a business in which user or customer data (defined to include, for example, name, contact information, and other identifying information) is an important reason for the purchase and a key driver of the value of the business would require the seller to make a representation and warranty regarding said data in the merger agreement.

I have reviewed the Superseding Indictment and the Agreement and Plan of Merger, Execution Version (marked as GX2000). I have the following opinions regarding the agreement, based on my review of the agreement and indictment, though my understanding at this time is that I will not be asked on direct examination to offer these opinions.

- The representations and warranties in the agreement do not cover the quantity or quality of the TAPD, Inc. customer data. A representation and warranty covering such data should include affirmations regarding the quantity and quality of data available.
- If acquiring TAPD, Inc. customer data was an important driver of JP Morgan Chase's acquisition of TAPD, Inc., and JP Morgan Chase relayed that to its attorneys drafting the merger agreement, it would be malpractice for those

attorneys not to include a specific representation and warranty covering the quantity and quality of customer data. In the alternative, if it was a conscious decision not to include a specific representation and warranty covering the quantity and quality of costumer data, JP Morgan Chase's attorneys should have highlighted the risk associated with not receiving such a representation and warranty to JP Morgan Chase.
- Despite any due diligence conducted on TAPD, Inc. customer data, I would expect that data to be the subject of a specific representation and warranty covering the quantity and quality of that data. Given that the parties defined "Customer Data" and "Data Room" in the merger agreement (see Page 4), a representation and warranty covering the quantity and quality of "Customer Data" or specific data contained in documents included in the "Data Room" could have easily been added to the merger agreement.

The opinions in this report are subject to possible amendment should new or additional information regarding these matters be provided.

*[signature]*
ID YZgR7X7w3RxSRSymdsxvCBe8

Jeffrey J. Haas

## eSignature Details

**Signer ID:** **YZgR7X7w3RxSRSymdsxvCBe8**
Signed by: Jeff Haas
Sent to email: jhaas@swlaw.edu
IP Address: 72.219.132.114
Signed at: Feb 7 2025, 5:15 pm EST