# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

March 13, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Charlie Javice and Olivier Amar*,
             23 Cr. 251 (AKH)

Dear Judge Hellerstein:

    We write respectfully on behalf of Mr. Olivier Amar in opposition to the Government's motion to preclude a single line from GX801-9. *See* ECF No. 321. The Government's motion should be denied for at least three reasons: (i) this is a WhatsApp communication from Ms. Javice (not an attorney) that conveys a message (not copying any attorneys) directly to Mr. Amar that bears precisely on Mr. Amar's state of mind when engaging in conduct that the Government contends is core to its case; (ii) the message is a directive (and therefore not hearsay) that contains neither legal advice nor client confidences such that it could be subject to the attorney-client privilege (or any applicable privilege); and (iii) the Government has no standing to assert the attorney-client privilege on behalf of a third party. At base, the Government's motion is designed to prevent Mr. Amar from presenting critical state-of-mind evidence undermining the Government's flawed theory of the case. The Court should reject the Government's thinly veiled, eleventh-hour attempt to block Mr. Amar from offering critical and exculpatory evidence to refute the Government's allegations.

    As an initial matter, the Government's motion cries foul over Mr. Amar's appropriate and timely disclosure of a single line of text that demonstrates how misguided this prosecution is with respect to Mr. Amar's actions. In its opening statement, the Government accused Mr. Amar of purchasing the ASL list from a third-party vendor to establish that Mr. Amar was a knowing and willful participant in a non-existent conspiracy. *See* Feb. 20, 2025, Tr. at 38:22-39:13 (alleging that Mr. Amar purchased "off-the-shelf data" to "pass off . . . real people" as Frank's customers

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)

Kobre & Kim refers to Kobre & Kim LLP, a New York Limited Liability Partnership.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 13, 2025
Page 2

to "cover up" the fraud).[1] As the Court is aware, the evidence thus far adduced at trial demonstrates that he was anything but, and GX801-9 demonstrates that further. And that is the true reason the Government now seeks (improperly) to assert a non-party's privilege over evidence that otherwise not only is directly relevant but exculpatory.

The single line of a direct communication between Mr. Amar and Ms. Javice that Mr. Amar seeks to offer is a directive from Ms. Javice on August 3, 2021—a date that the Government repeatedly has contended is critical to its offer of proof against Mr. Amar—instructing Mr. Amar to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ because she claimed that ▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮ had told her that he should do so. ECF No. 321. Ms. Javice sent this message to Mr. Amar just three minutes before she directed him to "[d]o it"—*i.e.*, purchase the data. In proffering this evidence and seeking to present it to the jury, Mr. Amar does not contend that he relied upon "advice of counsel" in purchasing the list or that ▮▮▮▮▮▮ (or anyone else) provided legal advice. Rather, as an employee of Frank, Mr. Amar is entitled to rely upon instructions from his direct supervisor, and he is proffering this evidence to explain to the jury why he purchased the ASL list quickly and that such instructions were understood by him to be legitimate. Such a directive, as bolstered by the purported presence and knowledge of counsel, bears directly upon Mr. Amar's state of mind and therefore is relevant. Further, under an "effect on listener" theory, it is non-hearsay by definition.

With that context, it does not matter whether Ms. Javice's statement is true, whether it reflects or contains legal advice, or whether such legal advice was accurate or appropriately informed. Mr. Amar is not claiming that he consulted with ▮▮▮▮▮▮▮, that he considered or accepted advice from ▮▮▮▮▮▮, or even that such advice was proper.[2] Instead, it bears on Mr. Amar's state of mind based upon a representation he received (whether accurate or not) from his alleged co-conspirator (who again, is not a lawyer). *See United States v. Runner*, No. 18-CR-0578(JS), 2023 WL 3727532, at *8 (E.D.N.Y. May 30, 2023) (recognizing good faith defense premised on "indirect legal advice"). What Ms. Javice told Mr. Amar when she directed him to purchase that data is highly probative of his good faith. The message is also strong evidence of the lack of conspiracy. If there truly was an unlawful agreement, it would make no sense for Ms. Javice to give Mr. Amar (her alleged co-conspirator) a directive glossed with legal or Board approval. As a consequence, the Government's claim that Mr. Amar improperly asserts an advice-of-counsel

---

[1] Remarkably, the Government disingenuously contends that the message has no relevance to the defense. *See* ECF No. 321, at 3. The prosecution's case against Mr. Amar centers on the allegation that in early August of 2021, he purchased student data on the market for the purpose of covering up the fraud. *See* Feb. 20, 2025, Tr. at 38:22-39:5 (Government's opening).

