# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

March 18, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Charlie Javice and Olivier Amar*,
      **23 Cr. 251 (AKH)**

Dear Judge Hellerstein:

Defendant Olivier Amar submits this letter to admit and have read to the jury during his case-in-chief certain testimony taken from Jen Wong outside the presence of the jury concerning (1) Google Analytics and (2) Patrick Vovor. Relatedly, Mr. Amar moves to admit DX OA 103 (Exhibit A), a screenshot of a Google Analytics report from March 2021, which the Court previously ruled was relevant and admissible (subject to connection and over the Government's objection) during Ms. Wong's testimony outside the presence of the jury. The Government does not dispute that DX OA 103 is an actual screenshot of a Google Analytics dashboard. And the content of the screenshot—depicting 4.3M users as defined by Google Analytics in March 2021, a core number at a key time in the Government's alleged conspiracy and the crux of their case—is both relevant and material to Mr. Amar's defense.

### *(1) DX OA 103 and Ms. Wong's Testimony Concerning Google Analytics Is Relevant and Admissible*

As the Court knows, the Government contends that Mr. Amar committed fraud because certain pitch materials, as well as Frank's website, stated that Frank had 4.25 million "users" or "students." DX OA 103 is real time evidence from the period when Frank and LionTree created and disseminated those materials (and updated the website) proving that Google Analytics reported

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 18, 2025
Page 2

to Frank that Frank had over 4.25 million "users," as that term is defined by Google Analytics.[1]



The jury has heard substantial testimony concerning Google Analytics in this trial, but DX OA 103 is the only documentary evidence in the case demonstrating what Google Analytics looked like to Frank employees (including Mr. Amar) during the spring of 2021. It is relevant because it shows that Mr. Amar lacked fraudulent intent as to representations that Frank had 4.25 million users. In fact, it shows on its face that Google Analytics was reporting to Frank that Frank had that many users.

The Court required counsel for Mr. Amar to question Ms. Wong about DX OA 103 outside the presence of the jury because Tif Wong, a different Frank employee, took the screenshot depicted in DX OA 103, and the Government did not stipulate to its authenticity at that time. The Court explained before Ms. Wong's testimony that "you are going to [question the witness concerning DX OA 103] outside the presence of the jury, and if relevant and the document is authenticated, you will be able to put this evidence in." Mar. 4 Tr. at 1132:5-7. After Ms. Wong testified, and the Government objected, the Court ruled as follows:

> THE COURT: And this, again, counts the numbers of people who visited the
>
> website, not the ones who were account holders.
>
> THE WITNESS: Yes.
>
> THE COURT: Even though the same word "users" is used in connection with
>
> both.
>
> THE WITNESS: Yes.
>
> THE COURT: **OK. I think that clarifies what we have here and it is a jury question. Objection is overruled.**

---

[1] During cross examination, Ms. Wong defined a user as a web visitor. Mar. 4 Tr. at 1135:20-25 (MR. COGAN: "Users is the term that Google Analytics uses to describe what is represented in this column; correct?" THE WITNESS: "Yes." MR. COGAN: "And Google Analytics defines users as people who have visited here the Frank website; correct?" "THE WITNESS: "Correct.").

Hon. Alvin K. Hellerstein, U.S.D.J.
March 18, 2025
Page 3

*Id.* at 1144:10-11 (emphasis added).

While Mr. Amar is still prepared to call Tif Wong to authenticate the screenshot, if necessary, we now understand the Government no longer objects to its authenticity.[2] Accordingly, the Court should rule that DX OA 103 and the portions of Ms. Wong's testimony related to it (as highlighted in Exhibit B) are admissible. The Court should further allow Mr. Amar's publication witness or counsel to read Ms. Wong's testimony on DX OA 103 to the jury during trial.

### *(2) Ms. Wong's Testimony Concerning Patrick Vovor Is Relevant and Admissible*

In addition, Mr. Amar moves to admit certain testimony from Ms. Wong related to GX 803-14 and Patrick Vovor, which counsel for Mr. Amar likewise elicited outside the presence of the jury. GX 803-14 (not in evidence) contains a WhatsApp chat between Ms. Wong and Mr. Vovor from the morning of August 2, 2021, and a missed call between them in the evening of the same day.

On cross examination, Mr. Vovor testified that he asked Ms. Wong (over WhatsApp) to download an encrypted messaging application called Signal because (1) Ms. Javice asked him to create synthetic data in a one-on-one meeting the day prior, August 1, which made him feel uncomfortable, Mar. 10 Tr. at 1743:23-1746:9, and (2) Mr. Vovor had a call with Ms. Wong over Signal later in the day on August 2, "after the call with Mr. Amar and Ms. Javice." Mar. 11 Tr. at 1765:3-6. Ms. Wong's testimony on this issue (outside the presence of the jury) is as follows:

> MR COGAN: And Mr. Vovor reaches out to you on the morning of August 2 and says: Were you too called yesterday for that kind of topic? Do you see that?
>
> THE WITNESS: Yes.

