# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

March 20, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Charlie Javice and Olivier Amar*,
               23 Cr. 251 (AKH)

Dear Judge Hellerstein:

      Defendant Olivier Amar respectfully submits this letter in support of his motion to introduce three summary charts through his summary witness, Jesse Candel. Mr. Amar expects that Mr. Candel will offer testimony regarding his review of thousands of email communications produced by the Government in this case. Specifically, Mr. Candel will testify as to the volumes of emails between Frank personnel—including Mr. Amar—and entities involved in the sale of Frank, including LionTree (Frank's investment advisor), Capital One, and JP Morgan Chase. The proffered summary charts, which are attached hereto as Exhibits 1 through 4, display the relative volume of emails. These exhibits are summaries of voluminous evidence in chart form offered to prove the content of admissible writings that cannot be conveniently examined in Court and therefore are properly admitted into evidence pursuant to Federal Rule of Evidence 1006.[1]

      The Court should permit the jury to see this relevant, admissible, and exculpatory evidence for at least three reasons.

      <u>First</u>, a cornerstone of Mr. Amar's defense throughout trial has been that Mr. Amar was hardly involved in the diligence process and, in particular, Ms. Javice cut Mr. Amar out following

---

[1] The proposed summary charts, which are attached as exhibits and which Mr. Amar intends to offer as DX OA 2101 through DX OA 2104, do not contain argument and merely are visual depictions of the number of emails exchanged during certain date ranges. Mr. Amar expects that Mr. Candel will explain what the charts represent without any further analysis or comment—the latter will be for summation.

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 20, 2025
Page 2

Capital One's July 14, 2021 decision not to make a second-round bid to purchase Frank, which was two days after Mr. Amar's correction of Frank's "visitor" data was relayed to Capital One. *See* ECF No. 340.[2] These defenses are borne out in the proffered summary exhibits, which show the relative volume of email communications involving the Frank personnel most actively involved in the acquisition—*i.e.*, Mr. Amar, Mr. Glazer, and Ms. Javice.[3] This evidence is highly probative of Mr. Amar's lack of involvement in a conspiracy with Ms. Javice as well as his lack of knowledge about alleged misrepresentations being made to the potential buyers. Simply put, this evidence goes to the heart of Mr. Amar's defense.

Second, this evidence strongly rebuts the Government's allegations of a two-person conspiracy and directly counters testimony that the Government has elicited regarding a supposed preference by Ms. Javice to exclude Mr. Glazer but *not* Mr. Amar from certain meetings. *See* Tr. Feb. 2 at 199:23-200:9 ("Q. Do you recall any discussion about not including Matt Glazer on this meeting? A. Not specifically this meeting. But there had been preferences . . . Not specifically this meeting, but there had been instances where there was a preference to have Mr. Glazer included or not included on various calls. Q. Do you recall Ms. Javice ever expressing a preference that Mr. Amar not attend? A. I don't recall any of those.").

Third, the Government has argued at length that large volumes of calls and messages between the Defendants are probative of a conspiracy, and Mr. Amar should be permitted to argue the converse. The proffered charts therefore should be admitted to rebut the Government's evidence.

**Exhibit 1: Emails with LionTree January 1, 2021 – August 8, 2021**

This chart depicts the volume of emails between LionTree and Mr. Amar, Mr. Glazer, and Ms. Javice from the beginning of 2021 through the date that Frank and JP Morgan Chase signed the Merger Agreement. The volume of Ms. Javice's communications with LionTree during the relevant period dwarfs that of Mr. Amar. As to Mr. Glazer, he is on nearly three times as many emails with LionTree as Mr. Amar, which directly counters testimony elicited by the Government, as discussed above.

**Exhibit 2: Emails with Capital One May 13, 2021 – July 14, 2021**

This chart depicts the volume of emails between Capital One and Mr. Amar, Mr. Glazer, and Ms. Javice from the earliest Capital One communications with Frank through the date that

---

[2] The proffered evidence is not antagonistic, particularly because there will be no analysis or argument. To the extent counsel for Ms. Javice opposes the summary charts as antagonistic (which, on their face, they are not), the Court acknowledged at the January 23, 2025 pretrial conference that "If I were to curtail a defense, I would triggering a mistrial, wouldn't I? Isn't that right? I can't restrict your ability to put in relevant information." *See* Jan. 23, 2025 Hrg. Tr. at 20:18-20.

[3] As is plain from the summary charts, it would be meaningless to simply show the volume of Mr. Amar's communications. The volume of Mr. Amar's communications becomes significant only when juxtaposed with the much larger volume of similar communications involving Ms. Javice and—directly contrary to testimony that the Government has sought to elicit—even at times Mr. Glazer.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 20, 2025
Page 3

Capital One declined to make a second-round bid for Frank. This chart similarly depicts Mr. Amar coming in third after Ms. Javice and Mr. Glazer in terms of email volume, with similar disparities as the LionTree volumes.

### Exhibit 3: Emails with JP Morgan Chase March 24, 2021 – August 8, 2021

This chart depicts the volume of emails between JP Morgan Chase and Mr. Amar, Mr. Glazer, and Ms. Javice from the earliest JP Morgan Chase communications between the corporate development team and Frank through the date that Frank and JP Morgan Chase signed the Merger Agreement. This chart is consistent with Mr. Amar's defense narrative, which is that, when it came to the diligence period with JP Morgan Chase, Ms. Javice proceeded to cut out both Mr. Amar and Mr. Glazer.

### Exhibit 4: Mr. Amar's Emails with LionTree Before and After July 14, 2021

Finally, this chart depicts the impact of Ms. Javice cutting out Mr. Amar right at the time Capital One declined to submit a second-round bid. Prior to that declination, Mr. Amar was regularly sending and receiving emails with LionTree. But after that declination, Mr. Amar is entirely cut out of the process and is not involved in *any* further LionTree communications.

For the foregoing reasons, Mr. Amar requests that the Court admit the proposed summary charts attached hereto as Exhibits 1 through 4.

Respectfully yours,

/s/ Alexandria E. Swette
Alexandria E. Swette
Sean S. Buckley
Jonathan D. Cogan
Michael Cinnamon
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
Alexandria.Swette@kobrekim.com
Sean.Buckley@kobrekim.com
Jonathan.Cogan@kobrekim.com
Michael.Cinnamon@kobrekim.com

*Counsel for Defendant Olivier Amar*