# MINTZ LEVIN

One Financial Center
Boston, MA 02111
617-542-6000
617-542-2241 fax
www.mintz.com

Eóin P. Beirne | 617 348 1707 | ebeirne@mintz.com

March 23, 2025

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10017

**RE:** *United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

As the government did, Ms. Javice intends to offer a series of relevant documents through a witness called for the purpose of authenticating those records, after which counsel will call the jury's attention to the relevant portions of the exhibits. The government indicates that it objects to the introduction of Ms. Javice's proffered exhibits and so we bring this to the Court's attention in order to resolve these disputes outside the presence of the jury and to ensure an efficient presentation of this relevant evidence.

Ms. Javice will offer these documents through witness Anthony Santilli, a former New York City Police Detective, who followed an accepted practice for forensically preserving online web page information. We do not expect that the government will dispute the authenticity of any of the materials offered. The government has indicated that it objects to all of Ms. Javice's proffered exhibits as irrelevant to the charges against her.

## Archived Portions of the Frank Website

As the Court is aware, Ms. Javice has asked the government and JPMorganChase ("JPMC") (via Rule 17 subpoena) for a copy of the Frank website. Each responded that they did not have a copy to provide.[1] This case is about that very website, portions of which *are* preserved by Internet Archive (also known as the Wayback Machine). The government has introduced some pages from Frank's website as preserved by Internet Archive. *See* GX 215, GX 216. Ms. Javice wishes to do the same.

---

[1] In response to Ms. Javice's Motion to Compel a copy of the Frank webpage (Dkt. 200), the government stated: "The government produced the only copy of a Frank webpage in its possession more than 18 months ago. The government does not, and has never, possessed any other copies of pages from Frank's website." (Dkt. 212).

At the pre-trial conference held on February 4, 2025, in response Ms. Javice's 17(c) subpoena seeking a copy of Frank's webpage (Dkt. 257-2), counsel for JPMorgan Chase stated: "[I]f we have the information we plan to produce it. I have to confirm that we have it. If we have it, we plan to produce it. I don't know if we have every document that's responsive, but that's our plan." Feb. 4, 2025 Hrg. Tr. at 44:13-17.

**CJ-1897, CJ-2173** and **CJ-2174** are preserved pages from the Frank website that reference public statements about the number of Frank FAFSA users; pages which JPMC then kept as part of the Frank website. This website content reflects publicly available information about Frank which undoubtedly was reviewed by the 350-person diligence team at JPMC as well as by CapitalOne's team. Both Houston Cowan (LionTree) and Ryan MacDonald (JPMC) testified that they viewed the Frank website during the diligence period. Information contained on Frank's website – the very website at the heart of the case – is relevant to show Ms. Javice's state of mind (calling into question whether anyone would intentionally lie about matters so easily debunked by readily available information), the materiality of information and representations about Frank's FAFSA users and is part of the "total mix" of information that a reasonable investor would consider in determining whether or not to make a purchase. *See* Fed. R. Ev. 803(3); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (materiality is satisfied if a reasonable investor would have viewed "information as having significantly altered the 'total mix' of information made available.")

**Public Records**

**CJ-2168** and **CJ-2169** are public announcements by government agencies, which are self-authenticating under Federal Rule of Evidence 902(5). *See Fibrix LLC v. Schlumberger Tech. Corp.*, 2022 WL 18215855, at *4 (W.D.N.Y. Nov. 2, 2022), *R&R Adopted* 2023 WL 145613 (W.D.N.Y. Jan. 9, 2023) (quoting *Kuba v. Sea World, Inc.*, 428 Fed. Appx. 728, 732 (9th Cir. 2011) (finding that evidence submitted along with live hyperlinks to a municipal website were self-authenticating under Federal Rule of Evidence 902(5))). The documents relate to the announcement by the Department of Education ("DOE") regarding changes to the process for submitting a FAFSA form. This type of regulatory issue was identified as a known risk by both CapitalOne and JPMC and a risk JPMC assumed when it acquired Frank. Witnesses from JPMC (Leslie Wims Morris and Ryan MacDonald) testified about this issue but did not recall that the Department of Education had taken this specific step.

