

**David M. Siegal**
+1.212.692.6281
DMSiegal@mintz.com

919 Third Avenue
New York, NY  10022
212 935 3000
mintz.com

September 19, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

  This letter is respectfully submitted on behalf of Charlie Javice in reply to the Government's sentencing memorandum filed earlier this week.  ECF No. 419.  Ms. Javice writes solely to correct the Government's statement of the law with respect to calculating "loss" for purposes of the Sentencing Guidelines.  In its submission, the Government values the loss amount at approximately $174 million, arguing that "the Court need not 'offset' [the loss] by Frank's purported value to JPMC."  ECF No. 419 at 17-19.  The Government is mistaken. The Court is required to calculate loss under the Guidelines on a net basis.

  The Guidelines, per the 2001 amendments to Section 2B1.1, and Second Circuit law, require an offset to the loss amount equal to the value of the assets received by the victim.  The Sentencing Commission itself has made clear that "Loss" under Section 2B1.1 means *net loss*. *See* Consolidation of Theft, Property Destruction, and Fraud; Miscellaneous Revisions—Definition of Loss, 66 Fed. Reg. 30540, 30543 (June 6, 2001) ("*Federal Register*") ("the seriousness of the offense and the culpability of a defendant is better determined by using a net approach.  This approach recognizes that the offender who transfers something of value to the victim(s) generally is committing a less serious offense . . . ."); *see also* 1 Roger W. Haines, Jr., et al., *Federal Sentencing Guidelines Handbook: Text And Analysis* 437 and n.6, 438 (Thomson Reuters ed., 2024-2025) ("*Guidelines Handbook*") (explaining loss "must be a measurement of net economic deprivation," and noting that, in updating the Guidelines in 2001[1], "the Commission intends the crediting provision to be a general rule covering all economic benefits passing from the defendant to the victim prior to detection"); *United States v. Markert*, 732 F.3d 920, 932 (8th Cir. 2013) (quoting the Commission's explanation and reiterating that "'[a]ctual loss' under the revised guideline is a 'net loss' concept").

---

[1] The merging of the prior Guideline pertaining to Fraud crimes (§2F1.1) into current §2B1.1 was part of the 2001 amendments to the Guidelines. U.S.S.G. §1B1.2, Amendment 627 (Nov. 1, 2001).

**David M. Siegal**
+1.212.692.6281
DMSiegal@mintz.com



919 Third Avenue
New York, NY  10022
212 935 3000
mintz.com

The Government's argument that because Ms. Javice gave JPMC something of value at the time of the sale, rather than later "returning" something of value to JPMC "before her offenses were detected," is an illogical reason to dispense with a net loss calculation.  That view is unsupported by case law (indeed the Government cites none for this proposition) and is flatly contradicted by the Federal Register's express rationale for the amendments to Section 2B1.1. *See Federal Register*, at 30543 (recognizing "the offender who transfers something of value to the victim(s) generally is committing a less serious offense . . . ."); *Guidelines Handbook*, at 438 (noting that reading the word "returned" to cover only property later returned would be "absurd in theory and excluding many cases the Commission plainly intended to cover"); *United States v. Hess*, 106 F.4th 1011, 1026 (10th Cir. 2024) (calculating net loss "requires the court to deduct from the loss calculation *any value the defendant gave the victim at the time of the fraud*") (quoting *United States v. Janusz*, 135 F.3d 1319, 1324 (10th Cir.1998)) (emphasis added).

The Government's view that net loss need not be calculated because this case involved a "fraudulent inducement" has been rejected by courts in this Circuit.  *See, e.g., United States v. Leonard*, 529 F. 3d 83, 93 (2d Cir. 2008) (finding district court erred in loss calculation by "not deducting from the purchase price the actual value of the instruments" on the ground that the victims would not have invested had they known the truth).  Notwithstanding the Government's suggestion that *Leonard* is no longer good law, courts within this Circuit and elsewhere continue to cite it favorably.[2]  Less than a year ago, Chief Judge Swain rejected the Government's "fraudulent inducement" argument as a basis for simply setting the loss at the investors' full investment amount.  *See United States v. Tournant*, No. 22 Cr. 276 (LTS) (S.D.N.Y. Dec. 6, 2024), ECF No. 176, at 14-30.  Additionally, in *United States v. Lumiere,* Judge Rakoff found the Government had the burden to calculate a *net* loss amount, which was required even if the victims would not have invested but for the fraud.  No. 16 Cr. 483 (JSR) (S.D.N.Y. June 13, 2017), ECF No. 105, at 1-5 (noting that the Government's loss argument failed to acknowledge that what the defrauded investors got was not worthless, and observing that the Guidelines direct that, where the Government fails to reasonably calculate the loss, loss should be treated as zero even if common sense would suggest there was some meaningful loss).

