# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

October 10, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Olivier Amar*, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

    In light of the Court's sentencing of Charlie Javice to 85 months' imprisonment, as well as the Government's sentencing submission for Olivier Amar, we write to provide the Court with additional information on the sentencing disparities Mr. Amar may face. The Government urges the Court to sentence Mr. Amar to 72 months in prison. ECF No. 441. Doing so would mean that Mr. Amar will spend more time incarcerated (and in harsher conditions) than Ms. Javice—even though the Government acknowledges that she "led Frank, led the scheme, and is more culpable." *Id.* at 34. In so doing, the Government effectively asks the Court to ignore the practical reality of how these two sentences will play out. *Id.* at 47–49. The Court should decline this invitation as unjust.

    Assuming the Bureau of Prisons (BOP) makes available to Ms. Javice all credits for which she is eligible under the First Step Act (FSA) and Second Chance Act (SCA),[1] she will be released from the minimum security camp to which she will likely report (first to a halfway house, then to home confinement) after approximately 36.2 months.[2] At the

---

[1] While historically, the BOP has not always awarded all available credits to defendants, it recently touted the "dawn of a new era" in which it seeks to "fully operationalize" the FSA and SCA, *see* U.S. Dep't of Justice, Bureau of Prisons, Press Release (June 17, 2025), thereby increasing the likelihood that Ms. Javice will receive the full benefit from the credits.

[2] Ms. Javice can receive a 15% statutory good conduct credit, which is applied first. *See* 18 U.S.C. § 3624(b)(1) (providing information regarding the amount of credit); U.S. Sent'g Comm'n, First Step Act Earned Time Credits, About the Data (last visited Oct. 9, 2025) (describing the sequencing of the credit). Mr. Amar is also eligible for this credit. However, Ms. Javice may receive an additional earned time credit under the FSA of up to 15 days for every 30 days she spends in prison, *see* 18 U.S.C. § 3632 (d)(4)(A). That credit

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

Hon. Alvin K. Hellerstein, U.S.D.J.
October 10, 2025
Page 2

same time, if the Court sentences Mr. Amar to 72 months, as the Government recommends, he would likely serve 61.2 months.[3] Further, while Ms. Javice is eligible for a minimum security camp, Mr. Amar is not. *See* ECF No. 433 at 51–52. The practical consequence of the Government's sentencing recommendation is that Mr. Amar could be incarcerated almost twice as long as Ms. Javice, in harsher conditions. That is not justice.

For the Court's consideration, the chart below shows how much time in prison Mr. Amar would likely serve compared to Ms. Javice, depending on the sentence imposed:

| Sentence Imposed | Amar's Time Served (likely 85% of sentence) | Javice's Time Served (assuming full credits) | Amar vs. Javice Time Served |
|---|---|---|---|
| 85 months (7.1 years) | | 36.2 months (3 years) | |
| **72 months (6 years) [Gov. Recommendation]** | **61.2 months (5.1 years)** | | **Amar Serves Almost 2X More** |
| 42.6 months (3.5 years) | 36.2 months (3 years) | | Amar Serves Same Time |

As the Government concedes, Mr. Amar is not as culpable as Ms. Javice. Accordingly, and to assist the Court, the below chart shows the length of the prison sentence the Court might impose on Mr. Amar should it determine that Mr. Amar should serve 75%, 50%, or 25% of the prison sentence Ms. Javice is likely to serve in a camp.

| % Time Incarcerated Relative to Javice | Amar Sentence Accounting for FSA/SCA Ineligibility |
|---|---|
| 75% | 33.5 months |
| 50% | 21.0 months |
| 25% | 10.5 months |

---

applies to release to a halfway house or to home confinement, and, ultimately, to supervised release, *see* 28 C.F.R. § 523.44(c)–(d), once the days she has earned equal the days she has left on her sentence, *see id.* § (b)(1). Mr. Amar likely will not get this credit. *See id.* § (a)(2). On top of that, Ms. Javice may also receive a credit of up to the "final" 12 months of her sentence in a halfway house or home confinement under the SCA. *See* 18 U.S.C. § 3624(c)(1)–(2). The SCA credits are "cumulative" and "stackable" with the FSA, *see* U.S. Dep't of Justice, Bureau of Prisons, Press Release (June 17, 2025). Therefore, applying all three reductions in full, as the BOP has indicated it will seek to do as a general matter, *see id.*, Ms. Javice's time served in secure custody (*i.e.*, a BOP-managed camp) is equal to 85 mos. x .85 x 2/3 – 12 mos., whereas Mr. Amar's time served in a low-security facility is, at most, equal to his imposed sentence x .85.

[3] Mr. Amar will likely serve 85% of any sentence imposed on him because, as discussed *supra* note 2, the only credit for which Mr. Amar will be eligible is the statutory good time credit, potentially worth 15% of his sentence.

Hon. Alvin K. Hellerstein, U.S.D.J.
October 10, 2025
Page 3

      Finally, the Government improperly claims Mr. Amar is attempting to "game the immigration system to shorten his sentence" by agreeing to a stipulated order of removal, which would guarantee his FSA/SCA ineligibility, while at the same time asking the Court to consider such ineligibility in analyzing sentencing disparities. ECF No. 441 at 47–49. That characterization of Mr. Amar's position is unfair. Mr. Amar has been working collaboratively and in good faith with the Government for months to facilitate a stipulated order of removal, which plainly serves additional legitimate purposes. It preserves precious executive and judicial resources (by avoiding lengthy removal proceedings) and increases transparency in the sentencing process for the Court itself (by eliminating a major uncertainty regarding whether Mr. Amar's time in prison will be shortened by the FSA/SCA). That is because entering into a stipulated removal order guarantees that Mr. Amar will not benefit from the FSA/SCA during any sentence. Mr. Amar simply asks that this Court consider this reality, and the sentencing disparity it will create, in sentencing him.

      Respectfully submitted,

      /s/ Matthew I. Menchel
      Matthew I. Menchel
      KOBRE & KIM LLP
      201 South Biscayne Boulevard,
      Ste. 1900
      Miami, FL 33131
      Tel: (305) 967-6100
      Matthew.Menchel@kobrekim.com

      Alexandria E. Swette
      Jonathan D. Cogan
      KOBRE & KIM LLP
      800 Third Avenue
      New York, NY 10022
      Tel: (212) 380-1253
      Alexandria.Swette@kobrekim.com
      Jonathan.Cogan@kobrekim.com

      *Counsel for Defendant Olivier Amar*