[2] As such, the Government's argument that admission of the text message would unnecessarily protract or otherwise distract from the trial because they would be required to call ▮▮▮▮▮▮ as a witness to rebut the claim that such advice was (or was not) given is overblown.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 13, 2025
Page 3

defense requiring, *inter alia*, further discovery or briefing regarding the "crime-fraud" exception is a disingenuous distraction from the actual issue and should be rejected.[3]

      Second, Ms. Javice's direction to Mr. Amar does not reflect the substance of any advice of counsel at all. Rather, Ms. Javice informs Mr. Amar that two individuals involved in the Frank acquisition—a Frank board member and outside counsel—purportedly told Ms. Javice to ▆▆▆ the student data and ▆▆▆▆▆▆ While Ms. Javice's statement could presumably be based on legal advice about "whether a certain purchase of data required board approval," ECF No. 321 at 2-3, the message itself describes only actions or next "steps" to "take." *Int'l Cards Co. v. Mastercard Int'l Inc.*, No. 13-CV-02576, 2014 WL 4357450, at *7 (S.D.N.Y. Aug. 27, 2014) (differentiating between the substance of legal advice in a document and author's statement reflecting a "business decision"). Her statement therefore reflects a "business decision," "not legal advice" itself, and is not "privileged." *Id.*

      Finally, it is the burden of the claimed privilege holder to assert privilege, which has not occurred here. *See, e.g., United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) (holding that party invoking attorney-client privilege bears the burden of establishing "all of its elements"); *In re Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (attorney-client privilege "can be asserted only by the client (or one authorized to do so on the client's behalf)"). In any event, we understand that the privilege holder is amenable to entering into a Rule 502(d) stipulation permitting the use of the text message without waiver. Therefore, to the extent there was any valid assertion of privilege over this one-line statement by Ms. Javice (and we submit there is not), we understand that the privilege holder does not intend to assert privilege if it will not be subject to a claim of subject-matter waiver or other privilege waiver. Because there are no privilege issues preventing its use, and because the message is highly relevant to Mr. Amar's state of mind, the message must be offered to the jury.

---

[3] Frank's outside counsel already has represented to the Government—in an interview apparently conducted without consulting the supposed privilege holder whose rights the Government now improperly attempts to invoke to bolster its own case and stymie Mr. Amar's defense—that ▆▆▆▆▆ unambiguously stated that he did not provide legal advice on the purchase and use of third-party student data in connection with JPMC's diligence request. *See* ECF No. 321, at 3-4 (stating that counsel for Frank would testify that "he never advised anyone at Frank that they could purchase student data and pass it off as Frank's customers"). The prosecution's notes of its interview show that Frank's counsel was unequivocal and consistent in his belief that he did not ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ 3562-001 at 1; *see also id.* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆). As such, to the extent any such privilege existed (and Mr. Amar consistently has asserted it does not), the Government already has invaded that privilege and it has been waived with respect to this single-line communication. Finally, one cannot claim privilege over advice that they claim they did not give.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 13, 2025
Page 4

Accordingly, the Government's motion should be denied.

Respectfully yours,

*/s/ Sean S. Buckley*
Sean S. Buckley
Jonathan D. Cogan
Alexandria E. Swette
Daisy Joo
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
Sean.Buckley@kobrekim.com
Jonathan.Cogan@kobrekim.com
Alexandria.Swette@kobrekim.com
Daisy.Joo@kobrekim.com

*Counsel for Defendant Olivier Amar*