---

[2] The Government has informed counsel for Mr. Amar that it maintains its objection to the admissibility of DX OA 103 and that it believes, despite the foregoing, that the Court later ruled the document is inadmissible. We do not believe that is what the Court intended. As discussed above, on March 4, counsel for Mr. Amar questioned Ms. Wong on DX OA 103 outside the presence of the jury. After that testimony, the Court overruled the Government's objections and determined DX OA 103 was admissible (subject to connection). The next day, counsel for Ms. Javice questioned Ms. Wong outside the presence of the jury on three ***different, unrelated*** documents. Mar. 5 Tr. at 1279:22-12:80-8 (DX CJ 380); *id.* 1281:25-1282:25 (DX CJ 2163); *id.* 1283-1284:9 (DX CJ 2157); *see also* ECF No. 312 at 2-3 (letter from Ms. Javice on topics related to those documents). The same day, Mr. Amar filed a letter motion to authenticate DX OA 103. ECF No. 313; *see also* Mar. 5 Tr. at 1205:3-1207:3 (colloquy between Mr. Cogan and the Court). Moments after the Court ruled Ms. Javice's documents were not admissible, *id.* at 1285:1-2, the Court asked counsel for Mr. Amar if Mr. Amar had additional questions for Ms. Wong. Counsel stated that he made his record the day prior. *Id.* at 1285:13-16. The Court then ruled "the document is not admissible." *Id.* at 1285:22. It is unclear which document the Court was referring to at that time, other than Ms. Javice's three documents. To the extent the Court was referring to DX OA 103, Mr. Amar believes the Court's ruling was inadvertent and a result of confusion created by Ms. Wong's multiple cross examinations outside the presence of the jury on at least four different documents. Again, as set forth above, the Court overruled the Government's objection to DX OA 103 at the time the witness was questioned on it.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 18, 2025
Page 4

>MR. COGAN: **And so, as you understood it, he was referring to something that had happened the day before on August 1; right?**
>
>THE WITNESS: Yes.
>
>MR. COGAN: And then he asks you: Are you on Signal? And you say you will download it; right?
>
>THE WITNESS: Yes.
>
>MR. COGAN: And then you see at the very bottom of the screen that we are looking at right now, Mr. Vovor says: I really don't feel good since yesterday. Do you see that?
>
>THE WITNESS: Yes.
>
>MR. COGAN: And again, you understood when you see this that he is referring to something that happened the day before on August 1; correct?
>
>THE WITNESS: Correct.
>
>MR. COGAN: **Now, fair to say that during the time that you and Mr. Amar and Mr. Vovor worked together at Frank there was, at times, a decent amount of [tension] between Mr. Amar's side of the business and Mr. Vovor's side of the business?**
>
>THE WITNESS: **Always**.
>
>MR. COGAN: **They butted heads?**
>
>THE WITNESS: **Always**.
>
>MR. COGAN: **Sitting here today, ma'am, you don't ever recall Mr. Vovor saying to you that Mr. Amar told him to do something that Mr. Vovor thought was illegal?**
>
>THE WITNESS: **No**.
>
>MR. COGAN: **Sitting here today, you don't recall Mr. Vovor telling you that Mr. Amar said to Mr. Vovor I want you to make up fake data?**
>
>THE WITNESS: **No**.
>
>Mar. 4 Tr. 1073:3-1074:12 (emphasis added).

This testimony impeaches Mr. Vovor because Mr. Vovor testified on direct examination that it was (also) Mr. Amar who asked him to create synthetic data and whose request to do so (also) made him feel uncomfortable. Mar. 6 Tr. at 1556:4-1565:3; *id.* at 1575:7-1577:15.[3] But as

---

[3] At the very least, the Court should admit the portions of Ms. Wong's testimony relating to Mr. Vovor's relationship with Mr. Amar, which are relevant to Mr. Vovor's bias as a witness. Mar. 4 Tr. at 1073:23-

Hon. Alvin K. Hellerstein, U.S.D.J.
March 18, 2025
Page 5

Ms. Wong's testimony shows, Mr. Vovor never told her on August 2—*or any other time*—that Mr. Amar asked Mr. Vovor to do anything illegal or to create fake data.

      For these reasons, the Court should permit Mr. Amar to admit DX OA 103 as part of his case-in-chief, and to have his publication witness or counsel read to the jury during trial the testimony taken from Jen Wong outside the presence of the jury concerning Google Analytics and Patrick Vovor.

      Respectfully submitted,

/s/ *Jonathan D. Cogan*
Jonathan D. Cogan
Alexandria E. Swette
Sean S. Buckley
KOBRE & KIM LLP
800 Third Ave.
New York, NY 10022
Tel: (212) 488-1200
Sean.Buckley@kobrekim.com
Jonathan.Cogan@kobrekim.com
Alexandria.Swette@kobrekim.com

Matthew I. Menchel
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
Tel: (305) 967 6100
Matthew.Menchel@kobrekim.com

Jake Rush (admitted *pro hac vice*)
1919 M Street, NW
Washington, DC 20036
Tel: (202) 664-1900
Jake.Rush@kobrekim.com

*Counsel for Defendant Olivier Amar*

---

1074:4. Indeed, on cross examination, Mr. Vovor testified that he had "bad" interactions with Mr. Amar, believed Mr. Amar "lied" about things, and was "not happy" that Mr. Amar became his boss at JP Morgan. Mar. 10 Tr. at 1714:14-1715-25. Ms. Wong's testimony is critical context for the jury to have to evaluate Mr. Vovor's credibility and the motivations for his testimony.