The government has alleged and elicited testimony from JPMC witnesses that the value in Frank was in its FAFSA tool and its existing list of users of that tool as well as its ability to attract future users of that tool to the Frank website. Therefore, when the DOE made this change to the way FAFSA forms were to be submitted, it potentially rendered worthless Frank's FAFSA tool and the alleged basis for JPMC's acquisition of Frank. If JPMC's plan for Frank was to generate new users and make money from the FAFSA tool – and it was -- then the DOE's regulatory change would have had a significant detrimental impact on Frank's FAFSA tool destroyed JPM's plans to profit from it. The jury must be permitted to hear, given the testimony elicited by the government from JPMC witnesses, that allegations of fraud against Ms. Javice may have been raised by JPMC as a pretext, to permit JPM to exit a now unfavorable contract to recoup its investment..

**News Articles re Frank During the Diligence Period**

**CJ-1704**, **CJ-1705**, **CJ-1706**, **CJ-1707**, **CJ-1708**, **CJ-1709**, **CJ-1712**, **CJ-1713**, **CJ-1716**, and **CJ-1751** are all publications about Frank that were published during the diligence period. Each

of these articles references the number of Frank's FAFSA users and were part of the total mix of available information that would have been considered by the large diligence teams at Capital One and JPMC. Among other things, their existence and ready availability goes to Ms. Javice's state of mind – calling into question whether under such circumstances, she would intentionally lie about matters so easily undermined by contrary public information.

**JPMC's Definition of a Website User and Familiarity with Synthetic Data**

**CJ-1718** is a preserved page from JPMC's website with its Terms of Use, which define a website "user" as "any visitor to the website." How JPMC itself defined a website user is directly relevant to Ms. Javice's state of mind and lack of intent to defraud JPMC when she used JPMC's own definition of a website user.

**CJ-1722** is a page from JPMC's own website describing the uses of synthetic data. This document is relevant to show the defendant's lack of any intent to deceive JPMC. Dr. Kapelner testified that anyone with any sophistication would have recognized the list sent to Acxiom as a synthetic list and not a list attempting to deceive anyone that the identities of the synthetic users represented in the document corresponded to any real person. (Trial Tr. 2059:12-16). As the graphic below from JPMC's synthetic data page illustrates, JPMC understands that synthetic data extrapolated from "real data" has value. Ms. Javice also is entitled to put this document in evidence to demonstrate that JPMC had a level of sophistication in dealing with synthetic data which tends to undermine testimony from JPMC witnesses who testified they were unfamiliar with synthetic data, and further tends to corroborate Dr. Kapelner's testimony and Ms. Javice's argument that she did not intend to deceive JPMC in sending synthetic data to Acxiom, and their understanding that that whoever received Dr. Kapelner's list would be able to tell that it was synthetic.



**CJ-1719** is a page from JPMC's website discussing JPMC's capabilities with respect to artificial intelligence, machine learning and synthetic data. The government admitted an exhibit through Dr. Kapelner showing that he and Ms. Javice were discussing utilizing machine learning to perform a data extrapolation to comply with Chase's data request. *See* GX-2801. Dr. Kapelner informed Ms. Javice that given the tight timeline to reply to Chase's request, there was not enough time to implement a machine learning process. That Chase had a level of sophistication and specifically endorsed the use of machine learning and use of synthetic data for data extrapolation goes directly to Ms. Javice's good faith in how she responded to JPMC's late-stage data request.

### JPMC's Motivation for the Purchase of Frank

**CJ-1720** is an article that quoted JPMC CEO Jamie Dimon about being eager to compete with Fintech companies and to make strategic acquisitions as defensive tactics to keep attractive companies out of the hands of JPMC's competitors. Ms. Javice read this article and sent it to her investment banker advisors at LionTree (*See* CJ-0027). This document goes clearly to Ms. Javice's state of mind in her dealings with Chase, including her state of mind concerning the element of materiality.

### Website Traffic Tools

**CJ-1723** is a preserved copy of the website for a tool called Semrush, which has featured in the testimony of several witnesses (Trial Tr. 1175:16-1176:5 (Jennifer Wong); 2218:4-12 (Mason Young)), who testified that they regularly use the tool or are aware of its capabilities to ascertain information about a website's user traffic and user volume. This tool is not specialized, is easily accessible and publicly available. The jury in this case will have to determine if Ms. Javice intended to deceive Capital One and JPMC about a material fact. In order to determine if the number of Frank's FAFSA users as opposed to the number of simple website visitors was truly material to JPMC, the jury is entitled to know and understand just how easy it is for any reasonable investor to ascertain and verify the number of website users from an independent source. Again, this evidence calls into question whether Ms. Javice would intentionally lie about matters so easily undermined or contradicted by readily available information.

Respectfully submitted,

_____
Eóin P. Beirne
Counsel for Ms. Javice

Cc: All Counsel of Record