Defendant's interpretation of Second Circuit law—that "loss" means "net loss"—is consistent with other Circuits' interpretation of Section 2B1.1 for purposes of calculating loss. *See ECF No. 417 at 5-6 (collecting cases); see also United States v. Duruisseau*, 796 F. App'x

---

[2] The Government cites no authority suggesting *Leonard* has been reversed or overruled, and courts across the country continue to rely upon *Leonard* for the very proposition Ms. Javice cites it for here.  *See, e.g., United States v. Anchor Foods, Inc.,* 2020 WL 8167426, at *5 and n.6 (E.D.N.Y. May 10, 2020), *report and recommendation adopted,* 2021 WL 135751 (E.D.N.Y. Jan. 14, 2021) (acknowledging that *Leonard* was based on the prior Guideline provision and application note (since deleted), but noting that the case "has nevertheless been cited with approval by the Second Circuit in more recent decisions applying U.S.S.G. § 2B1.1 and its Application Notes"); *United States v. Holmes*, 2023 WL 149108, at *4 (N.D.Ca. Jan. 10, 2023) (citing *Leonard* in support of its decision to reduce the total investment amount by "the 'underlying value'" of the Theranos shares had no fraud occurred).

**David M. Siegal**
+1.212.692.6281
DMSiegal@mintz.com



919 Third Avenue
New York, NY  10022
212 935 3000
mintz.com

827, 840 (5th Cir. 2019) (holding the "PSR's recommendations appeared to deviate from the traditional net-loss calculation" but there was "no reason why the district court could not determine actual loss to the banks by a traditional net-loss calculation"); *United States v. Durham*, 766 F.3d 672, 686-87 (7th Cir. 2014) (calculating actual loss as the net loss due to defendants' fraud); *United States v. Laurienti*, 611 F.3d 530, 557 (9th Cir. 2010) ("for any given victim, it is the net loss that matters"); *Hess*, 106 F.4th at 1026 (same, citing § 2B1.1, cmt. n.3(E) for proposition that loss means net loss, and remanding case for determination in the first instance of which goods and services provided value to the victims).

In the context here, involving JPMC's acquisition of Frank, the Court is required to account for the value of what JPMC actually obtained in exchange for its purchase price, and the Government's cited authority does not change that obligation.  The Circuit level decisions cited by the Government, some of which are non-precedential, some of which are procedurally distinct, and some of which concerned fraud in the distinct context of pledged collateral (a subject-matter uniquely addressed under a separate application note to Section 2B1.1), are inapplicable here.  *See United States v. Paul*, 634 F.3d 668 (2d Cir. 2011) (concerning stock pledged as collateral held by financial institutions and did not address credit against loss for purposes of determining 2B1.1 "Loss," but rather, addressed restitution calculus); *United States v. Turk,* 626 F.3d 743, 748-49, 751 (2d Cir. 2010) (rejecting defendant's argument for credit for collateral promised to investors in a real estate company where mortgages were never recorded, and holding that, even assuming it was "collateral," concluding it had no real value at the time of sentencing).[3] Despite being in the collateral context, *United States v. Stitsky*, cited by the Government actually *supports* Ms. Javice's position that a net loss analysis is proper. 536 F. App'x. at 111-12 (2d Cir. 2013) (denying credit based on district court's *factual findings* that the victims received nothing of value, where investment units received by victims conferred no value where the buildings supporting the investment were highly leveraged and the investment vehicle did not have the funds to renovate them).[4]

---

[3] The Second Circuit in *Turk* made clear that loan/collateral cases "cannot be compared" to stock cases, given the inherent economic distinction between outright ownership (in the case of stock) and loan collateral, which is "nothing more than insulation against loss." *Turk*, 626 F.3d at 751.  The Government also relies upon the unpublished summary opinion in *United States v. Komar*, 529 F. App'x. 28 (2d Cir. 2013) (citing *Turk*), for the notion that its "fraudulent inducement" argument extends to the instant case.  By rule, *Komar* has no precedential effect, *see* Second Circuit Local Rule 32.1.1.  Indeed, in *Tournant,* the Government cited *Komar* in support of its unsuccessful attempt to convince Judge Swain of its expansive "fraudulent inducement" argument. *Tournant,* No. 22 Cr. 276 (LTS), ECF No. 163, at 13. Judge Swain rejected that logic and declined to apply a loss enhancement for that defendant. *Tournant,* No. 22 Cr. 276, ECF No. 177, at 24-30.

[4] Nor do the two district court cases cited by the Government demonstrate that a net loss analysis is improper here. *See United States v. Shkreli*, 2018 WL 9539774, at *28-29 (EDNY Feb. 26, 2018) (declining to credit defendant for money sent back to investors *after investors and SEC had detected the fraud*, thus taking it out of the application note—now 3(D)(i)); *United States v. Bryson*, 101 F. Supp. 3d 147 (D. Conn. 2015) (declining to credit funds



**David M. Siegal**
+1.212.692.6281
DMSiegal@mintz.com

919 Third Avenue
New York, NY  10022
212 935 3000
mintz.com

In bypassing a net loss analysis, the Government attempts to abdicate its burden to provide reliable evidence to support its calculation of loss resulting from the fraud of conviction. The Guidelines require Frank's value at the time of the acquisition be taken into account as part of the Government's proof and Court's calculation of loss.  Regardless of the number of users, Frank had real value. One category of Frank's key assets (by JPMC's own measure) were Frank's approximately 500,000 signed-up users, which the Government concedes had value. Tr. 3571:4 (government summation); ECF No. 419, at 20. Despite this concession, the Government has made no effort to account for this value. Further, Frank had various additional bases for ascribing some value to Frank, including the millions of website visitors. *See* ECF No. 417 at 8-14.  The Government, for example, states that JPMC had no means to "directly" market to Frank's millions of non-signed up website users.  Yet, these users could be easily retargeted for Chase products. *See* Tr. 3057:6-21 (Zeitler Testimony).  Indeed, Chase itself uses cookie technology to do just that, reinforcing that the ability to market to those specific website visitors was valuable to Chase.[5]  Ms. Javice's other suggested bases for valuation are similarly dispensed with by the Government in conclusory fashion.[6]

The Government, not Ms. Javice, has the burden of proof, and is required to provide the Court with a reliable estimate of the loss to JPMC via credible evidence.  Having failed to meet that burden, the Court should decline to adopt the loss enhancement pressed by the Government.

Respectfully submitted,

David M. Siegal
Eoin P. Beirne
Ellen Shapiro

---

received in a subsequent bankruptcy proceeding where investors—akin to having a secured loan—were misled to believe all were *pari passu*, when in fact the victims received a position junior to more than $300 million of senior debt).

[5] *See* JPMorgan Chase Cookie Policy, available at https://www.jpmorganchase.com/legal/cookies ("In addition to cookies which send information to us, our websites also use cookies which collect information and send it to third parties. . . . We use Google Analytics to help collect and compile information like the number of visitors to our site, where visitors have come to the site from and the pages they visited." Also referencing specific retargeting tools used to market to website visitors.).

[6] The Government's attempt to recharacterize Ms. Javice's argument as some version of a contributory negligence theory is pure misdirection.  The Government's burden to calculate loss must incorporate the value of Frank as it was obtained by JPMC upon acquisition.  What JPMC chose to do (or not) with Frank after acquisition does not bear on Frank's valuation at the time of the acquisition, which by JPMC's own valuation model, included significant synergistic value, all of which is correctly part of the value of Frank at the time of acquisition.

BOSTON    LOS ANGELES    MIAMI    NEW YORK    SAN DIEGO    SAN FRANCISCO    TORONTO    WASHINGTON

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.